IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE ELIJAH GROUP, INC., | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. SA08CA0907 |
| | § | |
| THE CITY OF LEON VALLEY, TEXAS, | § | |
| Defendant. | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

**NOW COMES** Plaintiff, **THE ELIJAH GROUP, INC**. (hereinafter referred to as "Plaintiff" or the "Church") and files this Plaintiff's Amended Complaint against Defendant, **THE CITY OF LEON VALLEY, TEXAS** (hereinafter referred to as "Defendant" or the "City") and would show unto the Court the following:

### I.

### PARTIES

1.     Plaintiff, The Elijah Group, Inc., a non-profit corporation, is incorporated under the laws of the State of Texas.  Its principal place of business is in Bexar County, Texas.

2.     Defendant, the City of Leon Valley, Texas, is a municipal corporation, incorporated under the laws of the State of Texas.  Defendant has answered and made in appearance in this case. Counsel of record for the Defendant is being served with this pleading.

### II.

### JURISDICTION

3.     Plaintiff, by and through its undersigned counsel, state the following as their Amended Complaint against Defendant, the City of Leon Valley, Texas, under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"),

the Texas Religious Freedom Restoration Act, TEX. CIV. PRAC. & REM. CODE ANN. § 110.001, *et seq.*, and the United States and Texas Constitutions.

4.    This Court has jurisdiction over all Federal claims in this Amended Complaint under 28 U.S.C. §§ 1331 and 1343(a), and supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

## III.

## VENUE

5.    Venue lies in this district pursuant to 28 U.S.C. § 1391.  Plaintiff and Defendant are located in the district, and all events giving rise to this action occurred in this district.

## IV.

## CONDITIONS PRECEDENT

6.    All conditions precedent have been performed or have occurred.

## V.

## FACTS

7.    Plaintiff alleges that by the filing of this lawsuit, the Defendant's zoning and land use regulations are unconstitutional, both on their face, and as they are applied to Plaintiff, in violation of the United States and Texas Constitutions as more fully described herein.  The City intentionally discriminates against religious places of worship and has prevented the Plaintiff from purchasing an adequate place to worship where its congregation may continue to grow and engage in other religious activities.  The land use regulations and application of the laws to the Plaintiff has limited and restricted Plaintiff's use of land in which it has a property interest.

8.    Due to the unprecedented growth of its Christian ministry, Redemption Tabernacle Ministries, Inc. entered into a purchase agreement (the "Agreement") with Happy State Bank, a Texas Banking Association d/b/a GoldStar Trust Company ("GoldStar" or "Seller"), to purchase the land and buildings located at 6401 Bandera Road (the "Property") to be used as a church and religious education facility in furtherance of its Christian ministry.  Redemption Tabernacle Ministries, Inc. was formed to spread the Gospel of Jesus Christ and to practice the Christian virtues inculcated in the Holy Scriptures.  Service to others, for the good of others, or ministry, is a central tenet of the Christian faith and of the Church.  To that end, the Church provides traditional social services such as counseling, weddings, funeral services, and support for the poor and needy. Multiple programs exist to provide services to members of the Church and to non-members of all ages outside of the Church, including family violence counseling, single parent counseling, and family and youth counseling services provided partly through referrals from the Justice of the Peace Court, Precinct 2, Place 1.  Additionally, dozens of small groups can be expected to meet in the Church facilities and in the community, not only to grow in the faith, but to provide support, encouragement, and service to others.  Church members also contribute numerous volunteer hours to other social service organizations and agencies, volunteering their time.  Special events held by the church, like Christmas pageants, are always open to non-members who usually attend.

9.    As its congregation has grown, the Church has outgrown its present location in Bexar County.  Pursuant to the terms of the Agreement, Redemption Tabernacle Ministries, Inc. has assigned the purchase agreement entered into with GoldStar to The Elijah Group, Inc. However, Redemption Tabernacle Ministries, Inc. and The Elijah Group, Inc. are the same congregation. Darryl Crain was the Pastor and a director of Redemption Tabernacle Ministries, Inc. when the

−3−

purchase agreement was signed and is the present Pastor and a director of The Elijah Group, Inc. At all times, whether as Redemption Tabernacle Ministries, Inc. or The Elijah Group, Inc., the Plaintiff has held a property interest in the land and buildings and has proceeded with their plans to use and develop the land and structures on the land as a church and religious education center.

