B.        GENERAL PROVISIONS.

1.        Off-street parking facilities shall be provided on the lot or tract occupied by the main use, or upon a lot or tract of land dedicated to parking use by an instrument filed for record, provided that such arrangement is in accordance with the schedule of allowable uses in the district in which it is located. Such parking facility shall be located within 300 feet of the main use to be served, measured in a straight line without regard to intervening structures.

2.        In determining the required number of off-street parking and loading spaces, fractional spaces shall be counted to the nearest whole space.

3.        No parking space located on a public street or alley may be included in the calculation of the required off-street parking requirements.

4.        Floor area of a structure devoted to off-street parking of vehicles shall be excluded in computing the floor area for off-street parking requirements.

C.        REQUIREMENTS.

1.        VEHICLE STORAGE AND DISPLAY
(a)        Off-street parking areas shall be used for passenger vehicles only, and in no case shall such areas be used for sales, repair, storage, display, dismantling or servicing of any vehicles, equipment, materials, or supplies.

(b)        Any area utilized for the storage of vehicles in connection with a motor vehicle repair establishment shall be screened from the view of any adjacent public street in accordance with the provisions set forth in Chapter 14 "LOTS, YARDS AND FENCES" of this Code.

2.        COMBINATION OF USES

(a)        Where a lot or tract of land is used for a combination of uses, the off-street parking requirements shall be the composite or sum of the requirements for each type of use.

(b)        Parking spaces used for the parking of trucks or buses shall not be counted toward meeting the off-street parking requirements for the particular use.

117

3.     TRASH RECEPTACLES

All driveways to trash receptacles shall be designed to accommodate the weight of a standard sanitation truck. Lifting pads shall be provided in front of each trash receptacle location to accommodate the front wheels of the sanitation truck. Access to the trash receptacle and lift pad shall be in a "straight in" manner, or other manner as approved by the Zoning Administrator or his designate. Trash receptacles shall not be located directly beneath any overhead utility line nor directly abut residential areas.

4.     PARKING     BEHIND     RETAIL     AND COMMERCIAL STRUCTURES

Not more than twenty (20) percent of the total off-street parking for any retail or commercial use shall be located within the designated rear yard of such use or behind any and all buildings or structures occupied by a retail or commercial use where:

(a)     The depth of the site occupied by such retail or commercial use is less than 500 feet;

(b)     The main point of public entry and exit into the building, lease space or tenant spaces does not face upon nor directly access the designated rear yard or any areas behind a building; or,

(c)     The designated rear yard or areas behind such building does not abut a street.

5.     PARKING ANALYSIS

As defined for the purpose of this section, where a parking analysis is requested, the following shall be considered necessary to constitute such analysis:

(a)     Summary of the characteristics which are unique to such use or uses that warrant special determination;

(b)     Analysis of the arrival and departure frequency for such use or uses;

(c)     Analysis of the anticipated hours of operation of such use or uses;

(d)     Summary of peak parking demand for such use or uses;

118

Chapter 30 - ZONING
City of Leon Valley

(e)    Total square footage of floor area of such use or uses;

(f)    Employment, customer or congregation characteristics of such use or uses, whichever is applicable; and

(g)    Miscellaneous pertinent information as may be applicable to the request or as may be requested by staff, as appropriate to the specific item under consideration.

6.    HANDICAP PARKING

(a)    In the R-3, R-3A, R-4, R-5, O-1, B-1, B-2, B-3, and I-1 zones, any property owner or person who controls property used for parking will designate and mark, according to the provisions of federal and state law (SEE the Texas Accessibility Standards (TAS)), at least the minimum as required by said law for the exclusive use of vehicles transporting temporarily or permanently disabled persons.

(b)    Such parking space(s) shall be clearly marked by applied, installed and maintained in accordance with applicable federal and state laws.

(c)    Such parking space(s) stall dimensions shall be provided and designed in accordance with all applicable state and federal standards.

**30.900    LANDSCAPING**

a.    GENERAL PROVISIONS.

It is the intent of this section:

(1) to recognize the particular characteristics, qualities and beauty of the natural environment of Leon Valley;

(2) to establish specific standards for the installation and maintenance of landscaping and buffering elements and other means of site improvement on developed property; and

(3) to enhance the community's ecological, environmental, and aesthetic qualities for the preservation of these unique features.

DEF LEON VALLEY 00132

(4) to promote xeriscape concepts and practices in order to conserve valuable water resources.

b.    FINDINGS.

The City Council of the City of Leon Valley finds that the peculiar characteristics, qualities and natural beauty of the City justify the following regulations to perpetuate the aesthetic appeal of Leon Valley on a City-wide basis.

c.    OBJECTIVES.

The objectives of the Landscape Chapter include:

(1)    Improvement in the appearance of certain setback and yard areas in the City, including off-street vehicular parking and open-lot sales and service areas;

(2)    Protection and preservation of the appearance, character and value of the surrounding properties and neighborhoods, thereby promoting the general welfare by providing for the installation and maintenance of landscaping for screening and aesthetic purposes;

(3)    Reduction of the negative effects of increases in air temperature, glare, noise, erosion and sedimentation caused by expanses of impervious, non-vegetated surfaces within the urban environment;

(4)    Provision of visual buffering between land uses of different character;

(5)    Preservation and improvement of the natural and urban environment by recognizing that the use of landscaping elements can contribute to the process of air purification, oxygen regeneration, groundwater recharge, abatement of noise, glare and heat, and enhance the aesthetic qualities of the City;

(6)    Preservation of existing native and naturalized plants and incorporate them into landscape design; and

(7)    Promotion of water conservation through use of landscape design, soil preparation, species selection and management, appropriate to local climate.

d.    MINIMUM STANDARD AND APPLICABILITY.

(1)    Regulations shall be a minimum standard, and shall apply to the entire incorporated area of Leon Valley, Texas. A minimum percentage of the

total area of the lot upon which development, construction or reconstruction occurs for any use after the effective date of this ordinance shall be devoted to landscaping in accordance with the provisions contained herein.

      (2)    This section shall apply to any new development or to the expansion of existing development within the City, unless specifically exempted. Split ownership, planning or construction in phases, or multiple building permits for a project shall not prevent it from complying with these requirements.

      (3)    Projects which are expansions of existing development shall provide landscaping based upon the ratio of the area of the expansion to the area of the existing development. Projects for which building permits total fifty (50) percent or more of the appraised value of the existing improvements shall comply with all landscaping requirements.

      (4)    This section shall become applicable to a lot with existing improvements when an application is made for a building permit for construction work that:

      A.    Increases the combined floor areas of all buildings on a lot by more than twenty-five (25) percent or 5,000 square feet, whichever is less; or

      B.    Increases the impermeable coverage on a lot by more than 2,000 square feet.

      (5)    When this section becomes applicable to a lot, its requirements are binding on all current and subsequent owners of the lot.

      e.    CONFORMANCE.

      No building and/or occupancy permits shall be issued unless and until such issuance conforms to the requirements set forth in the landscaping requirements, Section 30.900.

      f.    LANDSCAPING REQUIREMENTS.

      (1)    A buffering landscaped area shall be provided along all dedicated streets and highways. This area shall be a minimum of six (6) feet from the property line to any vehicular paving and/or building line.

      (2)    Areas of a lot, land parcel or building site devoted to and consisting of plant material, including but not limited to turf grasses, grasses-bunch, trees, shrub forms, flowers, vines and other ground cover, native plant materials, planters, brick pavers, stone, natural forms, water forms, public art forms, stone aggregate and other

landscape features, but excluding smooth concrete, asphalt or paving for vehicular traffic; provided that the use of brick, stone aggregate or other inorganic materials shall not be greater in total area than that of organic plant material, and further provided that turf/grass shall not qualify to meet the landscaping requirements where they exceed forty (40) percent of the total landscape area.

(3)    Landscaping shall consist of any of the following, or combination thereof: material such as, but not limited to, grass, ground covers, shrubs, vines, hedges, trees, or palms; and non-living durable material commonly used in landscaping, such as, but not limited to, rocks, pebbles, sand, walls or fences-but excluding paving.  Consideration shall be given toward choosing drought tolerant plant cover.

(4)    An overall percentage of the street yard area, see "Appendix A," within the property line shall be landscaped according to the use of the property and not necessarily the zoning of the property, as follows:

A. R-1 Single-Family, R-2 Two-Family, R-3 Multiple-Family, R-3A Multiple-Family Retirement, R-4 Townhouse, and R-6 Garden Home projects —thirty-five percent (35%).

B. Building(s) for which sixty percent (60%) or more of the available interior space is used or proposed to be used for office—twenty percent (20%).

C. All other retail and commercial uses, including all uses allowed in the B-1, B-2, or B-3 zoning districts in the City--fifteen percent (15%).

D. Light Industrial, I-1 -- twelve percent (12%).

E.    The landscaping requirements of this Chapter shall apply to governmental, educational, institutional uses and churches.  Where such uses are located in any residential district, not less than thirty-five percent (35%) of the total area of the lot upon which such use occurs shall be devoted to landscaping.  Where a governmental, educational, institutional use or church, is located in any nonresidential district, the landscaping requirements of such district shall apply.

F.    If a project consists of more than one (1) building (use) type the percentage of landscaped area should be that derived by prorating the linear street frontage used by each particular building type.

(5)    In all street yard areas there shall be a minimum number of trees, depending on the size of the total street yard area.  This minimum number of trees should be:

A.    one (1) tree for each 1,500 square feet of the first 9,000 square feet of street yard area.

B.    one (1) tree for each 3,000 square feet of the portion of street yard area between 9,000 square feet and 90,000 square feet.

C.    one (1) tree for each 6,000 square feet of the portion of street yard area over 90,000 feet.

(6)    To encourage the preservation of existing large trees and planting of large new trees, a credit can be used toward either the total number of trees required by subsection (5) above or toward the amount of landscaped area required by subsection (4) above.

A.    Each tree over four (4) inches in diameter can count as two (2) trees or the required landscaped area may be reduced by fifty (50) square feet.  Each tree over eight (8) inches in diameter may count as three (3) trees or the required landscaped area may be reduced by 100 square feet.  Each tree over twelve (12) inches in diameter may count as four (4) trees or the required landscaped area may be reduced by 150 square feet.  Tree diameter shall be measured at a main trunk height of twelve (12) inches or more above ground level.

B.    This credit is given only for trees of a variety listed in Appendix B or as recognized by Bexar County Extension Service as native or drought tolerant, excluding oak trees, except that the Building Official may in special circumstances, allow the credit on tree varieties other than those named.

(7)    Vehicular use areas, parking areas, parking lots, and the vehicles associated with them shall have effective buffering from the street view.  The following requirements are set forth as minimum standards for vehicular use areas, parking areas, and parking lots and are intended to be applied in conjunction with the landscaping requirements for street yard areas.  For example, the landscaping of a parking area may be applied to meet the minimum requirements for landscaping in the street yard area, and vice versa.  However, the landscaping requirements for vehicular use areas, parking areas and parking lots applies regardless of whether or not they are located in a street yard area.

A.    A minimum amount of the total area in islands, peninsulas and medians in parking areas in the street yard area of a vehicular use area, parking area or parking lot shall be ninety (90) square feet for each twelve (12) parking spaces.

DEF LEON VALLEY 00136



      B.     The minimum total area in such islands, peninsulas, and medians in the remainder of the lot (i.e. the non-street yard area) shall be sixty (60) square feet for each twelve (12) parking spaces therein.

      C.     The number, size, and shape of islands, peninsulas and medians in both street yards and non-street yards shall be at the discretion of the owner. However, no parking space shall be located further than fifty (50) feet from a permeable landscaped island, peninsula, or median and a tree. All islands, peninsulas and medians required in the areas stated above, shall be more or less evenly distributed throughout such parking areas. Distribution should also accommodate existing trees and other natural features so long as the total area requirement is satisfied.

      D.     All areas used for the display or parking of any and all types of vehicles shall conform to minimum landscape requirements hereinafter provided. This includes parking lots, parking areas designed and used for parking of automobiles, trailers and other vehicles intended to be sold. Included are parking areas used or intended to be used for boats or heavy construction equipment, whether such vehicles, boats or equipment are self-propelled or not. All land upon which vehicles traverse the property as a function of the primary use, hereinafter referred to as "other vehicular uses", including, but not limited to, activities of a drive-in nature such as, but not limited to, gasoline service stations, grocery stores, convenience stores, banks, office buildings, restaurants, etc., shall conform to the minimum landscaping requirements hereinafter provided.

