# LEON ✦ VALLEY
## TEXAS
SMALL TOWN HOSPITALITY. BIG CITY ADVANTAGES.

# COMMUNITY DEVELOPMENT DEPARTMENT

**MINUTES OF THE MEETING OF THE
LEON VALLEY ZONING AND LAND COMMISSION
February 26, 2008**

The regular meeting of the Leon Valley Zoning and Land Use Commission convened at 6:30 p.m. on Tuesday, February 26, 2008, in the City Council Chambers at Leon Valley City Hall.

## I. ROLL CALL

Present were Chairman Claude Guerra III, Second Vice-Chair Wendy Phelps and Members Olen Yarnell, Rich Braune and Renee Baird, and Sharon Hendricks and Alternate Members Hal Burnside and Paul Biever. Absent and properly excused were Vice-Chair Linda Persyn and Alternate Member Pedro Esquivel. Also present were City Manager Lanny Lambert and Development Services Director Amy Madison, acting as recording secretary.

## II. APPROVAL OF MINUTES – January 22, 2008

Commissioner Yarnell noted corrections on page 2 and 4. Commissioner Biever made a motion to approve the minutes as corrected. Commissioner Braune seconded the motion and the motion passed unanimously by voice vote.

## III. INTRODUCTION OF DEVELOPMENT SERVICES DIRECTOR

Chairman Guerra III welcomed Ms. Amy Madison to the City of Leon Valley and noted to the Commission that he had worked with her in the past while he was with the Alamo Area Council of Governments. Chairman Guerra noted that Ms. Madison was well qualified for the position and stated that he was looking forward to all the help she could bring to the city.

Ms. Madison addressed the Commission stating that she was excited to be working in Leon Valley and with the Zoning Commission and outlined her supervision over the Development and Economic Development Offices. She also explained some of the details of the projects that she would be working on. Ms. Madison thanked the members of the Development staff for helping her transition into her new job. Ms. Madison encouraged the Commission to contact her any time.

City Manager Lanny Lambert noted that he wanted the Commission to know that during the background check and hiring of Ms. Madison he had received the best recommendation he ever heard in his 30-year experience as a City Manager, from the City Manager of Shertz who said "that everything positive that had happened in Shertz in the last five (5) years had happened because of Amy," and she was highly recommended.

Case 5:08-cv-00907-OLG   Document 34-22   Filed 07/08/2009   Page 2 of 5

IV.    ZONING CASE #08-380 (GoldStar Trust Company)

Chairman Guerra III opened the public hearing of Zoning Case (ZC) #08-380, at 6:45 p.m. Staff stated that ZC#08-380, was a request by Patrick Christensen, agent for GoldStar Trust Company, applicant and property owner, to rezone approximately 3.803 acres of land from B-2 (Retail) to B-3 (Commercial), being Lot 4, CB 4429J, Seneca Estates Subdivision Unit #7, located at 6401 Bandera Road. Staff noted the history of the area and explained that the 2003 Master Plan addressed the area in general encouraging B-2 (Retail) zoning to a depth of 200-feet along Bandera Road and discouraging rezoning to B-3 (Commercial). Staff indicated the difference between B-2 and B-3 zoning districts. Staff explained that twenty-five (25) letters were mailed to property owners within 200-feet and that as of that evening no letters had been received in favor of the request, eleven (11) letters had been received in opposition to the request two (2) of which were duplicates, and no letters had been returned undeliverable. Staff also noted that thirty-four (34) letters in opposition to the request had been received from property owners outside the 200-foot notification circle. Staff remained available for questions.

**Patrick Christensen, agent for GoldStar Trust Company,** addressed the Commission and thanked the Commission for granting the continuance of the case to explore other possibilities and noted that many residents spoke against B-3 zoning but not the church. Mr. Christensen noted that he recorded Deed Restrictions which restricted all other B-3 uses except the church. He explained that he knows that the city cannot enforce the deed restrictions, but he could not negotiate with the city because contract zoning is not allowed. Mr. Christensen noted that the company he was working for foreclosed on the property and now owned a church building that they could not operate as church. He also noted that with the deed restrictions in place the city would be getting a church since the restriction would go with the land.

Commissioner Yarnell noted that there were no restrictions on the lending. Mr. Christensen stated that if there was a clear violation of the deed restrictions a lawsuit would prevail but the burden would be on the property owners file suit.

**Pastor Crane, potential tenant for church building,** addressed the Commission and noted that studies indicated that a vibrant church helps the economy of a city. He also noted that the church would bring positive things. He further explained that to address the residents concerns regarding the look of the building the church was had set aside $400,000 for beautification of the outside of the property. He stated that the church wanted to come in on a positive note and be a benefit to Leon Valley.

**Elsie Buchanan, 6232 Rue Marielyn,** addressed the Commission and noted that she had no objection to a church. She also noted that churches do at times fail and was concerned that if the property was rezoned to B-3, it would open the door to unwanted uses. She urged the Commission to allow the church in B-2, but do not rezone to B-3.

