# EXHIBIT "K"

## SECOND AMENDMENT OF PURCHASE AGREEMENT

**THIS SECOND AMENDMENT** of the Purchase and Sale Agreement ("Second Amendment") is entered into this 26th day of August, 2008, by and between Happy State Bank, a Texas banking association, d/b/a GoldStar Trust Company, successor to Colonial Trust Company, acting solely in its capacity as trustee for the benefit of the bondholders of Church on the Rock - San Antonio ("Seller") and Redemption Tabernacle Ministries, Inc., a Texas non-profit corporation ("Purchaser").

### RECITALS

**WHEREAS**, Seller and Purchaser entered into that certain Purchase and Sale Agreement, dated January 4, 2008 ("Agreement"), whereby Seller agreed to sell and Purchaser agreed to purchase that certain piece of land located at 6401 Bandera Road, Leon Valley, Texas, as more particularly described on Exhibit "A" attached hereto and incorporated herein (the "Property").

**WHEREAS**, Seller and Purchaser entered into that certain Amendment of Purchase Agreement, dated effective January 14, 2008 ("First Amendment"), which First Amendment is superceded hereby.

**WHEREAS**, the purchase and sale of the Property has been delayed due to pending litigation regarding the zoning of the Property; therefore, Seller and Purchaser desire to further amend the Agreement.

### AGREEMENT

**NOW, THEREFORE**, in consideration of the mutual agreements set forth below, the receipt and sufficiency of which is acknowledged by each party, the parties hereby agree as follows:

1.  Paragraph 1 is hereby amended to list "Todd W. Boykin" as Seller's Counsel, with a phone number of "(806) 358-8116" and an email address of "tboykin@bmwb-law.com".

2.  The following is hereby added to the end of Paragraph 2: "The Property shall be subject to the Permitted Title Exceptions contained on Exhibit "B"attached hereto and made a part hereof."

3.  No earnest money was deposited; therefore, Paragraphs 4.A(1) and (2) and Paragraph 16 and any other mention of Earnest Money or Escrow are hereby deleted.

4.  The first paragraph of Paragraph 8 is hereby replaced with the following: "Closing will take place on September 1, 2010 (the "Closing Date"). Provided, however, in the event that the Zoning Litigation as described in Paragraph 59 is fully and finally

resolved prior to the Closing Date, then Seller, upon forty-five (45) days written notice, may set a closing date that is prior to the Closing Date."

5.    The last sentence of Paragraph 8 is hereby deleted.

6.    Paragraph 9.B(5) is hereby deleted because the transaction is a cash purchase.

7.    Paragraph 12 is hereby amended to read as follows: "The possession of the Property and the keys shall be delivered to Purchaser upon closing and receipt by Seller of the balance of the Purchase Price in cleared funds."

8.    The following is hereby added to the end of Paragraph 13: "Seller shall allow Purchaser access on reasonable occasions upon reasonable notice. Provided, however, this provision shall not be construed to limit Purchaser's right of access under the Lease, defined in Paragraph 61."

9.    Paragraph 15.A is hereby deleted and replaced with the following: "Unless otherwise provided for herein, if Purchaser fails to comply with this Agreement, Purchaser will be in default, and Seller may either enforce specific performance or seek such other relief as may be provided by law, or both. If Purchaser defaults according to the terms of the Lease, as defined in Paragraph 61 below, Seller may, in its discretion, terminate this Agreement."

10.   Paragraph 18.A(6) is hereby amended to read as follows: "Seller has no knowledge of receiving any written notice from any governmental department or agency having jurisdiction as to conditions affecting the Property that alleges a violation of law or governmental ordinances, orders or requirements relating to the Property, except as set forth in Paragraph 59 regarding the Zoning Litigation."

11.   Paragraph 19.E is hereby amended to read as follows: "Except as set forth in Paragraph 59 regarding the Zoning Litigation, to Purchaser's knowledge, neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby will violate or be in conflict with (I) any applicable provision of law, (ii) any order of any court or government agency having jurisdiction over the Purchaser, or (iii) any agreement or instrument to which Purchaser is a party or under which Purchaser is bound."

12.   Paragraph 20 is hereby amended to read as follows: "To the extent that Seller owns personal property within the Property, Seller will transfer such personal property to Purchaser on the Closing Date without warranties of title or warranties of quality, fitness, or merchantability."

13.   Paragraph 59 is hereby replaced with the following: "ZONING LITIGATION: The closing of this sale is specifically conditioned on evidence of the fact that a church

is permitted to utilize the Property for church purposes. Purchaser acknowledges that the City of Leon Valley contends that the current zoning on the Property does not allow the Property to be used as a church. Seller, at Seller's expense, is using Seller's best efforts to verify that the Property can be used as a church, prior to the closing of this sale. Upon the execution of this document and the Lease, as defined in Paragraph 61, the parties contemplate the filing of a lawsuit in Bexar County, in order to rezone the Property. In the event that Seller is unable to provide that evidence that church use is permitted on the Property by the Closing Date, then (I) this Agreement will terminate and (ii) neither party will have any remaining rights or obligations under this Agreement."

