UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE ELIJAH GROUP, INC. | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. SA08CA0907 |
| | § | |
| THE CITY OF LEON VALLEY, TEXAS | § | |
|     Defendant | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR FINAL SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DEFENDANT THE CITY OF LEON VALLEY, TEXAS, (hereinafter referred to as "Defendant" or "City") in the above styled cause and files this Defendant's Response to Plaintiff's Motion for Final Summary Judgment [Docket 35] and would show the court as follow:

**I.**
**OBJECTIONS TO PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE**

1.    Defendant objects to Plaintiff's Motion for Summary Judgment Evidence Exhibits A, I and J with an objection of optional completeness as they are only excerpts.  Further, the transcripts are not proven up as true and accurate copies of official City hearings.  The court reporter who transcribed the records did not swear and sign them as true and accurate transcriptions.  Each transcription notes various different "unidentified" speakers, and therefore are not true and accurate transcriptions of the hearings.  They are therefore improper summary judgment evidence under Fed. R. Civ. P. 56(e).  They also constitute hearsay and Defendant objects to the use of such evidence.

2.      Defendant objects to Plaintiff's Exhibit U as the photographs are not sworn, do not note their address, location, or which zone they are allegedly in.  Exhibit U to Plaintiff's Motion for Final Summary Judgment is not competent summary judgment evidence under Fed. R. Civ. P. 56(e) and, given the lack of context to support the photos, either sworn or unsworn, they are irrelevant.  Defendant objects to the use of such evidence.

3.      Irrespective of the Defendant's objection to Plaintiff's exhibits, the submission of the Plaintiff's Motion for Final Summary Judgment and Defendant's Motion for Summary Judgment, filed on the same day, both parties have essentially established there is no genuine issue of material fact which is in dispute.  The summary judgment evidence speaks for itself and the only true disputes in this case are questions of law.

**II.**
**SUMMARY RESPONSE**

4.      The Plaintiff takes selective portions of the facts in this case and attempts to weave an inaccurate picture of the circumstances surrounding this controversy.  However, a full analysis of the facts and the law result in only one conclusion; the City's zoning regulations are proper.  The City created a retail corridor running through the middle of the City and attempted to focus retail use along that corridor.  Such a focus is a legitimate governmental purpose and entirely consistent with long standing zoning principals.  As the makeup of the City changes over the years since the original building at 6401 Bandera Road, the City made a conscious effort to focus more heavily on the retail nature of the corridor.

5.      Church use, which the City decided were more akin to commercial in their effects on the City in the 2007 zoning changes, were permitted as a matter of right in any B-3 zone, but were excluded from the B-2 retail corridors.  Prior to the 2007 zoning amendments, church uses were never allowed as a matter of right in B-2 or B-3, only by specific use permit.  Contrary to the

Plaintiff's assertions and desires, the Plaintiff is not entitled to locate within any zone it wishes simply because it is a religious organization.[1]    The exclusion of church use from the retail corridor is not a violation of the Plaintiff's Free Exercise rights.    Church use is inconsistent with the retail purpose of the corridor.    Numerous alternate locations exist within the B-3 zones for a church to locate.    Further, the Plaintiff can perform all but one of its desired activities within the B-2 zone as they are similar to retail uses, such as day care use, administrative use, and counseling.    The fact the Taco Cabana, a fast food restaurant and drive through with an occupancy of less than forty, is permitted to locate within the B-2 retail zone and the Plaintiff is not in no way equates to any discrimination or unequal treatment towards the Plaintiff.

6.    The Plaintiff is less concerned about religious freedom, the legal precedent of what it is requesting or the effects of its request on the City and more focused on its own economic position.    Gold Star Trust Company ("the Bank"), the entity funding the Plaintiff's lawsuit and the driving force behind the controversy, is also primarily concerned with its own bottom line as opposed to any legitimate concern for preventing any Free Exercise violations.    The Bank foreclosed on the 6401 Bandera Road property well over a year in advance of the Plaintiff moving in.    Prior to any religious organization being involved, the Bank was aware the non-conforming church use lapsed.    Nonetheless, the Bank specifically targeted churches to sell the property to in order to maximize the purchase price.    The Plaintiff entered into a purchase agreement knowing full well the property could not be used for church services.    Yet the Plaintiff moved in anyway and began conducting church services even after the Bank's request to rezone had been denied.    Then, AFTER it had moved in to Bandera Road and had filed this lawsuit, it

---

[1] As articulated in *Petra Presbyterian Church v. Village of Northbrook,* 489 F.3d 846, 851 (7th Cir. 2007), the ban on churches in a particular zone cannot, in itself, constitute a substantial burden on religion, because "then every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA." *Id.* at 851. As a result, simply because the Plaintiff is excluded from a particular zone, does not give rise to a Free Exercise cause of action.

voluntarily relinquished a location where it could conduct church services legally.  Any law or regulation the Plaintiff disagrees with, the Plaintiff believes it can ignore, simply because it is a religious organization.  Such is not the protection of RLUIPA, TxRFRA or the First Amendment.

**III.**

**NO EQUAL TERMS VIOLATION OR DISCRIMINATORY TREATMENT**

7.     Neither the Plaintiff's facial or as-applied challenges to the City's zoning regulations is supported by the facts or the law.  The City's zoning classification is constitutional on its face as the differences in uses permitted in B-2 versus B-3 zones are motivated by the retail nature of the use.  Contrary to the Plaintiff's assertion, the Plaintiff has to establish more than simply different treatment with *any* secular assembly use, such as a fast food restaurant.  The Plaintiff's argument was considered and rejected in *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3rd Cir. 2007).

