IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE ELIJAH GROUP, INC., | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. SA08CA0907 |
| | § | |
| THE CITY OF LEON VALLEY, TEXAS, | § | |
| DEFENDANT. | § | |

**PLAINTIFF, THE ELIJAH GROUP, INC.'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, The Elijah Group, Inc., files this Response to Defendant's Motion for Summary Judgment and would further show:

### I. Defendant's Motion for Summary Judgment Misstates the Issues

Defendant makes broad assertions in its Motion for Summary Judgment that misrepresent the actual deposition testimony of Darryl W. Crain, the Pastor of the Elijah Group, and misstates case precedent in an apparent effort to mislead this Court. For example, in attempting to avoid summary judgment by arguing that the Elijah Group was not "substantially burdened," Defendant asserts in its Motion for Summary Judgment ("Defendant's Motion") that Pastor Crain testified "there were two other locations which could serve the Plaintiff's church needs; specifically a Petco building and a warehouse. Ex A., Crain Depo, p. 243 & 247." *See* Defendant's Motion at p. 14, ¶ 29. However, a review of the quoted pages shows that Pastor Crain did not say any such thing and instead testified regarding numerous reasons why two other locations were *not* suitable locations. *See* pages 71 and 242 to 248 of the Deposition of Daryl Crain attached as **Exhibit "E"** to Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion").

Defendant also spends a large portion of its arguments claiming that the Elijah Group has not been burdened under its *equal terms* claims because the City claims the "substantial burden" requirement under the RLUIPA requires the Elijah Group to show that the Zoning Ordinance at issue makes its use of Property within the jurisdiction "effectively impracticable" as stated in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003). However, this assertion completely ignores Fifth Circuit precedent disagreeing with the Seventh Circuit's analysis as noted below, and also does not differentiate between the Elijah Group's *equal terms* claims under the RLUIPA[1] which do not require any showing of substantial burden. Pursuant to the RLUIPA, a violation of the *equal terms* provisions does not require a showing of substantial burden as noted by many courts and commentators. The *equal terms* provision is violated whenever religious land uses are treated worse than comparable nonreligious one, whether or not the discrimination imposes a substantial burden on the religious use. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1002-03 (7th Cir. 2006); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1308 (11th Cir. 2006); *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1228-31 (11th Cir. 2004).

If proof of substantial burden were an ingredient of the *equal terms* provision, the substantial burden and the *equal terms* provision would be identical which the Congressional record shows was not their intent. *See* the *equal terms* discussion at pp. 9-12 of Plaintiff's Motion. Under *Midrash Sephardi* and its progeny, to the extent that other land uses that meet the definition of "assembly" are permitted in B-2 and religious assemblies are not, the City of Leon Valley has facially violated

---

[1] We note that Section (b)(1), called the *equal terms* provision, prohibits various forms of discrimination against or among religious land uses and was specifically drafted by Congress to enforce the Free Exercise Clause against laws that burden religion and are not neutral and generally applicable. *See* 146 CONG. REC. S.7774-81 (daily ed. July 27, 2000), attached hereto as **Exhibit "A."**

Section (b) of the RLUIPA entitling the Plaintiff to summary judgment. *Id.* There is no factual dispute as to this facial *equal terms* violation as the Permitted Use Table in **Exhibit "C"** to Plaintiff's Motion conclusively establishes other assembly uses are allowed in B-2. The City also admits this in Responses to Requests for Admission as noted in detail in Plaintiff's Motion and now again in Defendant's Motion. *See* ¶ 3 of Defendant's Motion (admitting the Elijah Group is precluded from holding church services in B-2) and ¶ 10 (admitting other assembly type uses are allowed in B-2).

It is also important to note here, in response to Defendant's standing assertions, that the *equal terms* provision of RLUIPA does not require a Plaintiff to meet any threshold jurisdictional test similar to that articulated in the general rule Section (a). See 42 U.S.C. § 2000cc; *Midrash Sephardi*, 355 F.3d at 1229. However, the Elijah Group does meet the jurisdictional requirements contained in (a) and has standing as discussed below and further in Plaintiff's Motion.

The Defendant repeatedly states to this court that there are no issues of fact and only questions of law which Plaintiff agrees with. Therefore, the Elijah Group is entitled to summary judgment on its *equal terms* claim under Section (b)(1) of the RLUIPA and its other claims.

