IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE ELIJAH GROUP, INC. | § § | |
| VS. | § § | CIVIL ACTION NO. SA08CA0907 |
| THE CITY OF LEON VALLEY, TEXAS | § | |

### THE ELIJAH GROUP, INC.'S REPLY TO THE DEFENDANT'S RESPONSE

"Houses of worship have long been considered 'preferred' uses, and were recognized as bearing a real, substantial, and beneficial relationship to the public health, safety, and welfare of the community."[1]

The City of Leon Valley completely misses the point and purpose of the RLUIPA. What the City has done by enacting its unlawful and discretionary Zoning Ordinance, which moves churches to B-3 Commercial Districts to exist alongside storage units, flea markets, and animal shelters, among other uses, is a slap in the face to the RLUIPA which was specifically enacted by Congress to stop discriminatory and irrational land use laws like those here that hinder the practice of faith.

There are no fact issues in this case that would deny the Elijah Group the right to summary judgment on its *substantial burden* (general rule) and *equal terms* claims under the RLUIPA, and the U.S. and Texas Constitutions. Defendant has repeatedly agreed that "there is no genuine issue of material fact which is in dispute." *See, e.g.*, ¶ 3 of Defendant's Response. All the documentary evidence submitted to the Court allows for the granting of summary judgment in favor of Plaintiff.

The City flies fast and loose with the requisite law, in many instances failing to differentiate between the Elijah Group's distinct and separate claims under the RLUIPA, as well as removing key phrases from headings in the Zoning Ordinance table reproduced to the Court as noted in Plaintiff's

---

[1] Roman P. Storzer & Anthony R. Picarello, *The Religious Land Use and Institutionalized Persons Act of 2000: A Constitutional Response to Unconstitutional Zoning Practices*, 9 GEO. MASON L. REV. 929, 933 (2001).

Response in an attempt to shore up the many leaks in its hull. For instance, Defendant claims at Paragraphs 10, 12, and 18 of its Response to Plaintiff's Motion for Summary Judgment that the City has a right to develop a retail corridor in furtherance of its alleged "legitimate interest" to promote economic development. The City also incorrectly claims that because it provided other locations for churches there is no discrimination. These assertions are incorrect and not supported by case law in Defendant's Response like many of its other assertions. Burdens upon religion require satisfaction of *strict scrutiny*, not a lesser showing of having a *legitimate interest*. Burdens on religion are only justified in the "gravest abuses, endangering paramount interests." *Sherbert v. Verner*, 374 U.S. 398, 406 (1963). Likewise, providing alternative locations for churches does not eliminate discrimination under the *equal terms* analysis. *Saints Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899-900 (7th Cir. 2005); *Midrash Sephardi, Inc.*, 366 F.3d 1214, 1227-28 (11th Cir. 2004).

Defendant has changed its story so many times now that its real legislative purpose is hard to pinpoint. Prior to the instant lawsuit it was stated at by City officials during recorded public meetings that churches[2] were moved from B-2 for a variety of reasons, including: 1) because they were non tax-paying; 2) because they should be where businesses are located; 3) because the City was in an "economic crisis"; 4) because every little strip center was having a church; 5) because allowing churches would open the floodgates and "every little church would want in"; 6) because the Property was "prime real estate"; 7) because sales taxes were being lost; and 8) because it was important to maintain economic development. City officials admitted "moving churches . . . drove

---

[2] There is nothing in the public record or official minutes indicating that any assembly use other than churches was discussed in the meetings to write and enact a new zoning ordinance. However, there is ample testimony that the real purposes were to remove churches and even that the zoning ordinance was later changed by city staffers to cover up the true intent of moving only churches.

the discussion." Once the lawsuit was filed, the only defense pled in its state court pleadings was that the RLUIPA was somehow unconstitutional. The City quickly changed its arguments in federal court to assert that B-2 was designed for retail development and churches are "clearly not retail developments."[3] When Plaintiff pointed out in its Motion for Summary Judgment that numerous non-religious assembly uses remained in B-2, the Defendant changed its alleged objective again to attempt to differentiate between different assembly types by claiming that it wished to "focus the Bandera Road corridor as a pure retail area" and that all remaining uses "permitted in the B-2 retail zone stem from the retail corridor zoning concept."[4] *See* ¶¶ 40 and 46 of Defendant's Motion. This assertion is made in reliance upon *Lighthouse* which provides a different *equal terms* analysis than that stated in *Midrash Sephardi*. While the Plaintiff believes *Midrash Sephardi* is the proper analysis, the resulting *equal terms* violation is the same. *Lighthouse* provides that a regulation violates the *equal terms* provision of RLUIPA "only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated <u>as to the regulatory purpose</u>.

There is no requirement that the Elijah Group show that there exists a secular comparator that performs the same functions." *Lighthouse*, 510 F.3d 253, 266 (3rd Cir. 2007). However, while not required to identify a secular comparator that performs the same function, funeral homes perform similar, if not many of the same, functions as churches. They are allowed in B-2 and contain visitation rooms similar in design to churches with altars and podiums for hosting assemblies of people and conducting religious memorials, funeral services, eulogies, and rosary services, and the

---

[3] Defendant ignores the fact that many churches run religious bookstores and nonprofit gift shops. We do not further address the City's unsupported assumption here.
[4] This latest claimed regulatory objective flies in the face of all of the testimony of the City Zoning Commissioners both during public hearing on the Application as well as the City Council meetings. This is discussed in detail in Plaintiff's

traffic use and patterns would be the same as churches. Funeral homes are also not retail establishments. Under *Lighthouse*, all that is actually required of religious plaintiffs under the *equal terms* provision is to identify a better treated nonreligious comparator that is similarly situated in regard to the objectives of the challenged regulation. *Id.* at 268. A review of the Permitted Use Table shows numerous nonreligious comparators that are similarly situated in regard to the objective of retail development which destroys any credibility in Defendant's arguments that they moved all nonretail assemblies to develop a retail corridor.

