**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **THE ELIJAH GROUP, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **THE CITY OF LEON VALLEY, TEXAS,** | § | **SA-08-CV-0907 OG (NN)** |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

TO:   **Honorable Orlando Garcia
United States District Judge**

This report and recommendation addresses cross-motions for summary judgment.[1]  I have authority to issue this report and recommendation pursuant to the district court's order of referral.[2]  After considering the motions, responses, replies and the applicable case authority, I recommend granting summary judgment in favor of the defendant.

**Nature of the case**.  This case arose from a dispute involving a small religious congregation—the Elijah Group (the Church), a bank—Happy State Bank (the Bank),[3] and a municipality—the City of Leon Valley, Texas (the City), over a zoning ordinance.  The dispute centers on a piece of property once known as the "Church on the Rock" and located on Bandera Road in Leon Valley, Texas (the Property).  The Property is located in the City's B-2 zone—a retail zone.  When the "Church on the Rock" was built, a church could operate in zone B-2 with

---

[1]Docket entry #s 34 & 35.

[2]Docket entry # 16.

[3]Happy State Bank does business as GoldStar Trust Company.  *See* docket entry # 35. P. 3.

a special use permit (SUP).  The City approved a SUP for the Church on the Rock on June 18, 1996.  The Church on the Rock conducted church services until it encountered financial difficulties and relocated.  The Bank then foreclosed on the Property.  On September 4, 2007, the Bank took ownership of the Property.

In the meantime—on November 4, 2003—the City amended its Master Plan, reclassifying certain land uses out of zone B-2.  Church assembly use was among the reclassified land uses.  The reclassification was accomplished by deleting a prior provision permitting a church to apply for a SUP.  Even though church assembly use was no longer permitted in zone B-2, the Church on the Rock continued conducting church services because the use was permitted under a SUP and because the use was pre-existing.  The SUP lapsed under the City's zoning code 120 days after the Church on the Rock abandoned the Property—on October 1, 2007.[4]

The Bank sought a buyer for the Property, but did not obtain a buyer before the SUP lapsed.  While seeking a buyer, the Bank sent the City letters challenging the lapse and asserting violations of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[5]  On November 29, 2007, the Bank applied for a zoning change to permit the Property to operate as a church.[6]  The Bank asked the City to change the Property from zone B-2 (retail) to zone B-3 (commercial).  The City's zoning ordinance permits church services in the zone B-3.

---

[4]Docket entry # 34, exh. B (letter from the Bank questioning the lapse date and opining that the lapse would not occur until December 4, 2007) & C (providing that a non-conforming land use lapses "[w]hen land associated with a legal nonconforming use ceases to be used in such a manner for a period of [120] days).

[5]Docket entry # 34, exh. B.

[6]Docket entry # 34, exh. A (exh. 7 to Crain deposition).

2

Although zone B-2 no longer permitted church assembly use, the Bank auctioned the Property and sought bids from churches.[7]  The Bank obtained bids ranging from $575,000 to $1,330,000.[8]  The Church made the high bid.  The Church signed a contract to purchase the Property on January 4, 2008.[9]  The contract was conditioned on the Bank obtaining the zoning change.[10]  On February 28, 2008, the City's zoning commission recommended denying the Bank's application.[11]  On March 4, 2008, the City Council upheld the recommendation and denied the Bank's application.[12]  Despite that result, the Church leased the Property from the Bank and began to conduct church services.[13]

The Church filed this lawsuit in state court on October 31, 2008, naming the City as defendant.[14]  The City removed the case on November 5, 2008.[15]  The Church amended its complaint in federal court to allege that the City's "zoning and land use regulations are unconstitutional, both on their face, and as they are applied to [the Church], in violation of the

---

[7]Docket entry # 34, exh. A, pp. 83 & 86-89.

[8]Docket entry # 34, exh. E.

[9]Docket entry # 34, exh. A, exh. 5 to Crain deposition.

[10] Docket entry # 34, exh. A, pp. 95-96, 101-02 & 129-31 & exh. 5 to exh. A, ¶ 8.

[11]Docket entry # 34, exh. M, § IV.

[12]Docket entry # 34, exh. B, ¶ 11 (Lanny Lambert's affidavit).

[13]Docket entry # 34, exh. A, p. 180, lines 17-22; exh. B.

[14]Docket entry # 1, exh. 1 (plaintiff's original petition and request for disclosure).

[15]Docket entry # 1.

United States and Texas Constitutions . . . ."[16]  The Church maintains that the City "intentionally discriminates against religious places of worship and has prevented the [Church] from purchasing an adequate place to worship where its congregation may continue to grow and engage in other religious activities."[17]  Both parties moved for summary judgment on all claims.

The parties characterize this case very differently.  The Church maintains that its "right to religious exercise has been substantially burdened by the City's actions."[18]  According to the Church, the Property is the "only property in the City that perfectly meets the spiritual and physical needs of the [Church]."[19]  The Church maintains the City has treated it less than equally by deleting the former provision from the zoning code that permitted a church to apply for a SUP, while permitting similarly situated non-religious assembly use to apply for a SUP.[20]  The Church contends the City has violated its right to finalize its purchase of the Property.

In contrast, the City asserts that "[t]here is no prohibition under law which prevents a [c]ity from leaving a law 'as is' and refusing to rezone property solely for the [Church's] benefit . . . ."[21]  The City contends its changes to the zoning ordinance are part of the City's Master Plan "to have a focused retail corridor along Bandera Road."[22]  According to the City, the Church

---

[16]Docket entry # 25, ¶ 7.