10.    The land and structures at 6401 Bandera Road are commonly referred to in Leon Valley as the "Church on the Rock" and consist of a dome shaped chapel, a meeting building, and a paved parking lot situated on approximately 3.8 acres of land). The Property is located north of Loop 410 on Bandera Road in Leon Valley, Texas. It is bordered on the west by the main thoroughfare through the City, Bandera Road, and by a residential neighborhood to the east.

11.    The construction of the dome shaped chapel was completed in 2001. However, the Property and other buildings have been continuously used for their intended purposes, as a place of religious worship and religious education, since 1996.

12.    In 2003, the City Master Plan was amended to recommend only "B-2 Retail District" uses for the 6400 block of Bandera Road. This is significant because at the time the Master Plan was adopted, "churches" were allowed to locate and worship in "B-2" districts.

13.    On or about March 6, 2007, the City sent a clear message of its intolerance to churches and religious people when it approved a new Zoning Ordinance which moved churches out of "B-2 Retail Districts" and in to what the City calls "B-3 Commercial Districts" (the "Zoning Change") requiring the religious faithful to navigate and worship in industrial areas alongside auto repair centers, warehouse and storage units, flea markets, firing ranges, and other industrial sites. Because a church congregation occupied the Property at the time of the Zoning Change, the Property

was deemed a legal non-conforming use and religious worship was allowed to continue in the "B-2" location.

14.    Incredibly, as rationale for the Zoning Change, the City claims that it moved churches to "B-3" areas in order to place them in "more appropriate zoning districts." How worshiping next to a storage unit, flea market, or animal shelter is a more appropriate location for a church and house of God remains unexplained by the City leaders. These actions show a wide-spread contempt for churches and houses of worship by the City. The City's false rationale ignores the fact that churches are as much a part of community life as schools and should be built in areas where people live with their locations allowing for easy access. Further, and while moving churches, other uses that were allowed to remain in "B-2" by the City include, but are not limited to, liquor stores, oil change drive-throughs, service stations, convenience stores, moving companies, plumbing supply stores, tanning and massage parlors, and self-storage facilities.

15.    The City's actions have prevented the sale by GoldStar to the Plaintiff from being consummated. Therefore, the Church presently occupies the Property pursuant to a lease agreement with GoldStar and as authorized by a valid certificate of occupancy issued by the City Fire Marshall which was made final on December 15, 2008, pursuant to a passing fire inspection report ordered by this Court. Despite the finality of such certificate of occupancy and the Church's compliance with all City Codes, the Defendant has continued its threats to remove the church members and issue criminal or civil citations if the congregation has prayer services on the Property.

16.    Since the lawsuit was filed, Defendant's representatives, have visited the Property unannounced and uninvited to photograph and videotape individual members of the church in an attempt to scare them into forgoing their religious practices. Plaintiff's members face the choice

between disobeying City officials and facing civil and criminal citations which violate Plaintiff's protected rights to worship, or in terminating their worship services.

17.    In one instance, the City Fire Marshall, while on the Property without permission during a church service, was wearing a sidearm in a clear show of the City's force and authority. At the time he videotaped the proceedings and individuals. The Fire Marshall later made his way to the parking lot where he videotaped cars and vehicle license plates as well as people coming and going to church services.    Many church members expressed their fears to Pastor Crain. These actions by the City place a substantial burden on the religious practices of the Plaintiff which are violations of RLUIPA and the United States and Texas Constitutions and constitute irreparable injury. It is just this type of egregious behavior that the RLUIPA was enacted to prevent.

**THERE IS NO SPECIFIC USE PERMIT PROCEDURE OR
VARIANCE PROCEDURE FOR CHURCHES IN B-2 AREAS**

18.    The City zoning code eliminates churches altogether from B-2 areas and intentionally provides no provision for a church to apply for a certificate of occupancy or a variance, nor does it provide any SUP procedure for churches. Therefore, the Plaintiff and other churches has no avenue available to apply for church use of a Property in a B-2 zoned area. Despite the lack of any provision in the zoning code for a church to apply for and occupy a B-2 zoned area, an Application for Zoning Change (the "Application") was filed with the City asking to have the Property rezoned from a B-2 to a B-3 area that would allow the Property to continue to be used as a church. GoldStar made the Application as required by a Purchase Agreement between Plaintiff and GoldStar. The Application was made for the benefit of the Plaintiff. Pastor Darryl Crain attended and spoke at the City Zoning Commission meeting on behalf of Plaintiff and regarding the Plaintiff's property interest and desire to have the zoning changed to benefit the Plaintiff by allowing the Church to purchase the Property

–6–

so he could operate a church and school. The City Zoning Commission voted to recommend to the City Council that it deny the Application. The City Council acting upon such recommendation denied the Application.