      E.     All street yard areas shall conform to the minimum landscaping requirements.

      (8)     All required landscaping shall be irrigated by one of the following methods:

      A.     An underground sprinkling system permitted by the City;

      B.     A hose attachment within 100 feet of all landscaping, provided however, a hose attachment within 200 feet of all landscaping in non-street yards shall be sufficient; or,

      C.     Directing drainage from paved areas across landscaped areas, provided that the same is accomplished in a manner not likely to result in erosion and subject to review by the City Engineer.

      (9)     All landscaping which is in required landscaped areas and which is adjacent to pavement shall be protected with concrete curbs or equivalent barriers (such as concrete car bumpers, railroad ties, continuous border plants or

hedgerows) when necessary to protect trees.

(10)    When an access way intersects a public right-of-way, or when the subject property abuts the intersection of two (2) or more public rights-of-way, all landscaping within the triangular areas described below shall provide unobstructed cross-visibility at a level between three (3) feet and six (6) feet, provided however, trees or palms having limbs and foliage extending into the cross-visibility area shall be allowed, provided they are so located so as not to create a traffic hazard. Landscaping, except required grass or ground cover, shall not be located closer than three (3) feet from the edge of any access way pavement. The triangular areas referred to above are:

A.    the areas of property on both sides of an access way formed by the intersection of each side of the access way and the public right-of-way line with two (2) sides of each triangle being ten (10) feet in length from the point of intersection and the third side being a line connecting the ends of the two (2) other sides; and

B.    the area of property located at a corner formed by the intersection of two (2) or more public rights-of-way with two (2) sides of the triangular area being thirty (30) feet in length along the abutting public right-of-way lines, measured from their point of intersection, and the third side being a line connecting the ends of the other two (2) lines.

(11)    Landowners are encouraged to landscape the areas within the non-paved right-of-way abutting their land, provided the following items are adhered to:

A.    the City may at any time require such landscaping to be removed and the City shall not be responsible or liable in the event any landscaping in the right-of-way must be removed or is requested to be removed by the City.

B.    such landscaping in the right-of-way shall observe all provisions found elsewhere in this Code pertaining to traffic and pedestrian safety; and

C.    if any other governmental jurisdiction is trustee of the public right-of-way at the particular location in question, permission from that governmental jurisdiction must be granted.

DEF LEON VALLEY 00138

g.      ALTERNATIVE COMPLIANCE.

Notwithstanding all of the foregoing provisions of this section, a landscape plan which is alternative to strict compliance with the various landscaping requirements of this section may be approved by the Zoning Administrator if so recommended by the Building Official. The recommendation shall be based on his findings that such plan is as good or better than a plan in strict compliance with the various landscaping requirements of Section 30.405f and meets the provisions of the Alternate Landscaping section of this Chapter. In particular, consideration should be given to preservation of large oak, elm, and pecan trees, which are not necessarily in required landscape areas.

h.      INSTALLATION AND GENERAL MAINTENANCE.

(1)      Landscaping shall be installed according to accepted and proper planting procedures. Irrigation systems shall be installed upon receipt of permit and in accordance with all plumbing code requirements.

(2)      Required landscaping must be maintained in a healthy, growing condition at all times. The property owner is responsible for regular weeding, mowing of grass, irrigating, fertilizing, pruning, and other maintenance of all plantings as necessary. Any plant that dies shall be replaced with another living plant. A minimum of ninety (90) days shall be allowed to replace a plant; however, the time period may be extended due to climatic conditions, upon request. Replacement plants must be the same size and species as shown on the approved landscape plan or must be equivalent in terms of quality and size.

(3)      Any damage to utility lines resulting from the negligence of the property owner, or his agents, in the installation and maintenance of required landscaping in a utility easement is the responsibility of the property owner.

i.      PLAN REVIEW PROCEDURES

(1)      LANDSCAPING PLAN REQUIRED.

When an application is made for a Building Permit, including a Certificate of Occupancy, on any land, lot or parcel where the landscaping requirements of this Chapter are applicable, such Building Permit application shall be accompanied by a landscaping site plan containing the information requested below:

A.      A landscaping plan demonstrating compliance with the provisions of this section shall be submitted to the Zoning Administrator, or his designate, for approval.

B.    Such plan shall be prepared and submitted in a manner as prescribed by the City. The plan shall clearly delineate and identify any existing and proposed landscape development to be used to satisfy the requirements of, and include the calculations performed relative to the required landscaping schedule.

C.    The use of drought-tolerant plant materials is recommended to satisfy the requirements of this section. Appendix B, contained within this Chapter, should be considered as a reference list of plant material suitable for the climate of this area. This list is not exhaustive, and any plant material not listed therein may be used so long as it satisfies the requirements of this section.

(2)    PLAN CONTENTS.

A.    Two (2) blue or black line copies of the landscape plan are required. The plan must be drawn at a scale of one (1) inch equals twenty (20) feet or larger and be on a standard drawing sheet of a size not to exceed 24x36 inches. A plan which cannot be drawn in its entirety on a 24x36 inch sheet must be drawn with appropriate match lines on two (2) or more sheets.

B.    The landscaping plan shall include the following information:

1.    The date, scale, north arrow, project name, legal description, street address, name, telephone number of owner of the lot or lots shown on the landscaping site plan, and the name and telephone number of the person preparing the plan;

2.    The location of existing (or proposed if applicable) lot boundary lines and dimensions of the tract, zoning classification of the lot and all adjacent properties;

3.    The approximate center line of existing water courses, the approximate location of significant drainage features; and the location and size of existing and proposed streets and alleys; existing and proposed utility easements on or adjacent to the lot; and existing and proposed sidewalks adjacent to the street;

4.    The location, size, and type (tree, shrub, ground cover, or grass) of proposed landscaping in proposed landscaped areas; and the location and size of proposed landscaped areas. Description of plant materials shown on the plan (including both common and botanical names), locations, quantities, container or caliper sizes at installation, heights, spread and spacing. The location, type, and caliper of existing trees for which tree credits are claimed must also be indicated;

5.    The location and species of all existing trees (whether or not they are to remain or are proposed to be moved), which are located

in the street yard areas and parking lots and have trunks eight (8) inches or larger in diameter, and the approximate size of their crowns;

6.    Location, dimensions and size (in square feet) of all existing and proposing parking spaces, driveways, and other vehicle use areas;

7.    Designation/description of areas of nonliving ground cover which are not intended as mulches;

8.    Description of how existing, healthy trees proposed to be retained will be protected from damage during construction;

9.    Description of proposed irrigation methods, as required by subsection 30.405f(8), to include the location of sprinklers and water outlets;

10.    The certification of a landscape architect, registered to practice in the State of Texas, that the plans satisfy applicable subsections of the Landscaping section, the Building Code, and meet or exceed appropriate standards for landscape architectural design and construction.  In some cases, the requirement for landscape architectural certification can be waived by the Zoning Administrator;

11.    Information necessary for verifying whether the required minimum percent of landscaped area has been met as required by this Chapter's landscaping requirements; and

12.    Such other information that may be required by the City that is reasonable and necessary to determine that the plan meets the requirements of this section.

(3)    APPROVAL AND INSPECTION.

A.    Upon submission, each landscape plan shall be reviewed by the Zoning Administrator, or his designate, to determine whether or not it complies with the requirements of this section.  The plan must be approved prior to issuance of any Building Permit.

B.    The City may deny without further processing, any landscape plan which does not contain the required information.  The applicant may be allowed to amend the plan and resubmit in order to complete processing.

C.    It shall be the duty of the Zoning Administrator, or his designate, to review landscape plans, in the format as stated above, before the issuance of any Building Permit.  Furthermore, staff shall be required to perform on-site inspections prior to the issuance of any occupancy permits. Temporary occupancy permits may be issued prior to compliance with this Chapter, but said temporary permits are not to

128

exceed ninety (90) days, unless under Section D, below. No permanent occupancy permits shall be issued unless and until the requirements of this Code shall have been met.

D.     The Zoning Administrator may, upon approval of a landscape plan, issue consecutive temporary occupancy permits for periods not to exceed ninety (90) days, if under Chapter 29 of the Leon Valley Code, any Stage of the Drought Management Plan has been declared. Such permits shall not continue, however, past ninety (90) days from the time Stage I of that plan is rescinded, unless during that ninety (90) days a Drought Stage is again declared.

(4)     COMPLIANCE.

Failure to comply with this section shall prevent the issuance of any Building Permits and/or permanent occupancy permits.

(5)     EXCEPTIONS.

The requirements of this Chapter shall not apply to the following:

A.     Areas used for parking or other vehicular uses under, on, or within buildings;

B.     Parking areas serving single- and two-family residential uses;

C.     Building and/or occupancy permits for remodeling, as long as front and side exterior walls of the building remain in the same location, to include lease space finish-outs;

D.     Building and/or occupancy permits for the substantial restoration, within a period of twelve (12) months, of a building which has been damaged by fire, explosion, flood, tornado, riot, act of the public enemy, or accident of any kind; or,

E.     Where a valid Building Permit is issued prior to the effective date of this Chapter, the landscaping requirements in effect at the time of issuance, including all requirements of an applicable Specific Use Permit, shall apply to such permit.

(6)     FEES.

Fees may be set for certain landscape site plan review(s) and inspection(s) prior to the City's review of a landscape site plan.

DEF LEON VALLEY 00142

## 30.1000    TRAFFIC IMPACT ANALYSIS

### a.    TRAFFIC AND ENGINEERING SURVEY

Whenever the City Engineer determines there is a necessity for the erection, removal or change of any traffic-control device or regulation, such determination shall be based upon a traffic and engineering survey conducted upon the following standards:

(1)    The public welfare, including safety and traffic factors to insure the safe and expeditious flow of traffic.

(2)    The development of the property surrounding the proposed area.

(3)    The requirements of vehicular traffic in the proposed area.

(4)    The amount of pedestrian and vehicular traffic in the proposed area.

### b.    TRAFFIC IMPACT ANALYSIS  REQUIRED.

(1)    A Traffic Impact Analysis shall be performed by the property owner (or its agent) according to the format established in this section, as follows:

A.    When a use or change to property occurs that generates 100 Peak Hour Trips (PHT) or less, the property owner (or its agent) will be required to provide a completed City of Leon Valley PHT generation form certifying that the activities to be conducted on the property will generate 100 PHT or less. No Traffic Impact Analysis will be required for activities generating 100 PHT or less.

B.    When a use or change to property occurs that generates 101 PHT to 500 PHT, the property owner (or its agent) shall perform and submit to the City a Traffic Impact Analysis under the Level 1 format specified in this section. This Traffic Impact Analysis must be signed and sealed by a professional engineer, registered to practice in Texas.

C.    When a use or change to property occurs that generates 501 PHT to 1000 PHT, the property owner (or its agent) shall perform and submit to the City a Traffic Impact Analysis under the Level 2 format specified in this section. This Traffic Impact Analysis must be signed and sealed by a professional

130

engineer, registered to practice in Texas.

D.    When a use or change to property occurs that generates more than 1000 PHT, the property owner (or its agent) shall perform and submit to the City a Traffic Impact Analysis under the Level 3 format specified in this section. This Traffic Impact Analysis must be signed and sealed by a professional engineer, registered to practice in Texas.

c.    TRAFFIC IMPACT ANALYSIS FORMAT

The information below shall be provided in the following format::

(1)    Level 1 Traffic Impact Analysis Format.  A Level I Traffic Impact Analysis, when required, shall consist of:

A.    Traffic Analysis Map

1.    Site and Study Area Boundaries, as defined (provide map).

2.    Existing and Proposed Site Uses.

B.    Peak Hour Trip Generation

1.    The estimates of Peak Hour Trips generated by the development and the percentage distribution of such trips from each site exit.

(2)    Level 2 Traffic Impact Analysis Format. A Level 2 Traffic Impact Analysis, when required, shall consist of:

A.    Traffic Analysis Map

1.    Site and Study Area Boundaries, as defined (provide map).

2.    Existing and Proposed Site Uses.

3.    Existing and Proposed Land Uses on both sides of boundary streets within the study area (provide map).

B.    Trip Generation and Design Hour Volumes (provide table).

      1.  A trip generation summary table listing each type of land use, the building size assumed, the average trip generation rates used (total daily traffic and a.m./p.m. peaks), and the resultant total trip generated should be provided.

     C.  Trip Distribution (provide figure by Site Exit)

      1.  The estimates of percentage distribution of trips by turning movements from the proposed developments.

     D.  Conclusions.

    (3)  Level 3 Traffic Impact Analysis Format. A Level 3 Traffic Impact Analysis, when required, shall consist of:

     A.  Traffic Analysis Map

      1.  Land Use, Site and Study Area Boundaries, as defined (provide map).

      2.  Existing and Proposed Site Uses.

      3.  Existing and Proposed Land Uses on both sides of boundary streets for all parcels within the study area (provide map).

      4.  Existing and Proposed Roadways and Intersections of boundary streets within study area of the subject property, including traffic conditions (provide map).