**Mary Francis Uptain, 6101 Sawyer Road,** addressed the Commission and noted that she was a long time resident of Leon Valley and an economist by education. She explained that Leon Valley was a landlocked community. She stated that she lived next to a Buddhist community and she loved her neighbors and she was not against churches, but she was concerned that the city was being devoured by churches, schools and other non-tax paying entities who do not contribute greatly to the community. She explained that she did not want

2

to support other people's religion with her taxes and urged the Commission to get control on the use of land in the city. She concluded by noting that the community was starving for lack of property taxes and noted that churches were not volunteering to pay property taxes.

Being no further discussion, Chairman Guerra III closed the public hearing at 7:20 p.m.

Commissioner Baird noted that the Commission had looked at all of the non-tax paying entities and felt that there was an economic crisis. She further noted that it was the reason churches were placed in the B-3 (Commercial) zoning district. She stated that she did not believe it was in the best interest of the city or business community to rezone the property.

Commissioner Yarnell asked the attorney representing the city if there would be a consequence for going against the Master Plan recommendations.

**Frank Onion, legal counsel,** addressed Commissioner Yarnell noting that there would be a precedent, but that the Commission was not bound to the Master Plan since the Plan was a guide for proposed growth of the city.

Commissioner Biever noted that the Commission had worked long and hard reviewing and making recommendations on zoning districts and he felt that the based on the thorough discussion the zoning should remain B-2.

Commissioner Hendricks asked about the church's previous nonconforming status. Staff noted that change of the use of the building or change ownership was the reason for the nonconforming status. Staff explained that the Zoning Code was approved in November of 2006 and that the church had become noncompliant in July 2007. Staff also noted that the church was grandfathered as long as they continued the use; however they defaulted and changed owners.

Chairman Guerra III noted that much discussion and consideration was given to the economic viability of the city and the placement of churches into the B-3 zoning district.

2nd Vice-Chair Phelps noted that the determination was also made based on placing all uses with large gatherings of people into the same district. Staff noted that all assembly and gathering types of uses were grouped into B-3.

Commissioner Baird made a recommendation denying rezoning request ZC#08-380, stating that the zoning should remain B-2 (Retail) and not be changed to B-3 (Commercial) because denying the request would protect the property rights of owners and surrounding businesses and would keep it consistent and compatible with the Master Plan and surrounding zoning. Commissioner Biever seconded the motion and the motion passed 7-1. Commissioner Phelps opposed the recommendation.

V.      DISCUSSION ITEMS

(1)     AIA Sustainability Grant Project

Ms. Madison presented information about the AIA grant received by the city. She noted that the AIA grant could be up to $15,000 and was matched by the city by $5000 and the community by $5000. She explained that as part of the grant, professionals from the

American Institute of Architects would be flown into the city to analyze transportation, connectivity and other potential for the city to encourage a sustainable future and improve economics. Ms. Madison noted that a steering committee was being created to assist with this grant and the first meeting was tentatively set for early summer.

### (2) Metropolitan Planning Organization-Streets and Walkable Community Survey

Ms. Madison presented information regarding future plans for functionally classified roads and explained that there was a potential for a call for projects. She noted that the map that was in the Commission packet was to indicate the streets that were functionally classified roads and explained that if anyone on the Commission knew of any streets to include in the call for projects it would be a good way to be placed in higher priority on the call for projects list if the city was interested in participating.

Ms. Madison also presented information about a free program and report that the city may be participating in regarding a Walkable Community Report and Survey. She explained that a free walk through of the city would be done and analyzed and a report would be prepared for the city to review. She noted that this item was going to be on the next Council agenda for discussion.

### (3) Staffing Concerns

City Manager Lanny Lambert addressed the Commission addressing staffing and noted that the staffing changes were solely financial. He explained that the city was down $500,000 in sales taxes and thus staffing was affected. He noted that there had not been any new staff and some positions had been cut throughout the city. He explained that recently Amy Madison had been hired to address the major concern of economic development. He also noted that it appeared to be a good opportunity to combine Development and Economic Development. He explained that in 2007 the Development and Economic Development departments had five full-time positions and three part-time positions and noted that for 2008 there were now four full-time positions and one part-time position. He also noted that a new volunteer Code Enforcement program had been developed to assist with Code Enforcement. He urged the Commission to contact him if his staffing plan was not working and he would re-evaluate the situation.

### (4) Joint Meeting with Council

Chairman Guerra III addressed the Commission and noted that at the meeting of January 22, 2008, the Commission had asked him to speak with the Mayor regarding the Seneca West zoning project and the Council's decision. Chairman Guerra explained that he met with the Mayor, City Manager as well as Amy Madison and Kristie Flores and arranged for a joint meeting with the City Council. He noted that the meeting was scheduled for March 18, 2008 at 5:30p.m. and urged the Commission to attend the meeting to voice their concerns.

Chairman Guerra III also noted that he was pleased to see that there was some effort being made to meet with the developer interested in Seneca West to explore development options.

Being no further discussion, the Chairman thanked Mr. Lambert for being at the meeting and sharing information with the Commission.

## VI. OTHER BUSINESS

No other business.

## X. ADJOURN

Commissioner Braune made a motion to adjourn, seconded by Commissioner Yarnell. The motion carried by voice vote and the meeting was adjourned at 8:20 p.m.

_____          _____
        CHAIRMAN                           STAFF