14.    The following shall be added as Paragraph 61: "61. LEASE: Seller and Purchaser entered into that certain Lease Agreement, dated effective September 1, 2008 (the "Lease"), whereby Seller will lease to Purchaser and Purchaser will lease from Seller the Property, according to the terms contained therein."

15.    Exhibit "B" shall be replaced with the Exhibit "B" attached hereto.

16.    The parties hereto ratify and confirm that the Purchase and Sale Agreement attached hereto as Exhibit "C" is the entire purchase agreement executed by the parties and is currently in effect as amended hereby.

17.    This Second Amendment may be executed in multiple counterparts and facsimile thereto binding on all parties to this Second Amendment.


[REST OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES ON FOLLOWING PAGE]

Agreed to this 26ᵗʰ day of August, 2008:

        **SELLER:**

        **GOLDSTAR TRUST COMPANY**, as Trustee for the Benefit of the Bondholders of Church on the Rock - San Antonio

        By: _____

             Wanda Perdue, Authorized Representative

        **PURCHASER:**

        **REDEMPTION TABERNACLE MINISTRIES, INC.**

        By: _____

             Darryl W. Crain, Authorized Representative

**EXHIBIT "A"**
**LAND DESCRIPTION**

Lots 3 and 4, SENECA ESTATES SUBDIVISION UNIT 7, in the City of Leon Valley, situated in Bexar County, Texas, according to plat thereof recorded in Volume 9571, Page 85, Deed and Plat Records of Bexar County, Texas.

## EXHIBIT "B"
## PERMITTED TITLE EXCEPTIONS

1.  Liens described as part of the consideration and any other liens described in this Agreement as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing restrictions, reservations, covenants, conditions, oil and gas leases, mineral interests, and water interests outstanding in persons other than Seller, and other instruments, other than conveyances of the surface fee estate, that affect the Property; validly existing rights of adjoining owners in any walls and fences situated on a common boundary; any discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements; all rights, obligations, and other matters arising from and existing by reason of the Bexar County governing authority; and taxes for 2008, which Purchaser assumes and agrees to pay but not subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Seller assumes.

2.  Purchaser has received a copy of the Commitment for Title Insurance from Seller issued August 22, 2007, and has examined it and agrees to accept the Property subject to those exceptions listed therein.

**EXHIBIT "C"**
**PURCHASE AND SALE AGREEMENT**

# AMENDMENT OF PURCHASE AGREEMENT

THIS AMENDMENT of the Purchase and Sale Agreement ("Amendment") is effective as of January 14, 2008, regarding that certain Purchase and Sale Agreement of even date herewith, for the purchase of real estate located at 6401 Bandera Road, Leon Valley, Texas (the "Agreement") described on Exhibit "A" attached hereto, (the "Property") by and between Happy State Bank, a Texas Banking Association d/b/a GoldStar Trust Company, acting solely in its capacity as trustee for the benefit of the bondholders of Church on the Rock - San Antonio ("Seller") and Redemption Tabernacle Ministries, Inc., a Texas non-profit corporation, ("Purchaser"), agree as follows:

## AGREEMENT

NOW THEREFORE, in consideration of the mutual agreements set forth below, the receipt and sufficiency of which is acknowledged by each party, the parties hereby agree as follows:

(1)    Section 4(A)(1) and the first paragraph of Section 4(A)(2) of the Agreement are hereby amended to read as follows:

"Earnest Money in the amount set forth in the above Paragraph is due within five business days following Seller's acceptance of this Agreement, and is payable in the form of a certified or cashier's check made payable to the order of Stewart Title Guaranty, as Escrow Agent. The Earnest Money shall be held by the Escrow Agent in a non-interest bearing account unless requested otherwise in writing by Purchaser."

(2)    Section 8:  The third sentence of the first paragraph is hereby deleted.

The last sentence of the second paragraph is amended to provide that the outside closing date is March 1, 2008.

(3)    Section 12 shall be amended to read as follows:  "The possession of the Property and the keys shall be delivered to Purchaser upon closing and receipt by Seller of the balance of the Purchase Price in cleared funds."

(4)    Section 59 shall be amended to read as follows:  "Purchaser acknowledges that the current zoning on the Property does not allow for use of the Property as a church.  Seller, at Seller's expense, will use Seller's best efforts to rezone the Property for use as a church prior to closing.  Closing may be extended in accordance with the provisions of Paragraph 8, above, to allow Seller time to obtain the rezoning.  If Seller is unable to obtain zoning compatible with church usage prior to Closing, Purchaser may, in Purchaser's sole discretion, either (a) terminate this Agreement by written notice to Seller and the Earnest Money will be returned to Purchaser; or (b)

accept the Property with its current zoning and waive any objection to the zoning of the Property."

(5)    This Amendment may be executed in multiple counter parts and facsimile thereto binding all parties to this Amendment thereto.

Agreed to this 16th day of January, 2008.