8.      As articulated in *Lighthouse*:

> Lighthouse contends [the granting of the City's motion for summary judgment] was error and urges us to take the position that a plaintiff, asserting a violation of the Equal Terms provision, needs to show nothing more than that the challenged land-use regulation treats one or more nonreligious assemblies or institutions better than a religious assembly or institution, without regard for the objectives of the regulation or the characteristics of the secular and religious comparators. We conclude that the District Court was correct in construing RLUIPA's Equal Terms provision to require a plaintiff to do something more than identify *any* nonreligious assembly or institution that enjoys better terms under the land-use regulation.

> *Id* at 264.

9.     Under *Lighthouse*, the test for determining an Equal Terms violation is not whether the Plaintiff can establish a secular comparator but whether the comparator is similar with regard to the effects based on what is intended to be regulated.  *Id* at 266 (holding Free Exercise jurisprudence "teaches that the relevant comparison for purposes of a Free Exercise challenge to

a regulation is between its treatment of certain religious conduct and the analogous secular conduct that *has a similar impact on the regulation's aims. . .* a regulation will violate the Equal Terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to the *regulatory purpose."*)   To take the Plaintiff's position as true would equate to a RLUIPA violation anytime a religious organization is not permitted to exist in any fashion or use in every single zone in every single city.  Such is not the intent, purpose or result of RLUIPA.

10.     In this case, the City of Leon Valley created a retail corridor along Bandera Road with a 200 foot depth of retail along that corridor.  [Docket 34, Ex. B; Ex. J, Ex. K].  The Bandera Road corridor is THE primary retail corridor in the entire City.  The only other retail area within the entire City is located along Eckhert Road which connects to Bandera Road and naturally flows as part of a continued retail corridor. [Docket 34, Ex. K].  A few scattered and stray retail zones exist sparsely throughout the City in other locations, but none are a concentrated effort for retail and economic development.  The City made an effort to create a retail corridor along Bandera Road and the regulations and purpose of that corridor furthers a legitimate means of promoting economic development within the City.  Additionally, the City ensured there were numerous other locations available for church use and that churches had someplace to locate.  As a result, the City can regulate uses within that corridor which are not consistent with that purpose without violating RLUIPA.

11.     A comparison of the City's Zoning Ordinance further supports its intent to focus retail use (and similar uses with similar effects) along the retail corridor and to keep inconsistent uses out of the corridor.  [Docket 34, Ex. C].  This comparison is non-exhaustive, but attempts to demonstrate the intent behind regulating the different types of uses and the effects of such uses

on the community.  Note that all uses allowed in either O-1, B-1 or B-3 are also allowed in B-3.

As a result, B-3 neighbors can be any use permitted under the other zones.

| Use | B-2 Retail | B-3 Commercial | Comments |
|---|---|---|---|
| | | | |
| Auditorium, Convention Center, meeting facilities | SUP only | SUP only | The SUP permitted use allows the City to regulate whether the specific intended use will conform to the needs of the retail zone or is better placed in the commercial zone better suited for higher congestion. |
| Churches | X | Permitted | Permitted as a matter of right in B-3 but use is inconsistent with the intended concept of a retail corridor. |
| Clinics, dental, or medical | Permitted | Permitted | Typically smaller in nature and consistent with both retail and commercial uses. |
| Clubs or Lodges | SUP only | SUP only | The SUP permitted use allows the City to regulate whether the specific intended use will conform to the needs of the retail zone or is better placed in the commercial zone better suited for higher congestion. |
| Dance Hall | X | SUP only | Dance halls are not retail in nature and are only allowed in B-3 by permitted SUP to ensure it complies with B-3 area uses. |
| Entertainment (both indoor and outdoor) | SUP only | SUP only | The SUP permitted use allows the City to regulate whether the specific intended use will conform to the needs of the retail zone or is better placed in the commercial zone better suited for higher congestion.  The different types of entertainment uses equate to some which may be consistent with a retail corridor concept (such as a game room, or pool hall) and others which are inconsistent such as a large football field. |
| Farm Equipment Sales | X | Permitted | Farm Equipment sales, which are typically larger equipment sales and repair services, such as tractors and trailers, are inconsistent with retail use and better served in the various commercial districts. |

| Feed, Seed, Fertilizer Retail Sales ONLY | Permitted | Permitted | Limiting this use to retail sale only ensures conformity with the retail corridor concept. |
|---|---|---|---|
| Wholesale fish market | X | X | A wholesale fish market is not consistent with a retail corridor and not consistent with commercial but is placed in the industrial zone and then only with an SUP after approval. |
| Flea Market | X | Permitted | A large collection of flea market vendors is inconsistent with the retail corridor concept. The commercial use of the flea market also has additional regulations under section 30.701. |
| Food Processing | X | Permitted | A food processing facility is inconsistent with a retail corridor concept or use. |
| Food Product sales | Permitted | Permitted | Uses are consistent with the retail corridor concept, unless the processing or manufacturing aspects, which are prohibited |
| Day Care facilities, clothing stores, antique shops, Furniture Sales, hardware stores, hobby shops, music stores, pet grooming, pet stores, restaurants (and fast food), retail outlet stores, shoe sales, stamp and/or coin stores, stationary sales, tailor shops, toy stores, | Permitted | Permitted | Uses are consistent with a retail use and retail corridor concept |
| Automotive sales and repair, Kennels, Hotels, Motels, Suite Hotels, Laboratories – both research and testing, lumberyards, | X | Permitted | Uses are inconsistent with retail use or the retail corridor concept and better aligned in the commercial districts. |

| manufacturing, park and rides, Portable building sales, repair shops, Major appliance repair, Warehouse Storage Facilities. | | | |
|---|---|---|---|
| Inns | SUP | Permitted | While larger hotels and motels are prohibited in the B-2 zones, smaller inns are permitted, but only with an SUP to ensure the specific intended use is consistent and operates harmoniously with the surrounding retail uses. |
| Plant Nursery | Permitted | Permitted | Plant Nurseries I are much smaller in nature than the Nurseries, II, III, and IV and are therefore consistent with the retail corridor concept. Nurseries II and III are permitted in B-2 only by use of an SUP with specific restrictions regarding outside storage, screening requirements, and materials acceptable on the property to ensure harmony with the surrounding retail uses. |