The rule Defendant repeatedly refers to that requires a Plaintiff to make a showing of substantial burden is referred to as the general rule by the congressional drafters and is located at Section (a) of the RLUIPA. The *equal terms* provision of RLUIPA Section (b) is completely and totally separate from the general rule under Section (a)'s substantial burden provision. Under Section (a), the Elijah Group is only required to make a *prima facie* showing of substantial burden, which it has done. As noted in Plaintiff's Motion, numerous circuits have held that the substantial burden test is "not a particular onerous task." *See, e.g., McEachin v. McGuiness*, 357 F.3d 197, 202

(2d Cir. 2004). The Fifth Circuit has followed suit in finding a lower threshold in *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). However, the City of Leon Valley again misleads the Court by claiming a showing of "substantial burden" is a very high threshold and relies upon the Seventh Circuit opinion in *Civil Liberties for Urban Believers,* which the Fifth Circuit specifically considered and declined to follow in *Adkins. Id.* at 569-70. After noting the court had considered "the plain wording of the statute, its legislative history, the decisions of other circuits, and the Supreme Court's pronouncements on the meaning of substantial burden in other contexts," it held:

> "[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs.
> 
> . . . .
> 
> And in line with the foregoing teachings of the Supreme Court, the effect of a government action or regulation is significant when either (1) it influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non trivial benefit, and, on the other hand, following his religious belief." *Id.*

## II. The Elijah Group Has Been Substantially Burdened Under *Adkins v. Kaspar* and the Cases Relied Upon by the Defendant

As discussed in detail in Plaintiff's Motion, the City has substantially burdened the Elijah Group's religious exercise repeatedly without any compelling government interest. It has also failed to articulate the least restrictive means it alleges to have used for moving churches. A list of the many burdens is contained in footnote 13 of Plaintiff's Motion and the documentary evidence. The City in its own Motion for Summary Judgment now repeatedly admits that no church services are permitted on the Property but the Elijah Group is free to conduct other religious activity. Nothing could be a greater violation than an entity assuming the role of deciding which religious activities conducted by a specific church group on a particular Property are appropriate and which are not. The City has simply decided that worship is not allowed which was the specific reason for enactment of

the RLUIPA. This is not the role of a zoning commission. These actions by the City have placed the congregation in a similar position to that noted by the Fifth Circuit in *Adkins* of being forced to act in a way that violates their religious beliefs by either foregoing church services or violating an unconstitutional zoning law. The many actions of the City discussed in Plaintiff's Motion constitute the exact type of governmental interference and punishment the RLUIPA was intended to protect.

### III. There Are No Fact Issues Preventing Entry of Summary Judgment in Favor of the Elijah Group Under the RLUIPA and the U.S. and Texas Constitutions

In addition to the City's many admissions of *facial* and *as applied* discriminatory treatment detailed in Plaintiff's Motion for Summary Judgment, the City in its own Motion for Summary Judgment continues to admit that it moved churches from B-2 for improper reasons that do not satisfy strict scrutiny. For instance, the City admits in paragraph 10 of its Motion that churches are only allowed in B-3 Commercial Districts because B-3 is better suited for "higher congestion" due to "parking, occupancy, and traffic impact" and because a "retail corridor was desired" by the City. The City then makes great mention of the fact that "it is undisputed that church use is not a retail use." These reasons do not satisfy strict scrutiny as courts have repeatedly held and fail for any number of reasons. First, burdens upon religious exercise are only justified in the "gravest abuses, endangering paramount interests." *Sherbert v. Verner*, 374 U.S. 398, 406 (1963). Bare assertions by the government that they have a compelling interest must be proven by more than the government's own allegations and requires definitive evidence of the alleged interest. *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 51-52 (1986). "The burden [of satisfying strict scrutiny] is placed squarely on the government." *Gonzales v. O Centro Espirita Beneficente Uniato do Vegetal*, 546 U.S. 418, 429 (2006). There is not one shred of evidence of these assertions made by the City in the record. In fact, **the City has already admitted these claims of less traffic with retail**

**development are untrue**, through statements made during Public Hearing in 2006 by Zoning Commissioner Baird, who also participated in the Elijah Group's Application process, and contained in the Official Meeting Minutes of the Zoning Commission, that traffic would be much worse if there were retail development on the Property instead of a church.