The application of *Midrash Sephardi* requires only that the court look at the plain language of the RLUIPA and determine whether entities remaining in B-2 are assemblies or institutions and then determine whether they are treated differently than churches. "§ (b)(1) [of the RLUIPA] renders a municipality **strictly liable** for its violation, rendering a discriminatory land use regulation *per se* unlawful **without regard to any justifications** supplied by the zoning authority." *Midrash Sephardi*, 366 F.3d at 1229 (emphasis added). The *Midrash Sephardi* Court specifically concluded that **churches and synagogues**, as well as **private clubs and lodges**, fall within the natural perimeter of "assembly or institution." *Id.* The Defendant has admitted that private clubs and lodges remain in B-2, as well as other assemblies, and a review of the Permitted Use Table establishes the same.

Defendant's analysis of the substantial burden requirement completely ignores Fifth Circuit case law and misleads the Court. Pursuant to Section (a) of the RLUIPA, the substantial burden test is "not a particular onerous task." *See, e.g., McEachin v. McGuiness*, 357 F.3d 197, 202 (2d Cir. 2004). The Fifth Circuit in *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004), has agreed and

specifically declined to follow the Seventh Circuit opinion relied upon by Defendant.

Likewise, Defendant's reliance upon a Michigan state court case in paragraph 31 of its Response, for the assertion that there was no individualized assessment in the present case, shows the great lengths that Defendant will go to find any tenuous foothold to support its attempts to avoid summary judgment. When land use regulations are "applied to grant or deny a certain use to a particular parcel of land, that application is an 'implementation'" under 42 U.S.C. 2000cc(a)(2)(C). *Guru Nanak Sikh Society*, 456 F.3d 978, 987 (9th Cir. 2006). Pastor Crain appeared before and testified in detail before the public Zoning Commission meeting of his purchase agreement, his plans occupy, remodel, and use the Property as a church and educational center which the Commissioners considered and then denied. Further, the congregation is in the Property lawfully pursuant the Lease Agreement and two valid C of Os. The various individualized assessments are discussed in detail in Plaintiff's Motion and Plaintiff's Response.

There is no question of standing as argued by Defendant. The *Midrash Sephardi* Court held that because the City had attempted to enforce the zoning ordinance against the congregations in the ongoing lawsuit, and by its filing an injunction attempting to stop the congregations from worshiping at their location, the congregations had suffered the requisite injury for standing purposes. *Id. at* 1224. The City of Leon Valley clearly has, and continues, to enforce the various provisions of the Zoning Ordinance against the Elijah Group both inside and out of the instant lawsuit as the documentary evidence shows, including attending Plaintiff's own Application hearing on its TRO filed by the City in Federal Court.[5]

RESPECTFULLY SUBMITTED ON THIS THE 27TH DAY OF JULY, 2009.

---

[5] Attached is Pastor Darryl Crain's Affidavit authenticating the photographs attached to Plaintiff's Motion as Ex."U."

STUMPF FARRIMOND, P.C.
112 E. Pecan Street, Suite 700
San Antonio, Texas 78205
Telephone 210.231-0919
Facsimile 210.231-0004

By: _____
Daniel P. Whitworth
State Bar No. 24008275
Roger G. Bresnahan
State Bar No. 02959460
John G. George
State Bar No. 24051944

**ATTORNEYS FOR PLAINTIFF AND PETITIONER, THE ELIJAH GROUP, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of July, 2009 a true and correct copy of the above and foregoing was served upon the following parties using the CM/ECF system:

Mr. Ryan S. Henry
Mr. Lowell F. Denton
**DENTON, NAVARRO, ROCHA & BERNAL**
A Professional Corporation
2517 North Main Avenue
San Antonio, Texas 78212
210.227.3243 Telephone
210.225.4481 Facsimile

_____
Daniel Whitworth

STATE OF TEXAS §

BEXAR COUNTY §

### AFFIDAVIT OF DARRYL W. CRAIN

On this day, **DARRYL W. CRAIN** appeared before me, the undersigned notary public. After I administered an oath to him, upon his oath, he said:

1. "My name is Darryl W. Crain. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am the Pastor of The Elijah Group, Inc. ("Elijah Group") located at 6401 Bandera Road (the "Property") in Leon Valley, Texas. I maintain an office and work on the Property daily.

3. Several photographs of businesses that are located in Leon Valley near the Property are attached to the Plaintiff's Motion for Summary Judgment filed with this court on July 8, 2009 as Exhibit "U."

4. I am familiar with each of the individual photographs and the scenes depicted in each. All of these photographs were taken in the City of Leon Valley on June 19, 2009.

5. I recognize the objects depicted in the photographs because they were taken of businesses and signs that are located near the Property involved in the lawsuit and I have lived and worked in the area for many years. I cannot give a precise number of the times that I have passed the various places in the pictures, but it would be in the hundred, if not thousand, and recently many times a day.

6. I recognize each of the photographs and the object depicted in each of the photographs. Each photograph presents a fair, accurate, true, and correct depiction of the scene and object in the photograph as it appeared on June 19, 2009."

_____
Darryl W. Crain

**SWORN TO** and **SUBSCRIBED** before me by Darryl W. Crain on July 24th, 2009.

PRISCILLA RUBIOLA BAZAN
Notary Public
STATE OF TEXAS
My Comm. Exp. 01-12-2013

_____
Notary Public in and for the State of Texas.