[17]Docket entry # 25, ¶ 7.

[18]Docket entry # 35, p. 16.

[19]Docket entry # 35, p. 16.

[20]Docket entry # 35, p. 26.

[21]Docket entry # 34, p.1.

[22]Docket entry # 34, p. 4.

can—and does—use the Property for other religious purposes, including individual counseling, day care and administration.  The City maintains that this lawsuit is driven by the Church's desire not to have to pay for a second location to conduct church services.[23]  Perhaps aggravated by the Bank's financing of the Church's attorney fees,[24] the City asserts that changing the law to rezone the Property so the Bank can maximize its profit by selling to the Church is inconsistent with the City's legislative goal of making Bandera Road a focused retail corridor.[25]

Despite these different perspectives, the parties agree no fact issues exist.  The parties agree that the question of summary judgment depends on questions of law.[26]  Each of the Church's claims is analyzed below.  Because the district court should not decide the Church's constitutional claims if there is some other ground upon which to dispose of the case, the Church's statutory claims are first addressed.[27]

**Whether the City's zoning ordinance imposes a substantial burden on the Church's exercise of religion**.  The Church alleges that the City has imposed a substantial burden on its exercise of religion.[28]  The Church argues that the City's actions do not further a compelling governmental interest and are not the least restrictive means of furthering a governmental

---

[23]Docket entry # 34, pp. 3 & 22.

[24]Docket entry # 34, exh. A, p. 272 & # 36, p. 3.

[25]Docket entry # 34, p. 29.

[26]Docket entry # 35, p. 12; # 36, p. 2; # 37, p. 5; & # 38, p.1.

[27]*See Nw. Austin Mun. Util. Dist. No. One v. Holder,* 129 S. Ct. 2504, 2513 (2009) (stating that "the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case").

[28]Docket entry # 25, count 3.

interest.  The Church seeks declaratory relief under the Declaratory Judgment Act[29] and the

Texas Civil Practices and Remedies Code[30] with a specific adjudication by the Court that the City

violated section (a) of the RLUIPA.[31]

Section (a) of the RLUIPA prohibits a municipality from imposing or implementing "a

land use regulation in a manner that imposes a substantial burden on the religious exercise of . . .

a religious assembly or institution, unless the [municipality] demonstrates that imposition of the

burden on that . . . assembly, or institution—(A) is in furtherance of a compelling governmental

interest; and (B) is the least restrictive means of furthering that compelling governmental

interest."[32]  This provision is called the "substantial-burden provision" of the RLUIPA.[33]  The

substantial-burden provision applies when "the substantial burden is imposed in the

implementation of a land use regulation . . . under which a government makes, or has in place

formal or informal procedures or practices that permit the government to make, *individualized*

---

[29]28 U.S.C. §§ 2201-2202 (permitting a federal district court to declare the rights and other legal relations of an interested party seeking such declaration).

[30]Tex. Civ. Prac. Rem. Code § 37.003 (Vernon 2008) (permitting a Texas state court to declare rights, status, and other legal relations in a case in which declaratory relief is sought).

[31]Docket entry # 25, count 3.

[32]42 U.S.C. § 2000cc(a).

[33]Under the substantial-burden provision, the Church must "present evidence that the land use regulation . . . : (1) imposes a substantial burden; (2) on the 'religious exercise;' (3) of a . . . institution, or assembly.  If the [Church] makes this prima facie showing, the burden shifts to the [City] to demonstrate that the land use regulation furthers a compelling governmental interest and that the land use regulation is the least restrictive means of furthering that compelling interest." *Grace United Methodist Church v. City of Cheyenne*, 235 F. Supp. 2d 1186, 1193-94 (D. Wyo. 2002).

*assessments* of the proposed uses for the property involved."[34]

The Church maintains the substantial-burden provision applies to this case because the City has made, and has in place, formal and informal procedures permitting the City to make individualized assessments regarding its plans for the Property.[35] The Church characterizes the City's zoning ordinance, the City's assessment of the Bank's zoning application, the City's approval of the Church's application for a certificate of occupancy, the City's request for a temporary restraining order, visits by a City zoning officer to the Property, and the fire marshal's threat to ticket the Church if it continued to conduct church services on the Property as individualized assessments. None of these complaints is properly considered an individualized assessment.

The zoning ordinance is not properly considered an individualized assessment in this case because the complained-about changes to the zoning ordinance occurred on November 4, 2003 when the City amended its Master Plan, reclassifying and removing church use out of zone B-2. At that time, the City could not make an individualized assessment of the Church's use of the Property because the Church did not exist as a legal entity until after the Church contracted to purchase the Property.[36] The City could not have been motivated by burdening religious exercise in general because a church already occupied the Property under a SUP. Although the Church insists that *Midrash Sephardi v. Town of Surfside*[37] determined that a municipality's zoning-

_____

[34]42 U.S.C. § 2000cc(a)(2)(C) (emphasis added).

[35]Docket entry # 35, p.14.

[36]*See* docket entry # 34, p. 9.

[37]366 F.3d 1214 (11th Cir. 2004).

permitting procedures constitute a system of individualized assessments, *Midrash Sephardi* did

not make that determination.  Instead, the *Midrash Sephardi* court explained that the defendant

municipality's requirement that a church or synagogue apply for a conditional use permit (CUP)

prior to operating in the municipality constituted an "individualized assessment" regime because

an application for a CUP triggered a case-by-case evaluation of the proposed activity of a

religious organization.[38]  No case-by-case evaluation occurred here.