19.    In making its determination, the City Zoning Commission and the City Council made an individualized assessment of the proposed use and the Property involved. With respect to a proposed religious use, the subjective standards relied upon by the City allow it unbridled discretion to approve or deny any such application. These subjective standards create a danger that City members will impermissibly favor non-religious uses over religious uses, as is the case here.

20.    The City's refusal to allow the Plaintiff to operate a Church, while allowing other commercial assemblies and non-profit assemblies to remain in B-2 areas, the City's conduct in having no application process or mechanism for churches to apply to locate in B-2 areas, and the City's conduct in processing Plaintiff's paperwork and requests has violated the RLUIPA and various provisions of the United States Constitution and Texas Constitution. The City has discriminated against religions by unreasonably limiting religious assemblies and institutions and structures within the City, by imposing a substantial burden on the religious exercise of Plaintiff and other members of the Church without serving any compelling governmental interest and, finally, has abridged the rights of free speech, association, and petition.

21.    On October 31, 2008, the Church filed this lawsuit in District Court, Bexar County, Texas (the "State Court"), asserting claims under both state and federal law, and the City removed the lawsuit to this Court.

## VI.

## THE REAL REASON FOR THE ZONING CHANGE IS ECONOMIC

22.     The real reason for the Zoning Change is economic as articulated by the City's

Director of Community Development, Melinda Smith, who was quoted in a San Antonio Current

article as stating:

> **"We are inundated by [tax-] exempt properties out here.
> There was a joke that we needed to change our name from
> Leon Valley to Church in the Valley."**

23.     The San Antonio Current article attributed the Zoning Change to the statement that

the City had its fill of the "1990's church boom that tax exempted so much of their most valuable

property."

24.     The prior congregation continued to worship on the Property until the Property was

foreclosed on by GoldStar.  The City in its haste to ensure that no other religious organization would

ever worship on the Property, declared that a "church" use of the Property had terminated on

October 28, 2007, which Plaintiff disputes.

25.     Left with no other alternative, an Application for Zoning Change (the "Zoning

Application") was filed with the City by GoldStar requesting that the City rezone the property from

its current "B-2" designation to "B-3" in order to allow the Property to continue to be used for its

intended religious purposes by the Plaintiff.

26.     A public hearing on the Zoning Application was held on February 26, 2008 before

the Leon Valley Zoning and Land Use Commission (the "Zoning Commission").  Pastor Crain, on

behalf of the Plaintiff, testified at the public hearing of his congregation's intent to operate a church

and religious education center on the Property.  The Zoning Commission voted by a vote of six to

one to recommend that the zoning request be denied by the City Council. The Zoning Commission improperly recommended that the City Council deny the Zoning Application solely on the City's professed dire need for new sources of tax revenues and assertions that there were already too many churches within the City not generating tax revenues. The following statement made by a resident of Leon Valley during the public hearing is indicative of the hostility shown toward churches in the City.

> "We are a landlocked community, we are limited in space, and **we are being devoured by churches**, Northside School District and non-taxpaying entities . . .**there is no end to churches**." (Zoning Commission Public Hearing.)

> "I see this community starving for a lack of property taxes." (Zoning Commission Public Hearing.)

27. The Zoning Application satisfied all requirements set out in the City Code.

28. The Zoning Commission failed in its mandate to provide any reasonable basis for its refusal to recommend to the City Council that the zoning district be changed. The decision was based upon improper reasons. One commissioner present at the Zoning Commission public hearing discussed the purely economic rationale behind the zoning change which moved churches to "B-3" areas. He stated:

> "before (the zoning change), the churches were allowed just about anywhere and we felt that in certain instances such as **right there on Bandera Road, I mean to me, that is where you put your businesses. That is where you begin to concentrate your economic development resources** and the use of property that prime in an economic corridor for something other than economic development, I believe in our case, as has been pointed out, we are landlocked, we can't expand and bring in so **we have to be really careful about the resources we have and how we use them. <u>That is why the recommendation to locate churches in a B-3 was made</u>**." (Zoning Commission Public Hearing.)

Another Commissioner stated:

> "It has only been recently that we ourselves talked about the fact that **we have the churches that are non-taxpaying and that we are reaching kind of an economic crisis here, and for that reason, we disallowed the churches anywhere except B-3**, so, because, **every little strip center everywhere was having a church**." (Zoning Commission Public Hearing.)