     B.  Trip Generation and Design Hour Volumes (provide table).

      1.  A trip generation summary table listing each type of land use, the building size assumed, the average trip generation rates used (total daily traffic and a.m./p.m. peaks), and the resultant total trip generated should be provided.

DEF LEON VALLEY 00145

C. Trip Distribution (provide figure by Site Exit).

    1.    The estimates of percentage distribution of trips by turning movements from the proposed development.

    D.    Trip Assignment (provide figure by site entrance and boundary street)

    1.    The direction of approach of site attracted traffic via the area's street system.

    E.    Existing and projected Traffic Volumes (provide figure for each item)

    1.    The near-term impacts of the proposed development on the street system (as planned according to Street presumptions) are intended to reveal expected impacts of the development when it is ready for Occupancy.

    (a)    A.M. Peak hour site traffic (including turning movements).

    (b)    P.M. Peak hour site traffic (including turning movements).

    (c)    A.M. Peak hour total traffic including site generated traffic and Projected Traffic.

    (d)    P.M. Peak hour total traffic including site generated traffic and Projected Traffic.

    (e)    Any other peak hour necessary for complete analysis.

    (f)    Total daily existing traffic for street system in study area.

    (g)    Total daily existing traffic for street system in study area and new site traffic.

    (h)    Total daily existing traffic for street system in study area plus new site traffic and projected traffic from build-out of study area land uses.

DEF LEON VALLEY 00146

F.    Capacity Analysis (provided Analysis Sheets in Appendices)

1.    A capacity analysis should be conducted for all public street intersections within the Study Area significantly impacted by the proposed development and for all private property access points to streets adjacent to the proposed developments within the limit of the previously defined study area.

G.    Conclusions

## 30.2000    NON-SPECIFIED USES

### 30.2001    DEFINITION

A Non-Specified Use is a use which, according to the Zoning Administrator, does not fall into the categorization of zoning districts as listed in "Permitted Use Table" above and does not conform to the intent of the district description and purpose in which it is intended to be located.

### 30.2002    EFFECT OF PROVISION

The provision for Non-Specified Use is intended to provide individuals with an administrative procedure:

a.    to propose new use(s) to be included in one (1) or more of the various zoning districts;

b.    to propose that certain use(s) be allowed in a zoning district other than the district(s) in which said use or uses is now allowed; and

c.    to propose the addition or deletion of Specific Use Permit requirements for a particular use in a particular zoning district.

### 30.2003    HEARINGS

A Non-Specified Use may be categorized by the Leon Valley Zoning Commission, with Commission's categorization being approved by City Council, after application and public hearing as set out in the Specific Use Permits section of this Chapter.

134

**30.3000     SPECIFIC USE PERMITS**

**30.3001     PURPOSE AND GENERAL PROVISIONS**

a.     PUBLIC HEARINGS.

The City Council may, after public hearing and proper notice to all parties affected, and after recommendation from the Leon Valley Zoning and Land Use Commission containing such requirements and safeguards as are necessary to protect adjoining property, issue Specific Use Permits for the uses specified in Section 30.700 and Section 30.701.

b.     PURPOSE OF HEARINGS.

The purpose of such hearing by the City Council shall be to determine that the granting of the Specific Use Permit will not adversely affect the character and appropriate use of the area or substantially depreciate the value of adjacent and nearby properties for the use in accordance with the regulations of the zoning district in which they are located; that it will be in keeping with the spirit and intent of this Chapter; that it will not adversely affect the implementation of the approved Master Plan; that it will comply with applicable standards of the district in which it is proposed to be located; and that it will not adversely affect traffic, public health, public utilities, public safety, and the general welfare of the City.

c.     APPLICATIONS.

All applications for Specific Use Permits shall be submitted to the Zoning Administrator, along with site plans drawn to scale and showing the general arrangement of the project, together with the locations of the buildings and proposed uses to be permitted; the means of ingress and egress to public streets; the type of visual screening including fencing to be installed, if necessary; the types, locations and design of proposed landscaping; and the location and existing ownership of all existing buildings within 200 feet of the property, along with the existing, surrounding zoning classifications of same.   The administrative officer will then set a hearing date within a reasonable time, comply with the pertinent notice requirements according to state law and as otherwise resolved by the City Council, and submit the application and all supporting documentation to the Zoning and Land Use Commission for its review and action, and likewise to City Council in its turn.

d.     CONDITIONS.

No Specific Use Permit shall be granted unless the applicant, owner, and grantee of the Specific Use Permit shall accept, agree to be bound by, and comply with the terms of the Specific Use Permit in writing and in such form as may be approved or provided by the Zoning Administrator.

DEF LEON VALLEY 00148

e.      TIME LIMIT.

A Building Permit shall be applied for, and designated work begun, within one (1) year from the time of the granting of the Specific Use Permit. The City Council may authorize an extension of this time limit upon application by the owner prior to the expiration date of the time limit in effect. The fee for such application shall be as prescribed by ordinance for Specific Use Permit hearing before the City Council.

## 30.3002      EXCEPTIONS

a. Where the proposed new construction of free-standing buildings, multi-tenant office buildings, shopping centers, trade centers, office/warehouses or industrial parks abut any residential zoning district, a Specific Use Permit must be obtained prior to the issuance of a building permit.

b. Land uses listed in the Permitted Use Table as requiring a Specific Use Permit shall be required to obtain a Specific Use Permit prior to issuance of a Certificate of Occupancy, except as set out below:

(1)    A use which does not significantly alter an existing use by:

A.      Adding to the value of an existing building, or group of buildings operated as a unit and for the same general purpose, by more than fifty (50) percent.

B.      Adding to the floor space of an existing building, or group of buildings operated as a unit and for the same general purpose, by more than thirty (30) percent.

(2)    The owner(s) of free-standing buildings, multi-tenant office buildings, shopping centers, trade centers, office/warehouses or industrial parks may apply for a Continuous Specific Use Permit when it is anticipated that certain tenant uses listed in Section 30.700 or Section 30.701, are going to require repeated application for Specific Use Permit.

(3)    Granting of the Continuous Specific Use Permit shall have the effect of exempting that use from the regular requirements of this Chapter, so that use permits may be allowed throughout the entire free-standing building, multi-tenant office building, shopping center, trade center, office/warehouse or industrial park without individual Specific Use Permits.

136

### 30.3003    CONTINUOUS SPECIFIC USE PERMIT

a.    Application for a Continuous Specific Use Permit can be made for any use item listed in Sections 30.700, Permitted Use Table, and 30.701. Each use for which a Continuous Specific Use Permit is sought shall be a separate and distinct application, with separate public hearings held, public notices given, and fees charged.

b.    Denial of a Continuous Specific Use Permit does not prevent application for a Specific Use Permit in the same multi-tenant office building, shopping center, trade center, office/warehouse or industrial park, for the same use.

d.    A Continuous Specific Use Permit may be rescinded for the next tenant if the conditions under which the Continuous Specific Use Permit was granted are substantially changed.

e.    Application for a Continuous Specific Use Permit shall be made by the owner(s) of the free-standing building, multi-tenant office building, shopping center, trade center, office/warehouse or industrial park.

### 30.3004    SPECIFIC USE PERMIT CONSIDERED AMENDMENT

Every Specific Use Permit granted under the provisions of this Chapter shall be considered as an amendment to the Zoning Ordinance as applicable to such property. In granting such permit, the City Council may impose conditions which shall be complied with by the grantee before a Certificate of Occupancy may be issued by the administrative officer for the use of the building(s) on such property pursuant to said permit; and such conditions shall not be construed as conditions precedent to the granting of such permit, or the change in zoning of such property, but shall be construed as conditions precedent to the granting of the Certificate of Occupancy.

### 30.4000    ORGANIZATION AND ENFORCEMENT

### 30.4001    GENERAL STATUTES, ORDINANCES AND RULES APPLYING TO THE ZONING AND LAND USE COMMISSION

a.    GOVERNANCE.

The Zoning and Land Use Commission, hereinafter referred to as "the Commission", shall be governed by all the following statutes, ordinances and rules:

137

(1)    To the extent that they remain in force and effect, as they are amended, or as they may be added to, the Commission and its members, alternates and officers shall be governed by state statutes and local ordinances, including, but not limited to the following:

A.    State statutes applying generally to public boards, members, and officials, including, but not limited to all subsections of V.A.C.S., Article 1011 and the Texas Local Government Code;

B.    Ordinances and rules of the City generally affecting its local boards and officials, including, but not limited to this Chapter; and

C.    Upon taking office, all Commission members and alternates shall familiarize themselves with the foregoing, and, while in office, shall maintain such knowledge, including knowledge of amendments and additions, and shall be strictly governed thereby in the conduct of Commission affairs.

b.    DUTIES OF THE COMMISSION.

The duties of the Commission are as follows:

(1)    To recommend the boundaries of original zoning districts and appropriate regulations to be enforced therein;

(2)    To hold public hearings and prepare a final report for City Council on recommendations for changes in zoning district boundaries or regulations in zoning districts; and

(3)    To hold public hearings and prepare a final report for the City Council on recommendations for the enforcement of regulations in zoning districts, including Specific Use Permits and Non-Specified Uses as required under this Chapter.

c.    ESTABLISHMENT, COMPOSITION.

(1)    Pursuant to Texas Local Government Code, Section 211.007, the Commission is established consisting of seven (7) regular members and three (3) alternate members.

(2)    The Commission members and alternates must be citizens and residents of the City who meet the same qualifications that are required to obtain a voter registration certificate to vote in the City of Leon Valley municipal elections.

138

d.    LOCATION OF OFFICE.

The official location of the Office of the Commission is:  Leon Valley City Hall, 6400 El Verde Road, Leon Valley, Texas, 78238.

e.    APPOINTMENTS.

(1)    Appointment of Commission members and alternates shall be made by the Mayor of the City and passed and approved by the City Council.  In specifying alternate members, the appointment shall also specify the order in which the alternates are to serve in the absence of a member.

(2)    In the event that any person appointed by the Mayor is not approved by a majority of the City Council or if a vacancy occurs, the Mayor shall make another appointment within forty-five (45) days, subject to approval by a majority of the City Council.

(3)    Alternates for the Commission do not have status as voting members unless directed by the Chairman of the Commission to sit as a voting member due to the absence or nonvoting status of a member.  This provision is not intended to restrict in any way the nonvoting participation of alternates, to the extent allowed by the Chairman.

f.    TERMS OF MEMBERS.

(1)    The term for all Commission members and alternates is two (2) years, beginning on June 1st of every year ending in an even number (0,2,4,6,8).

(2)    The term of all Commission members and alternates expires on May 31st of every year ending in an even number (0,2,4,6,8).

(3)    Any appointment of a Commission member or alternate is only for the remainder of a term, regardless of the point in the term at which the appointment is made.

g.    REGULAR ELECTION OF CHAIRMAN, VICE-CHAIRMAN AND SECOND VICE-CHAIRMAN.

(1)    As the first item of new business at the regular meeting of the Commission in June of all years ending in an even number (0,2,4,6,8), the Commission shall elect a Chairman, Vice-Chairman and Second Vice-Chairman.  If there is no regular meeting, and no special meeting, or if a quorum is lacking at such a meeting prior to July 1st of any year ending in an even number (0,2,4,6,8), City Council may appoint a Chairman and a Vice-Chairman to serve until a meeting occurs at which an election can be held.

DEF LEON VALLEY 00152

(2)     The former Chairman, Vice-Chairman or Second Vice-Chairman, in that order, and if reappointed to the Commission, may remain in office until their successor(s) take office at the next regular or special meeting following their appointment; unless a replacement is appointed by the City Council.

h.     SUCCESSION OF VICE-CHAIRMAN TO OFFICE OF CHAIRMAN; SPECIAL ELECTION.

If the Chairman resigns his office or is no longer a member of the Commission, the Vice-Chairman shall succeed him in office for the remainder of the term. If the Vice-Chairman resigns his office, is no longer a member of the Commission, or succeeds to the Chairman's Office, the Second Vice-Chairman shall succeed him in office for the remainder of the term. If any of the above do not apply, a special election shall be held at the next meeting of the Commission to select a Chairman, Vice-Chairman and/or Second Vice-Chairman to complete the term, provided that if such meeting precedes the regular election by three (3) months or less, and any duties to be performed by the Vice-Chairman or Second Vice-Chairman can be performed in a satisfactory manner, the Commission may permit the Office of Vice-Chairman or Second Vice-Chairman to remain vacant for that period.

i.     DUTIES OF CHAIRMAN, VICE-CHAIRMAN OR SECOND VICE-CHAIRMAN; APPOINTMENT OF TEMPORARY CHAIRMAN TO PRESIDE AT MEETINGS.