SELLER:

**GoldStar Trust Company, as Trustee for the Benefit of the Bondholders of Church on the Rock - San Antonio**

By: _Wanda Perdue_
    Wanda Perdue, its authorized representative

PURCHASER:

**Redemption Tabernacle Ministries, Inc.**

By: _____
    Darryl W. Crain, its authorized representative

accept the Property with its current zoning and waive any objection to the zoning of the Property."

(5)    This Amendment may be executed in multiple counterparts and facsimile thereto binding all parties to this Amendment thereto

Agreed to this _____ day of January, 2008.

SELLER:

**GoldStar Trust Company,** as Trustee for the **Benefit of the Bond**holders of Church on the **Rock - San Antonio**

By: _____
      Wanda Perdue, its authorized representative

PURCHASER:

**Redemption Tab**ernacle Ministries, Inc.

By: _____
      Darryl W. Crain, its authorized representative

## AMENDMENT OF PURCHASE AGREEMENT

THIS AMENDMENT of the Purchase and Sale Agreement ("Amendment") is effective as of January 14, 2008, regarding that certain Purchase and Sale Agreement of even date herewith, for the purchase of real estate located at 6401 Bandera Road, Leon Valley, Texas (the "Agreement") described on Exhibit "A" attached hereto, (the "Property") by and between Happy State Bank, a Texas Banking Association d/b/a GoldStar Trust Company, acting solely in its capacity as trustee for the benefit of the bondholders of Church on the Rock - San Antonio ("Seller") and Redemption Tabernacle Ministries, Inc., a Texas non-profit corporation, ("Purchaser"), agree as follows:

## AGREEMENT

NOW THEREFORE, in consideration of the mutual agreements set forth below, the receipt and sufficiency of which is acknowledged by each party, the parties hereby agree as follows:

(1)    Section 4(A)(1) and the first paragraph of Section 4(A)(2) of the Agreement are hereby amended to read as follows:

"Earnest Money in the amount set forth in the above Paragraph is due within five business days following Seller's acceptance of this Agreement, and is payable in the form of a certified or cashier's check made payable to the order of Stewart Title Guaranty, as Escrow Agent. The Earnest Money shall be held by the Escrow Agent in a non-interest bearing account unless requested otherwise in writing by Purchaser."

(2)    Section 8:  The third sentence of the first paragraph is hereby deleted.

The last sentence of the second paragraph is amended to provide that the outside closing date is March 1, 2008.    due
                                                           March 14, 2008

(3)    Section 12 shall be amended to read as follows:  "The possession of the Property and the keys shall be delivered to Purchaser upon closing and receipt by Seller of the balance of the Purchase Price in cleared funds."

(4)    Section 59 shall be amended to read as follows: "Purchaser acknowledges that the current zoning on the Property does not allow for use of the Property as a church.  Seller, at Seller's expense, will use Seller's best efforts to rezone the Property for use as a church prior to closing.  Closing may be extended in accordance with the provisions of Paragraph 8, above, to allow Seller time to obtain the rezoning.  If Seller is unable to obtain zoning compatible with church usage prior to Closing, Purchaser may, in Purchaser's sole discretion, either (a) terminate this Agreement by written notice to Seller and the Earnest Money will be returned to Purchaser; or (b)

# EXHIBIT "L"

## LEASE AGREEMENT

THIS LEASE is entered into on the 26th day of August, 2008, by and between the Landlord and the Tenant named below.

### Article I
### Definitions and Contract Basic Provisions

1.1   *Definitions.*

| | | |
|---|---|---|
| (a) | "Landlord": | Happy State Bank, a Texas banking association, d/b/a GoldStar Trust Company, successor to Colonial Trust Company, as Trustee for the benefit of the Bondholders of Church on the Rock - San Antonio. |

(b)   Landlord's address:      P.O. Box 719
                              Canyon, Texas 79015

(c)   "Tenant":               Redemption Tabernacle Ministries, Inc., a
                              Texas non-profit corporation.

(d)   Tenant's address:       8323 Culebra Road
                              San Antonio, TX 78251

(e)   "Premises": The building located at 6401 Bandera Road, San Antonio, Texas, together with the parking area that is directly adjacent to the building, all as more particularly described on Exhibit "A" attached hereto and incorporated herein for all purposes.

(f)   Lease term: Commencing on the 1st day of September, 2008 (the "Commencement Date"), and continuing for twenty-four (24) months.

(g)   Annual Rent: Tenant shall pay to Landlord, without deduction or setoff except as may otherwise be provided in this Lease, an annual rental of $12,000.00 in equal monthly installments of $1,000.00.

(h)   Permitted use: Operation of a church facility and a daycare facility.

R:\GOLDSTAR\DEFAULT\CHURCH ON THE ROCK - SAN ANTONIO\REDEMPTION TABERNACLE SALE & LEASE\Lease.wpd

## Article II
## Granting Clause

2.1     In consideration of Tenant's obligation to pay Rent and of the other terms, covenants and conditions hereof, Landlord leases to Tenant, and Tenant takes from Landlord, the Premises described in Section 1.1 (e) for the Term described in Section 1.1 (f), upon all the terms and conditions set forth in this Lease.