12.    The Plaintiff has pointed to absolutely no comparator which, taking into account the regulatory purpose of creating the retail corridor, is treated more favorably than the Plaintiff. The distinguishing characteristic for the retail corridor is whether or not the use is retail in nature or one which could be similar to retail in its effects and furthering the retail purpose. The fact that bookstores, museums, playrooms, and restaurants are permitted in a B-2 zone, while churches are not, is entirely consistent with the retail purpose of the retail corridor. The Plaintiff provides unverified photos (without sworn information as to which zone they are in or when they came into existence) of restaurants, an exercise gym located within a retail strip center, an Avon store, a chiropractor, a coffee shop, and a daycare facility in an attempt to establish some form of Equal Terms violation. However, all of these comparators are not similarly situated given the

regulator purpose and intent. The nature of their uses are retail, there is less occupancy, less congestion, and their purposes further retail goals, as well as feed off each other promoting a retail purpose. The Plaintiff is a one hundred plus congregation and, according to the Plaintiff, is expanding exponentially, increasing congestion, occupancy, and not promoting the retail environment. The comparators listed by the Plaintiff are not comparators at all. They are all either retail oriented in nature or their effects are similar to retail and are permitted.[2]

13.    Additionally, the Plaintiff conveniently forgets that the Zoning Ordinance and the City's policies were refocused in 2007. Numerous uses, including churches, were removed or further restricted within the B-2 retail zone while other uses were classified into the retail zone as being more consistent with the retail corridor concept. [Docket 34, Ex. J]. However, pre-existing uses were permitted to remain. The Plaintiff has not pointed to a single use which is a similarly situated comparator with its desired church use in a retail zone, let alone one which was applied for AFTER the 2007 zoning amendments. The fact that pre-existing uses exist, especially non-conforming ones, which come into existence prior to the refocus by the City and the amendments cannot be used as comparators. If that were the case, governmental entities would never be able to change their minds, policies, or focuses in order to adjust to changing circumstances/times without running afoul of some allegation of unequal treatment. This court should disregard every preexisting, non conforming use as a comparator. This very site would still be a church if that right to use had not been allowed to lapse by the Bank.

14.    The Plaintiff's point to *Chabad of Nova, Inc. v. City of Cooper City*, 533 F.Supp.2d 1220 (S.D.Fla. Jan 16, 2008) for the blanket assertion that there is an Equal Terms violation

---

[2] On page 9 of Plaintiff's Motion for Final Summary Judgment [Docket 35] Plaintiff asserts an Unequal Terms violation because child care facilities are allowed in a B-2 zone while church use is not. However, as explained in an exhaustive manner in Defendant's Motion for Summary Judgment [Docket 34], the Plaintiff, as a religious organization, can and is conducting child care services at that location. Child care services are part of their religious purpose and they are permitted to conduct those activities, which are more aligned with a retail use.

when any assembly is permitted in one zone, but a like religious assembly is not. Again, this position was specifically considered and rejected in *Lighthouse*. 510 F.3d at 264. *Chabad of Nova* gave absolutely no explanation as to the regulatory purpose behind the zoning distinctions, as is present here. Further, the district court in *Chabad of Nova* based its holding on the Equal Term's analysis entirely upon the superficial evaluation of whether the non-religious assemblies permitted in the Business District (a district which prohibited all religious assemblies) met the dictionary definition of "assembly." *Chabad of Nova* ignored the standards set out in *Lighthouse* requiring an analysis of the regulatory purpose, or, at the very least, did not articulate why such analysis would not apply in the opinion itself.

15.    However, *Chabad of Nova, Inc. v. City of Cooper City*, 533 F.Supp.2d 1220 references the district court's opinion on prior summary judgments in that case as *Chabad of Nova, Inc. v. City of Cooper City*, 575 F.Supp.2d 1280 (S.D.Fla. Jul 29, 2008). In that interlocutory opinion, which provided a more detailed analysis than the subsequent opinion, the court noted that the City had a ban of *all* religious assembly uses in the Business District while other assembly uses, such a day care services, were permitted. *Id* at 1293. The district court noted that Cooper City failed to identify any relevant way in which religious assemblies differ from the uses permitted in the Business Districts at all. The court specifically noted "discussion is closely tied to the evaluation of the City's justification for the exclusion of religious assemblies from the Business Districts." *Id* at 1293. This explanation is more closely tied to the *Lighthouse* standard and follows that if the City had property demonstrated a distinction without simply making conclusory statements, the ordinances may have been upheld. This was not a case about creating a specific and defined area for economic development as Leon Valley has done. The only specific difference Cooper City identified was the fact that day care centers are licensed by the

state whereas religious assemblies are not. However the City failed to explain why this particular difference was relevant to the City's interests.

16.    The City of Leon Valley is land locked and has a no ability to expand beyond its 3.5 square miles. [Docket 34, Ex. L, Bates No. Def Co Leon Valley 00580]. It has very limited growth and economic development abilities, which have been reduced over time. The City created a retail corridor where nearly all of its retail zoning exists. The primary purpose of the retail corridor is for a focused retail district for economic development of the City. The City does not have much else it can do. Retail uses, such as day care services, counseling, and administrative offices, are permitted, regardless of the entity (religious or non-religious) performing such services.