In particular, considering the use of the very same Property at issue here, commissioner Baird said:

> "**[T]here were no grounds to deny the request based on health, safety, or welfare**. She further noted that residents in the area should be aware that if the Church were not occupying the location, the zoning of the property was B-2 (Retail) and **could easily have a number of more heavily trafficked uses at that location**."

*See* p. 12, line 20 to p. 13, line 6 of **Exhibit "J"** to Plaintiff's Motion.

Further, a quick review of the statements made by Zoning Commissioners during the February 26, 2008 Public Meeting of the Leon Valley Zoning Commission, the March 4, 2008 City Council Meeting, and the Official Minutes of both public meetings, where Commissioners discussed on the record why "churches" were moved to B-3 do not mention higher congestion, parking, occupancy, or traffic issues.[2] *See* quotes at pages 19-20 of Plaintiff's Motion and ***Exhibits "S," "I," "J," and "T"*** to Plaintiff's Motion (establishing that only "churches" were discussed, not assemblies, and they were moved from B-2 to B-3 for economic (loss of tax revenue) reasons which

---

[2] Defendant chooses to ignore the numerous quotations of City Zoning Commissioners discussing the rationale of the Zoning Ordinance, the decision to move churches, and how churches were moved due to a loss of revenues and for lost sales tax from the hearing transcripts and Official Minutes and instead repeatedly asserts in paragraph 15 of its Motion that it was the citizens of Leon Valley who commented on the lost tax revenues due to a church use and that Pastor Crain simply assumes that the Commissioners must have acted upon the citizen's comments. A review of the actual comments made by zoning commissioners (not the citizens) in the hearing transcripts and official minutes clarifies this misdirection by Defendant. *See* **Exhibit "A," "I," and "J"** to Plaintiff's Motion, which Plaintiff is relying on in accord with this Court's order dated march 24, 2009 ("The Elijah Group may rely on the official minutes, transcripts, and comments made during the meetings.").

are not compelling interests); *see also* the in depth discussion at pp. 18-20 of Plaintiff's Motion. Economic interests and revenue generation have been repeatedly held to *not* be compelling interests.

A review of the Congressional Record for the RLUIPA further shows that the reasons asserted by the City as alleged compelling interests are actually specific examples of discriminatory treatment considered by Congress over a three year period of study and hearings in drafting and enacting RLUIPA and specifically mentioned in a joint statement of Senator Hatch and Senator Kennedy which provides:

"NEED FOR LEGISLATION

Land Use. The **right to assemble for worship** is at the very core of the free exercise of religion. Churches and synagogues cannot function without a physical space adequate to their needs and consistent with their theological requirements. The **right to build, buy, or rent** such a space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes.

The hearing record compiled massive evidence that this right is frequently violated. Churches in general, and new, small, or unfamiliar churches in particular, are frequently, discriminated against **on the face** of zoning codes and also in the highly individualized and discretionary processes of land use regulations. Zoning codes **frequently exclude churches in places where they permit theaters, meeting halls, and other places where large groups of people assemble for secular purposes.** Or the codes permit churches only with individualized permission from the zoning board, and zoning boards use that authority in discriminatory ways.

Sometimes zoning board members or neighborhood residents explicitly offer race or religion as the reason to exclude a proposed church, especially in cases of black churches and Jewish shuls and synagogues. **More often, discrimination lurks behind such vague and universally applicable reasons as traffic, aesthetics, or "not consistent with the city's land use plans."** Churches have been excluded from residential zones because they generate too much traffic, and from commercial zones because they don't generate enough traffic. **Churches have been denied the right to meet in rented storefronts, in abandoned schools, in converted funeral homes, theaters, and skating rinks**—in all sorts of buildings that were permitted when they generated traffic for secular purposes.

The hearing record contains much evidence that **these forms of discrimination** are very widespread. . . ."

*See* 146 CONG. REC. S.7774-75 (daily ed. July 27, 2000), attached hereto as **Exhibit "A."**

Many of the nonreligious assembly uses allowed by the Defendant, and relied upon by Defendant in its Motion for Summary Judgment as justification for removing churches, were specifically mentioned by the drafters of the RLUIPA as being facially discriminatory treatment of religious assemblies or institutions.

Additionally, to the extent the City continues to assert that churches are not discriminated against because other locations are provided for in B-3, an offset does not eliminate discrimination under the *equal terms* analysis. *Saints Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899-900 (7th Cir. 2005); *Midrash Sephardi, Inc.*, 366 F.3d at 1227-28.