The City's approval of the Church's application for certificate of occupancy is not

properly considered an individualized assessment because the Church applied to occupy the

Property as an elementary school and daycare facility, not for church assembly use.[39]  Visits by a

City zoning officer to the Property and the fire marshal's threat to ticket the Church if it

continued to conduct church services on the Property are not properly considered as

individualized assessments because the Church contrived the events by leasing the Property,

seeking a certificate of occupancy to operate a school and daycare facility, and then conducting

church services, knowing the Property was not zoned for church assembly use and that the

Property had fallen into disrepair.

The only action that can arguably be considered an individualized assessment is the City's

denial of the Bank's application for a zone change.  The City, however, presented a persuasive

argument about why the denial of an application for a zone change does not constitute an

individualized assessment.  The City's argument relies on the Supreme Court of Michigan's

consideration of whether a municipality's refusal to rezone property constitutes an

---

[38]*See Midrash Sephardi*, 366 F.3d at 1225.

[39]Docket entry # 34, exh. B.

8

"individualized assessment" under the RLUIPA.[40]  Answering that question, the Michigan court concluded that the refusal to rezone does not constitute an "individualized assessment," making the RLUIPA inapplicable to the plaintiff's claim under the substantial-burden provision.[41]

Before reaching this conclusion, the Michigan court analyzed the Supreme Court of the United States's guidance about "the distinction between governmental action requiring and not requiring individualized assessments."[42]  Observing that the Supreme Court had explained that "in circumstances in which individualized exemptions from a general requirement are available, the government 'may not refuse to extend that system to cases of 'religious hardship' without compelling reason,'"[43] the Michigan court determined that the "RLUIPA applies when the government makes an assessment based on one's particular or specific circumstances or has in place procedures or practices that would allow the government to make an assessment based on one's particular or specific circumstances."[44]  The Michigan court relied in part on the Ninth Circuit's determination that the "'RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use.'"[45]

---

[40]*Greater Bible Way Temple of Jackson v. City of Jackson*, 733 N.W.2d 734, 737 (Mich. 2007).

[41]*Greater Bible Way*, 733 N.W.2d at 737.

[42]*Greater Bible Way*, 733 N.W.2d at 743.

[43]*Greater Bible Way*, 733 N.W.2d at 743 (citing *In Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 527 (1993)).

[44]*Greater Bible Way*, 733 N.W.2d at 743.

[45]*Greater Bible Way*, 733 N.W.2d at 743 (quoting *Guru Nanak Sikh Society of Yuba City v. Sutter Co.*, 456 F.3d 978, 986 (9th Cir. 2006)).

Applying that guidance to the plaintiff-church's challenge of the defendant-city's denial of a request for a zoning change, the Michigan court explained that the city's zoning ordinance applied to the entire community, not to just the plaintiff-church.[46]  According to the Michigan court, "if the city had granted [the] plaintiff[-church]'s request to rezone the property, such rezoning would also have applied to the entire community, not just [the] plaintiff[-church]."[47] The Michigan court explained that a "decision whether to rezone property does not involve consideration of only a particular or specific user or only a particular or specific project; rather, it involves the enactment of a new rule of general applicability, a new rule that governs all persons and all projects."[48]  The Michigan court reasoned as follows:

> Thus, if the city had granted [the] plaintiff's request to rezone the property from single-family residential to multiple-family residential, [the] plaintiff could then have sold the property to any third party and that third party could have sold the property to any other third party and any of these parties could have built an apartment complex or any other conforming building on that property.  Therefore, the city's decision whether to rezone the property would not have been predicated on [the] plaintiff's particular circumstances or [the] plaintiff's particular project. Even if the city had affirmatively wanted [the] plaintiff to build an apartment complex on its property, it could not have granted the requested zoning change unless it was also prepared to accommodate all projects falling within the scope of the rezoning.  [The] [p]laintiff's particular circumstances were simply not determinative of the city's decision whether to rezone, and, thus, the city's decision did not constitute an "individualized assessment" within the meaning of that term.[49]

Although the Church characterizes the City's reliance on the Michigan-court argument as

---

[46]*Greater Bible Way*, 733 N.W.2d at 743.

[47]*Greater Bible Way*, 733 N.W.2d at 743.

[48]*Greater Bible Way*, 733 N.W.2d at 744.

[49]*Greater Bible Way*, 733 N.W.2d at 744.

going to "great lengths to find any tenuous foothold to support [the City's] attempts to avoid summary judgment,"[50] the Michigan court's analysis is sound.  The Michigan court based its analysis on the Supreme Court's guidance about governmental decisions involving individual assessments and the purpose of zoning law.[51]  The same analysis applies here.

The denial of the Bank's application for a zone change was not an individualized assessment of the Church's use of the Property.  The Bank's stated purpose for the zone change was to allow for the continued use of the Property as a church.[52]  Considering that purpose may have required the City to evaluate whether religious activity fell within the City's Master Plan for the Bandera Road corridor, but it did not require an individualized assessment of a religious assembly or institution because the Property was unoccupied.  There was no religious assembly or institution to consider.  Although Pastor Crain appeared before the City's Zoning and Land Use Commission and spoke about the Church's plans to beautify the Property, the Bank applied for the zoning change before the Church entered into a conditional purchase agreement and before the Church contracted to purchase the Property.  When the Bank applied, the Church conducted church services at a different location.  There were no particular or specific circumstances to serve as the basis of an individualized assessment other than the Bank's desire to sell the Property to a church.[53]

---

[50]Docket entry # 38, p. 5.

[51]I determined that no other court has addressed whether a municipality's refusal to rezone property constitutes an "individualized assessment" under the RLUIPA.