Concerning the recommendation to deny the Zoning Change, another Commissioner stated:

> "I felt strongly that if we change this to commercial, this little strip, **we are just opening up the flood gates, and every church is going to want in**." (Zoning Commission Public Hearing.)

29.     Later, during the same public meeting, the City Manager, Lanny Lambert, also articulated the economic reason behind the zoning change. He described the Church on the Rock as "**prime real estate**" and then proceeded to calculate his estimate that the City had lost $75,000.00 per year in income due to the tax exempt status of a church operating on the Property and the church's exclusion from the City tax rolls.

30.     The City Council acted upon the report and recommendation, and denied the zoning change on or about March 4, 2008 for the simple economic reason that churches do not add tax dollars to the city bank accounts. Again, discussing the reasoning behind the zoning change, one Commissioner stated at the City Council Meeting:

> "**The City was having a difficult time, and is having a difficult time, in its economic development efforts. A large amount of sales tax has been lost** over the last several years and we feel that **it was important to try to maintain the integrity of certain land within the City for economic purposes**." (March 4, 2008 City Council Meeting)

31.     The denial of the Zoning Application by the City was arbitrary and a clear abuse of the City's discretion as it was entirely based upon economic reasons in violation of the

Church's right to the free exercise of religion. In particular, the City based its denial on the need for new tax revenues and economic development on the Bandera Road corridor where the property is located.

32.    The City has shown its hostility to new churches and religious organizations by requiring that they be located away from its main thoroughfare and only in "out of the way" industrial areas designated "B-3."

33.    The Church has spent a great deal of time and money in bidding on and purchasing the Property and in moving its congregation. The Church needs additional space and larger facilities to accommodate the growing size of its congregation – the very reasons it contracted to purchase the Property. The Church was unable to accommodate its religious needs in its former space.

34.    The intentional actions of the City show a complete disregard for the rights of churches in Leon Valley and demonstrate the City's intent to deny any further zoning application submitted to use the Property for its intended purpose as a place of religious worship and education. The City's imposition of a land use regulation imposes a substantial burden on the Church's right to religious exercise and the Church has exhausted all potential avenues for relief from the City's actions.

35.    The City's land use policies and zoning code are unconstitutional on their face. There is no compelling governmental justification for burdening its free exercise of religion. The City simply chose to move churches from areas where it desired to promote retail development to less desirable heavy commercial locations which are out of sight of its main thoroughfare. Churches are not heavy industrial businesses and should not be restricted to such areas.

## VII.

### THE CITY SINGLED OUT CHURCHES AND ALLOWED OTHER NON-COMMERCIAL ENTITIES AND OTHER TYPES OF "ASSEMBLIES" TO REMAIN IN "B-2" AREAS

36.     As noted above, it is clear that the City intended to discriminate against and completely exclude churches and religious institutions from its designated "B-2" retail areas in an attempt to increase the City's tax revenues.  At the same time, the City treated churches on less than equal terms than non-religious assemblies by allowing other noncommercial uses to remain in "B-2" such as museums, libraries, and neighborhood recreational facilities.  Further, despite claims by the City that churches were not singled out and all assemblies were moved to "B-3," the City allowed other assemblies to remain in "B-2" such as auditoriums, convention centers, meeting facilities, private clubs and lodges, billiard parlors and bowling alleys, by simply obtaining a Specific Use Permit ("SUP") from the City.  No SUP procedure is available for churches.  Restaurants were also allowed to remain in B-2 by right.

## VIII.

### THE CITY'S UNCONSTITUTIONAL ACTIONS WERE INTENTIONAL

37.     The City knowingly violated constitutional rights of the Church and recognized the significance of doing so, as evidenced by the recorded comments of one Commissioner at the February 26, 2008 Zoning Commission meeting who asked the city attorney, **"Were we teetering on discriminating against churches up here?"**  Thereafter, there was much discussion amongst the commissioners that they need to discuss the zoning change only in the context of "assemblies" and not use the word "churches," as churches have legal protections.  It is then discussed that in earlier discussions prior to the zoning change, **the proposed zoning change was discussed only in the**

"church" context. However, the final wording of the Zoning Ordinance was later changed by City Staff to not specifically mention "churches" and instead refer only to "assemblies." One Commissioner stated:

> "I think the staff changed that ("churches" to "assemblies") to protect us legally because we talked about churches. Yeah, that's what drove the discussion. Yeah, that's what prompted the whole thing because we had so many."
> (Zoning Commission Meeting).