(1)     If present and able, the Chairman shall preside at all meetings and hearings. If the Chairman is absent or unable to preside, the Vice-Chairman shall preside. If the Vice-Chairman is also absent or unable to preside, the Second Vice-Chairman shall preside.

(2)     In accordance with these and other applicable rules, the Chairman or the presiding officer, acting as Chairman, shall decide all points of procedure or order, unless otherwise directed by a majority of the members in attendance, on motion duly made and passed. He shall maintain order and decorum, and to that end may order removal of disorderly or disruptive persons.

(3)     The Chairman or officer presiding in his absence shall determine the absence of any member and direct the seating of alternate(s) in the order determined by the appointment of alternates by the Mayor and City Council.

(4)     The Chairman may delegate duties as he sees fit to any member or alternate. In the case of the absence or the incapacity of the Chairman, the Vice-Chairman shall perform any or all duties of the Chairman, whether or not delegated.

140

(5)    Subject to the rules of this Chapter and further instructions from the Commission, the Chairman shall direct the official business of the Commission, guide the work of City staff as it relates to the affairs of the Commission and exercise general disciplinary power.

(6)    The Chairman may delegate members of the Commission to make personal inspections when necessary for proper consideration of cases, and shall appoint such committees as may be found necessary.

(7)    The Chairman shall report to the Commission on all official transactions which have not otherwise come to the attention of the Commission. The Chairman shall also make or cause to be made, any reports concerning the affairs of the Commission required or requested by the City Council.

j.    CAUSES FOR REMOVAL FROM THE COMMISSION.

Causes for removal of members or alternates of the Commission by the City Council shall include particular malfeasance, misfeasance, or nonfeasance generally, and in particular the following:

(1)    Failure to maintain reasonable familiarity with state statutes and local ordinances and rules affecting the Commission, or failure to be governed thereby, as required in Section 30.4001(D); and/or

(2)    Failure to disclose conflict of interest for purposes of disqualification when a member has personal or monetary interest in the matter involved, or will be directly affected by a decision of the Commission.

k.    RESIGNATION, GENERALLY AND BY ABSENCE.

(1)    When members or alternates of the Commission propose to resign, if reasonably feasible, they shall give notice of their intent to the Chairman, making the date of resignation effective in such a manner as to allow time for appointment of replacement.

(2)    Failure to attend three (3) consecutive regular meetings or three (3) of any seven (7) consecutive meetings without the recorded consent of the Chairman, shall be construed as resignation from the Commission by absence. This provision shall apply to both members and alternates.

l.    VACATION OF OFFICE.

When a member or alternate of the Commission dies or resigns (including resignation by absence), the Chairman shall promptly indicate to the Mayor that a vacancy exists. When a member becomes incapacitated for office permanently, or for what appears to be a protracted period, or moves from the jurisdiction, or becomes for any

141

other reason no longer qualified for office and fails to resign, the Chairman shall cause any necessary investigation to be made. Based on that investigation, the Chairman may declare the office vacant and shall promptly indicate to the Mayor that a vacancy exists.

l.     DUTIES OF LEGAL COUNSEL.

The City Attorney, or his designate, shall provide legal advice to the Commission as to matters under their jurisdiction.

m.     CONDUCT OF MEMBERS OF THE COMMISSION, ALTERNATES AND CITY STAFF.

(1)     No member of the Commission, alternate or City staff member shall represent applicants on matters on which the Commission is to make recommendations.

(2)     Members and alternates of the Commission shall be aware of all state statutes and any City ordinances, rules or regulations related to conflicts of interest and the ethics of public officials generally.

(3)     As soon as any Commission member, alternate or City staff member of any agency serving the Commission becomes aware of any potential conflict of interest in any case to come before the Commission, he shall notify the Chairman or acting Chairman of the particulars. Where the Chairman finds that conflict clearly exists, he shall disqualify the Commission member from acting in the case, shall cause the circumstances of the disqualification to be entered in the record and make arrangements for such alternate services as are required.

(4)     Where the Chairman or acting Chairman has reasonable doubt as to whether the facts and applicable law indicate a degree of conflict justifying disqualification or excuse from service, he shall seek advice from the City Attorney or his designate. If the City Attorney or his designate advises that, under the circumstances reported and applicable law conflict appears to exist, the Chairman shall proceed to disqualify or excuse as provided above. If the City Attorney, or his designate, advises that there is reasonable doubt, the Chairman may either disqualify or excuse the person involved, or call for a determination by the Commission at a public meeting.

(5)     The record on any such determination by the Commission shall be full and complete and shall indicate the reasons supporting the decision.

(6)     A member and/or alternate may seek disqualification from voting whenever any applicant, or his agent, has sought to influence the vote of the member on his request (application), other than in the public hearing.

142

(7)    Members and alternates of the Commission may seek information from other members, the Zoning Administrator, City Attorney or other City staff prior to the public hearing, but no member or alternate shall discuss the case with any other parties thereto prior to the public hearing. Additionally, no member or alternate shall express any bias, prejudice or individual opinion on judgment of the case prior to its hearing and determination. Violation of this rule shall be grounds for dismissal from the Commission.

n.    COMPENSATION.

The compensation and/or reimbursement of expenses of Commission members and alternates is to be specified by ordinance. In the absence of an ordinance specifying compensation and/or reimbursement, there shall be none. The absence of such an ordinance does not preclude payment by the City of certain expenses for memberships, subscriptions, educational seminars, travel and similar expenses as might be required for Commission members and alternates, as authorized by the City Council.

o.    MEETINGS.

(1)    Regular meetings of the Commission shall be held at 7:00 p.m. at the Leon Valley City Hall on the fourth Tuesday of each month, unless designated otherwise by the Commission; provided that such meetings may be held at any other convenient place if directed by the Chairman in advance of the meeting or upon a finding that such other location would serve public convenience or necessity, and subject to the notice provisions as required by law.

(2)    Special meetings for any purpose may be held at the call of the Chairman of the Commission or of any combination of five (4) Commission members and alternate members of the Commission. At least seventy-two (72) hours written notice of the time and place of any special meeting shall be given by the Zoning Administrator except where written waivers of notice are filed by all members required to provide a quorum and in attendance at such regular meeting, but other members shall receive written notice thereof.

(3)    If a special meeting is called on a case or cases subject to notice of hearing, the required notice provisions for the hearing shall be met.

(4)    Any meeting may be recessed or adjourned from day-to-day, or to the time of any previously announced regular or special meeting, and such recess or adjournment to a time and place certain shall not require additional public notice.

143

(5)     If no business is scheduled before the Commission, or if it is apparent that a quorum will not be available, any meeting may be canceled by the Chairman by giving notice to all members at least twenty-four (24) hours before the time set for such meeting.

(6)     A quorum of the Commission shall consist of any combination of members or alternates totaling four (4).

(7)     All meetings of the Commission involving hearing of evidence, decisions, or recommendations on requests shall be public, with formal notice as required by law.

(8)     Meetings for the conduct of other business of the Commission, including activities and reviews as may be assigned by the City Council or required by ordinance, trips for viewing premises, and other similar meetings and activities, shall not require such formal public notice and hearing, but shall be scheduled at least twelve (12) hours in advance, with the schedule posted at the Office of the Commission.

q.     AGENDA, ORDER OF BUSINESS.

The Zoning Administrator shall prepare an agenda for each Commission meeting. The order of business shall be as follows:

(1)     Call to order and roll call, with recording of members present and absent and indications as to whether absences are with consent of the Chairman;

(2)     Action on any previous meeting for which action is required;

(3)     Continued hearings, with consideration and determination on cases as heard;

(4)     New hearings, with consideration and determination on cases as heard;

(5)     Old Business;

(6)     New Business; and

(7)     Adjournment.

v.     MOTIONS.

144

(1)  Any motion by a member shall require a second.  After a motion has been made and duly seconded, discussion of the motion may be held for a reasonable time.  Discussions by members, or by opponents or proponents of a question before the Commission, shall terminate whenever a member shall call a vote upon the question or whenever the Chairman shall so rule.

(2)    A motion which is defeated is not a recommendation.  If a motion is defeated, another motion must be made, seconded, voted upon and approved by a majority of the Commission present and voting.

(3)    If the Commission does not make a recommendation, the failure to make a recommendation within seventy-one (71) days of the assignment of a docket number to a case application shall be considered to be a recommendation of denial.

(4)    Motions to recommend APPROVAL or DENIAL of any change in a ZONING DISTRICT may, when appropriate, contain statements of Commission findings in the following areas:

A.    Consistency and compatibility with the Master Plan;

B.    Consistency and compatibility with surrounding zoning districts;

C.    Consistency and compatibility with site and surrounding uses;

D.    Protection of the health, safety and welfare of the general public; and/or

E.    Protection and preservation of the property rights of the owner(s) of all real property affected by the proposed change in zoning district(s).

(5)    Motions to recommend APPROVAL or DENIAL of any requested NON-SPECIFIED USE PERMIT OR SPECIFIC USE PERMIT may, when appropriate, contain statements of Commission findings in the following areas:

A.    Consistency and compatibility with the Master Plan;

B.    Consistency and compatibility with site zoning;

C.    Consistency and compatibility with surrounding zoning and/or uses;

145

D.    Protection of the health, safety and welfare of the general public; and/or

E.    Protection and preservation of the property rights of the owner(s) of all real property affected by the proposed Specific Use Permit.

(6)    The Zoning Administrator will administer and obtain a roll call vote from the Commission upon the rendering of a motion.

w.    REPORTING.

(1)    The Commission, in making recommendations to City Council on any matter upon which a recommendation is required, may make findings and shall issue a report to the City Council.

(2)    That report to the City Council must include the results of a vote on a motion made and duly seconded, and approved by a majority of the Commission present and voting.

(3)    That report can be delivered to the City Council by the Chairman, member(s) or alternate(s) designated by the Chairman, Zoning Administrator or any other City staff member designated by the Chairman.

x.    ADDITIONAL DUTIES OF THE COMMISSION.

In addition to its advisory zoning powers under established law, the Commission shall be charged with the following duties: to review and update the City's Master Plan and cause to be submitted to the City Council, every four years, no later than October 1st commencing in 1999, a written report pertaining to the status of the Master Plan. Such a report should include any recommendations for change in the laws and policies of the City as they relate to the use of land.

**30.4002    GENERAL STATUTES, ORDINANCES AND RULES APPLYING TO THE BOARD OF ADJUSTMENT**

a.    GOVERNANCE.

The Board of Adjustment, hereinafter referred to as "the Board", shall be governed by all the following statutes, ordinances and rules:

(1)    To the extent that they remain in force and effect, as they are amended, or as they may be added to, the Board and its members, alternates and

146

officers shall be governed by state statutes and local ordinances, including, but not limited to the following:

   A. State statutes applying generally to public boards, members and officials, including, but not limited to, all subsections of V.A.C.S., Article 1011 and the Texas Local Government Code; and

   B. Ordinances and rules of the City of Leon Valley generally affecting its local boards and officials, including, but not limited to this Chapter.

   (2) Upon taking office, all Board members and alternates shall familiarize themselves with the foregoing, and, while in office, shall maintain such knowledge, including knowledge of amendments and additions, and shall be strictly governed thereby in the conduct of Board affairs.

  b. DUTIES OF THE BOARD.

   The Board has three (3) fundamental powers:

   (1) To hear appeals from individuals contesting the decision of a zoning enforcement officer;

   (2) To hear and decide special exceptions to this Chapter; and

   (3) To grant variances to the terms of this Chapter's text where unusual conditions make its literal enforcement unjust.

  c. ESTABLISHMENT, COMPOSITION.

   (1) Pursuant to V.A.C.S., Article 1011g and Section 211.008 of the Texas Local Government Code, the Board is established consisting of five (5) members and four (4) alternates.

   (2) The Board members and alternates must be citizens and residents of the City of Leon Valley who meet the same qualifications that are required to obtain a voter registration certificate to vote in the City of Leon Valley municipal elections.

  d. LOCATION OF OFFICE.

   The official location of the Office of the Board is: Leon Valley City Hall, 6400 El Verde Road, Leon Valley, Texas, 78238.

  e. APPOINTMENTS.

   (1) Appointment of Board members and alternates shall be made by the Mayor of the City of Leon Valley and passed and approved by the City

DEF LEON VALLEY 00160

Council.  In specifying alternate members, the appointment shall also specify the order in which the alternates are to serve in the absence of a member.

(2)    In the event that any person(s) appointed by the Mayor is not approved by a majority of the City Council, or if a vacancy occurs, the Mayor shall make another appointment within forty-five (45) days, subject to approval by a majority of the City Council.