## Article III
## Acceptance of Premises

3.1     *Occupancy deemed compliance.* By occupying the Premises, Tenant shall be deemed to have accepted them and to have acknowledged that they comply fully with Landlord's covenants and obligations under this Lease, and shall have waived to the fullest extent of the law all obligations of Landlord to maintain the Premises, except as expressly set forth herein.

## Article IV
## Rent

4.1     Tenant shall pay to Landlord at the address set forth in 1.1 (b) or at any other address as may be specified by Landlord in writing, Rent in monthly installments in the amounts specified in Section 1.1 (g). The first monthly installment shall be due and payable on or before the Commencement Date, and subsequent installments shall be due and payable on or before the first day of each succeeding calendar month during term of this Lease. If the Commencement Date is not the first day of a calendar month, Tenant shall, on or before that date, pay as Rent for the balance of that month a percentage of the rent specified for the first full calendar month. The percentage shall be determined by a fraction, the numerator of which is the number of days from the Commencement Date to the end of the calendar month within which that date falls, and the denominator of which is the total number of days in the month.

4.2     In addition to the rent above, Tenant shall pay to Landlord monthly the pro-rated amount of the expenses incurred by Landlord in insuring the Premises against casualty losses.

## Article V
### Use and Care of the Premises

5.1    *Use.* The Premises may be used only for the purposes specified in Section 1.1 (h). Provided, however, as is more specifically set forth in Section 21.13 below, Landlord makes no warranty as to whether or not Tenant is permitted by law to utilize the Premises as a church.

5.2    *Compliance with insurance requirements.* Tenant shall not keep anything within the Premises or use the Premises for any purpose which invalidates any insurance policy carried on the Premises. All property kept, stored or maintained within the Premises shall be at Tenant's sole risk.

5.3    *Care of Premises.* Tenant shall take good care of the Premises and keep them free of waste at all times.

5.4    *Licenses and Laws.* Tenant shall obtain at its expense any permit or license required for Tenant's operation or use of the Premises. Tenant shall comply with all governmental or quasi-governmental laws, rules, orders, ordinances and regulations applicable to the Premises

## Article VI
### Maintenance and Repair of the Premises

6.1    *Landlord's Obligations.* Except as otherwise provided in this Lease, Landlord shall have no obligation to maintain, replace or repair the Premises.

6.2    *Tenant's Obligations.* At its sole cost and expense, Tenant shall keep the Premises in good, clean and habitable condition. Tenant shall make all needed repairs and replacements, except for those required of Landlord under Article XII. Tenant shall repair and replace all lighting, heating, air-conditioning, plumbing and other electrical, mechanical, and electromotive installation, equipment, and fixtures, make all utility repairs in ducts, conduits, pipes, and wiring, and clear any sewer stoppage located in, under, and above the Premises.

If Tenant does not make a required repair within ten (10) days after it receives Landlord's written notice of the necessity of the repair, Landlord may make the repair without liability to Tenant for resulting loss or damage to Tenant's property or business. In that event, Tenant shall pay to Landlord upon demand, as additional Rent under this Lease, the cost of repairs, and all other costs incurred by Landlord in regard thereto.

6.3   *Surrender of Premises.* Upon the expiration of this Lease, Tenant shall surrender the Premises to Landlord in good condition, excepting reasonable wear and tear and losses required to be restored by Landlord under Article XII.

## Article VII
### Alterations

7.1   *Tenant installations.* Tenant shall not make any alterations, additions, or improvements to the Premises without Landlord's prior written consent, except for the installation of unattached, movable fixtures which may be installed without drilling, cutting or otherwise altering the Premises. All alterations, additions, improvements and fixtures (other than Tenant's unattached, movable furniture and office equipment) made or installed by either party upon the Premises shall remain upon and be surrendered with the Premises and shall become the property of Landlord upon termination of this Lease.

7.2   *Construction work.* All construction work done by Tenant within the Premises shall be performed in a good and workmanlike manner, in compliance with all governmental requirements. Tenant shall indemnify Landlord and hold it harmless from and against all loss, liability, or damage resulting from Tenant's work, and shall, if requested by Landlord, furnish satisfactory bond or other security against such loss, liability or damage.

## Article VIII
### Landlord's Right of Access

8.1   *Access.* Landlord may enter upon the Premises at any time for the purposes of inspection, repairs, alterations, or to show the Premises to prospective purchasers, lessees, or lenders.

## Article IX
### Utilities

9.1   *Tenant Expense.* Tenant shall promptly pay all charges for electricity, water, gas, telephone service, sewerage service, and other utilities furnished to the Premises.

9.2   *Interrupted Service.* Landlord shall not be liable for any interruption in utility services.