17.    As articulate in *Lighthouse* the City is permitted to create a specific type of corridor or zone with a specific regulatory intent and to prevent church use from existing in that zone if it is inconsistent with its purpose. 510 F.3d 253. The City cannot prohibit church use within the specific corridor if the prohibition is not connected with the regulatory purpose. A proper regulation does not violate the Equal Terms provision of RLUIPA as long as the prohibition is properly connected with the regulatory purpose and there are no similarly situated comparators treated differently. *Id* at 264. An analysis of the permitted uses in a B-2 zone shows a clear distinction for the purpose of the retail corridor. Large uses with higher congestion, more occupancy, larger groups coming and going at exactly the same time as opposed to intermediate streams, and uses less retail oriented in their general nature are inconsistent with a retail purpose, are more consistent with a commercial purpose and are therefore regulated into B-3.

18.    Defendant does not waive its objections to Plaintiff's use of unsworn transcriptions of planning and zoning meetings and City Council meetings. However, since the exhibits have

been filed and should the court consider such exhibits; the exhibits themselves demonstrate the City's intended purpose behind placing church use in B-3 zones and not along the Bandera Road B-2 corridor.  Plaintiff's Exhibit I [Docket 35] notes Mr. Burnside purportedly stated that they were concerned about the economic viability of the community, which is a legitimate governmental concern and purpose, and that the Bandera Road corridor was an area they wanted to concentrate business for economic development resources.  [Docket 35, Ex. I, p. 34].  The City is landlocked and cannot expand so it must focus the areas is already has for certain purposes.  [Docket 35, Ex. I, pp.33-34].  Ms. Baird moved to recommend that the City Council deny the Bank's request to rezone, not change the law, to leave it as B-2 and not allow commercial "anything" into the corridor.  [Docket 35, Ex. I, p. 36, lines 2-14].  She noted the recommended denial was to protect and preserve the property rights of the real property owners and other businesses along the corridor as well as the fact the rezoning was not consistent with the Master Plan to keep B-2 retail along the Bandera Road corridor.  [Docket 35, Ex. I, p. 36].  Numerous alternate locations exists for church use within the City and the City felt preserving the retail nature of the corridor, which is a legitimate governmental purpose and well established zoning principal, should control.

19.     The Plaintiff, as a religious organization, is entitled to conduct a variety of religious activities in a B-2 zone which are consistent with the retail purpose.  It is very clear the City is not discriminating against religious organizations in the B-2 zone, as it permits religious organizations to conduct religious uses which are consistent with retail, such as having religious administrative offices in the zone, having day care facilities, and having counseling facilities.  [Docket 34 Ex. A, Crain Depo pp. 29-38].   The only use which is not permitted in a B-2 zone that the Plaintiff's wish to utilize is church use for providing services, which causes more traffic,

congestion, occupancy, and is inconsistent with the retail corridor concept.  The prohibition of church use, as well as the other non-retail uses (dance halls, markets, kennels, hotels, motels, manufacturing, etc.) is consistent with the regulatory purpose of the corridor for the same reasons.  The allowed uses within the retail corridor (i.e. gift shops, hobby shops, hardware stores, music stores, day care facilities, counseling facilities, etc.) are all consistent with the retail use.  There are no similarly situated secular comparators which are treated more favorably than the Plaintiff in violation of RLUIPA.

20.     Numerous alternate locations exist for the Plaintiff or any other church to locate and conduct church services.  The City did not completely ban church use.  In fact, Ms. Baird noted that the City is only made up of two thousand two hundred acres and two hundred thirty-three acres of the total mass of land inside Leon Valley is currently zoned B-3.  Of that the City has over twenty-two plus acres available along Grissom, Poss, Wurzbach near 410 for undeveloped B-3 zones.  [Docket 35, Ex. J, p.15, lines 13-20].   She notes that someone could build any kind of assembly gathering on those properties, as well as existing building which are currently vacant.  The City knows of buildings within the Seawared subdivision, near Lack's.  She also noted a building close to the H.E.B near the West Loop.  The Scaggs Albertson's subdivision also has two vacant buildings which are B-3 and all allow assembly uses and church uses in that location. [Docket 35, Ex. J, pp. 15-16].  In fact, the Plaintiff's Pastor testified he was aware of at least three locations he could utilize for church services.  [Docket 34, Ex A, Crain Depo, p. 243 & p. 247].  Placing church use in the B-3 zone with other like uses and keeping B-2 uses retail in nature does not amount to a violation of the Equal Terms provision or RLUIPA.

21.     What the Plaintiff is actually complaining about is the fact it is being treated similar to other commercial like uses.  The Plaintiff wants to conduct all of its religious activities at a

centralized location, regardless of whether the use is similar or compatible with its surrounding

neighbors. That is what is really going on. The Plaintiff wants to hold whatever religious

activity it wishes on Bandera Road so that it does not have to lease or purchase other property for

different uses. The Plaintiff is not entitled to a centralized set of uses under the law, which are

inconsistent with their surroundings. To hold such would mean that churches are exempt from

all zoning law, everywhere, which is not the purpose of RLUIPA. As the court noted in *Civil*

*Liberties*:

> Otherwise, compliance with RLUIPA would require municipal governments not
> merely to treat religious land uses on an equal footing with nonreligious land uses,
> but rather to favor them in the form of an outright exemption from land-use
> regulations. Unfortunately for Appellants, no such free pass for religious land
> uses masquerades among the legitimate protections RLUIPA affords to religious
> exercise.

*Civil Liberties*, 342 F.3d at 762.