### IV. Defendant's Reliance Upon *City of Long Branch* is Misleading to the Court

Further, any reliance upon the *City of Long Branch* opinion quoted by the Defendant is inapplicable to the Elijah Group's *equal terms* claims.

Known as the *equal terms* provision, Section (b)(1) of the RLUIPA requires "equal treatment of secular and religious assemblies [and] allows court to determine whether a specific system of classification adopted by a city subtly or covertly departs from requirements of neutrality and general applicability." *Midrash Sephardi*, 366 F.3d at 1232.

The Elijah Group has asserted that the Zoning Ordinance facially discriminates under the *equal terms* provisions of RLUIPA as it permits non religious assemblies to operate in B-2 while not allowing religious assemblies. It is undisputed, and in fact admitted by the City repeatedly, that numerous assembly uses are still allowed in B-2 and churches are not. As noted above, congress listed many of these very same discriminatory uses that the City of Leon Valley allows while allegedly claiming to have removed all assemblies. The Permitted Use Table establishes the same.

However, realizing this is a losing argument, Defendant now incorrectly claims the *equal terms* claims of the Elijah Group must fail because the Defendant not only moved churches, but also moved all "nonretail" uses from B-2 as part of its efforts to develop a retail zone. Therefore, the Defendant's sham argument continues, there is no "secular comparator" similar to a church remaining in B-2. First, this assertion is completely untrue and further continues the City's misrepresentation of case holdings. It should be noted that in the case relied upon by Defendant, *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3rd Cir. 2007), the court actually held that the City of Long Branch had violated the *equal terms* provision of the RLUIPA. This will be discussed below in detail.

Second, the correct *equal terms* analysis is that articulated by the Eleventh Circuit in *Midrash Sephardi* which considered a synagogue's exclusion from a business district and its subsequent *equal terms* claims. The *Midrash Sephardi* Court held that RLUIPA requires the court to look at the plain language of the RLUIPA and evaluate whether an entity qualifies as an "assembly or institution," as that term is used in the RLUIPA, before next considering whether the governmental authority treats the religious assembly or institution differently than the nonreligious assembly or institution. If it does, "§ (b)(1) renders a municipality strictly liable for its violation, rendering a discriminatory land use regulation *per se* unlawful **without regard to any justifications** supplied by the zoning authority." *Midrash Sephardi*, 366 F.3d at 1229 (emphasis added). Because the RLUIPA does not define "assembly" or "institution," the Court must construe these terms in accordance with their ordinary or natural meanings. *Id.* This is discussed in detail in Plaintiff's Motion and it will not be repeated here. However, the *Midrash Sephardi* Court specifically concluded that churches and synagogues, as well as **private clubs and lodges**, fall within the natural perimeter of "assembly or

institution." *Id.* The Defendant has already admitted that private clubs and lodges remain in B-2 as well as other assemblies and a review of the Permitted Use Table establishes the same. We must note that we find it distasteful to be forced to mention this here, but Shortly before filing this Response, a review of Defendant's Response to Plaintiff's Motion shows a transparent attempt to take this case out of the purview of *Midrash Sephardi* by misquoting the permitted use title for "Club or Lodge (private)" contained in the Permitted Use Table and allowed in B-2, and instead referring to it as "Clubs or Lodges" in the chart reproduced for the Court by Defendant on pages 6 through 8 of Defendant's Response. We can only surmise that "(private)" was taken out in Defendant's self serving chart because *Midrash Sephardi* specifically holds that "*private* clubs and lodges" are similarly situated to churches and synagogues because all were assemblies and the city's differential treatment violated the *equal terms* provision of the RLUIPA. Defendant also changed the heading in the Permitted Use Table from "Auditorium, Convention Center, and Other Similar Meeting Facilities" which are allowed in B-2 to "Auditorium, Convention Center, meeting facilities." This change was surely done because Defendant relies upon *Lighthouse* that requires a secular comparator and the inclusion of "Other Similar Meeting Facilities" is very broad and would be difficult for the city to argue does not encompass secular meeting groups similar to church uses destroying any Lighthouse argument by Defendant. Therefore, under *Midrash Sephardi*, the facially differential treatment here constitutes a violation of Section (b)(1) of RLUIPA entitling Plaintiff to summary judgment on its *equal terms* claims. *Id.*

We note a split in the Circuits, and point out that Defendant relies on *Lighthouse* which articulates a different *equal terms* analysis than that of *Midrash Sephardi*. However, while Plaintiff disagrees with *Lighthouse*, the result is the same as Defendant's defenses to the Elijah Group's *equal*

*terms* claims fail regardless of which test is applied. Defendant discusses the *Lighthouse equal terms* analysis at great length in its Motion but amazingly fails to inform this court that the Third Circuit Court found that the City violated the *equal terms* provision of RLUIPA warranting summary judgment for the church. It is hard to imagine this failure is accidental.