[52]*See* docket entry # 34, exh. A, exh. 7 to exh. A.

[53]Logically, the Bank can maximize the purchase by selling the Property to a church because the structures on the Property were built for church use.

Instead of conducting an individualized assessment about whether the Church's desired use of the Property conformed to the City's Master Plan, the Zoning and Land Use Commission, and later the City Council, considered whether changing the Property from zone B-2 to zone B-3 conformed with the City's Master Plan.[54]  By doing so, the City followed its plan for "decisions about the physical development and programs of the community"[55] and "the desired future of the City in broad terms."[56]  The Church's particular circumstances were simply not determinative of the City's decision whether to rezone.  The denial of the Bank's application to rezone was not an individualized assessment.  Consequently, the substantial-burden provision does not apply to the Church's claim.

Even if the substantial-burden provision applied, the Church did not show that the denial of the Bank's application for a zone change imposed a substantial burden on the Church's religious exercise.[57]  The RLUIPA does not define substantial burden, but courts agree that term has no broader interpretation than as articulated by the Supreme Court under the First Amendment's Free Exercise Clause.[58]  The most recent Fifth Circuit guidance about what

---

[54]*See* docket entry # 35, exhs. I, J & J-1.

[55]Docket entry # 35, exb. B, § IB.

[56]*Id*.

[57]*See* 42 U.S.C. § 2000cc-2 ("[T]he plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.").

[58]*See Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (explaining that government action that forces an individual to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand" imposes a substantial burden on the individual's free exercise of religion).  *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988) (determining that government construction of a road and permitting timbering through a portion of a National Forest

12

constitutes a "substantial burden" in regard to a land-use regulation like a zoning ordinance states that "at a minimum, the government's ban of conduct sincerely motivated by religious belief substantially burdens an adherent's free exercise of that religion."[59]  The Fifth Circuit stated that determining whether a government regulation imposes a substantial burden on a religious institution's exercise of religion is a fact-specific inquiry.[60]

The undisputed facts show that the City has not imposed a substantial burden on the Church's exercise of religion for several reasons.  First, there are other locations in the City where the Church can conduct church services—many more considering the City's location.  The City is land-locked within the much larger City of San Antonio.  The Church was conducting church services in an available location when it filed this lawsuit, but voluntarily relinquished the location.  "When there is plenty of land on which religious organizations can build churches (or, as is common nowadays, convert to churches buildings previously intended for some other use) in a community, the fact that they are not permitted to build everywhere does not create a substantial burden."[61]  This is not a case where the City has excluded the Church.  The City has simply denied an application for a zoning change that would permit the Church to use a

---

used by Native American tribes for religious purposes did not impose a substantial burden on the free exercise of religion because that action did not coerce individuals into "violating their religious beliefs; nor would . . . governmental action penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens").

[59]*See Merced v. Kasson*, Nos. 08-10358 & 08-10506, 2009 WL 2343172 (5th Cir. July 31, 2009), at *8.  *See also Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) ("[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.").

[60]*See Merced v. Kasson*, Nos. 08-10358 & 08-10506, 2009 WL 2343172, at *8.

[61]*Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007).

particular piece of property.  No authority permits the Church to use whatever property it desires for whatever purpose it chooses.

Second, the City has not imposed financial burden on the Church which would substantially burden the Church's exercise of religion because the Church's purchase agreement is conditioned on the Property being rezoned.  If the Property is not rezoned to permit church assembly use, the Church is not obligated to purchase the Property.  The Church views the Property as the most economically feasible property for conducting church assembly use, but the Church knew the Property was not zoned for church assembly use when it leased the Property and when it relinquished the location where it previously held church services.  The Church may view finding a different location as inconvenient and costly, but "monetary and logistical burdens do not rise to the level of a substantial burden . . . ."[62]  The Church's willingness to pay the Bank $1.3 million for the Property and to invest $400,000 to beautify the Property suggest that the cost of locating within a zone permitting church assembly use does not burden the Church's free exercise of religion.  It is more likely that the Church burdened itself by steadfastly insisting on purchasing a property it views as perfectly suited to its needs.[63]

Third, the Church is not prohibited from conducting all religious activity at the Property. The Church can still conduct retail-like activities at the Property including its counseling, day care and administration functions.  Those uses served as the basis of the Church's application for a certificate of occupancy.  The Church cannot show that the City imposed a substantial burden

---

[62]*Vineyard Christian Fellowship of Evanston v. City of Evanston*, 250 F. Supp. 2d 961, 987 (N.D. Ill. 2003).

[63]Docket entry # 35, exh. E, pp. 242-48 & 267-69.

on its exercise of religion because it can use the Property for use consistent with zone B-2.

No law entitles the Church to a perfectly-suited property. No authority suggests that a municipality imposes a substantial burden on a church simply because a church seeks to use a particular piece of property. The Church has not shown that restricting its ability to conduct church services at the subject property burdens its free exercise of religion. The City is entitled to summary judgment on the Church's substantial-burden claim.

**Whether the City's zoning code treats religious assemblies differently from non-religious assemblies**. The Church alleges that the City's zoning code treats religious assemblies or institutions and non-religious assemblies or institutions differently. The Church complains that the zoning code permits non-religious assemblies like auditoriums, convention centers, meeting facilities, private clubs, lodges, bowling alleys, skating centers, restaurants, and secular assemblies to apply for a SUP in zone B-2,  but the zoning code no longer permits a church to apply for a SUP.[64] The Church seeks declaratory judgment that the alleged unequal treatment violates section (b) of the RLUIPA.[65]

Section (b) of the RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."[66] This provision is called the "equal-terms" provision. Unlike a claim under the RLUIPA's "substantial burden" provision, a plaintiff asserting a claim under the "equal terms" provision need not show a substantial burden to prevail

---

[64]Docket entry # 25, ¶¶ 44-50.