38.    The Purpose of the Religious Land Use and Institutionalized Act of 2000 is to provide protection for houses of worship and other religious assemblies from restrictive zoning ordinances and land use regulations like those enacted by the City in the instant case. The Texas Religious Freedom Restoration Act is modeled after the federal act. Both the federal and state acts forbid governmental land use regulations that treat churches and religious assemblies on less than equal terms with non-religious assemblies. The City's Zoning Ordinance treat churches on less than equal terms with other "assemblies" by requiring that no new churches be located in "B-2" areas while allowing other "assemblies" to remain. The City was served with Notice by certified letter on June 17, 2008.

## IX.

## COUNT 1

### DECLARATORY JUDGMENT – ABUSE OF MUNICIPAL DISCRETION

39.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 38 above.

40.    Pursuant to The Declaratory Judgment Act, 28 U.S.C. Sections 2201-2202 and Section 37.004 of the Texas Civil Practice and Remedies Code, Plaintiff petitions the Court for a

declaration of the rights of the Plaintiff. In particular, Plaintiff seeks a declaration that the City's Zoning Ordinance, both on its face and as applied to the Plaintiff through the denial of the Zoning Application, was arbitrary, capricious, without reasonable basis, and a clear abuse of the City's municipal power and authority.

41.     There is no viable or legitimate government interest or purpose that is forwarded by, or that would justify enactment of a Zoning Code removing churches from B-2 areas and the denial of the Zoning Application to prevent church use and worship of the Property.

## X.

## COUNT 2

## VIOLATION OF RLUIPA – DISCRIMINATION

42.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 41 above.

43.     Section 2(b) of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, prohibits any government from imposing or implementing a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a non-religious assembly or institution, or with a religious assembly or institution of another denomination.

44.     The City's Zoning Code treats religious assemblies or institutions and non-religious assemblies or institutions differently, such as between churches and auditoriums. Auditoriums may be located in B-2 with a specific use permit. There is no specific use permit allowed for churches in B-2.

–14–

45.    The City's Zoning Code treats religious assemblies or institutions and non-religious assemblies or institutions differently, such as between churches and convention centers. Convention centers may be located in B-2 with a specific use permit. There is no specific use permit allowed for churches in B-2.

46.    The City's Zoning Code treats religious assemblies or institutions and non-religious assemblies or institutions differently, such as between churches and meeting facilities. Meeting facilities may be located in B-2 with a specific use permit. There is no specific use permit allowed for churches in B-2.

47.    The City's Zoning Code treats religious assemblies or institutions and non-religious assemblies or institutions differently, such as between churches and private clubs and lodges. Private clubs and lodges may be located in B-2 with a specific use permit. There is no specific use permit allowed for churches in B-2.

48.    The City's Zoning Code treats religious assemblies or institutions and non-religious assemblies or institutions differently, such as between churches and bowling alleys, and churches and skating centers. Bowling alleys and skating centers may be located in B-2 with a specific use permit. There is no specific use permit allowed for churches in B-2.

49.    The City's Zoning Code treats religious assemblies or institutions and non-religious assemblies or institutions differently, such as between churches and restaurants. Restaurants are allowed by right in B-2 by the Zoning Code. Churches are not allowed in B-2.

50.    The City has imposed and implemented a Zoning Code and policy in a manner which treats religious assemblies and institutions on less than equal terms with non-religious

–15–

assemblies and institutions, and using its Application procedures and policies, the City has discriminated between religious assemblies and secular assemblies.

51.     Plaintiff has suffered damages as a result of the discrimination imposed against religious assemblies and institutions contained in the City Zoning Code and the discrimination practiced by the City in its implementation of the City Zoning Code.

52.     Plaintiff and the members of the Church will suffer irreparable harm if the City's violations of RLUIPA are not enjoined.

53.     Plaintiff and the members of the Church have no adequate remedy at law for the City's violations of RLUIPA.

54.     Plaintiff is entitled to declaratory judgment that the City Zoning Code discriminates between religious assemblies and institutions and non-religious assemblies and institutions, and that the City's implementation of the Zoning Code to the Church discriminates between religious assemblies and institutions and non-religious assemblies and institutions, and an order enjoining the City from enforcing the Zoning Code to deny church use of the Property or alternatively the denial of the Application to rezone the Property from B-2 to B-3.

55.     Plaintiff is further entitled to recover the damages it has suffered as result of the impermissible discrimination by the City.