(3)    Alternates for the Board do not have status as voting members unless directed by the Chairman of the Board to sit as a voting member due to the absence or nonvoting status of a member.  This provision is not intended to restrict in any way the nonvoting participation of alternates, to the extent allowed by the Chairman.

f.    TERMS OF MEMBERS.

(1)    The term for all Board members and alternates is two (2) years, beginning on June 1st, of every year ending in an even number (0,2,4,6,8).

(2)    The term of all Board members and alternates expires on May 31st of every year ending in an even number (0,2,4,6,8).

(3)    Any appointment of a Board member or alternate is only for the remainder of a term, regardless of the point in the term at which the appointment is made.

g.    REGULAR ELECTION OF CHAIRMAN, VICE-CHAIRMAN AND SECOND VICE-CHAIRMAN.

(1)    As the first item of new business at the first meeting of the Board following mayoral appointment/reappointment, the Board shall elect a Chairman, Vice-Chairman and Second Vice-Chairman.  If there is no meeting, or if there is not a minimum of four (4) members or alternates present at such a meeting prior to June 15th in such year, City Council may appoint a Chairman and Vice-Chairman to serve until a meeting occurs at which time an election can be held.

(2)    The former Chairman, Vice-Chairman or Second Vice-Chairman, in that order, and if reappointed to the Board, may remain in office until their successor(s) take office at the next meeting following their appointment; unless a replacement is appointed by City Council.

h.    SUCCESSION OF VICE-CHAIRMAN TO OFFICE OF CHAIRMAN; SPECIAL ELECTION.

If the Chairman resigns his office or is no longer a member of the Board, the Vice-Chairman shall succeed him in office for the remainder of the term.  If

DEF LEON VALLEY 00161

the Vice-Chairman resigns his office, is no longer a member of the Board, or succeeds to the Chairman's office, the Second Vice-Chairman shall succeed him in office for the remainder of the term. If any of the above do not apply, a special election shall be held at the next meeting of the Board to select a Chairman, Vice-Chairman and/or Second Vice-Chairman to complete the term, provided that if such meeting precedes the regular election by three (3) months or less, and any duties to be performed by the Vice-Chairman or the Second Vice-Chairman can be performed in a satisfactory manner, the Board may permit the Office of Vice-Chairman or Second Vice-Chairman to remain vacant for that period.

i.    DUTIES OF CHAIRMAN, VICE-CHAIRMAN OR SECOND VICE-CHAIRMAN; APPOINTMENT OF TEMPORARY CHAIRMAN TO PRESIDE AT MEETINGS

(1)    If present and able, the Chairman shall preside at all meetings and hearings. If the Chairman is absent or unable to preside, the Vice-Chairman shall preside. If the Vice-Chairman is also absent or unable to preside, the Second Vice-Chairman shall preside.

(2)    In accordance with these and other applicable rules, the Chairman or presiding officer, acting as Chairman, shall decide all points of procedure or order, unless otherwise directed by a majority of the members in attendance, on motion duly made and passed. He shall maintain order and decorum, and to that end may order removal of disorderly or disruptive persons.

(3)    The Chairman or officer presiding in his absence shall determine the absence of any member and direct the seating of an alternate(s) in the order determined by the appointment of alternates by the Mayor and City Council.

(4)    If oaths are to be administered to a witness in a particular case, that oath shall be administered by the Chairman or officer presiding in his absence. The necessity of administering an oath to a witness shall be determined by the Chairman or the officer presiding in his absence. However, if it is determined an oath shall be administered to a witness in a particular case, then the same oath shall be administered to all witnesses testifying in that particular case.

(5)    The Chairman may delegate duties as he sees fit to any member or alternate. In the case of the absence or the incapacity of the Chairman, the Vice-Chairman shall perform any or all duties of the Chairman, whether or not delegated.

(6)    Subject to the rules of this Chapter and further instructions from the Board, the Chairman shall direct the official business of the Board, guide the work of City staff as it relates to the affairs of the Board and exercise general disciplinary power.

149

(7)    The Chairman may delegate members of the Board to make personal inspections when necessary for proper consideration of cases, and shall appoint such committees as may be found necessary.

(8)    The Chairman shall report to the Board on all official transactions which have not otherwise come to the attention of the Board. The Chairman shall also make or cause to be made, any reports concerning the affairs of the Board required or requested by the City Council.

j.    CAUSES FOR REMOVAL FROM THE BOARD.

Causes for removal of members or alternates of the Board by the City Council shall include particular malfeasance, misfeasance, or nonfeasance generally, and in particular the following:

(1)    Failure to maintain reasonable familiarity with state statutes and local ordinances and rules affecting the Board, or failure to be governed thereby, as required in Section 30.4001; and/or,

(2)    Failure to disclose conflict of interest for purposes of disqualification when a member has personal or monetary interest in the matter involved, or will be directly affected by a decision of the Board.

k.    RESIGNATION, GENERALLY AND BY ABSENCE.

(1)    When members or alternates of the Board propose to resign, if reasonably feasible, they shall give notice of their intent to the Chairman, making the date of resignation effective in such a manner as to allow time for appointment of replacement.

(2)    Failure to attend three (3) consecutive meetings or three (3) of any seven (7) consecutive meetings without the recorded consent of the Chairman, shall be construed as resignation from the Board by absence. This provision shall apply to both members and alternates of the Board.

l.    VACATION OF OFFICE.

When a member or alternate of the Board dies or resigns (including resignation by absence), the Chairman shall promptly indicate to the Mayor that a vacancy exists. When a member becomes incapacitated for office permanently, or for what appears to be a protracted period, or moves from the jurisdiction, or becomes for any other reason no longer qualified for office and fails to resign, the Chairman shall cause any necessary investigation to be made. Based on that investigation, the Chairman may declare the office vacant and shall promptly indicate to the Mayor that a vacancy exists.

DEF LEON VALLEY 00163

m.      FEES AND APPLICATION PROCEDURE.

(1)      FEES.  Shall be as established by ordinance.  Fees are to accompany application for public hearing before the Board of Adjustment.

(2)      APPLICATION.   The applicant may request a public hearing before the Board, for either a request for variance, special exception and/or appeal of Zoning Administrator's decision to this Chapter.

A.      Completed application(s) must be submitted to the Zoning Administrator and all appropriate fees must be paid before a public hearing date will be scheduled with the Board Chairman.

n.      BOARD ADMINISTRATOR.

The Zoning Administrator shall serve as Administrator for the Board.

(1)      The Board Administrator, or his deputies or assistants, shall have the following duties and responsibilities in relation to requests to the Board:

A.      Attend to all correspondence of the Board;

B.      Send out, or cause to be published, all required notices;

C.      Attend all meetings and hearings of the Board;

D.      Scrutinize all matters to ensure compliance with this Chapter and these rules;

E.      Compile all required records;

F.      Maintain the necessary schedules, files, and indexes; and

G.      Generally perform or supervise all clerical work of the Board.

(2)      The Board Administrator shall maintain a docket book or log which shall be kept posted to date.  The docket shall include the case number, name of applicant, location of premises by street number or legal description, nature of the case and the final disposition of the case.  All continuances, postponements, dates of sending notices, other steps taken and acts done should be noted in the docket.

(3)      The Board Administrator shall maintain a minute book which shall be kept posted to date.  In the minute book shall be recorded the proceedings

151

of the Board showing attendance, any disqualifications of members, record of examinations, all other official action and the vote of each member voting on every question. The minutes of the Board shall become official upon majority vote of the Board, and shall be a public record, kept in City Hall offices.

       (4)    The Board Administrator or his authorized deputies or assistants, shall also have the following duties and responsibilities in relation to appeals and applications to the Board:

       A.    Receive all appeals and applications and examine the material submitted therewith to assure that it is complete and that required maps, plans, reports and other materials which are required and are necessary to be submitted are in good order and in sufficient number for processing and recording; and

       B.    See that this material is reviewed by all appropriate City departments and prepare a report and recommendation to be delivered in a timely manner to the Board prior to consideration of the appeal or application.

       o.    DUTIES OF LEGAL COUNSEL.

       The City Attorney, or his designate, shall provide legal advice to the Board as to matters under their jurisdiction. In cases before the Board, the City Attorney, or his designate, may assist the Board in interrogating witnesses.

       p.    CONDUCT OF MEMBERS OF THE BOARD, ALTERNATES AND CITY STAFF.

       (1)    No member of the Board, alternate or City staff member shall represent applicants or appellants on matters on which the Board is to make determinations.

       (2)    Members and alternates of the Board shall be aware of all state statutes and any City ordinances, rules or regulations related to conflicts of interest and the ethics of public officials generally.

       (3)    As soon as any Board member, alternate or City staff member of any agency serving the Board becomes aware of any potential conflict of interest in any case to come before the Board, he shall notify the Chairman or acting Chairman of the particulars. Where the Chairman finds that conflict clearly exists, he shall disqualify the Board member from acting in the case, shall cause the circumstances of the disqualification to be entered in the record and make arrangements for such alternate services as are required.

       (4)    Where the Chairman or acting Chairman has reasonable doubt as to whether the facts and applicable law indicate a degree of conflict justifying

152

disqualification or excuse from service, he shall seek advice from the City Attorney or his designate. If the City Attorney or his designate advises that, under the circumstances reported and applicable law conflict appears to exist, the Chairman shall proceed to disqualify or excuse as provided above. If the City Attorney or his designate advises that there is reasonable doubt, the Chairman may either disqualify or excuse the person involved, or call for a determination by the Board at a public meeting.

(5)    The record on any such determination by the Board shall be full and complete and shall indicate the reasons supporting the decision.

(6)    A member may seek disqualification from voting whenever any applicant, or his agent, has sought to influence the vote of the member on his appeal or application, other than in the public hearing.

(7)    Members and alternates of the Board may seek information from other members, the Board Administrator, City Attorney or other City staff prior to the public hearing, but no member or alternate shall discuss the case with any other parties thereto prior to the public hearing. Additionally, no member or alternate shall express any bias, prejudice or individual opinion on proper judgment of the case prior to its hearing and determination. Violation of this rule shall be grounds for dismissal from the Board.

q.    COMPENSATION.

The compensation and/or reimbursement of expenses of Board members and alternates is to be specified by ordinance. In the absence of an ordinance specifying compensation and/or reimbursement, there shall be none. The absence of such an ordinance does not preclude payment by the City of certain expenses for memberships, subscriptions, educational seminars, travel and similar expenses as might be required for Board members and alternates, as authorized by City Council.

r.    MEETINGS.

(1)    There is no requirement for regular meetings of the Board. All meetings of the Board are to be special meetings to be held at the Leon Valley City Hall, unless designated otherwise by the Board; provided that such meetings may be held at any other convenient place if directed by the Chairman in advance of the meeting or upon a finding that such other location would serve public convenience or necessity, and subject to the notice provisions as required by law.

(2)    Meetings for any purpose may be held at the call of the Chairman of the Board, or of any combination of at least four (4) members and alternates.

(3)    If a meeting is called on a case or cases subject to notice of hearing, the required notice provisions for the hearing shall be met.

153

(4)     Any meeting may be recessed or adjourned from day-to-day, or to the time of any previously announced meeting, and such recess or adjournment to a time and place certain shall not require additional public notice.

(5)     If no business is scheduled before the Board, or if it is apparent that a quorum will not be available, any meeting may be canceled by the Chairman by giving notice to all members at least twenty-four (24) hours before the time set for such meeting.

(6)     All meetings of the Board involving hearing of evidence and/or decisions on appeals or applications shall be public, with formal notice as required by law.

(7)     Meetings for the conduct of other business of the Board, including activities and reviews as may be assigned by the City Council or required by ordinance, trips for viewing premises, and other similar meetings and activities, shall not require such formal public notice and hearing, but shall be scheduled at least twelve (12) hours in advance, with the schedule posted at the Office of the Board.

s.     MINIMUM OF FOUR MEMBERS AT HEARINGS.

The alternate members of the Board shall serve in the absence of one (1) or more regular members when requested by the Chairman of the Board so that all cases heard by the Board will always be heard by a minimum of four (4) members.

t.     SPECIAL EXCEPTIONS.

The Board is hereby empowered to permit the following exceptions provided its action is in harmony with the general purpose and intent of this Chapter and does not injure the health, safety, morals, or the welfare of adjacent property owners or residents:

(1)     Permit the use of a lot or lots in an R-1, R-2, R-3, R-4, R-5, or R-6 district, which lot or lots is adjacent to a commercial or industrial district, even if separated therefrom by an alley or by a street, for the parking of passenger cars under such safeguards and conditions as may be desirable to protect the more restricted adjacent and nearby properties, provided no other business use is made of the lot;

(2)     Grant a permit for the extension of a use into an adjoining district, where such extension would constitute a nonconforming use and where the lot upon which the existing use is situated extends into the adjoining district and is in single-ownership at the time this Chapter is adopted;

154

(3)    Permit the reconstruction of a building occupied by a nonconforming use provided such reconstruction does not prevent the return of such property to a nonconforming use; and

(4)    Determine, in cases of uncertainty, the classification as to district of a use not specifically described in this Chapter, provided, however, that such use shall be in keeping with uses specifically named in the district regulations.

u.    VARIANCE EMPOWERMENT.