### Article X
### Indemnity and Public Liability Insurance

10.1  *Release and Indemnity.*  Landlord shall not be liable to Tenant, its employees, agents, or visitors, or any other person for injury to person or damage to property on or about the Premises.  TENANT SHALL INDEMNIFY LANDLORD AND HOLD IT HARMLESS FROM AND AGAINST ALL LOSSES, EXPENSES, OR CLAIMS ARISING OUT OF SUCH DAMAGE OR INJURY.

10.2  *Public Liability Insurance.*  Tenant shall obtain and maintain throughout the term of this Lease a policy or policies of insurance, at its sole cost, insuring both Landlord and Tenant against all claims, demands, or actions arising out of or in connection with Tenant's use or occupancy of the Premises or by the condition of the Premises.  Each policy shall have a limit of at least one million ($1,000,000) dollars for injuries to or death of any one person, one million ($1,000,000) dollars for any one accident or disaster, and five hundred thousand ($500,000) dollars for damage or destruction to property, and shall be written by an insurance company satisfactory to Landlord. Tenant shall obtain a written obligation from each insurance company that it will notify Landlord at least ten (10) days before the insurance is canceled The policies or duly executed certificates of insurance shall be promptly delivered to Landlord, and all required renewals thereof shall be delivered to Landlord at least thirty (30) days before the respective policy terms expire.

### Article XI
### Non-liability for Certain Damages

11.1  Neither Landlord nor its agents or employees shall be liable to Tenant for any injury to persons or damage to property caused by the Premises becoming out of repair, by defect or failure of any structural element of the Premises or of any equipment, pipes, or wiring, by broken glass, by the backing up of drains, or by gas, water, steam, electricity, or oil leaking, escaping, or flowing into the Premises.

### Article XII
### "AS IS" Condition

12.1  Landlord and Tenant agree that Tenant is taking the Property "AS IS" with any and all latent and patent defects and that there is no warranty by Landlord that the Property is fit for a particular purpose.  Tenant acknowledges that it is not relying upon any representation, statement or other assertion with respect to the Property condition, but is relying upon its

examination of the Property. Tenant takes the Property under the express understanding that there are no express or implied warranties.

### Article XIII
### Right to Consult Counsel

13.1  **Tenant hereby acknowledges that Tenant has had the full opportunity to consult an attorney or legal counsel, or any other counsel desired, in regards to this Lease prior to signing this Lease. Tenant further acknowledges that Todd W. Boykin and the Firm of Burdett, Morgan, Williamson & Boykin, L.L.P. do not represent Tenant in this matter.**

### Article XIV
### Damages by Casualty

14.1  *Notice.* Tenant shall give immediate written notice to Landlord of any damage caused to the Premises by fire or other casualty.

14.2  *Repair or termination.* If the Premises are damaged or destroyed by fire or other casualty insurable under standard fire and extended coverage insurance and Landlord does not elect to terminate this lease as provided below, it shall proceed with reasonable diligence and at its expense to repair or rebuild the Premises. Landlord may either terminate this lease or proceed to repair or rebuild the Premises if: (a) the building is destroyed or substantially damaged by a casualty not covered by Landlord's insurance; (b) the building is destroyed or made untenantable to the extent of over 10% of the floor area by a casualty covered by Landlord's insurance; or (c) the holder of a mortgage, deed of trust, or other lien on the Premises at the time of the casualty elects, under such particular lien, that all or part of Landlord's insurance proceeds be used in satisfaction of all or part of the indebtedness secured by the lien; or (d) Landlord concludes that rebuilding the building is not in the best interests of its Bondholders. Landlord shall give written notice to Tenant of the election within sixty (60) days after the casualty occurs. If Landlord elects to rebuild or repair it shall proceed to do so with reasonable diligence and at its expense

14.3  *Restoration work.* Landlord's above obligation to rebuild or repair shall be limited to restoring the Premises building to substantially the same condition as before the casualty, exclusive of any alterations, additions, improvements, fixtures, and equipment installed by Tenant.    Promptly after Landlord completes the work, Tenant shall proceed with reasonable diligence and at its expense to restore, repair, and replace all alterations, additions, improvements, fixtures, and equipment installed by or belonging to Tenant.

14.4   During any period of reconstruction or repair, Tenant shall continue to operate its business within the Premises building to the extent practicable. During the period from occurrence of the casualty until Landlord's completion of the repairs, the Rent shall be reduced by an amount that is fair and reasonable under the circumstances.

## Article XV
### Assignment and Subletting

15.1   *Consent required; non-waiver.*   Tenant shall not assign or in any other manner transfer this Lease or any estate or interest therein, sublet all or any part of the Premises, or grant a license, concession, or other right of occupancy of any portion of the Premises without Landlord's prior written consent. Landlord's consent to one or more assignments or sublettings shall not operate as a waiver of its rights as to any subsequent assignment or subletting.

15.2   *Leasehold mortgages.*   Tenant shall not mortgage, pledge, or otherwise encumber its interest in this Lease or in the Premises.