## IV.
## NO SUBSTANTIAL BURDEN

**A.      Substantial Burden**

22.      Under the Substantial Burden prohibition of RLUIPA, regardless of applicability of

federal funds, commerce, or individualized assessments, a plaintiff must establish its religious

practices are substantially burdened by a city's land use regulation. The "substantial burden"

hurdle is high and that determining its existence is fact intensive. *Living Water Church of God v.*

*Charter Tp. of Meridian*, 258 Fed.Appx. 729, 734, 2007 WL 4322157 *5. Government action

that forces an individual to "choose between following the precepts of her religion and forfeiting

benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept

work, on the other hand" imposes a substantial burden on that individual's free exercise of

religion, *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). A land-

use regulation that imposes a substantial burden on religious exercise is one "that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise-including the use of real property for the purpose thereof within the regulated jurisdiction generally-*effectively impracticable*." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir.2003)(Emphasis Added).   Mere inconvenience or expense in performing its religious mission does not amount to a substantial burden. *Id* at 761.

23.     Plaintiff does not suffer from any substantial burden on its religious practice.  Defendant provided an expansive list and arguments of the nonexistence of substantial burden on the Plaintiff's religious practices in its Motion for Summary Judgment, which Defendant incorporates by reference and re-urges.   [Docket 34].   In an attempt to reduce duplicative arguments and citations, and by way of summary only, Defendant notes: 1) the Plaintiff can still conduct numerous religious activities at the 6401 Bandera Road location including counseling, day care services, having administrative offices, and managing its Christian sports league which are all part of its religious mission; 2) the Plaintiff has numerous other locations available to locate for church services nearby (including the areas noted in the City Council meeting, as well as the locations testified to by Pastor Crain in his deposition); and 3) the Plaintiff HAD a location to conduct church services even after it filed this lawsuit on Culebra Road, but voluntarily relinquished the location.   The primary justification by the Plaintiff for the need for that particular building and why the other locations were not feasible was strictly financial.   Under these circumstances, the Plaintiff has not suffered a substantial burden and the regulations do not make the Bandera Road location "effectively impractical" for religious use.   Even one of Plaintiff's own cases, *Love Church v. City of Evanston,* 671 F. Supp. 508 (N.D. Ill. 1987) holds

that a ordinance which places merely a financial burden on a religious organization is not actionable.[3]

24.     The Plaintiff is not entitled to a "perfect fit" as argued in Plaintiff's brief.  [Docket 35, p. 16, Ex. E, pp. 242-248]. Free Exercise jurisprudence does not guarantee a perfect fit between available land and proposed religious purposes. *Congregation Kol Ami v. Abington Tp.*, 2004 WL 1837037 (E.D.Pa. Aug 17, 2004)(citing *Love Church v. City of Evanston,* 896 F.2d 1082, 1086 (7th Cir.1990)("the harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them.")).  Simply because alternate locations may be more expensive within the City does not create a substantial burden on the Plaintiff.[4]  Given the Plaintiff voluntarily abandoned its Culebra Road location (at which it could conduct church services), and that it can office and conduct most of its religious activities at the Bandera Road location, the Plaintiff is not in a "crippled state with no permanent home"  as it would like to assert.  [Docket 35, p. 16].

25.     Free Exercise jurisprudence has consistently held that churches are not permitted to locate anywhere they wish under any circumstances they wish.  *Lighthouse* 510 F.3d at 268. Cost and inconvenience are insufficient to establish any form of substantial burden.  Simply because the Plaintiff feels other locations are more expensive does not mean he is entitled to this one or that the balanced interest of the community and property owners around the Plaintiff

---

[3] Please note that this district court case is one of several cases between Love Church and  the City of Evanston. The court of appeals opinion related to this case and vacating a prior district court opinion is more instructive of the law in the Seventh Circuit. *Love Church v. City of Evanston,* 896 F.2d 1082, 1086 (7th Cir.1990).

[4] *Braunfeld v. Brown,* 366 U.S. 599, 605, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *see also Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston,* 250 F.Supp.2d 961, 987 (N.D.Ill.2003) (holding that "monetary and logistical burdens do not rise to the level of a substantial burden"); *Vision Church v. Village of Long Grove,* 468 F.3d 975, 999 (7th Cir.2006); *Calvary Temple Assembly of God* at *9 (holding that cost and inconvenience do not rise to the level of a substantial burden); *Stuart Circle Parish v. Board of Zoning Appeals of Richmond,* 946 F.Supp. 1225, 1237 (E.D.Va.1996) ("It is well established that there is no substantial burden placed on an individual's free exercise of religion where a law or policy merely 'operates so as to make the practice of [the individual's] religious beliefs more expensive.'") (quoting *Braunfeld v. Brown,* 366 U.S. 599, 605, 81 S.Ct. 1144, 6 L.Ed.2d 563, (1961) (plurality opinion)).

should be disregarded so the Plaintiff can save money.   Only when a regulation makes either the use of the property or the ability to obtain property entirely impractical is the substantial burden hurdle accomplished. The Plaintiff is permitted to conduct its retail similar uses on the Bandera Road corridor and had a location to conduct church services even after this lawsuit was filed. Numerous alternative locations exist for the Plaintiff to conduct such services but the Plaintiff simply wants the "perfect" and most economical location.   Given the interests advanced by the City is maintaining and focusing the retail corridor, the Plaintiff's individual desires for economy must yield to greater good of the City.  Plaintiff has not suffered any substantial burden.