*Lighthouse* is different than *Midrash Sephardi* in that its application would require the court to look at the challenged regulations objectives. A regulation violates the *equal terms* provision of RLUIPA "only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to the regulatory purpose. There is no need, however, for the religious institution to show that there exists a secular comparator that performs the same functions." *Lighthouse*, 510 F.3d at 266. All that is required is that the religious plaintiff under the *equal terms* provision identify a better treated nonreligious comparator that is similarly situated in regard to the objectives of the challenged regulation. *Id.* at 268. Under this standard, the *Lighthouse* Court specifically looked at the permitted uses in the City's Ordinance which allowed a range of assembly uses including "Assembly Halls" but not churches and found that "**it is not apparent from the allowed uses why a church would cause greater harm to regulatory objectives than an assembly hall that could be used for unspecified meetings**" and held that the church was entitled to summary judgment. *Id.*

As its claimed regulatory objective, the City of Leon Valley asserts only in its Motion that it wishes to "focus the Bandera Road corridor as a pure retail area" and that all remaining uses "permitted in the B-2 retail zone stem from the retail corridor zoning concept."[4] *See* ¶¶ 40 and 46 of

---

[4] This latest claimed regulatory objective flies in the face of all of the testimony of the City Zoning Commissioners both during public hearing on the Application as well as the City Council meetings. This is discussed in detail in Plaintiff's Motion for Summary Judgment.

Defendant's Motion. The City's Master Plan states that B-2 is for land and structures occupied by or suitable for the furnishing of retail goods and services to residential areas. *See* p. 34 of the City's Master Plan attached to Plaintiff's Motion as **Exhibit "B."** However, even assuming retail development is the true objective of the Zoning Ordinance, it is not difficult for the Elijah Group to point out numerous nonreligious comparators that are similarly situated in regard to the claimed retail objective of the Zoning Ordinance as *Lighthouse* requires. There are numerous nonreligious and nonretail oriented uses still permitted in B-2 that are comparable to churches as noted in the Permitted Use Table attached to the Plaintiff's Motion as **Exhibit "C."** These include "Adult Care Facility," "Art Gallery/Museums," "Child Care Facility," "Inn," "Library," "Recreational Facility Neighborhood," and "School" which are allowed by right. *See* pp. 89-96 of **Exhibit "C"** to Plaintiff's Motion. (While not similarly situated to the Elijah Group, we note that the Zoning Ordinance allows "farms" by right in its alleged retail zone.) All of these uses permitted by right destroy any credibility in the City's arguments that nonreligious assemblies, while allowed in B-2, are "only allowed with a SUP to ensure compatibility with the retail corridor zoning concept." *See* Defendants Response to Plaintiff's Motion at ¶ 46.

In addition to the nonretail similar uses allowed by right in the Zoning Ordinance, other nonretail uses are allowed in B-2 through a Specific Use Permit (SUP) procedure. Similarly situated uses include "**Auditorium, Convention Center, and Other Similar Meeting Facilities**," "**Club or Lodge (private)**," "**Funeral Homes/ Mortuary**," "**Entertainment-INDOOR**, Billiard Parlor, Bowling Center, Playground, Skating Center, Video/Game Room," "Entertainment OUTDOOR, Baseball/Softball/Volleyball Park, Equestrian Center, Fairground, Football Field, Go-Karts, Golf Miniature or Other, **Sports Complexes**," Convalescence Ctr.," and "Nursing Home." *See* pp. 89-96