[65]Docket entry # 25, counts 1 & 2.

[66]42 U.S.C. § 2000cc(b).

under the provision.[67]  "The equal-terms section is violated whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses."[68]

The Church relies on an argument the Seventh Circuit rejected in *Lighthouse Institute for Evangelism v. City of Long Branch*—that "a plaintiff, asserting a violation of the Equal Terms provision, needs to show nothing more than that the challenged land-use regulation treats one or more nonreligious assemblies or institutions better than a religious assembly or institution, without regard for the objectives of the regulation or the characteristics of the secular and religious comparators."[69]  After reviewing the Supreme Court's guidance about the Free Exercise Clause, the Seventh Circuit explained that "[a] regulation does not automatically cease being neutral and generally applicable . . . simply because it allows certain secular behaviors but not certain religious behaviors.  The impact of the allowed and forbidden behaviors must be examined in light of the purpose of the regulation."[70]  The Seventh Circuit determined that "a regulation . . . violate[s] the Equal Terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as *to the regulatory purpose*."[71]

---

[67]*See Lighthouse Inst. for Evangelism v. City of Long Branch*, 510 F.3d 253, 264 (3d Cir. 2007) ("[A] plaintiff challenging a land-use regulation under section 2(b)(1) of RLUIPA does not need to present evidence that the regulation imposes a substantial burden on its religious exercise.").

[68]*Digrugilliers v. Consol. City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007).

[69]*Lighthouse Inst. for Evangelism v. City of Long Branch*, 510 F.3d 253, 264 (3d Cir. 2007).

[70]*Lighthouse Inst.*, 510 F.3d at 265.

[71]*Lighthouse Inst.*, 510 F.3d at 266.

Here, the Church challenges the exclusion of church assembly use from zone B-2. Under *Lighthouse Institute*, that challenge must be considered in light of the purpose of the exclusion. The purpose of the exclusion is to create a retail corridor along Bandera Road.[72] Church assembly use is inconsistent with that purpose, as are other non-retail uses like dance halls, kennels, hotels, motels, and manufacturing.[73] The allowed uses—*i.e.*, gift shops, hobby shops, hardware stores, music stores, day care facilities and counseling facilities—are consistent with retail use because those uses generate retail activity. The Church has not identified a non-religious assembly which is treated more favorably than a religious assembly in creating a retail corridor. That the zoning ordinance permits some other non-religious assemblies to locate in zone B-2 is of no consequence because those assemblies further the City's goal of developing a retail corridor along Bandera Road. The Church has not been excluded from the City, just from zone B-2. No serious question exists about whether church assembly use is inconsistent with the City's goal to create a retail corridor along Bandera Road.

The Church's reliance on the district court's decision in *Chabad of Nova v. City of Cooper City*[74] holding that the exclusion of the plaintiff-church from the defendant-city's business district violated the equals-terms provision is misplaced because in that case the defendant-city "fail[ed] to identify any relevant way in which religious assemblies differ from the

---

[72]Docket entry # 34, exhs. B & J.

[73]The comparison chart on pages 6 through 8 of the City's response to the Church's motion for summary judgment illustrates how some non-religious assemblies might conform to the City's goal to create a retail corridor along Bandera Road. *See* docket entry # 36, pp. 6-8.

[74]Docket entry # 35, exh. P.

uses permitted in the Business Districts."[75]  The City made that distinction in this case.  The City

is entitled to summary judgment on this claim.

**Whether the City's zoning code unreasonably limits religious assemblies**.  The

Church alleges that the City's zoning ordinance unreasonably limits religious assemblies by not

permitting churches in zone B-2.[76]  Section (b)(3) of the RLUIPA prohibits the a city from

"impos[ing] or implement[ing] a land use regulation that . . . unreasonably limits religious

assemblies, institutions, or structures within a jurisdiction."[77]  The Church can prevail under this

section if the term "jurisdiction" equates to a municipal zoning district.  The RLUIPA does not

define "jurisdiction."  The Supreme Court once defined "jurisdiction" as "[t]he power to hear and

determine a cause,"[78] but courts have since recognized that "jurisdiction is a 'word that may have

different meanings in different contexts.'"[79]  As applied to a land use regulation like a zoning

ordinance, "jurisdiction" logically refers to the geographical area covered by ordinance.  The

City's zoning ordinance applies to the entire City.  Logically then, jurisdiction equates to the

City.

The Church asks this court to declare that the City's zoning ordinance unreasonably limits

religious assemblies because it does not authorize churches in zone B-2, but equating

"jurisdiction" with a zoning district would lead to absurd results.  Considering a similar

---

[75]*Chabad of Nova v. City of Cooper City*, 575 F. Supp. 2d 1280, 1293 (S.D. Fla. 2008).

[76]Docket entry # 25, pp. 18-19.

[77]42 U.S.C. § 2000cc(b)(3).

[78]*United States v. Arredondo*, 31 U.S. 691, 709 (1832).