## XI.

## COUNT 3

## VIOLATION OF RLUIPA – SUBSTANTIAL BURDEN

56.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 55 above.

57.     Section 2(a) of the RLUIPA prohibits any government from imposing or implementing a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

58.     Section 2(a) of RLUIPA applies in any situation in which the burden is imposed in the implementation of a land use regulation or system of land use regulations, under which the government makes, or has in place formal or informal practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

59.     The Church is a religious institution within the meaning of RLUIPA.

60.     The City's actions in enacting its unconstitutional zoning code, denying the Application, and in harassing and attempting to evict the Plaintiff for its religious belief, as stated herein, impose a substantial burden on the exercise of religion by the Plaintiff and the church members.

61.     The City's actions in enacting its unconstitutional zoning code, denying the Application, and in harassing and attempting to evict the Plaintiff, as stated herein, do not further a compelling governmental interest and are not the least restrictive means of furthering any governmental interest.

62.     The City has in place both formal and informal practices and provisions, including without limitation the City Zoning Code, that permit the City to make individualized assessments of the proposed use of the Property.

–17–

63.    Plaintiff has suffered damages as a result of the City's violation of Section 2(a) of the RLUIPA.

64.    Plaintiff and its members have suffered and will suffer irreparable harm if the City's violations of Section 2(a) of the RLUIPA are not enjoined.

65.    Plaintiff has no adequate remedy at law for the City's violations of the RLUIPA.

66.    Plaintiff is entitled to declaratory judgment that the City's actions in denying the Application as set forth herein and efforts to intimidate, harass, and evict Plaintiff impose a substantial burden on Plaintiff's exercise of religion, do not serve a compelling governmental interest, and are not the least restrictive means of furthering any government interest served, and an order enjoining the City from enforcing the City Zoning Code to deny church use of the Property or alternatively the denial of the Application to rezone the Property from B-2 to B-3.

67.    Plaintiff is further entitled to recover the damages it has suffered as result of the impermissible discrimination by the City and its violation of Section 2(a) of the RLUIPA.

## XII.

### COUNT 4

### VIOLATION OF RLUIPA – UNREASONABLE LIMITATIONS

68.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 67 above.

69.    Section 2(b)(3) of the RLUIPA prohibits any government from unreasonably limiting religious assemblies, institutions, and structures within a jurisdiction.

70.    The City Zoning Code unreasonably limits religious assemblies, institutions, and structures within the City limits by not authorizing churches in B-2 zoning areas which constitute a

substantial portion of the City, by allowing no procedure or standard for an Application or variance by a church, whether by right or SUP procedure, to apply for location in a B-2 area.

71.    Plaintiff has suffered damages as a result of the City's violation of Section 2(b)(3) of the RLUIPA.

72.    Plaintiff and its members have suffered and will suffer irreparable harm if the City's violations of Section 2(b)(3) of the RLUIPA are not enjoined.

73.    Plaintiff has no adequate remedy at law for the City's violations of the RLUIPA.

74.    Plaintiff is entitled to declaratory judgment that the City has unreasonably limited religious assemblies, institutions, and structures within the City and an order enjoining the City from enforcing the City Zoning Code to prohibit the occupancy of the Property by the Plaintiff.

75.    Plaintiff is further entitled to recover the damages it has suffered as result of the City's violation of Section 2(b)(3) of the RLUIPA.

**XIII.**

**COUNT 5**

**TEXAS RELIGIOUS FREEDOM RESTORATION ACT**

76.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 75 above.

77.    The City's Zoning Ordinance and the intentional and wrongful denial of the Zoning Application caused a substantial burden to the Plaintiff's right to the free exercise of religion.

78.    The Zoning Code and the denial of the Zoning Application unreasonably restricts and hinders access to the Plaintiff's religious services, programs, and religious education. The City's denial of the Zoning Application does not advance any compelling governmental interest.

The actions of the City in drafting and implementing an unconstitutional land use regulation infringes on the Church's right to freely exercise its religious beliefs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 110.001, *et seq.*

## XIV.

## COUNT 6

### FIRST AMENDMENT – FREE EXERCISE OF RELIGION AND TEXAS CONSTITUTION

79.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 78 above.

80.     The First Amendment to the United States Constitution, as incorporated pursuant to the Fourteenth Amendment (the "Free Exercise Clause"), prohibits a state or any political subdivision from prohibiting the free exercise of religion.