The Board is hereby empowered to grant variances to this Chapter where it is not contrary to the public interest and, due to special conditions, literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of this Chapter is observed and substantial justice is done.

v.    LIMITATIONS    ON    SPECIAL    EXCEPTIONS    AND VARIANCES.

Any Special Exception or Variance authorized by the Board shall constitute authority to authorize the issuance of a building permit, special permit or Certificate of Occupancy, as the case may be, if applied for within 180 days from the date of favorable action on the part of the Board, unless the Board authorizes a longer period. If the building permit, special permit or Certificate of Occupancy shall not have been applied for within said 180 day period, or such extended period as the Board may have authorized, then the grant of the Special Exception or Variance shall terminate. Such termination shall be without prejudice to a subsequent application to said Board in accordance with the rules and regulations regarding applications. No application to the Board shall be allowed on the same piece of property prior to the expiration of six (6) months from a ruling of the Board on any application unless other property in the same block or within 500 feet thereof, within such six (6) month period has been altered or changed by a ruling of the Board, in which case such change of circumstances shall permit the allowance of such an application but shall in no way have any force in law to compel the Board, after a hearing, to grant such subsequent application, but such application shall be considered on its merits as in all other cases.

w.    APPEALS EMPOWERMENT.

The Board is hereby empowered to hear appeals from individuals contesting the decision of a zoning enforcement officer. In exercising their powers, the Board may, in conformity with the provisions of this Chapter, reverse or affirm in whole or in part, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as ought to be made, and to that end shall have all the powers of the administrative officer from whom the appeal is taken.

155

x.    APPEAL TO BOARD.

(1)    Any of the following persons may appeal to the Board a decision made by the Zoning Administrator:

A.    A person aggrieved by the decision; or,

B.    Any officer, department, board, or bureau of the municipality affected by the decision.

(2)    The appellant must file with the Board and the official from whom the appeal is taken, a Notice of Appeal specifying the grounds for the appeal. The appeal must be filed within thirty (30) days of notice of the decision which is to be appealed. On receiving the notice, the official from whom the appeal is taken shall immediately transmit to the Board all the papers constituting the record of the action that is appealed.

y.    WHEN APPEALS STAYS ALL PROCEEDINGS.

An appeal stays all proceedings in furtherance of the action appealed from, unless the administrative officer from whom the appeal is taken certifies to the Board after Notice of Appeal shall have been filed with him that by reason of facts stated in the certificate, a stay would, in his opinion, cause immediate peril to life or property. In such case proceedings shall not be stayed otherwise than by a restraining order which may be granted by a court of record on application and notice to the administrative officer from whom the appeal is taken and on due cause shown.

z.    NOTICE OF PUBLIC HEARING BEFORE THE BOARD.

Timing and manner of publication of public notice for such hearings shall be in accordance with any requirements set forth herein and by state statute. In addition, at least ten (10) days in advance of the hearing, notice shall be given to parties in interest and to other persons required by the ordinance to be specifically notified.

aa.    AGENDA, ORDER OF BUSINESS.

The Board Administrator shall prepare an agenda for each Board meeting. The order of business shall be as follows:

(1)    Call to order and roll call, with recording of members present and absent and indications as to whether absences are with consent of the Chairman;

157

(2)    Action on any previous meeting for which action is required;

(3)    Continued hearings, with consideration and determination on cases as heard;

(4)    New hearings, with consideration and determination on cases as heard;

(5)    Old Business;

(6)    New Business; and

(7)    Adjournment.

bb.    PROCEDURES AT HEARINGS BEFORE THE BOARD.

(1)    At a public hearing, any person may appear or be represented by authorized agents or attorneys. Such agents or attorneys shall present competent evidence of the extent of their authorization.

(2)    All witnesses to material facts shall testify under oath, to be administered by the Chairman.

(3)    The order for presenting evidence shall be as follows:
A.    The Chairman, or such person(s) as he may direct, shall present and describe the nature of the case and evidence available to the Board, including staff report;

B.    The applicant or appellant shall outline the nature of the request and present supporting evidence;

C.    Objectors may cross-examine;

D.    Board members and alternates may examine witnesses for the applicant's or appellant's side;

E.    Objectors may present evidence;

F.    Applicants may cross-examine;

G.    Board members and alternates may examine witnesses for objector's side;

H.    Rebuttal by applicant; and

158

I.      Rebuttal by objectors.

(4)     The Board shall not be bound by strict rules of evidence or limited to consideration of such evidence as would be admissible in a court of law, but it may exclude irrelevant, immaterial, incompetent or unduly repetitious testimony and/or evidence.  The Chairman shall rule on all questions relating to the admissibility of evidence, but may be overruled by a majority of the Board members present.

(5)     During the hearing, each side shall proceed without interruption by the other.  All arguments and pleading shall be addressed to the Chairman.  There shall be no question or argument between individuals in the audience.

(6)     The Chairman, Board members and alternates, counsel to the Board and/or City staff may direct any question to the applicant, witnesses, or any person speaking from the audience, to bring out pertinent facts.  The Chairman, Board members and/or alternates may call for pertinent facts from staff, or make appropriate comments pertinent to the case.  No board member should debate or argue with persons in the audience.

cc.    MOTIONS

(1)     Any motion by a member shall require a second.  After a motion has been made and duly seconded, discussion of the motion may be held for a reasonable time.  Discussions by members, or by opponents or proponents of a question before the Board, shall terminate whenever a member shall call a vote upon the question or whenever the Chairman shall so rule.

(2)     If a motion is defeated, another motion must be made, seconded, voted upon and approved by a majority of the Board present and voting.

dd.    FINDINGS OF THE BOARD

The Board, in making motions related to Special Exceptions, Variances and Appeals, may contain statements of Board findings in the following areas:

(1)     A motion to APPROVE a SPECIAL EXCEPTION may, when appropriate, state findings:

A.      That the granting of the Special Exception is not contrary to the general intent of the Zoning Code and the public interest, and the property rights of adjoining land owners are substantially preserved; and

B.      That the Special Exception granted creates no new variances and does not increase existing variances.

(2)    <u>A motion to DENY a SPECIAL EXCEPTION</u> may, when appropriate, state findings:

A.    That the granting of the Special Exception is contrary to the general intent of the Zoning Code, public interest, or both, and/or is detrimental to the rights of adjoining property owners; or,

B.    That the granting of the Special Exception would create a new variance or increase existing variances.

(3)    <u>A motion to GRANT a VARIANCE</u> may, when appropriate, state findings:

A.    That there are special circumstances applicable to the property which, if strictly enforced, will deprive such property of privileges enjoyed by other property of the same classification in the same zoning district; and which were not self-imposed; and that this Variance will not be a grant of special privilege to the applicant; and

B.    That it is also found:

1.    That because of physical circumstances such as size, shape or topography, no reasonable use can be made of the property without this Variance;

2.    That there will be no adverse affect from the granting of the Variance;

3.    Light or air will not be impaired to adjacent property;

4.    Congestion will not be substantially increased;

5.    Neighborhood property values will not be substantially impaired;

6.    The amount of the Variance is the minimum needed to afford relief; and

C.    That the following conditions, if any, which have been imposed.

(4)    <u>A motion to DENY a VARIANCE</u> may, when appropriate, state findings:

160



    A.  That the granting of the Variance would give special privileges to the applicant not enjoyed by other property in the same classification in the vicinity and zoning district; or,

    B.  That the special circumstances or conditions are self-imposed or were created by the applicant; or

    C.  That it is found:

      1.  There are no similar Variances nearby; or

      2.  The Variance would have an adverse affect; or

      3.  The amount of the Variance is substantial; or

      4.  Reasonable use can be made of the property without this Variance.

    (5)  <u>A motion to APPROVE and CONFIRM A DECISION OF AN ADMINISTRATIVE OFFICER</u>, on appeal, may, when appropriate, be based on findings that:

    A.  The administrative officer's decision is proper;

    B.  His decision was based on one (1) or more points (list points); and

    C.  These points should be upheld.

    (6)  <u>A motion to REVERSE A DECISION OF AN ADMINISTRATIVE OFFICER</u>, on appeal, may, when appropriate, be based on findings that:

    A.  The administrative officer's decision is improper;

    B.  His decision was based on one (1) or more points (list points);

    C.  Points (list points) should be overruled;

    D.  His decision should have been controlled by (list points).

    (7)  The Board Administrator will administer and obtain a roll call vote from the Board upon the rendering of a motion.

161

ee.     DECISIONS OF THE BOARD.

(1)     With due consideration to the length of the agenda, the nature of the case, the complexity of the evidence and the findings required, the Chairman may elect, subject to being overruled by a majority of the members or alternates seated on motion duly passed:

A.     To proceed immediately to determination and decision on conclusion of the hearing in the particular case;

B.     To defer determination and decision until later in the same meeting should it be found advantageous to defer further determination or decision in the case for good cause stated; or

C.     To defer determination and decision until a specific meeting of the Board should it be found advantageous to defer further determination or decision in the case for good cause stated.

(2)     Appeals and applications shall be heard at public meetings within seventy (70) days of date of assignment of docket numbers and decided at the same meeting, at the next meeting of the Board, or at special public meeting, but in any event within thirty-six (36) days of the initial meeting at which the hearing on the case was first held.

(3)     If at least four (4) members or alternates serving as members of the Board concur in a finding of error in any decision, order, requirement, or determination of the administrative officer appealed from, the decision shall be favorable to the appellant. Such decision by the Board shall specify the decision, order, requirement, or determination which should have been made, and the decision of the Board shall be binding upon the applicant and successors in interest.

(4)     If at least four (4) members of the Board concur that the evidence supports favorable findings on the application for a special exception before it, or that such findings could be made if conditions and safeguards were established, the decision shall be favorable to the applicant, provided that such conditions and safeguards as may be required for such favorable findings, as specified in the decision, shall be binding upon the applicant and successors in interest.

(5)     If at least four (4) members of the Board concur that the evidence supports favorable findings on the appeal for a variance before it, or that such findings could be made if conditions and safeguards were established, the decision shall be favorable to the applicant, provided that such conditions and safeguards as may be required for such favorable findings, as specified in the decision, shall be binding upon the appellant and his successors in interest.

162

DEF LEON VALLEY 00174

ff.    RECORDS OF CASES OF THE BOARD.

The decision of the Board shall be shown in the record of the case.  Such record shall show the reason for determination, with a summary of the evidence introduced and the findings of fact made by the Board.

gg.    RECORDING.

Such record shall be entered in the minutes of the Board. Following approval, as submitted or as amended, the minutes shall be acknowledged as to accuracy by the signature of the Chairman and the Board Administrator.

hh.    APPEALS FROM THE BOARD.

Any person or persons, jointly or severally aggrieved by any decision of the Board, or any taxpayer, or any officer, department, board or bureau of the City, may present to a court of record a petition for a writ of certiorari, as provided by V.A.C.S., Article 1011g, duly verified setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality.  Such petition shall be presented to the court within ten (10) days after the filing of the decision of the Board in the Office of the City Secretary.