15.3   *Landlord assignment.*   If Landlord assigns and transfers its interest in this Lease and in the building containing the Premises to a person expressly assuming its obligations under the Lease, Landlord shall thereby be released from all further obligations hereunder, and Tenant shall look solely to Landlord's successor in interest for performance of the obligations. Landlord may assign and transfer to the successor in interest any security given by Tenant to secure performance of its obligations under this Lease, and Landlord shall thereby be discharged of all further related obligations.

## Article XVI
### Taxes

16.1   *Personal property taxes.*   Tenant shall be liable for all taxes levied against personal property placed by it in the Premises.

16.2   *Real estate taxes.*   Landlord shall pay or cause to be paid all general real estate taxes, general and special assessments, and other governmental charges levied against the Premises for each tax year.

E:\GOELD\LABS\DEFAULT PA\CHURCH DM THE ROCK - SAN ANTONIO\2008\Lease to Redemptive Practices\Wi.lease.wpd

### Article XVII
### Default by Tenant and Landlord's Remedies

17.1   *Tenant's Default.*  The following events shall be deemed to be events of default by Tenant under this Lease:

   (1)   Tenant fails to pay any installment of Rent or any other obligation hereunder involving the payment of money and the failure continues for five (5) days after the date such payment is due.

   (2)   Tenant fails to comply with any term, provision or covenant of this lease, other than as described in subsection 18.1(1) above, and does not cure the failure within fifteen (15) days after written notice thereof to Tenant.

   (3)   Tenant or any guarantor of its obligations under this Lease becomes insolvent, makes a transfer in fraud of creditors, or makes an assignment for the benefit of creditors.

   (4)   Tenant or any guarantor of its obligations under this Lease files a petition under any section or chapter of the National Bankruptcy Act, as amended, or under any similar federal or state law or statute, or Tenant or any guarantor of its obligations under this Lease is adjudged bankrupt or insolvent in proceedings filed against Tenant or any guarantor of its obligations under this Lease.

   (5)   A receiver or Trustee is appointed for the Premises or for all or substantially all of the assets of Tenant or of any guarantor of its obligations under this Lease.

   (6)   Tenant deserts, vacates, or commences to desert or vacate, the Premises.

   (7)   Tenant does or permits to be done anything that creates a lien upon the Premises.

17.2   *Landlord's Remedies.*  If any of the above events of default occur, Landlord may pursue any of the following alternative remedies, either singly or in conjunction with any other remedies allowed by law:

(a) Without notice or demand, Landlord may take any action or actions permissible at law to insure performance by Tenant of its covenants and obligations under this Lease. If Tenant deserts or vacates the Premises, Landlord may enter and take possession of the Premises and continue to

demand from Tenant the monthly Rent and other charges provided for in this Lease, without any obligation to relet

(b) Landlord may terminate this Lease by giving written notice to Tenant. In such event, Tenant shall immediately surrender the Premises to Landlord. If Tenant fails to do so, Landlord may, without prejudice to any other remedy it may have for possession or unpaid Rent, enter and take possession of the Premises and evict Tenant and any other person who is occupying all or a portion of the Premises without being liable for prosecution or any claim for damages. Tenant hereby waives any statutory requirement of prior written notice for filing eviction or damage suits for non-payment of Rent.

© Landlord may keep this Lease in full force and effect and sue month to month for the Rent as it comes due (or sue for past due Rent on any other interval Landlord chooses).

(d) Landlord may repossess the Premises and accelerate all remaining Rent due, and collect all past due and future Rent under the Lease. However, Landlord must discount the accelerated Rent to present value and reduce the accelerated Rent by the reasonable market value of the Premises during the remainder of the Lease term.

(e) Landlord may seek any and all remedies provided at common law or otherwise, including the right to receive common law actual damages.

17.3    *Attorney's fees.* If Landlord is required on account of Tenant's default under this Lease, to hire an attorney to represent, enforce, or defend Landlord's rights or remedies under this Lease , Tenant shall pay all reasonable attorney's fees incurred by Landlord in that connection.

## Article XVIII
### Holding Over

18.1    If Tenant remains in possession of the Premises after this Lease expires and without executing a new lease, it shall be deemed to be occupying the Premises as a tenant from month to month at a rental equal to 150% of the Rent provided herein. During the period of any month-to-month occupancy of the Premises by Tenant, Tenant shall be subject to all conditions, provisions and obligations of this Lease to the extent they are applicable to a month-to-month tenancy

C:\2009\DEFAULT\CHURCH ON THE ROCK, SAN ANTONIO 2008\Lease in Redemption 1.doc\adoc\Lease.wpd

## Article XIX
### Subordination

19.1    Tenant accepts this lease subject and subordinate to any existing or subsequent mortgage, deed of trust, or other lien, or its renewal or extension, upon the Premises. The mortgagee may at any time subordinate the mortgage, deed of trust, or other lien to this Lease. Landlord shall have full and irrevocable power and authority to subordinate this Lease to any future mortgage, deed of trust, or other lien placed upon the Premises, and Tenant shall upon demand execute all further instruments requested by Landlord subordinating this Lease.