**B.     No Interstate Commerce**

26.     For the first time since the onset of this litigation, the Plaintiff attempts to obtain RLUIPA protection by invoking the "interstate commerce" prong of 42 U.S.C.A §2000cc(a)(2). Under Count 3 of Plaintiff's First Amended Complaint, Plaintiff asserts the imposition of the Substantial Burden  provision of RLUIPA based on an individualized assessment of a land use regulation through  the  City's denial of the Bank's application to rezone property from B-2 to B-3.   [Docket 25 pp. 16-18].   The Plaintiff has not plead application through the use of any interstate commerce.  Defendant did not have the opportunity to challenge such application or conduct discovery over such application.  The pleading deadline in this case has passed.  As a result, the Plaintiff should be prohibited from raising such application at this point in the litigation.

27.     To the extent the court permits the Plaintiff to raise such a claim, the Plaintiff's legal interpretation of the interstate commerce provision of RLUIPA is misplaced and not applicable. RLUIPA is not a regulation of economic activity.   The City's Zoning Ordinance is not an economic regulation either, but a localized land use regulation which limits the uses of particular

pieces of property within City limits. It is not intended or expected to impact interstate commerce by any means. Simply because parties to an arms length transaction are from different states regarding the sale of property does not mean interstate commerce is affected in a way triggering Congresses authority to regulate it. If it were, every real estate transaction and anything connected with that transaction, including any zoning category, would be subject to federal regulation. No interstate commerce is actually impacted by the City's zoning regulation. Simply because the parties themselves chose not to sell or buy without a legislative change in the law to something they desire for a specific use does not make the regulation an impact on interstate commerce. The property can still be sold, regardless of the use restrictions, and all of the Plaintiff's other activities can still occur without a change in zoning. The regulation does not prohibit the sale, the parties individual desires do. Further, the City's zoning regulation does nothing more than limit the use at a particular location. It does not prevent the sale of property by a bank to a church; it just notes that church services have to be held a few blocks away. No impairment or burdens are commerce is actually affected.

28.    It is well established that the Commerce Clause gives Congress authority to "regulate the use of the channels of interstate commerce." *United States v. Lopez,* 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 1995) (citing *United States v. Darby,* 312 U.S. 100, 114, 61 S.Ct. 451, 85 L.Ed. 609 (1941). In addition, under the Commerce Clause, Congress "is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez, supra,* at 558, 115 S.Ct. 1624.

29.    However, such power is not absolute. In *N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893,(1937), the U.S. Supreme Court warned that the scope of the

interstate commerce power "must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." 301 U.S., at 37, 57 S.Ct., at 624; see also *United States v. Darby, 312 U.S. 100,119-20.* (Congress may regulate intrastate activity that has a "substantial effect" on interstate commerce). This is not a case with a land use regulation which prohibits airports anywhere within the City, thereby affecting commerce or the mechanisms for interstate transactions. This is not a regulation limiting the placement of telecommunication towers or devices which affect interstate communication and transactions. This is a use restriction on the Bandera Road retail corridor which places churches outside the corridor and into neighboring B-3 zones. It does not prevent the sale of land or the transfer. To interpret the interstate commerce clause application to be triggered, as the Plaintiff suggests, when any party to a real estate transaction is from a different state and both parties want a change in the law before entering into a real estate sale, would be to read RLUIPA in an unconstitutional manner. When faced with an interpretation challenging the constitutionality of a statute, the court should avoid such an interpretation in favor of a constitutional reading. *Clark v. Martinez,* 543 U.S. 371, 395, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (THOMAS, J., dissenting). To the extent that constitutional avoidance is a worthwhile tool of statutory construction, it is because it allows a court to dispose of an entire case on grounds that do not require the court to pass on a statute's constitutionality. See *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also some other ground upon which the case may be disposed of"); see

also, *e.g., Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 629, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974).

30.    The Plaintiff did not plead an interstate commerce application of RLUIPA and should be precluded from doing so at this stage. However, even if the Plaintiff had plead such a cause, the Plaintiff's reading of the interstate commerce provision leads to an absurd result which would challenge the constitutionality of that provision. The City's zoning regulations do not affect interstate commerce in any way consistent with a constitutional reading of RLUIPA. Even if the Plaintiff could establish the zoning regulation imposed some form of substantial burden upon the Plaintiff, no interstate commerce application is triggered.

**C.    No Individualized Assessment**

31.    The request to rezone property, especially to a zone it has never been, is not an individualized assessment as a matter of law. *Greater Bible Way Temple of Jackson v. City of Jackson*, 733 N.W.2d 734 (Mich. 2007). Defendant incorporates it arguments and citations from its Motion for Summary Judgment. [Docket 34].

32.    Neither of the Plaintiff's cases, *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, (11th Cir. 2004) or *Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978, (9th Cir. 2006), stand for the proposition that denying a request to rezone is an individualized assessment. A rezoning is a change in the law, in this case changing the Bank's property from B-2 retail to B-3 commercial; a classification it had never been. There is no assessment of the particular characteristics of the land for a specific use, but a change of the law. The Plaintiff's cases are distinguishable as they dealt with conditional use permits, which are individualized assessments as to whether particular pieces of property should be granted a use authorized by an already existing zoning category. The only case Plaintiff cites which implicitly holds that

rezoning may be an individualized assessment which can be used under the substantial burden prong, *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir.(Wis.) Feb 01, 2005), is distinguishable as the court notes that under Wisconsin law, "planned unit development ordinances" (PUDs) are a specialized form of zoning ordinance, which differs from traditional zoning in that type, density and placement of land uses and buildings, instead of being detailed and confined to specified districts by local legislation in advance, is determined by contract. *Id* at 898. The entire process of the zoning and any requests to rezone were property and development specific, unlike Leon Valley's traditional district zoning ordinances.  Even the *Sts. Constantine* court noted that the method of rezoning in that case was actually akin to a zoning variance instead of a strict application to rezone. *Id* at 900.