of **Exhibit "C"** to Plaintiff's Motion. In addition to these uses having large gatherings (assemblies) of people on a regular basis, how Defendant could claim that any of these uses are providing a retail services to a neighborhood is unexplained and pure make believe in an attempt to avoid punishment for its discriminatory laws. To the extent that Defendant wishes to argue that churches are different than all of these other assemblies because they have worse traffic or different traffic patterns, we have already addressed the City's admissions that retail use of the Property was considered two years ago and Commissioner Baird admonished the crowd at the public meeting that many other uses, including retail, would be worse for the Property than a church. *See* Official Minutes of the July 25, 2006 Leon Valley Zoning Commission meeting attached to Plaintiff's Motion as **Exhibit "T."** Additionally, Pastor Crain testified that his congregation had grown to 75 members who attend church on a regular basis at the property. *See* pp. 232-33 of the Deposition of Daryl Crain attached to Plaintiff's Motion as **Exhibit "E."** That is a far cry from a normal crowd for an event at an Auditorium in Leon Valley, a weekend high school football game attended by thousands, a PTA school meeting of hundreds of parents held in a school lunchroom, or the memorial service of a popular resident in one of the funeral homes located in B-2 Retail Districts. Where the government permits secular exemptions to a generally applicable regulation—like the City of Leon Valley does here—"the free exercise clause [and, therefore, the RLUIPA] requires that the government accord equal treatment to religion based claims for exemptions that would have a similar impact of the protected interests." *Lighthouse*, 510 F.3d at 265.

Further, the Defendant incorrectly argues that zoning permitting procedures are somehow not a system of individualized land assessments and that Plaintiff does not have standing. When land use regulations are "applied to grant or deny a certain use to a particular parcel of land, that

application is an 'implementation'" under 42 U.S.C. 2000cc(a)(2)(C); *Guru Nanak Sikh Society*, 456 F.3d 978, 987 (9th Cir. 2006). As the City has admitted, there is no procedure available for the Elijah Group to apply for a Variance or SUP in the Zoning Ordinance. Despite this, Pastor Crain appeared before and testified in detail before the public Zoning Commission meeting of his plans to buy, occupy, remodel, and use the Property as a church and educational center which the Commissioners considered and denied. *See* p. 17, line 21 to p. 20, line 14 of Portion of Leon Valley Zoning and Land Use Commission Meeting of Feb. 26, 2008 Transcript attached to Plaintiff's Motion as **Exhibit "I."** Further, the congregation now occupies the Property pursuant to lease agreement and numerous individualized assessments were made as noted in Plaintiff's Motion at the bottom of pages 14 and 15. These include but are not limited to denials of certificates of occupancy and sign permits, as well as eviction attempts, temporary injunction hearings, attempts to turn off the utilities, and visits by any number of zoning and code enforcement employees of the City. Judge Garcia has even ordered a property inspection which was attended by the Parties and their attorneys.

The *Midrash Sephardi* Court addressed the issue of standing when the City argued that a congregation lacked standing to assert its constitutional rights had been violated because they had never attempted to locate property in the business district, nor had either of two synagogues applied for a CUP. *See Midrash Sephardi*, 366 F.3d at 1223-24. The Court specifically held that "Surfside's argument misses the point of the congregations' contention: even if a "suitable property" existed in RD-1 district, the congregations believe they have a legal right to remain in the business district." *Id.* at 1224.

The court held that because the City had attempted to enforce the zoning ordinance against the congregations in the ongoing lawsuit, and by its filing an injunction attempting to stop the

congregations from worshiping at their location, the congregations had suffered the requisite injury for standing purposes. *Id.* at 1224. The City of Leon Valley clearly has, and continues, to enforce the various provisions of the Zoning Ordinance against the Elijah Group both inside and out of the instant lawsuit as the documentary evidence shows.

Additionally, the individualized assessment, while clearly applicable here is only one of the jurisdictional hooks required by Section (a) of the RLUIPA. The Elijah Group also satisfies the jurisdictional element of the RLUIPA by showing that the substantial burden on religious exercise affects interstate commerce. The Congressional Record is again instructive as it notes that the jurisdictional element in the RLUIPA is, that:

> "the burden on religious exercise, or removal of that burden will affect interstate commerce. This will most commonly be proved by showing that the **burden prevents a specific economic transaction** in commerce, such as a construction project, **purchase or rental of a building**, or an interstate shipment of religious goods. The aggregate of all such transactions is obviously substantial . . . ."