[79]*Martin v. Luther*, 689 F.2d 109, 114 (7th Cir. 1982) (internal citation omitted).

argument—a church's claim that its exclusion from a particular zoning district imposed a substantial burden on its exercise of religion—the Seventh Circuit explained that "the ban on churches in [a particular] zone cannot in itself constitute a substantial burden on religion, because then every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA."[80]  The Seventh Circuit reasoned as follows:

> When there is plenty of land on which religious organizations can build churches (or, as is common nowadays, convert to churches buildings previously intended for some other use) in a community, the fact that they are not permitted to build everywhere does not create a substantial burden. . . . Any such organization would have to show that a paucity of other land available for churches made the exclusion from the [desired] zone a substantial burden to it.[81]

This reasoning also applies to the Church's claim that the City's zoning ordinance unreasonably limits religious assemblies by not authorizing churches in zoning district B-2.  If jurisdiction equated to a zoning district, then every zoning ordinance that didn't permit churches in every zone would be a prima facie violation of the RLUIPA.  At a minimum, a church must show that being excluded from a zone unreasonably limits religious assemblies, institutions, or structures. "'What is reasonable must be determined in light of all the facts, including the actual availability of land and the economics of religious organizations.'"[82]  The City's zoning map shows that there is other property where the Church can assemble for church services.  Although the Church characterizes zone B-2 as "a substantial portion of the City,"[83] any zone in a land-locked city

---

[80]*Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007).

[81]*Petra Presbyterian Church*, 489 F.3d at 851.

[82]*Vision Church v. Village of Long Grove*, 468 F.3d 975, 990 (7th Cir. 2006) (quoting legislative history).

[83]Docket entry # 25, ¶ 70.

comprising only 3.5 square miles[84] is arguably a substantial portion of the City.  The important

point is that there is other land in the City for the Church's assembly use.  The ordinance does

not violate the unreasonable-limitation provision because the ordinance creates a zoning district

for church assembly use[85] and permits churches to conduct activities other than church services in

zone B-2.  Nothing in the RLUIPA or case law suggests that the use of the term "jurisdiction" in

section (b)(3) was intended to equate to a zoning district.  Nothing in the RLUIPA or case law

suggests a church is unreasonably limited just because it is excluded from a zoning district it

prefers.  The City is entitled to summary judgment on this claim.

**Whether the zoning ordinance violates the Church's rights under the Equal**

**Protection Clause**.  The Church maintains the zoning ordinance violates its rights under the

Equal Protection Clause of the United States Constitution by limiting its fundamental right to

worship.[86]  "The Equal Protection Clause . . . commands that no State shall 'deny to any person

within its jurisdiction the equal protection of the laws,' which is essentially a direction that all

persons similarly situated should be treated alike."[87]  The Church relies on various non-religious

assemblies that are permitted to locate in zone B-2 to show that the ordinance limits its right to

worship.  The Church, however, cannot show that the zoning ordinance limits its fundamental

right to worship.  No law gives the Church the right to worship in a particular district, or as

implicated here, to worship at a chosen property.  The Church is permitted to worship in other

---

[84]Docket entry # 35, exh. B, p. 9.

[85]Docket entry # 35, exh. C, p. 91 (permitting churches in zone B-3).

[86]Docket entry # 25, pp. 23-24.

[87]*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal citation omitted).

areas of the City.  In fact, the Church worshiped at a nearby location when it filed this lawsuit.

Ordinarily, a zoning ordinance violates the Equal Protection Clause "only if: (1) the decision of the particular zoning body is arbitrary; or (2) if the ordinance is applied or enforced with a discriminatory intent or purpose."[88]  An arbitrary decision is one that lacks "adequate determining principle or was unreasoned."[89]  Here, the City amended the zoning ordinance to conform to the City's Master Plan objective to have a focused retail corridor along Bandera Road.[90]  The City denied the Bank's application for a zoning change for the Property because the proposed change did not conform to this objective.  Amending a zoning ordinance to conform to the City's Master Plan is an adequate determining principle and reflects a reasoned decision.  Likewise, denying an application for a zoning change because the proposed change does not conform to the City's Master Plan is an adequate determining principle and reflects a reasoned decision.

Although the Church contends the district court must apply strict scrutiny to its challenge, that level of review is inappropriate here.  Strict scrutiny applies to fundamental rights and suspect classifications.[91]  Where neither a fundamental right or a suspect classification is implicated, the classification need only reflect "a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may fairly be viewed as furthering a substantial interest

---

[88]*Scudder v. Town of Greendale, Ind.*, 704 F.2d 999, 1002 (7th Cir. 1983) (citing *S. Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir.) (en banc), for the first part of the test).

[89]*United States v. Carmack*, 329 U.S. 230, 243 (1946).

[90]Docket entry # 34, exh. L.

[91]*See Plyler v. Doe*, 457 U.S. 202, 216-17 (1982).

of the State."[92]  The ordinance does not implicate the fundamental right to worship for the reason

discussed above.  The church is free to worship in the City.  The ordinance does not implicate the

suspect class of religion because the ordinance does not treat non-religious similarly-situated

assemblies differently "in the same relation to the purpose of the statute."[93]  Various non-

religious assembly uses are permitted to locate in zone B-2, but they are not treated differently in

relation to the purpose of the ordinance—here, to develop a focused retail corridor along Bandera

Road.  Dance and aerobic classes and studios, gyms, restaurants with banquet facilities for rent,

child care, and bowling alleys are permitted in zone B-2[94] as they represent uses which are

consistent with the City's objective of creating a focused retail corridor.  Accepting the Church's

argument requires to the district court to focus only on <u>places</u> where people assemble without

regard to <u>why</u> they assemble.  That is not what the law requires.  The law requires the court to

consider the purpose of the ordinance.[95]  Assembling for retail purposes is consistent with the

purpose of creating a focused retail corridor.  Assembling for church services is inconsistent with

creating a focused retail corridor.