81.     The actions of the Zoning Commission, City Council, and other City officials, as set forth above, in addition to violating the RLUIPA, have violated Plaintiff's rights under the Free Exercise Clause by imposing a substantial burden upon Plaintiff and its congregations. The substantial burden has been imposed under the provisions of the Zoning Code.

82.     The City Zoning Code, as set forth above, both on its face and as implemented by the City against Plaintiff, is not neutral as between religious and secular assemblies and institutions.

83.     Plaintiff has suffered damages as a result of the improper actions of the City and other City officials. The ability of the Plaintiff to operate and conduct religious worship at the Property without governmental interference has been substantially burdened. The City has prevented the Plaintiff from operating a church and religious education center by its Zoning Ordinance and denial

of the Zoning Application. These actions imposed a substantial burden on religious exercise by discriminating against Plaintiff solely because of its religious affiliation and character which inhibited the Plaintiff's free exercise of religion.

84.    The City showed deliberate indifference to the Plaintiff's Constitutional right to the free exercise of religion. The City's actions restrict access to the Church's services, programs, and facilities, thus denying its right to administer and provide such services, programs, and a place of worship to its growing congregation in a place of its choosing.

85.    The City's aforementioned intentional conduct, deliberate choices, and deliberate indifference to the Plaintiff's rights, were each and all, violations of the Plaintiff's right to religious freedom guaranteed by the Free Exercise Clause and pursuant to Article 1, Section 6 of the Texas Constitution.

86.    The City is liable for damages to the Plaintiff in an amount to be proven at trial.

87.    Plaintiff is entitled to a declaratory judgment that the City's zoning regulations and actions have violated their First Amendment rights and their Texas Article 1, Section 6 Texas Constitution rights, and entitled to declaratory judgment that such regulations may not be enforced against the Church to deny the Application and the Church's intended use of the Property.

## XV.

## COUNT 7

### SECTION 1983 - FIRST AMENDMENT – FREE SPEECH AND TEXAS CONSTITUTION

88.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 87 set forth above.

89.     The First Amendment of the United States Constitution, as incorporated pursuant to the Fourteenth Amendment (the "Free Speech Clause"), prohibits a state or any political subdivision, from abridging freedom of speech.

90.     The actions of the City and other City officials, as set forth herein, in addition to violating the RLUIPA, have violated Plaintiff's rights under the Free Speech Clause by imposing a substantial burden upon the speech and expressive conduct of Plaintiff and the church members pursuant to a system of individualized assessment. The substantial burden has been imposed by the City through its lack of special use provisions for a church use in a B-2 zoned area and its individualized assessments in considering the Church's Application to have the Property rezoned to B-3 which would allow church use of the Property. These individualized assessments by the City are decided on case by case basis. The actions of the City have violated the rights of Plaintiff under the Free Speech Clause by applying the provisions of the City Zoning Code governing assemblies and institutions in a manner that discriminates between secular and religious speech and by targeting religious speech.

91.     The City Zoning Code, as set forth above, improperly imposes time, manner, and place restrictions upon religious speech and expressive conduct that are not narrowly tailored to serve a significant government interest and that do not leave open ample alternative channels for communication or information.

92.     Plaintiff has suffered damages as a result of the improper actions of the City.

93.     The City is liable for damages to Plaintiff in an amount to be proven at trial.

94.      Plaintiff is entitled to declaratory judgment that the City's Zoning Code and actions have violated the First Amendment rights of Plaintiff and members of the Church, and that such regulations may not be enforced against the Church.

95.      The actions of the City and other City Officials, as set forth herein, have also violated the rights of Plaintiff under the Texas Free Speech Clause, in the same manner as set forth above with respect to violations of the Free Speech Clause. Plaintiff is therefore entitled to further relief, and declaratory judgment under the Texas Constitution that the City's Zoning Code and actions may not be enforced against the Church to deny the application.

## XVI.

## COUNT 8

## FOURTEENTH AMENDMENT –
## EQUAL PROTECTION AND TEXAS CONSTITUTION

96.      Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 95 set forth above.

97.      The Fourteenth Amendment of the United States Constitution prohibits a state or any political subdivision thereof from denying to any person within its jurisdiction the equal protection of the law (the "Equal Protection Clause"). The City does not regulate citizens equally but, instead, treats religious organizations differently based upon improper classifications.