DEF LEON VALLEY 00175

## APPENDIX "A":   LANDSCAPE PLANTINGS

**TREES - Small: 15-25 Feet; Medium: 25-40 Feet; Large: 40 Feet and Higher (60'+)**

| Common Name | Scientific Name | Size | Characteristics |
|---|---|---|---|
| Anacacho, Orchid tree | Bauhania congesta | S-M | Semi-Evergreen; tree-shrub |
| Anaqua, Sandpaper tree | Ehretia anacua | M-L | Evergreen broadleaf; white flower clusters |
| Arizona Cypress | Cupressus arizonica | M-L | Evergreen conifer; gray green foliage |
| Ashe Juniper | Juniperus ashei | S-M | Evergreen conifer; green foliage, females fruit |
| Bald Cypress | Taxodium distichum | L | Deciduous conifer; fine textured foliage |
| Bur Oak | Quercus macrocarpa | L | Deciduous; large acorns and leaves |
| California Fan Palm | Washingtonia filifera | L | Fan-leaved, full sun |
| Carolina Buckthorn | Rhamnus caroliniana | S-M | Semi-Evergreen; sun-shade, glossy leaves |
| Cedar Elm | Ulmus crassifolia | M-L | Deciduous; more narrow canopy |
| Chinquapin Oak | Quercus muhlenbergii | M-L | Deciduous; round-topped tree; bold foliage |
| Condalia, Brazil Tree | Bluewood Condalia Condalia hookeri | S-M | Evergreen; delicate foliage; drought tolerant |
| Crabapple, Texas | Mollis texana | S-M | Deciduous, full to partial sun |
| Crepe Myrtle | Lagerstroemia sp. | M | Deciduous, blooms, attractive bark, full sun |
| Deodar Cedar | Cedrus deodara | L | Evergreen; spreading pyrimidal shape |
| Desert Willow | Chilopsis linearis | S | Deciduous; pink flowers; very drought tolerant |
| Ebony, Texas | Pithecellobium flexicaule | S | Evergreen; sun; white flowers |
| Escarpment Black Cherry | Prunus serotina var. eximia | M-L | Deciduous; sun to shade; fall foliage |
| Eve's Necklace | Sophora affinis | M-L | Deciduous; sun-shade; white to pink flowers |
| Goldenball Lead Tree | Leucaena retusa | S-M | Deciduous; delicate foliage; fragrant flowers |
| Hackberry | Celtis spp. | M-L | Deciduous; prolific; wildlife favorite |
| Huisache | Acacia farnesiana | M | Deciduous; delicate foliage; fragrant flowers |
| Kidneywood | Eysenhardtia polystachya | S | eciduous; delicate tree-shrub; fragrant flowers |
| Lacy Oak | Quercus laceyi | M | Deciduous; sun-shade; hill county native |
| Live Oak | Quercus virginiana | M-L | Evergreen-like; good shade tree |
| Loquat | Eriobotrya japonica | S | Evergreen, lrg tropical-like leaves |
| Mesquite | Prosopis glandulosa | S-M | Deciduous; lacy spreading form |
| Mexican Buckeye | Ungnadia speciosa | S | Deciduous; pink-red spring flowers |
| Pecan | Carya illinoensis | L-XL | Deciduous; lots of space; root impact |
| Persimmon | Texas Diospyros texana | S-M | Deciduous; sun-shade, smooth bark |
| Plum | Mexican Prunus mexicana | S | Deciduous; sun to shade; white flowers, fruit |
| Possum | Haw Ilex decidua | S-M | Deciduous; sun-shade; female has red fruit |
| Red Oak | Shumard Quercus shumardii | L | Deciduous; fall color, good shade tree |
| Red Oak, Texas | Quercus texana | M | Deciduous; fall color, good shade tree |
| Redbud, TX, OK, MX | Cercis canadensis var texana | S-M | Deciduous; sun-shade |
| Retama | Paloverde Parkinsonia texana | S-M | Deciduous; fast growing, yellow flowers |
| Rusty | Blackhaw Viburnum rufidulum | S | Deciduous; fall color, white flower clusters |
| Silk-tassle | Garrya ovata | S | Evergreen; sun-shade |
| Spiny Hackberry | Celtis pallida | S | Evergreen; greenish white flowers |
| Sycamore, Mexican | Platanus mexicana | L-XL | Deciduous; large leaves, good shade tree |
| Sycamore, Texas | Platanus glabrata | L-XL | Deciduous; large leaves, good shade tree |
| Texas Ash, Green Ash | Fraxinus sp. | M-L | Deciduous; fast growing |
| Texas Mountain Laurel | Sophora secundiflora | S | Evergreen, shade to full sun; fragrant flowers |
| Texas Pistache | Pistacia texana | S | Semi-Evergreen; full sun to part-shade; red fruit |
| Texas Sabal Palm | Sabal texana | M | Sun, slow growing, cold hardy palm |
| Texas Smoke Tree | Cotinus obovatus | M | Deciduous, mid-spring purple to pink |
| Vitex, Chaste, False Hemp | LavenderVitex agnus-castus | S-M | Deciduous; purple, pink, or white flower spikes |
| Wafer Ash, Hop tree | Ptelea trifoliata | S | Semi-Evergreen; sun-shade; light green foliage |
| Western Soapberry | Sapindus drummondii | M-L | Deciduous; full-part sun; shade tree |
| Wild Olive | Cordia boisserieri | S-M | Semi-Evergreen; white flowers, hardy to ~14oF |
| Yaupon | Holly Ilex vomitora | S-M | Evergreen; sun-shade; female has red fruit |

**SHRUBS**

**Large (Not Taller than Twenty-Five (25) Feet at Maturity)**

| | | | |
|---|---|---|---|
| Bay | Laurel noblis | 6'-12' | Evergreen, sun-part sun, fragrant leaves |
| Buckeye | Aesculus pavia | 6'-12' | Deciduous (in dry weather), shade, yellow/red |
| California Fan Palm | Washingtonia filifera | 40' | Fan-leaved, full sun |
| Evergreen Sumac | Rhus virens | 4'-15' | Evergreen, sun-shade, red fruit |

164

## SHRUBS

### Large (Not Taller than Twenty-Five (25) Feet at Maturity)

| Common Name | Scientific Name | Size | Characteristics |
|---|---|---|---|
| Flameleaf | Sumac Rhus lancelota | 5'-15' | Sun-partial shade; deciduous; fall color |
| Golden Ball Lead Tree | Leucaena retusa | 12'-15' | Deciduous, part shade to full sun, 1" globes |
| Lavender Tree | Vitex agnus-castus | 20' | Sun, lavender blue flowers |
| Mexican Buckeye | Ungnadia speciosa | 8'-12' | Deciduous, part shade to full sun, bloom early |
| Oleander | Nerium oleander | 4'-20' | Sun, white, yellow, pink, salmon, red |
| Possumhaw | Holly Ilex decidua | 15' | Deciduous, red or orange fruit ripens |
| Rose of Sharon | Hibiscus syriacus | 15' | Sun, partial-shade, white, pink, lavendar |
| Rusty Blackhaw | Viburnum rufidulum | 2'-15' | Deciduous, leaves turn red, purple, orange |
| Texas Persimmon | Diospyros texana | 10'-15' | Deciduous, full sun, part shade, black fruit |
| Texas Pistache | Pistacia texana | 6'-12' | Semi-evergreen, sun |
| Windmill Palm | Trachycarpus fortunei | 10' | Sun, partial-shade, slow growing, cold tolerant |

### SHRUBS Medium (Not Taller than Ten (10) Feet at Maturity)

| Common Name | Scientific Name | Size | Characteristics |
|---|---|---|---|
| Agarita | Mahonia trifoliata | 5'-9' | Holly-like evergreen foliage; red berries |
| Burford | Holly Ilex cornuta | 6' | Sun, partial-shade, evergreen |
| Cenizo, Texas Sage | Leucophyllum sp. | 5'-9' | Dusty gray evergreen foliage; sun, purple - pink |
| Chinese Horned | Holly Ilex cornuta | 5' | Sun, red berry |
| Elbow Bush | Forestiera pubescens | 3'-6' | Deciduous; sun-shade, small white flowers |
| Eleagnus | Eleagnus Fruitlandi | 6'-8' | Sun, partial-shade, , evergreen, grey-green |
| Forsythia | Forsythia intermedia | 5'-7' | Deciduous, sun, partial-sun, brilliant yellow |
| Frangrant Sumac | Rhus aromatica | 3'-6' | Deciduous; part shade, fall color |
| Glossy Abelia | Abelia grandiflora | 5'-9' | Bronze evergreen foliage; white or pink |
| Gold Star Esperanza | Tecoma stans | 4' | Sun, overblooming tropical shrub, golden |
| Green Pittosporum | Pittosporum tobira | 8' | Sun, partial-shade, flossy foliage, white flowers |
| Hogplum | Colubrina texensis | 4'-6' | Sun, partial-shade, fragrant blooms |
| Indian Hawthorne | Raphiolepis indica | 2'-10' | Sun, partial-shade, pink, rose, white flowers |
| Italian Jasmine | Jasminum humile | 4'-6' | Small dark glossy green leaves, yellow flowers |
| Juniper | Juniperus sp. | 5'-10' | Tough evergreen; many varieties; part shade |
| Mutablis/ Butterfly Rose | Old Blush Rosa chinensis x (Mutablis) | 3'-5' | Sun, large single petal flowers change color |
| Nandina Heavenly Bamboo | Nandina domestica | 6' | Sun-partial shade, red, orange, purple, berries |
| Pomegranate | Punica granatum | 5'-10' | Sun, upright shrub; orange blooms; dwarf |
| Primrose Jasmine | Jasminum mesnyi | 5'-8' | Evergreen, sun-shade, sprawling, yellow |
| Southern Wax Myrtle | Myrica cerifera | 3'-8' | Evergreen, sun-shade, compact variety |
| Variegated Pittosporum | Pittosporum tobira | 10' | Sun, partial-shade, cluster of fragrant white |
| White Brush | Aloysia gratissima | 4'-8' | Delicate; fragrant white flower, hedge |
| Winter Honeysuckle | Lonicera Fragrantissima | 8'-10' | Sun-partial shade, fragrant, white flowers |

## SHRUBS
### Small (Not Taller than Five (5) Feet at Maturity)

| Common Name | Scientific Name | Size | Characteristics |
|---|---|---|---|
| Agave | Century Plant Agave americana | 3'-5' | Sun, rosette, spine-tipped leaves |
| American Beautyberry | Callicarpa americana | 3-4' | Deciduous, fruit in fall and winter, purple |
| Barbados Cherry | Malpighia glabra | 2'-4' | Evergreen, pink flowers, red fruit, sun-shade |
| Barberry | Berberis thunbergii atropurpure | 3'-5' | Evergreen; sun-part shade, color foliage |
| Bridal Wreath | Spirea Spirea cantoniensis | 2'-6' | Sun-partial shade, white, pink, red flowers |
| China Rose | Chinensis sp. | 2'-4' | Sun, partial-shade, multi-color pink, white |
| Dwarf Palmetto | Sabal minor | 3'-5' | Shady, evergreen, white bloom clusters |
| Flame Acanthus | Anisacanthus wrightii | 3'-4' | Deciduous, summer to frost orange |
| Flowering Quince | Chaenomeles japonica | 3'-6' | Deciduous, sun/part sun, variety of pink, white |
| Glossy Abelia | Abelia grandiflora | 6' | Sun/part sun, evergreen, white flowers |
| Grayleaf Cotoneaster | Cotoneaster glaucophylla | 3'-5' | Sprawling evergreen; dusty gray foliage |
| Juniper | Juniperus sp. | 2'-5' | Evergreen shrubs; many varieties available |
| Mexican Butterfly Weed | Asclepias tuberosa | 3' | Broad clusters of orange flowers |
| Mexican Oregano | Poliomentha longiflora | 2'-3' | Evergreen, sun, pink flowers |
| Red Yucca | Hesperaloe parviflora | 3'-4' | Sun, rosette, narrow leaves |
| Rock rose | Pavonia lasiopetala | 2'-4' | Deciduous; sub-shrub, pink or purple flowers |

165

## SHRUBS
### Small (Not Taller than Five (5) Feet at Maturity)

| Common Name | Scientific Name | Size | Characteristics |
| --- | --- | --- | --- |
| Rosemary, Upright | Rosmarinus officinalis | 3'-5' | Evergreen, sun-part shade; blue flowers |
| Turk's Cap | Malvaviscus drummondii | 4'-5' | Sun or part sun, flowers with bright red petals |
| White Boneset | Eupatorium havense | 1'-2' | Deciduous, sun, partial-shade, pale pink |
| Yucca | Hesperaloe parviflora | 3'-4' | Sun, rosette, narrow leaves, white flowers |

## ANNUALS

| Common Name | Scientific Name | Size | Characteristics |
| --- | --- | --- | --- |
| Mexican Sunflower | Tithonia rotundifolia | 3'-4' | Sun, vivid scarlet orange flowers |
| Moss Rose | Portulaca grandiflora | 1' | Sun, red, pink, white, yellow, orange flowers |
| Pentas | Pentas lanceolata | 1'-2' | Part shade, full sun; pink, violet, red flowers |
| Periwinkle | Vinca minor | 1' | Shade, lavender blue flowers |
| Purslane | Portulaca oleracea | 1' | Sun, pink, lavender, white, yellow |
| Zinnia | Zinnia hybrida 'Profusion' | 1'-2' | Sun, red, orange, pink, yellow, white flowers |