## Article XX
### Notices

20.1    *Written Notice.* Any notice required or permitted under this Lease shall be in writing and shall be deemed delivered when actually received by the designated addressee. Any notice shall be addressed to the parties at their respective addresses as set forth in Section 1.1 (or, if Landlord elects, to Tenant at the Premises), or at any other address previously designated by Landlord and Tenant in writing.

## Article XXI
### Miscellaneous

21.1    *Relationship of parties.* Nothing contained in this Lease shall be deemed or construed by the parties, or by a third party, to create the relationship of principal and agent, of partnership, or of a joint venture between them other than the relationship of landlord and tenant.

21.2    *Independent obligations.* Tenant shall not for any reason withhold or reduce its required payments of Rent and other charges under this Lease. Landlord's obligations under this Lease are independent of Tenant's obligations, except as expressly provided otherwise. In this regard, if Landlord commences proceedings against Tenant for nonpayment of Rent or any other sum due and payable under this Lease, Tenant shall not interpose any counterclaim or other claims against Landlord. If Tenant does so, Landlord may, in addition to its other lawful remedies, move to have the counterclaim or other claim severed out of the proceedings. The proceedings may then proceed to final judgment separately and apart from, and without consolidation with or reference to, the status of the counterclaim or other claim.

K:\GOLDSTAR\DEFAULT\CHURCH ON THE ROCK - SAN ANTONIO\2008 Lease to Redemption Tabernacle\Lease.wpd

21.3    *No recourse.* Landlord's liability to Tenant for any default under this Lease shall be limited to the sale proceeds on execution of Landlord's interest in the Premises. Landlord shall not be personally liable for any deficiency, except that it shall remain personally liable to account to Tenant for any security deposited under this Lease. This clause shall not be deemed to limit or deny any remedy, which does not involve Landlord's personal liability, that Tenant may have in case of Landlord's default.

21.4    *Non-waiver.* A waiver of either party of one or more covenants, terms, or conditions of this Lease shall not be construed as a waiver of a subsequent breach of the same covenant, term, or condition  Landlord's consent to or approval of any act by Tenant shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

21.5    *Force majeure.* Whenever a provision of this Lease prescribes a time period for Landlord or Tenant to take an action, Neither Landlord nor Tenant shall be liable or responsible for, and there shall be excluded from the computation of that period, all delays due to strikes, riots, acts of God, shortages of labor or materials, war, governmental laws, regulations, restrictions, or other causes that are beyond the party's reasonable control.

21.6    *Estoppel certificate.* Tenant shall, at Landlord's request, execute and deliver to Landlord a statement in recordable form certifying that the Lease is unmodified and in full force and effect (or if there have been modifications, that they are in full force and effect.)

21.7    *Governing law; partial validity; venue.*    The interpretation, validity, performance, and enforcement of this Lease shall be governed by the laws of the Sate of Texas. If any provision is held to be invalid or unenforceable, the validity and enforceability of the remaining provisions shall not be affected thereby. Venue for any action under this Lease shall be in the county in the Premises are located.

21.8    *Headings.* Headings in this Lease are for convenience and reference only and shall be used to limit, amplify, or otherwise construe its provisions.

21.9    *Number; gender.* Whenever used in this Lease, the singular number shall include the plural, and words of any gender shall include each other gender.

21.10  *Binding effect.* The terms, provisions, and covenants of this Lease shall be binding upon and inure to the benefit of both Landlord and Tenant and their respective heirs, successors in interest, and legal representatives, except as otherwise expressly provided herein.

C:\GOLDSTAR\DEFAULT\CHURCH ON THE ROCK - SAN ANTONIO\2008 Lease to Redemption Tabernacle\Lease.wpd

21.11 *Modification; entire agreement.* This Lease contains the entire agreement between the parties. No other agreements shall be effective to change, modify, or terminate this Lease, in whole or in part, unless in writing and duly signed by both Landlord and Tenant.

21.12 *Counterparts.* This Lease may be executed in two or more counterparts, each of which shall e deemed an original but al of which together shall constitute one and the same instrument.

21.13 *Zoning Litigation.* Tenant acknowledges that the City of Leon Valley contends that the current zoning on the Property does not allow the Property to be used as a church. Upon the execution of this document and the Second Amendment of Purchase Agreement, as defined in Section 21.14, the parties contemplate the filing of a lawsuit in Bexar County, in order to rezone the Property (the "Zoning Litigation").

21.14 *Termination related to Zoning Litigation.* The parties hereto have entered into that certain Purchase and Sale Agreement, dated January 4, 2008, as amended by that certain Second Amendment of Purchase Agreement (collectively, "Purchase Agreement"). The closing of the purchase pursuant to the Purchase Agreement is pending on the outcome of the Zoning Litigation. In the event that Purchaser defaults hereunder or the Purchase Agreement is otherwise terminated according to its terms, Landlord may terminate this Lease. In the event that the Zoning Litigation is resolved by a court of competent jurisdiction in a manner that does not allow for church use on the Property prior to the end of the Term of the Lease and Tenant elects not the waive the zoning issue, then the Lease will terminate. In the event that the Zoning Litigation is resolved by a court of competent jurisdiction in a manner that does allow for church use on the Property prior to the end of the Term of the Lease or if Tenant elects to waive the zoning issue, then this Lease will terminate by merger of title on the closing of the sale according to the Purchase Agreement.