33.     Additionally it was the Bank, not the Plaintiff, which filed the application to rezone and did so prior to the Plaintiff (the only religious organization involved) was even in the picture or having any rights to the property.  The date of filing, November 29, 2007, was months prior to the Plaintiff entering into a contract to purchase the property (i.e. January 4, 2008). [Docket 35, Ex. F vs Ex. H].  Plaintiff cannot assert a right under an application of which it was not a party when filed.  Even if a zoning application were an individualized assessment, which it is not, the City cannot be held to perform an individualized assessment placing a substantial burden on a religious organization when no religious organization is even in the picture at the time. This also eliminates the Plaintiff's tenuous "as applied" challenge.  Further, the contract which was entered into on January 4, 2008 was not with the Elijah Group but a non-existent religious entity. The Plaintiff lacks standing to assert any claim under the application to rezone as it was not the Plaintiff who applied.  The Plaintiff's lease with the Bank, signed months after the application to rezone was denied is the only legal transfer of interest to the currently incorporated Plaintiff.

## V.

## NO UNREASONABLE RESTRICTION

34.     Churches are permitted to locate as a matter of right in any of the B-3 zones within the
City.  There are numerous alternate locations which permit a church to locate in any B-3 zone.
The City of Leon Valley is also by the City of San Antonio.  This is not a situation where a
church is being forced to relocate into the middle of an obscure manufacturing or industrial zone
miles away from the homes and residences of its constituents.  Leon Valley is relatively small
(3.5 square miles) and B-3 zones make up a large portion of the non-residential zones within the
City.  The residential community of Leon Valley is relatively close to any of the B-3 zones, as
articulated in the zoning map.  [Docket 34, Ex. K].  Given the uses permitted at 6401 Bandera
Road, the close proximity to any B-3 zones permitting church use, and the proximity to
residences, as well as the fact the Plaintiff had a location even after suit was filed to conduct
church services, no unreasonable limitation on church use by the City's zoning regulations
exists.

## VI.

## NO EQUAL PROTECTION VIOLATION

35.     The Plaintiff has no comparators to demonstrate an Equal protection violation.  No
churches or other similar, non-retail assemblies were allowed in the B-2 zone after the 2007
zoning change.  The City's purpose for creating the Bandera Road corridor is to create a retail
corridor running through the City.  The corridor has gone through numerous changes over the
year and the City made a conscious effort to focus more pure retail into the corridor in 2007.  In
order to move forward with the focus retail purpose no additional uses inconsistent with the B-2
regulations are permitted and there certainly is not a requirement that the area be rezoned B-3,

which it has never been.  The City's zoning restriction does not prohibit religious exercise.  The City's zoning restrictions permit all but one of the Plaintiff's religious uses in the B-2 zone.  The Plaintiff's right to conduct church services is still permitted in any B-3 zone throughout the City.  Church use, including the conducting of services, is more akin to uses for larger commercial and higher congestion areas.  No similarly situated secular comparator exists which is treated differently.  As a result, there is no Equal Protection violation.

## VII.
## TEXAS RELIGIOUS FREEDOM RESTORATION ACT

36.     Regardless of whether the Plaintiff brings claims under RLUIPA, TxRFRA, or the First Amendment, the Plaintiff has not suffered any substantial burden. The Plaintiff can utilize the Bandera Road property for religious purposes (i.e. counseling, day care, etc.), can relocate to any B-3 zone within the City (numerous undeveloped tracts still exist and several vacant buildings are available for purchase), testified that it was aware of at least two other locations to locate which it has already discovered, and voluntarily gave up a location it could conduct services at AFTER it filed this lawsuit.  The Plaintiff has not been "truly pressure[d] … to significantly modify [its] religious behavior and significantly violate [its] religious beliefs"  by denying only church use at the specific Bandera Road location.  *Barr v City of Sinton*, -- S.W.3d --, No 06-0074, slip op., 52 Tex. Sup. Ct. J. 871, 2009 WL 1712798 *10 (June 19, 2009).  It can still hold services; it simply has to relocate several blocks away.

37.     Pastor Crain testified that the location his congregation needed to remain for service was within the boundaries of I-10 to 151, 1604 to 410.  [Docket 34, Ex. A, Crain Depo, p. 72, lines 10-21; pp. 74-75].  The City of Leon Valley fits within that area along with almost all of its B-3 zones.  Ex. 1.  Only one B-3 zone exists inside Loop 410 (as opposed to outside between 410 and

1604) but is directly across from 410 as illustrated by the zoning map. [Docket 34, Ex. K]. Nothing prevented the Plaintiff from holding church serves at his prior Culebra Road location after it had moved into the Bandera Road location. Nothing prevents the Plaintiff from purchasing, moving and/or developing any of the areas within B-3 zones, other than the Plaintiff's perspective on the costs. Costs and inconvenience are insufficient, as a matter of law, to establish a substantial burden. The Bandera Road property has not been rendered *effectively impractical* by the City's regulation. *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir.2003).