*See* 146 CONG. REC. S.7775 (daily ed. July 27, 2000), attached hereto as **Exhibit "A."**

Congress made much mention of the fact that it relied upon Supreme Court case law holding that even if the jurisdictional commerce clause element was small, the aggregate of all such effects on individual cases would still be substantial and violate the commerce clause. *See id.* (citations omitted). Without belaboring the point, the jurisdiction element is fully satisfied whether under the individualized assessment requirement or the interstate commerce clause. The record shows that the Elijah Group cannot finalize its Purchase Agreement with a seller from Arizona as well as Pastor Crain testifying regarding his future construction plans. *See* **Exhibit "A"** and **Exhibit "G"** to Plaintiff's Motion.

Finally, how Defendant can assert as a defense under the RLUIPA that it generously allows the Elijah Group to conduct any manner of religious activity at the Property that is wishes "except the ability to hold church services" flies in the face of logic and the purpose of the RLUIPA. *See* ¶ 3 of Defendant's Motion. These circumstances constitute a complete prohibition on the rights of the Elijah Group to worship in accord with its Christian Ministry. The very first sentence in the Joint Statement of Senator Hatch and Kennedy under the title of *Land Use* in the Congressional Record begins with "The right to assemble for worship is at the very core of free exercise of religion." *See* 146 CONG. REC. S.7775 (daily ed. July 27, 2000), attached hereto as **Exhibit "A."** It cannot be coincidence that this statement is placed at the very beginning of their remarks. Finally, by inhibiting the ministry of the Elijah Group and forcing it to forgo a necessary religious activity—Sunday worship—a municipality creates a substantial burden. The loss of the ability to administer to even one person is a substantial burden on religious exercise. *Doe v. Shenandoah Co. Sch. Bd.*, 737 F. Supp. 913, 916 (W.D. Va. 1990) (*citing Johnson v. Bergland*, 586 F.2d 993 (4th Cir. 1978)).

To quickly address any assertion by the Defendant that the transcripts attached to Plaintiff's Motion regarding the public hearing records of the Zoning Commission meeting and the City Council meeting (referred to in Plaintiff's Motion as **Exhibits "A," "I," and "J"**) were not sworn to by a court reporter; this incorrect. Plaintiff inadvertently attached the pdf versions as exhibits when the motion was electronically filed which did not reproduce the court reporter's signature. Attached hereto as **Exhibit "B"** are the versions of the transcripts which contain the court reporter's certification. The hearing discs which were transcribed by Eddie Morris Court Reporting were originally provided by the City and were produced to the City during discovery on February 4, 2009 (Bates # 323). The Court signed an Order on March 24, 2009 on Defendant's Motion for a

Protective Order, which was filed to prevent the Plaintiff from deposing City Zoning Commissioners and City Council Members. The Court granted Defendant's motion but ordered that Plaintiff "may rely on the official minutes, transcripts, and comments made during the meetings." *See* Docket Entry # 26.

## CONCLUSION

For the foregoing reasons, Plaintiff, the Elijah Group, Inc., respectfully asks that the court (1) enter judgment in Plaintiff's favor on all Counts of the Plaintiff's First Amended Complaint; (2) declare the Zoning Ordinance unconstitutional; (3) permanently enjoin Defendant from depriving the Elijah Group of any zoning application procedure for applying for and receiving a final Certificate of Occupancy to use the Property for church and religious uses; (4) issue an order setting an evidentiary hearing at some time in the near future to hear proof of Plaintiff's damages and reasonable and necessary attorney fees; and (5) issue an order at that time awarding Plaintiff's costs and reasonable and necessary attorney fees.

Respectfully submitted on this the ____ day of July, 2009.

STUMPF FARRIMOND, P.C.
112 E. Pecan Street, Suite 700
San Antonio, Texas 78205
Telephone 210.231-0919
Facsimile 210.231-0004

By _____
Daniel P. Whitworth, State Bar No. 24008275
Roger G. Bresnahan, State Bar No. 02959460
John G. George, State Bar No. 24051944

**ATTORNEYS FOR PLAINTIFF AND PETITIONER, THE ELIJAH GROUP, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on this the 20th day of July, 2009 a true and correct copy of the above and foregoing was served upon the following parties using the CM/ECF system:

Mr. Ryan S. Henry
Mr. Lowell F. Denton
**DENTON, NAVARRO, ROCHA & BERNAL**
A Professional Corporation
2517 North Main Avenue
San Antonio, Texas 78212
210.227.3243 Telephone
210.225.4481 Facsimile

_____
Daniel Whitworth