---

[92]*Plyler*, 457 U.S. at 217-18.

[93]A local ordinance violates the Equal Protection Clause if it treats the plaintiff "differently from what it does others who are in the same situation as he,—that is, in the same relation to the purpose of the statute."  *State of Ohio ex rel. Lloyd v. Dollison*, 194 U.S. 445, 447 (1904).  *See Davis v. Ga. St. Bd. of Educ.*, 408 F.2d 1014, 1015 (5th Cir. 1969) ("Basic to any complaint of denial of equal protection must be some showing that the persons or groups being treated differently are similarly situated . . . .").

[94]*See* docket entry # 35, p. 24 (complaining that dance and aerobic classes and studios, gyms, restaurants with banquet facilities for rent, child care, and bowling alleys are permitted in zone B-2, but churches are not).

[95]*Dollison*, 194 U.S. at 447 (stating that a local ordinance violates the Equal Protection Clause if it treats the plaintiff differently in the same relation to the purpose of the statute).

The Church's reliance on *Love Church v. City of Evanston*[96] is misplaced because the challenged zoning ordinance in *Love Church* did not allow churches anywhere in the city except by SUP, and because the procedural posture at the time of the opinion had not required the defendant-city to offer a justification for the ordinance.   The *Love Church* court suggested strict scrutiny applied because the ordinance treated churches differently.[97]

Here, there is no showing that the Church is treated differently.   Unlike *Love Church*, the City's zoning ordinance permits church use as a matter of right.   Although in a subsequent opinion, the *Love Church* court determined that the defendant-city's ordinance classified on the basis of religion, the court reached that conclusion because other assembly uses were not treated the same as churches.[98]   Here, the City's zoning ordinance excludes every assembly that is inconsistent with creating a focused retail corridor from zone B-2.

The Church's reliance on *Vineyard Christian Fellowship of Evanston v. City of Evanston*[99] also fails.   The *Vineyard* court concluded the challenged ordinance classified on the basis of religion, but found that "the major difference between the permitted and special use organizations on the one hand, and Vineyard on the other, is that Vineyard wishes to conduct worship services at its property."[100]   The court considered the assembly of large groups of people to participate in a common experience, but did not consider the purpose of the statute.

---

[96]*See* docket entry # 35, pp. 24-25.

[97]*Love Church v. City of Evanston*, 671 F. Supp. 508, 510 (N.D. Ill. 1987).

[98]*Love Church*, 671 F. Supp. at 518-19.

[99]*See* docket entry # 35, p. 25, n. 15.

[100]*Vineyard Christian Fellowship of Evanston v. City of Evanston*, 250 F. Supp. 2d 961, 976 (N.D. Ill. 2003).

Rather than classifying on the basis of religion, the City's ordinance classifies on the basis of whether a land use conforms to the City's Master Plan. The Church's approach would make it impossible for a city to draft a zoning ordinance that did not implicate religion unless the ordinance permitted churches in all zoning districts as a matter of right. The City is entitled to summary judgment on the Church's federal equal-protection claim.[101]

**Whether the zoning ordinance violates the Free Exercise Clause**. The Church contends the City violated the First Amendment's Free Exercise Clause by imposing a substantial burden on its exercise of religion because the City denied the Bank's application for a zoning change and prevented it from operating a church.[102] The Free Exercise Clause prohibits a governmental entity from making any law "prohibiting the free exercise" of religion.[103] A governmental entity infringes on a church's free exercise of religion by forcing it to "choose between following the precepts of [its] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [its] religion . . . ."[104] The Church pleaded its claim in broad terms—the zoning ordinance is not neutral as to religion because churches cannot locate in zone B-2 although other non-religious assemblies are allowed in zone B-2—but the basis of the

---

[101]The Church also alleged that the City's ordinance violated article I, sections 3 and 3a of the Texas Constitution, *see* docket entry # 25, ¶ 98, but it did not advance an argument about that claim. The district court should consider the claim abandoned.

[102]Docket entry # 25, pp. 20-21.

[103]U.S. Const. amend. I.   *See Cantwell v. Conn*., 310 U.S. 296, 303 (1940) ("The First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof. The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws.").

[104]*Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

Church's claim is that it cannot conduct church services at the Property.  As the City's asserts, "[n]umerous courts have held that, when the plaintiff does not show that locating its premises in a particular location is important in some way to its religion and the area from which the plaintiff is excluded is not large, there is no cognizable burden on the free exercise of religion."[105]  Being unable to hold church services at the Property does not force the Church to choose between following the precepts of its religion and forfeiting benefits, or abandoning one of the precepts of its religion.  The Church cannot show a burden on its free exercise of religion because there is other land in the City where the Church can hold church services.  The Church is not interested in that other land.  It wants only the Property, but no authority gives a church the right to whatever property it desires.  Denying a zoning change does not prohibit the Church from exercising religion.  The City is entitled to summary judgment on this claim.[106]

---

[105]Docket entry # 34, ¶ 58.  *See Lighthouse Inst.*, 510 F.3d at 265 ("A regulation does not automatically cease being neutral and generally applicable . . . simply because it allows certain secular behaviors but not certain religious behaviors.  The impact of the allowed and forbidden behaviors must be examined in light of the purpose of the regulation."); *Cornerstone Bible Church v. Hastings City*, 948 F.2d 464, 472 (8th Cir. 1991) (stating that city zoning ordinance excluding churches in central business district did not violate the plaintiff-church's free exercise of religion right);  *Messiah Baptist Church v. Jefferson County, Colo.*, 859 F.2d 820, 826 (10th Cir. 1988) ("A church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it pleases."); *Lakewood Congregation of Jehovah's Witnesses v. Lakewood, Ohio*, 699 F.2d 303, 306-08 (6th Cir. 1983) ("Inconvenient economic burdens on religious freedom do not rise to a constitutionally impermissible infringement of free exercise. . . . The ordinance merely frustrates the Congregation's desire to locate itself in a more pleasant, more convenient and less expensive location. Such desires . . . are not protected by the Constitution.").  *See also Grace United Methodist Church v. Cheyenne City*, 451 F.3d 643, 655 (10th Cir. 2006) ("The First Amendment simply does not entitle the Church to special treatment so that it may operate a daycare exactly where it pleases while no one else can do the same.").