98.      The Zoning Code enacted by the City, and the actions of the City and City officials, as set forth above, in addition to violating the RLUIPA, have violated Plaintiff's rights under the Equal Protection Clause and have limited the fundamental right of churches and the Plaintiff to worship. Defendant has treated Plaintiff differently than other similarly situated persons or entities on the basis of religious belief. The City's actions, addressed herein, have deprived the Church and

its members of their fundamental right to equal protection of the law as secured by the Fourteenth Amendment to the United States Constitution and Article I, Sections 3 and 3a of the Texas Constitution.

99.     Because Plaintiff has been treated differently than other persons and assemblies by the City's enactment of laws and classifications that impair a fundamental right to worship, and such classifications are based upon Plaintiff's religious beliefs, the City's actions are subject to strict scrutiny.

100.    Plaintiff is entitled to declaratory judgment, that the City's regulations on their face and as applied to the Plaintiff on the Zoning Application, and the other actions taken by the City with respect to the Application, deprived Plaintiff of its right to equal protection.

## XVII.

## COMPLIANCE WITH NOTICE PROVISIONS

101.    Plaintiff timely presented its claim to the City.

## XVIII.

## ATTORNEY FEES

102.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 101 herein.

103.    This instant lawsuit and declaratory action was filed as a result of the City's actions in direct violation of the United States and Texas Constitutions, the Religious Land Use and Institutionalized Person Act of 2000, and the Texas Religious Freedom Reformation Act. Accordingly, Plaintiff pleads for and is entitled to an award of its attorney fees and costs as allowed by TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 and 42 U.S.C. § 1988.

104.    Under 42 U.S.C. § 1988, a prevailing plaintiff in an action under 42 U.S.C. § 1983 or under the RLUIPA is entitled to judgment against the Defendant for the amount of attorney fees incurred by Plaintiff in pursuing the action.

105.    Plaintiff has incurred and will continue to incur attorney fees in pursuit of its claims under 42 U.S.C. § 1983, under RLUIPA, and under TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

106.    The City is liable to Plaintiff for attorney fees incurred by Plaintiff in pursuit of its claims in an amount to be proven at the time of trial.

**WHEREFORE PREMISES CONSIDERED**, THE ELIJAH GROUP, INC., prays that upon final hearing, the Court enter judgment for Plaintiff and against the City:

a.    declaring that the denial of the Zoning Application was arbitrary, capricious, and an abuse of the City's municipal discretion;

b.    declaring that the City has violated the provisions of the RLUIPA and the Texas Religious Freedom Reformation Act by discriminating against the Plaintiff as a religious institution, imposing a substantial burden upon Plaintiff, and unreasonably limiting religious assemblies and institutions within its jurisdiction;

c.    declaring that the City Zoning Code on its face and as applied to Plaintiff and the denial of the Zoning Application violated the Church's constitutional rights under the Religious Land Use and Institutionalized Person Act of 2000 and the Texas Religious Freedom Restoration Act and Plaintiff's right to free exercise of religion, free speech, and equal protection;

d.    declaring that the Zoning Application should have been granted and the Plaintiff is entitled to purchase the Property and conduct religious worship and education as intended;

e.    enjoining the City from enforcing the City Zoning Code to deny the Plaintiff's intended use of the Property as a church and school and ordering the City to issue all appropriate permits to occupy and use the property as a church and school;

f.    granting judgment for Plaintiff against Defendant and awarding its actual damages to be determined at trial;

g.    awarding the Church its reasonable and necessary attorney fees and costs in this action;

h.    awarding pre-judgment and post-judgment interest; and

i.    awarding all other appropriate relief as the Court deems just and proper, both in equity and at law.

STUMPF FARRIMOND, P.C.
112 E. Pecan Street, Suite 700
San Antonio, Texas 78205
Telephone 210.231.0919
Facsimile 210.231.0004

By _____
    Daniel P. Whitworth
    State Bar No. 24008275
    Roger G. Bresnahan
    State Bar No. 02959460
    John G. George
    State Bar No. 24051944

ATTORNEYS FOR PLAINTIFF,
THE ELIJAH GROUP

## CERTIFICATE OF SERVICE

I, Daniel P. Whitworth, on this the 9th day of March, 2009, certify that pursuant to Rule 5 of the Federal Rules of Civil Procedure, a true and correct copy of the forgoing document was served on the following Counsel of Record:

Mr. Ryan S. Henry
DENTON, NAVARRO, ROCHA & BERNAL
A Professional Corporation
2517 North Main Avenue
San Antonio, Texas 78212
Telephone 210.227.3243
Facsimile 210.225.4481

_____
Daniel P. Whitworth

–26–