## VINES

| Common Name | Scientific Name | Size | Characteristics |
| --- | --- | --- | --- |
| Autumn Clematis | Clematis sp. | n/a | Evergreen; fragrant white fall; sun, part shade |
| Carolina Jessamine | Gelsemium sempervirens | n/a | Evergreen; yellow spring; sun, part shade |
| Confederate Jasmine | Trachelospermum jasminoides | n/a | Evergreen; fragrant white spring; sun |
| Coral honeysuckle | Lonicera sempervirens | n/a | Almost Evergreen; red blooms |
| Coral vine, Queen's wreath | Antigonon leptopus | n/a | Pink flowers in late summer and fall; sun |
| Fig Ivy | Ficus pumila (repens) | n/a | Evergreen; clings to walls; sun, part shade |
| Improved Trumpet Vine | Campsis radicans | n/a | Sun, partial-sun, large orange flowers |
| Lady Banks Rose | Rosa banksiae | n/a | Sun, miniature yellow double blooms |
| Mermaid Rose | Rosa x Bractaeta | n/a | Sun, fragrant white flowers, vigorous climber |
| Rosa X | Fortuniana Rosa x | n/a | Sun, fragrant white flowers, vigorous climber |
| Scarlet Clematis | Clematis texana | n/a | Sun-partial shade, summer blooms; red, pink |
| Silverlace Vine | Polygonum ambertii | n/a | Fluffy masses of white; sun, part shade |
| Virginia Creeper | Parthenocissus quinquefolia | n/a | Deciduous, sun, partial-shade, fall color |

## GROUNDCOVER

| Common Name | Scientific Name | Size | Characteristics |
| --- | --- | --- | --- |
| Asiatic Jasmine | Trachelospermum asiaticum | n/a | Evergreen; green/variegated foliage |
| Blue Shade | Ruellia sp. | n/a | Deciduous, sun-part shade, blue flowers |
| Confederate Jasmine | Trachelospermum jasminoides | n/a | Evergreen; fragrant, white spring flowers |
| English Ivy | Hedera helix | n/a | Shade, climbs walls and fences 15'-20' |
| Frogfruit | Phyla incisa | n/a | Semi-evergreen, creeper, sun-part sun |
| Katie' Ruellia | Ruellia spp. | n/a | Evergreen, sun-shade, rosette with purple/pink |
| Lantana purple, gold | Lantana sp. | n/a | Deciduous, sun, purple, white or yellow flowers |
| Liriope | Liriope muscari | 1'-2' | Partial-shade, green grass-like foliage, flowers |
| Monkey Grass | Ophiopogon japonicus | n/a | Shade, leaves are dark green and grassy |
| Pigeonberry | Rivina humilis | n/a | Semi-evergreen shrub |
| Rosemary, prostrate | Rosmarinus officinalis | n/a | Evergreen sub-shrub, sun to part sun, flowers |
| Santolina | Santolina sp. | n/a | Species with green or silver foliage; sun |
| Texas Columbine | Aquilegia spp. | 1'-2' | Partial-shade, blue gray plant w/large flowers |
| Trailing Juniper | Juniperus sp. | n/a | Not suitable for wet, humid areas; sun |
| Verbena | Verbena spp. | n/a | Sun, partial-shade, pink, white, red flowers |
| Vinca | Vinca major | n/a | Sun, partial-shade, rose, pink, white flowers |

## GRASSES, TURF

| Common Name | Scientific Name | Size | Characteristics |
| --- | --- | --- | --- |
| Bermuda grass | Cynodon dactylon | n/a | Excellent drought tolerance; poor shade |
| Buffalograss | Buchloe dactyloides | 4"-6" | Excellent drought tolerance |
| Prairie mix | n/a | 8"-12" | Mixture of Texas native Bunch,wildflowers |
| Zoysia | Zoysia sp. | 2" | Sun, limited shade, drought tolerant |

166

## PERENNIALS

| Common Name | Scientific Name | Size | Characteristics |
|---|---|---|---|
| Autumn Sage | Salvia greggii | 2'-3' | White, red, pink, spring to fall flowers; sun |
| Baby sun | Coreopsis grandiflora | 1'-2' | Partial-sun, spring/summer golden yellow |
| Bearded Iris | Iris xiphioides | 1'-2' | Sun-partial sun, purple, lavender, blue, red |
| Blackfoot Daisy | Melampodium leucanthum | 1' | Slight shade, low spreading, white flowers |
| Blue Plumbago | Plumbago auriculatis | 3' | Sun, partial-shade, Blue, summer to fall flowers |
| Bouncing Bet | Sapinaria officinallis | 1' | Sun, partial-shade, pink flowers late spring |
| Butterfly Gaura | Gaura lindheimeri | 2'-3' | Sun, partial-shade, fragrant white flowers |
| Butterfly Weed | Asclepias spp. | 3' | Semi-hardy perennial, orange flowers |
| Cigar Plant | Cuphea micropetala | 3'-4' | Red, yellow; summer to fall flowers; sun |
| Daylily | Hemerocallis sp. | 1'-4' | Sun-partial shade, yellow, orange, red, purple |
| Fall Aster | Aster spp. | 2'-3' | Semi-evergreen, sun-part sun, blue or white |
| Firebush | Hamelia patens | 3'-5' | Reddish orange; summer to fall flowers; sun |
| Garden Canna | Canna x Generalis | 1'-3' | Sun, partial sun, red, orange, yellow, pink |
| Gayfeather | Liatris sp. | 2'-3' | Sun, partial-sun, floral spikes, orchid-pink/white |
| Goldstrum(Blackeye Susan) | Rudbeckia fulgida | 1'-4' | Golden-yellow daisy-like flowers, brown bloom |
| Hinckley's Columbine | Aquilegia hinckleyana | 18" | Yellow; spring flowers; shade |
| Indian Blanket | Gaillardia sp. | 1' | Sun, partial sun, red, orange |
| Indigo Spires | Sage Salvia spp. | 2'-3' | Semi-evergreen, sun, dark blue flowers |
| Lantana | Lantana sp. | 1'-6' | Many colors; spring to fall flowers; sun |
| Louisiana Iris | Iris spp. | 1'-3' | Sun, partial-shade, large yellow, white and red |
| Maximillian Sunflowers | Helianthus maximiliani | 4'-6' | Sun, partial-shade, yellow flowers |
| Mealy Cup Sage | Salvia farinacea | 3' | Sun, partial-shade; blue, white, purple flowers |
| Mexican Milkweed | A. curassavica | 1'-3' | Sun, partial-shade, two-toned red flowers |
| Mexican Oregano | Poliomentha longiflora | 1'-3' | Evergreen; pink; summer flowers; sun |
| Mexican Petunia | Ruellia sp. | 1'-3' | Evergreen; tolerates shade; purple flowers |
| Mexican Sage | Salvia leucantha | 3'-4' | Semi-evergreen; blue; flowers; sun |
| Mist flower | Boneset Eupatorium spp. | 2'-4' | Hardy perennial, white to blue flowers |
| Muhly Grass | Muehlenbergia lindheimeri | 1'-3" | Sun, partial-shade, feathery deep pink (fall) |
| Pavonia, Rockrose | Pavonia lasiopetala | 2'-3' | Sun, partial-shade, pink flowers |
| Perennial verbena | Verbena sp. | 6"-1' | Many colors; spring to fall flowers; sun |
| Pigeonberry | Rivina humilis | 1'-2' | Semi-evergreen shrub |
| Purple Cone Flower | Echinacea purpurea | 2' | Sun, hardy perennial, rosetta pink or white |
| Rain Lily | Zephyranthes sp. | 1' | Sun, partial-shade, yellow, white, pink |
| Rock rose | Pavonia lasiopetala | 2'-4' | Deciduous; sub-shrub, pink or purple flowers |
| Rosemary | Rosmarinus officinalis | 1'-4' | Sun, part shade; blue flowers |
| Shrimp Plant | Justicia spp. | 1'-2' | Hardy perennial, sun-part sun; orange, red |
| Skullcap | Scutellaria frutescens | 1' | Evergreen sub-shrub; pink or purple flowers |
| Standing Cypress | Lpomopsis rubra | 2'-4' | Sun, partial-shade, red, yellow spires |
| Sweet Violet | Viola odorata | 1' | Sun, partial-shade, purple, deep blue violets |
| Texas Betony | Stachys coccinea | 1'-2' | Evergreen, gray-green; red tubular flowers |
| Texas Gold Columbine | Aguilegia spp. | 1'-3' | Sun, partial-shade, large, yellow flowers |
| Tropical Sage | Salvia coccinea | 2'-3' | Evergreen, red, pink blooms; part shade/sun |
| Turk's Cap | Malvaviscus drummondii | 1'-4' | Shade; red flowers |
| White Rain Lily | Zephyranthes candida | 1' | Ephermal; sun, part shade; white |
| Yarrow | Achillea spp. | 1'-3' | Sun-partial shade, yellow, white, red, pink |
| Zexmenia | Wedelia hispida | 1'-2' | Sun-partial shade, orange-yellow daisies |

## PALMS

| Common Name | Scientific Name | Size | Characteristics |
|---|---|---|---|
| California Fan Palm | Washingtonia filifera | 15'-60' | Tree-like palm; sun. Hybrids with robusta |
| Butia or Jelly Palm | Butia capitata | 10'-15' | Feather palm with blue-green leaves; sun |
| Canary Island Date Palm | Phoenix canariensis | 40' | Beautiful feather palm; damaged cold winters |
| Dwarf Palmetto | Sabal minor | 3'-7' | Trunkless, bushy palm; sun, part shade |
| European Fan Palm | Chamaerops humilis | 6'-12' | Tough, clumping fan palm with spiny petioles |
| Mazari Palm | Nannorrhops ritchiana | 6'-25' | Slow growing fan palm with blue-green leaves |
| Mexican Blue Palm | Brahea armata | 12'-25' | Fan palm with blue-green leaves; sun |
| Needle Palm | Rhapidophyllum hystrix | 5'-6' | Clumping shrub palm foliage, sun/part shade |
| Silver Saw Palmetto | Sorenoa repens | 3'-6' | Clumping low palm in both blue and green |
| Texas Palmetto | Sabal texana | 10'-25' | Tall, native Texas palm; sun |
| Windmill Palm | Trachycarpus fortunei | 10'-35' | Tree-like; sun; not a canopy; good foundation |

167

## ORNAMENTAL GRASSES

| Common Name | Scientific Name | Size | Characteristics |
|---|---|---|---|
| Big Bluestem | Andropogon gerardii | 3'-8' | Sun, partial-shade, shape flowering spikelets |
| Eastern Gamagrass | Tripsacum dactyloides | 2'-3' | Dense, part shade/ sun, dormant in winter |
| Fountain Grass | Pennisetum ruppelii | 3'-5' | Sun, densely clumped growth form |
| Inland Seaoats | Chasmanthium latifolium | 2'-3' | Shade, dappled shade, part shade |
| Little Bluestem | Schixachyrium scoparium | 3' | Sun, partial-shade |
| Muhly Grass | Muehlenbergia lindheimeri | 3' | Evergreen, part shade, full sun |
| Pampas Grass | Cordaderia selloana | 7' | Coarse, full sun, makes good border |
| Purple Fountain Grass | Pennisetum setaceum | 5' | Delicate color accent; full sun |
| Sideoats | Grama Bouteloua curtipendula | 2'-3' | Dappled shade, part shade, full sun |
| Switchgrass | Panicum virgatum | 3' | Sun, partial-shade, stands out in tall grass |

DEF LEON VALLEY 00180

**APPENDIX "B":     STREET YARD AREA DIAGRAMS (page 1 of 4)**

**DIAGRAM #1**



DEF LEON VALLEY 00181

**APPENDIX "B":    STREET YARD AREA DIAGRAMS (page 2 of 4)**

**DIAGRAM #2**



170

DEF LEON VALLEY 00182

Chapter 30 - ZONING
City of Leon Valley

**APPENDIX "B":    STREET YARD AREA DIAGRAMS (page 3 of 4)**

**DIAGRAM #3**



171

DEF LEON VALLEY 00183

**APPENDIX "B":    STREET YARD AREA DIAGRAMS  (page 4 of 4)**

**DIAGRAM #4**



172

2.      Each violation of this Chapter shall be punishable by penalty of a fine of not less than two hundred dollars ($200.00) nor more than two thousand dollars ($2,000.00). Each day of offense shall be a separate offense.

3.      This ordinance shall become effective on and after its passage, approval and publication, as prescribed by law.

   **PASSED** and **APPROVED** this 6th day of March, 2007.


_____
                                      Mayor

ATTEST:



_____
City Secretary


                                      APPROVED AS TO FORM:



                                      _____
                                            City Attorney

DEF LEON VALLEY 00186

2.      Each violation of this Chapter shall be punishable by penalty of a fine of not less than two hundred dollars ($200.00) nor more than two thousand dollars ($2,000.00). Each day of offense shall be a separate offense.

3.      This ordinance shall become effective on and after its passage, approval and publication, as prescribed by law.

PASSED and APPROVED this 6th day of March, 2007.

_____
Mayor

ATTEST:

_____
City Secretary

APPROVED AS TO FORM:

_____
City Attorney

173