Executed as of the $\underline{26^{th}}$ day of August, 2008.

LANDLORD: Happy State Bank, a Texas banking association, d/b/a GoldStar Trust Company, successor to Colonial Trust Company, as Trustee for the benefit of the Bondholders of Church on the Rock - San Antonio.

By: _Wanda Perdue_

Wanda Perdue, Authorized Representative

TENANT: Redemption Tabernacle Ministries, Inc., a Texas non-profit corporation

By: _____

Darryl W. Crain, Owner

EXHIBIT "A"
PROPERTY DESCRIPTION

Lots 3 and 4, SENECA ESTATES SUBDIVISION UNIT 7, in the City of Leon Valley, situated in Bexar County, Texas, according to plat thereof recorded in Volume 9571, Page 85, Deed and Plat Records of Bexar County, Texas.

# CERTIFIED RESOLUTION

Adopted By:

## REDEMPTION TABERNACLE MINISTRIES

8323 Culebra Road
San Antonio, TX 78251

The undersigned, in the capacity indicated below, does hereby certify that on the ___10th___ day of ___March___, 2008, at a meeting of the governing board of Redemption Tabernacle Ministries duly called and held under the Articles of Incorporation, Bylaws and/or ordinances of Redemption Tabernacle Ministries, upon motion duly made and seconded, the following resolutions were adopted:

BE IT RESOLVED that REDEMPTION TABERNACLE MINISTRIES, a Texas non-profit corporation ("Redemption Tabernacle"), is hereby authorized to execute the attached Lease Agreement with Happy State Bank, a Texas banking association, d/b/a GoldStar Trust Company, successor to Colonial Trust Company, as Trustee for the benefit of the Bondholders of Church on the Rock - San Antonio ("GoldStar"), and to take any and all other actions necessary to lease from GoldStar that certain property located at 6401 Bandera Road, San Antonio, Texas, together with the parking area that is directly adjacent to the building, and more fully described as Lots 3 and 4, SENECA ESTATES SUBDIVISION UNIT 7, in the City of Leon Valley, situated in Bexar County, Texas, according to plat thereof recorded in Volume 9571, Page 85, Deed and Plat Records of Bexar County, Texas (the "Property");

BE IT FURTHER RESOLVED, that the following individual in the capacity stated therein of Redemption Tabernacle:

Darryl W. Crain, Authorized Representative

is hereby empowered, authorized and directed to execute, or cause to be executed on behalf of Redemption Tabernacle, the above-referenced Lease Agreement and any and all other documents and do all such things which, in his judgment and discretion, may be reasonably necessary to validly effect the lease of the Property by Redemption Tabernacle from GoldStar;

BE IT FURTHER RESOLVED, that the above designated representative of Redemption Tabernacle is authorized to ratify the Purchase and Sale Agreement of January 4, 2008 and to execute the attached Amendment of Purchase Agreement, and to take any and all other actions necessary to purchase the Property from GoldStar, and to execute any and all other documents and

K:\GOLDSTAR\DEFAULT\CHURCH ON THE ROCK - SAN ANTONIO\2008 Sale to Redemption Tabernacle\Certified Resolution.Redemption Tabernacle.wpd

do all such things which, in his judgment and discretion, may be reasonably necessary to validly effect the purchase and sale of the Property by Redemption Tabernacle from GoldStar;

RESOLVED FINALLY, that the above designated representative of Redemption Tabernacle is authorized to take any other action including executing documents deemed necessary or desirable to accomplish any of the foregoing actions, his signature to conclusively establish the approval and ratification by Redemption Tabernacle of the documents to be executed and the actions so taken.

Darryl W. Crain, Authorized Representative

ATTENTION NOTARY PUBLIC

SWORN STATEMENT AND ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____

     BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared Darryl W. Crain, Authorized Representative of Redemption Tabernacle, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated, and the said Authorized Representative of Redemption Tabernacle, being by me first duly sworn, upon oath did further depose and state:

     As Authorized Representative of REDEMPTION TABERNACLE MINISTRIES that the above and foregoing is a true and correct copy of resolutions duly passed at said meeting; that the requisite number of the members and governing board of Redemption Tabernacle were present at said meeting and that the above and foregoing resolutions were adopted in conformity with the laws and government of said Redemption Tabernacle; that no outside agency, local or district, national or state, in anywise has an interest in, control of its property, and the creation of the liens referred to in said resolution does not require the approval or consent of any person or organization other than Redemption Tabernacle's resolutions described above.

_____
Darryl W. Crain, Authorized Representative

     SUBSCRIBED, ACKNOWLEDGED AND SWORN TO BEFORE ME this _____ day of _____, 2008.

_____
Notary Public, State of _____