38.    If no substantial burden exists, then no TxRFRA violation exists.

## VIII.
## FREE EXERCISE AND FREE SPEECH CLAUSE

39.    Plaintiff claims some obscure assertion that the City is violating its First Amendment Free speech rights by having a Fire Marshal, who is authorized to carry a firearm, go out and inspect the premises. There is absolutely no First Amendment restriction prohibiting lawful exercise of police authority, including carrying a firearm, during an investigation. Further, the Plaintiff completely ignores the context over which Fire Marshal Valdez inspected the property on the specific date in question. The Plaintiff was conducting services in the parking lot of the Bandera Road property after having failed a fire inspection and after the City obtained a court order prohibiting services from being conducted until such times as the Fire Code violations were addressed. [Docket 4]. After this court restrained the Plaintiff from conducting services until fully complying with Fire Code regulations, the Plaintiff's attorney contacted defense counsel and inquired whether or not the City would object to chairs being placed in a specific area, (i.e, not in the parking lot, but on a sidewalk area between buildings) to allow the Pastor to

inform his congregation that church services would not be held on that day. [Docket 34, Ex. G]. Despite the court's express order not to conduct church services or utilize the facility and the representations of Plaintiff's counsel that no church services would be conducted, the Plaintiff nevertheless set up an entire service in the parking lot, pulled power from the building, which had not passed fire inspection, hooked up their audio visual equipment and conducted a 45 minute church sermon.

40.    Marshal Valdez, the Fire Marshal of Leon Valley and the one charged with enforcing the Fire Code in protection of its citizens, arrived on the scene and videotaped the services being conducted, as well as the fact that power was being pulled from the building when it had not passed a fire inspection. A copy of Marshal Valdez's videotape is attached to this response as Exhibit 2.[5]   This is part of his investigative powers for enforcing the City's Fire Code. During his investigation into this incident Marshal Valdez, who is authorized under State law to carry a firearm and it is undisputed by the Plaintiff that he is authorized to carry a firearm, had his firearm strapped to his side as he conducted his investigation. By the Plaintiff's own admission Marshal Valdez never upholstered his firearm and never threatened to. [Docket 34, Ex. A, Crain Depo pp. 202-203].  He merely videotaped and investigated the unlawful holding of church services. No citations were issued. The Plaintiff does not have a First Amendment right NOT to be inspected by a Fire Marshal or for the Fire Marshal to refrain from displaying his badge or side arm.

41.    Under such circumstances it cannot be held in any reading of First Amendment jurisprudence that the City has violated the Plaintiff's Free Speech or Free Exercise rights. Defendant hesitates to argue further as the entire allegation is so absurd and frustrating, the Defendant's counsel may not be able to help but resort to inappropriate name calling.

---

[5] Due to electronic filing requirements a copy of the video will be delivered to the court's chambers for filing.

## IX.
## CONCLUSION

42.     Plaintiff is not prohibited from holding church services inside the City.  It is not prohibited from conducting religious exercises on Bandera Road.  What this case is about is the Plaintiff wants the most economical use of the leased property and the Bank wants to maximize its profits by selling to the Plaintiff.  The Plaintiff wants one location to conduct *all* religious activities it desires irrespective of the consequences such placement will cause to its neighbors or the City as a whole.  Free Exercise jurisprudence does not give the Plaintiff the right to centralize religious activities, irrespective of the varying use, in one location.  As long as the Plaintiff has the ability to perform its religious exercises somewhere in the City, which it can in this case, that is all that is legally required.   The Bank, which currently owns the property, attempted to sell the property to others but was unable to for a satisfactory price.   As a result, the Plaintiff's offer to purchase at twice the amount of prior offers presented an alluring jewel for which the Bank wishes to fight.  It is funding this litigation in an attempt to get the sale to go through; that is all.

43.     Keeping retail uses within the Bandera Road retail corridor is a compelling governmental interest for the City as it is THE retail corridor for the entire City.  The City does not have the ability to annex or acquire new land in order to expand, revitalize, or create new economic opportunities.  The City must use what it already has.  In 2007 it refocused its retail corridor, bringing numerous uses into the retail corridor which shared retail characteristics and removed uses, such as churches, outdoor theaters, ambulance services, and hotels, which were not similar in nature.  Like uses are kept in the same area, while inconsistent uses are not.  The retail similar uses by the Plaintiff, irrespective of whether they pay taxes or not, are allowed on Bandera Road, without objection or complaint.  The holding of church services, which is not considered retail in nature, is permitted in any B-3 zone.  Similar uses are treated similarly, which is exactly what is

upsetting the Plaintiff.  The Plaintiff does not care that it is being treated like other commercial similar uses, it wants to locate on Bandera Road; period.  It is arguing any and all means, regardless of how stretched the argument is, in order to accomplish this goal.  And when the law was not changed the way it wanted it to be, the Plaintiff simply ignored it.  Under such circumstances, there is no Free Exercise violation under any of the Plaintiff's causes of action.

44.     The Plaintiff has not established entitlement to judgment under the law.  To the contrary, Defendant has established entitlement to dismissal of Plaintiff's claims. Plaintiff's Motion for Final Summary Judgment should be denied and Defendant's Motion for Summary Judgment should be granted.

## <u>PRAYER</u>

WHEREFORE PREMISES CONSIDERED, Defendant City of Leon Valley prays that the Court deny Plaintiff's Motion for Final Summary Judgment, grant Defendant's Motion for Summary Judgment in its entirety, dismiss all of the Plaintiff's claims with prejudice and for such further relief, in law and in equity, as the Defendant may show itself justly entitled.

SIGNED this 17th day of July 2009.

Respectfully Submitted

DENTON, NAVARRO, ROCHA & BERNAL
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas  78212
210/227-3243
210/225-4481 (Facsimile)
Lowell.denton@rampage-sa.com
Ryan.henry@rampage-sa.com

By: _____
LOWELL F. DENTON
State Bar No. 05764700
RYAN S. HENRY
State Bar No. 24007347
COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individual(s) as indicated, and according to the Federal Rules of Civil Procedure on the 17th day of July, 2009.

Daniel P. Whitworth                          **E-Notification**
John G. George
STUMPF FARRIMOND, P.C.
112 E. Pecan Street, Suite 700
San Antonio, Texas 78205

_____
LOWELL F. DENTON
RYAN S. HENRY

28