[106]The Church also alleged that the City's ordinance violated article I, section 6 of the Texas Constitution, *see* docket entry # 25, ¶ 85, but it did not advance an argument about that claim.  The district court should consider the claim abandoned.

**Whether the zoning ordinance violates the Free Speech Clause**.  The Church alleges that the zoning ordinance imposes a substantial burden upon its speech and expressive conduct because the ordinance lacks a provision for a church to apply for a SUP for zone B-2 and because of the City's individualized assessments in considering its application to have the Property rezoned to zone B-3.[107]  Because the Church seeks summary judgment for all of each claims,[108] but did not advance a summary-judgment argument about this claim, the claim is appropriately considered as abandoned.

**Whether the City violated the Texas Religious Freedom and Restoration Act (TRFRA)**.  The Church maintains the denial of the Bank's application for a zoning change violated the TRFRA because it unreasonably restricts and hinders access to its religious services, programs and religious education.[109]  The Church further complains that the zoning ordinance infringes on its right to freely exercise its religious beliefs.[110]  The TRFRA prohibits a governmental entity from "substantially burden[ing] a person's free exercise of religion . . . [unless it] demonstrates that the application of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest."[111]  The Church bears the burden of proving a substantial burden.[112]  The TRFRA does

---

[107]Docket entry # 25, pp. 21-23.

[108]Docket entry # 35, p.29.

[109]Docket entry # 25, pp. 19-20.

[110]*Id*.

[111]Tex. Civ. Prac. & Rem. Code § 110.003 (Vernon 2005).

[112]*See Barr v. City of Sinton*, No. 06-0074, 2009 WL 1712798, at *14 (Tex. June 19, 2009) ("[The] TRFRA places the burden of proving a substantial burden on the claimant . . . .").

not define "substantial burden," but the Supreme Court of Texas explained that determining whether a government regulation imposes a substantial burden under the TRFRA requires a case-by-case, fact-specific inquiry.[113]  In its only opinion interpreting the TRFRA, the Supreme Court of Texas found that a city ordinance imposed a substantial burden on the plaintiff's exercise of religion because "[a]s a practical matter, [the ordinance] ended [the plaintiff's] ministry."[114]  The Court explained that evidence of alternative locations for the plaintiff's exercise of religion did not disprove substantial burden, but did not hesitate to conclude that the challenged ordinance substantially burdened the plaintiff's exercise of religion because there was "no evidence of any alternate location in the [c]ity where the ordinance would have allowed the [plaintiff's] ministry to operate, or of possible locations outside the city."[115]

Here, it is undisputed that there are alternate locations within the City and outside the City where the Church can conduct church services.  The only burden the Church has demonstrated is disappointment that it cannot conduct church services at the Property.  Under the facts of this case, being unable to conduct church services at a desired location does not rise to the level of a substantial burden.  The City is entitled to summary judgment on this claim.

**Recommendation**.  The Church complains that the zoning ordinance moved churches "to B-3 to exist alongside warehouses, storage units, flea markets, firing ranges, and other industrial

---

[113]*Barr*, No. 06-0074, 2009 WL 1712798, at *9 ("[The] TRFRA, like its federal cousins, "requires a case-by-case, fact-specific inquiry".).

[114]*Id*. at *10.

[115]*Id*.

27

uses,"[116] but ironically sued because the City denied the Bank's application for a zone change to

zone B-3.  The Church insists its circumstances constitute a complete prohibition of its right to

worship in accord with its Christian ministry,[117] but the facts do not support that characterization.

Instead, the facts show that this case arises from the Church's desire to use a particular piece of

property for a non-conforming use.  No law requires the City to change its master plan just

because the Church is a church.[118]  I recommend granting the City's motion for summary

judgment (docket entry # 34), denying the Church's motion (docket entry # 35), and entering

summary judgment in favor of the City on all claims.  Although the City objected to some of the

Church's summary judgment evidence, the district court need not address the objections because

the Church adequately addressed the objections in its response and the evidence is not critical to

this recommendation.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States

District Clerk shall serve a copy of this report and recommendation on all parties by either (1)

electronic transmittal to all parties represented by attorneys registered as a "filing user" with the

clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt

requested.  Written objections to this report and recommendation must be filed within 10 days

---

[116]Docket entry # 35, p. 2.  *See id.* at p. 22 (complaining that "How worshiping next to a storage unit, flea market, or animal shelter, is a more appropriate location for a church and house of God, or the least restrictive mean of furthering a compelling interest, remains unexplained by the City and is not in evidence.").

[117]Docket entry # 37, p. 16.

[118]*See Sherbert*, 374 U.S. at 412 (J. Douglas, concurring) ("For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.").

after being served with a copy of same, unless this time period is modified by the district court.[119] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[120]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[121]

      **SIGNED** on October 2, 2009.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[119]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[120]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[121]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).