## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| THE ELIJAH GROUP, INC., | § | |
|  | § | |
|  | § | |
| **Plaintiff,** | § | |
|  | § | |
| v. | § | Civil Action No. 5:08-cv-907-OLG |
|  | § | |
| THE CITY OF LEON VALLEY, TEXAS | § | |
|  | § | |
| **Defendant.** | § | |
|  | § | |

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

I.      Objection 1: The Report misapplies the summary judgment standard
        of review concerning facts, and ignores many important summary
        judgment facts..........................................................................................................2

II.     Objection 2: The Report misconstrues RLUIPA's Equal Terms
        provision ...................................................................................................................4

        A.      The Report adopts the Third Circuit's erroneous interpretation
                of RLUIPA instead of the Seventh and Eleventh Circuits'
                correct one...................................................................................................5

        B.      Under the Seventh and Eleventh Circuits' correct interpretation
                of RLUIPA, the Church is entitled to summary judgment ......................8

        C.      Even under the Third Circuit's interpretation of RLUIPA, the
                Church is entitled to summary judgment ...............................................10

III.    Objection 3: the Report misapplies RLUIPA's jurisdictional requirements
        for substantial burden claims. ...............................................................................13

        A.      The land use decision affected interstate commerce.............................14

        B.      RLUIPA applies because Leon Valley made an individualized
                assessment of the Church's property ....................................................15

IV.     Objection 4: the undisputed facts demonstrate that the Church has suffered
        a substantial burden on its religious exercise.........................................................18

        A.      The Report's conclusion that the Church could locate elsewhere is
                both incorrect and irrelevant .................................................................19

        B.      The Report's conclusion that the Church faces no financial
                burden is both incorrect and irrelevant ..................................................21

        C.      The Report's conclusion that the Church is not prohibited from
                conducting all religious activity at the Property is irrelevant ...............21

V.      Objection 5: the Report misapplies the Texas Religious Freedom Act.................22

VI.     Objection 6: the Report misapplies precedent under the Free Exercise Clause ...............23

VII.    Objection 7: the Report misapplies precedent under the Unreasonable

Limitations provision of RLUIPA ...................................................................................23

VIII.   Objection 8: the Report misapplies the Equal Protection Clause ......................................24

CONCLUSION..............................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Accord United States* v. *Ferguson*,
   369 F.3d 847 (5th Cir. 2004) ...................................................................................... 8

*Barr* v. *City of Sinton*,
   --- S.W. 2d ---, 2009 WL 1712798 ..................................................................... 19, 20

*Brown* v. *City of Houston*,
   337 F.3d 539 (5th Cir. 2003) ...................................................................................... 2

*Civil Liberties for Urban Believers* v. *City of Chicago*,
   343 F.3d 752 (7th Cir. 2003) ............................................................................... 15, 16

*Cottonwood Christian* v. *Cypress*,
   218 F.Supp.2d 1203 (C.D.Cal. 2002) ....................................................................... 15

*Curr-Spec Partners, L.P.* v. *C.I.R.*,
   579 F.3d 391 (5th Cir. 2009) ...................................................................................... 7

*Digrugilliers* v. *Consolidated City of Indianapolis*,
   506 F.3d 612 (7th Cir. 2007) .............................................................................. 5, 8, 10

*Employment Division* v. *Smith*,
   494 U.S. 872 (1990) ................................................................................................. 17

*Gonzales* v. *Raich*,
   545 U.S. 1 (2005) ..................................................................................................... 15

*Greater Bible Way Temple of Jackson* v. *City of Jackson*,
   733 N.W.2d 734 (Mich. 2007) ................................................................................. 16

*Greene* v. *Solano County Jail*,
   513 F.3d 982 (9th Cir. 2008) .................................................................................... 22

*Guru Nanak Sikh Soc'y* v. *County of Sutter*,
   456 F.3d 978 (9th Cir. 2006) .............................................................................. 16, 20

*Lighthouse Center for Evangelism* v. *City of Long Branch*,
   510 F.3d 253  (3d Cir. 2007) ................................................... 6, 8, 11, 12, 13, 23

*McDermott Intern., Inc.* v. *Wilander*,
   498 U.S. 337 (1991) ................................................................................................. 14

*Merced* v. *Kasson*,
   577 F.3d 578 (5th Cir. 2009) ......................................................................... 19, 20, 22

*Midrash Sephardi, Inc.* v. *Town of Surfside,*
   366 F.3d 1214 (11th Cir. 2004) ............................................................. 5, 7, 8, 10, 23

*Petra Presbyterian Church* v. *Village of Northbrook,*
   489 F.3d 846 (7th Cir. 2007) ....................................................................... 21

*Primera Iglesia Bautista Hispana of Boca Raton, Inc.* v.
*Broward County,*
   450 F.3d 1295 (11th Cir. 2006) ...................................................................... 5

*Rocky Mountain Christian Church* v.
*Board of Commissioners of Boulder County,*
   612 F.Supp.2d 1163 (D. Colo. 2009) ............................................................. 24

*San Jose Christian College* v. *City of Morgan Hill,*
   360 F.3d 1024 (9th Cir. 2004) ...................................................................... 16

*Schneider* v. *State,*
   308 U.S. 147 (1939) ................................................................................. 19

*Sts. Helen and Constantine* v. *City of New Berlin,*
   396 F.3d 895 (7th Cir. 2005) .................................................................... 16, 20

*United States* v. *Dison,*
   573 F.3d 204 (5th Cir.2009) ......................................................................... 7

*United States* v. *Lopez,*
   514 U.S. 549 (1995) ................................................................................. 15

*Westchester Day School* v. *Village of Mamaroneck,*
   417 F. Supp.2d 477 (S.D.N.Y. 2006) ............................................................. 15

*Westchester Day School* v. *Village of Mamaroneck,*
   504 F.3d 338 (2d Cir. 2007) ................................................................... 14, 15, 20

**Statutes**          **Page(s)**

42 U.S.C. § 2000cc *et seq* ........................................................ 1, 5, 7, 14, 15, 21, 22, 23

TEX. CIV. PRAC. & REM. CODE §110.001 *et seq.* ................................................ 1, 19, 22

**Other Authorities**                                                                    Page(s)

146 Cong. Rec. S7774 (daily ed. July 27, 2000) ................................................... 7, 14

H.R. Rep. No. 106-219 (1999) ...................................................................................... 10

Issues Relating to Religious Liberty Protection, and Focusing on
    the Constitutionality of a Religious Protection Measure: Hearing
    Before the Comm. on the Judiciary, United States Senate, 106th Cong.
    (1999)(testimony of Prof. Douglas Laycock, Univ. of Texas Law School)............................. 10

Leon Valley Zoning Code § 30.309 .............................................................................. 17

*Protecting Religious Liberty: Hearings on H.R. 1691 Before the Subcomm.*
    *on the Constitution of the House Comm. on the Judiciary*, 106th Cong.,
    1st Sess. (1999) (testimony of Prof. Douglas Laycock, Univ.of Texas
    Law School)............................................................................................................. 10

Religious Freedom, Hearing on the Religious Liberty Protection Act of 1998
    H.R. 4019 Before the Subcomm. on the Constitution of the House Comm.
    on the Judiciary, 105th Cong. at 405 (1998)(testimony of John Mauck) .................................. 10

*Religious Freedom, Hearing on the Religious Liberty Protection Act of 1998*
    *H.R. 4019 Before the Subcomm. on the Constitution of the House Comm.*
    *on the Judiciary*, 105th Cong., 2nd Sess. (1998) (testimony of Steven T.
    McFarland, Director, Center for Law and Religious Freedom) ............................................... 10

Webster's 3D New Int'l Unabridged Dictionary 1171 (1993) ............................................. 8

Webster's 3D New Int'l Unabridged Dictionary 131 (1993) ............................................... 8

v

**INTRODUCTION**

Plaintiff Elijah Group (the "Church") hereby objects to the Magistrate's Report and Recommendation ("Report") issued in favor of the Defendant City of Leon Valley on the parties' cross-motions for summary judgment.

The dispute before the Court concerns the Church's attempt to gain zoning approval for its use of a property at 6401 Bandera Road (the "Property") for religious assembly, worship, and teaching. The Church is a small, predominantly Latino storefront church led by Pastor Darryl Crain. The Property was previously used for 10 years as a church building by the Church on the Rock. The Church on the Rock left the Property due to foreclosure, and the owner of the property, GoldStar Bank, leased the Property to the Church, and then sought approval from Leon Valley for the Church's use of the Property. After Leon Valley refused to rezone the property or otherwise accommodate the Church's attempt to use the property, the Church filed this lawsuit, seeking relief under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), the Texas Religious Freedom Restoration Act, TEX. CIV. PRAC. & REM. CODE § 110.001 *et seq.* ("TRFRA"), and the federal Free Exercise and Equal Protection Clauses.

The magistrate judge made several key legal and factual errors in the Report that separately merit rejection and entry of summary judgment in favor of the Church. The Report fails to properly apply precedent, both binding and persuasive. The Report fails to properly apply the leading cases on RLUIPA's Equal Terms provision. The Report also overlooks an entire statutory provision, RLUIPA's interstate commerce provision, despite the fact it was fully briefed. The Report fails to address precedent from this court regarding the application of the substantial burden provision of RLUIPA and misapplies the precedent of other courts on this

provision.  The Report also fails to properly apply precedent from the Texas Supreme Court and

the Fifth Circuit on the application of the Texas Religious Freedom Restoration Act.  The Report

fails to apply the proper test under the federal Free Exercise Clause.  It also applies the wrong

standard under RLUIPA's unreasonable limitations provision.  Finally, it fails to apply the

proper standard under the federal Equal Protection Clause.  For each of these reasons, the Report

should be rejected in full and summary judgment entered in favor of the Church.

## I. Objection 1: The Report misapplies the summary judgment standard of review concerning facts and ignores many important summary judgment facts.

On summary judgment, the court "view[s] the evidence and the inferences to be drawn

therefrom in the light most favorable to the non-moving party." *Brown* v. *City of Houston*, 337

F.3d 539, 541 (5th Cir. 2003).  The Report misapplies this standard in several cases, improperly

deciding disputed fact issues, and omits key undisputed facts.

Most importantly, the Report omits Leon Valley's financial motivation for restricting

the land available for churches in the city.  This motivation is relevant to several of the Church's

claims, as discussed below, and to the City's affirmative defenses (which the Report does not

reach because it incorrectly concludes that no laws were violated).  The undisputed evidence

shows that Leon Valley restricted the land available for churches and denied the Church's

rezoning because it wishes to increase its tax base.  When the zoning commission denied the

Church's application, one zoning commissioner explained his motivation this way:

> It has only been recently that we ourselves, talked about the fact that we have **churches**, all this non taxpaying and that we are reaching a kind of an economic crisis here and for that reason we – **disallowed the – churches anywhere except B-3**.  So, because, **every little strip center everywhere was having a church** . . . I feel very strongly that if we change this to commercial, this little strip, we are just, you know, opening up the flood gates."
>
> **Every church that's going to want to come in anywhere is going to come before us and say change this; and, again, most of these uses we – we don't**

2

**want there**...I think that this is not in the best interest of the whole city.

Dkt. 35, Ex. I at 27-28. More evidence of Leon Valley's financial motivation is included in the summary judgment briefing. Dkt. 35 at 19-21.

When Leon Valley amended its zoning code, the change greatly restricted the land available for churches in the city. *See* Ex. A-1[1] (churches only permitted in B-3 zone); Dkt. 35, Ex. C at 39 (list of zoning districts); *id.* at 67 (churches prohibited in residential zones). The change eliminated any opportunity for a church to apply for an SUP to locate in the B-2 Retail district (or any district other than B-3), and the city it now prohibits churches from applying for variances to locate in B-2. *See id.;* Dkt. 35 at 10-11, n.9 (defendants' admissions confirming churches may not use a SUP or variance to locate in B-2). The new zoning code also disfavors churches by moving them closer to industrial uses such as warehouses, storage units, flea markets, and firing ranges. Ex. A-1. This background information was omitted from the Report, and is important to understanding the Church's limited options.

The Report's fact statement also contains incorrect statements of fact which lead to unwarranted factual inferences. The Church objects to the Report's statement that "the bank obtained bids ranging from $575,000.00 to $1,330,000.00. The church made the high bid." Report at 3. While the Church was indeed the high bidder, it was also the only bidder. Dkt. 34 at 3. Therefore any inference that the bank could have sold the Property to another bidder or wished to maximize its profit by selling to the Church is unwarranted.

---

[1]    Plaintiff has attached two exhibits to these objections for the Court's convenience. The first (Ex. A-1) is Leon Valley's Permitted Use Table, which was attached together with the rest of Leon Valley's zoning code as Ex. C to Plaintiff's Motion for Summary Judgment (Ex. 35). It is included for ease of reference because Plaintiffs refer to it repeatedly. The second exhibit (Ex. A-2) is the assignment of purchase agreement between Redemption Tabernacle Ministries and the Elijah Group. Because the summary judgment briefing was unclear, Plaintiffs attach this document to show the Church's relationship to the Property.

The Church also objects to the Report's characterization of the facts regarding the rezoning application. In support of its summary judgment recommendation in favor of the City of Leon Valley, the Report repeatedly asserts that the *owner* of the building made an Application to rezone from B-2 to B-3 (B-3 being the only zone that now allows churches).[2] The Church objects to this characterization because it obscures the fact that the owner of the building, Happy State Bank d/b/a GoldStar Trust, made the rezoning application *on behalf of* the Church. The rezoning application is required by the Purchase and Sales Agreement (the "Agreement") between the Bank and the Church. *See* Dkt. 35, Ex. G (purchase agreement); Ex. A-2 (assignment of agreement). The Defendant itself admits this fact: "[t]he current owner of the Property, Goldstar Trust, on behalf of the Church, filed for an application to rezone (essentially a request to change the law as it currently exists) from a B-2 Zone to a B-3 Zone." Dkt. 34 at 3. Any suggestion that the rezoning benefits a bank, rather than a church, is utterly unwarranted.

Finally, the Church objects to the Report's reliance upon a selective summary exhibit in Leon Valley's summary judgment motion, rather than the text of the zoning code itself. *See* Report at 17 & n.73. As is discussed in more detail below, the chart is highly selective and omits the strongest evidence of unequal treatment. Any equal terms analysis should be based on the facts—here, the text of the law itself.

## II. Objection 2: The Report misconstrues RLUIPA's Equal Terms provision.

The most serious problem with the Report is its conclusion that Leon Valley's actions do not violate RLUIPA's Equal Terms provision. This conclusion is based on two fundamental errors. First, when interpreting the Equal Terms provision, the Report picks the wrong side of a circuit split, siding with the Third Circuit's erroneous interpretation of RLUIPA instead of the

---

[2]    *See, e.g.*, Report at 2 ("the Bank applied for a zoning change" and "the bank asked the city to change the property..."); Report at 3 ("...the city upheld the recommendation and denied the

Seventh and Eleventh Circuits' correct one (Part A, *infra*).  Under the Seventh and Eleventh

Circuits' correct interpretation of RLUIPA, the Church is entitled to summary judgment (Part B,

*infra*).  Second, even assuming the Third Circuit's standard were correct, the Report misapplies

that standard to this case (Part C, *infra*).

**A.    The Report adopts the Third Circuit's erroneous interpretation of RLUIPA instead of the Seventh and Eleventh Circuits' correct one.**

RLUIPA's Equal Terms provision is fairly straightforward:

No government shall impose or implement [1] *a land use regulation* in a manner that treats [2] *a religious assembly or institution* on [3] *less than equal terms* with [4] *a nonreligious assembly or institution*.

42 U.S.C. § 2000cc(b)(1).  Despite this simple language, there is a circuit split over how it

should be interpreted.

Relying on the plain meaning of the statute, the Eleventh Circuit (joined by the Seventh

Circuit) holds that "[t]here are four elements of an Equal Terms violation":

(1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution.

*Primera Iglesia Bautista Hispana of Boca Raton, Inc.* v. *Broward County*, 450 F.3d 1295, 1307-

08 (11th Cir. 2006).  In other words, in a facial challenge to a zoning ordinance, a plaintiff need

only identify a religious assembly, identify a secular assembly, and then show that a land use

regulation treats the religious assembly less favorably.  *Midrash Sephardi, Inc.* v. *Town of*

*Surfside*, 366 F.3d 1214, 1230 (11th Cir. 2004).  So, for example, in *Midrash*, the town violated

the equal terms provision by allowing several types of secular assemblies in the town's business

district (such as theaters, restaurants, and private clubs) but prohibiting churches and

synagogues.  366 F.3d at 1231; *see also Digrugilliers* v. *Consolidated City of Indianapolis*, 506

---

Bank's Application.").

F.3d 612, 614-15 (7th Cir. 2007) (city violated equal terms by allowing "auditoriums, assembly halls, community centers," and other secular assemblies while requiring churches to obtain a variance).

"[N]ot persuaded by the reasoning of the Eleventh Circuit," and expressly disagreeing with it, the Third Circuit has added a fifth element to the equal terms test. *Lighthouse Center for Evangelism* v. *City of Long Branch,* 510 F.3d 253, 268, 270 (3d Cir. 2007) (listing five elements). Specifically, it is not enough to show that a land use regulation treats a religious assembly worse than a secular assembly; rather, the plaintiff must also show that the religious assembly and secular assembly "are similarly situated *as to the regulatory purpose*" of the land use regulation. *Id.* at 266 (emphasis in original). So, for example, in *Lighthouse*, the city allowed theaters, cinemas, and clubs in a downtown redevelopment corridor, but not churches. *Id.* at 270. According to the Third Circuit, however, this did not violate the equal terms provision because the purpose of the redevelopment corridor was to create a "modern, entertainment-oriented district," and churches would interfere with the purpose of the district in a way that secular assembly uses would not. *Id.* (Specifically, state law prohibited issuance of a liquor license within 200 feet of any church, so allowing churches would have excluded many restaurants, bars, and clubs. *Id.*)

The Third Circuit's "regulatory purpose" test is unsupported by the text or history of RLUIPA and needlessly complicates the equal terms analysis. If Congress had intended courts to apply a "regulatory purpose" test, it easily could have written such a test into the statute's text as follows:

> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution [*that is similarly situated as to the regulatory purpose of the land use regulation*].

6

42 U.S.C. § 2000cc(b)(1) (language in brackets added). But Congress did not do so. Instead, as the Eleventh Circuit explained, Congress already specified in what respect religious and nonreligious uses must be "similarly situated": they must both fall within the category of "assembly" or "institution." *Midrash*, 366 F.3d at 1230. The text requires nothing more, and under Fifth Circuit precedent, the inquiry should end there: "'When the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language.'" *Curr-Spec Partners, L.P.* v. *C.I.R.*, 579 F.3d 391, 396 (5th Cir. 2009) (quoting *United States* v. *Dison*, 573 F.3d 204, 207 (5th Cir.2009)).

Although the text is clear, RLUIPA's legislative history confirms this conclusion. RLUIPA's Senate sponsors—Senators Kennedy and Hatch—explained that the Equal Terms provision was necessary because "[z]oning codes frequently exclude churches in places where they permit theaters, meeting halls, and other places where large groups of people assemble for secular purposes." 146 CONG. REC. S7774, S7775 (daily ed. July 27, 2000) ("Senate Sponsors' Statement") (emphasis added). Nothing in the history suggests that this sort of exclusion is permissible as long as the government can come up with a persuasive rationale based on its "regulatory purpose."

The "regulatory purpose" test also invites manipulation and vastly complicates the equal terms inquiry. No longer is the question simply whether the zoning code allows secular assemblies where it forbids religious ones. Courts must first divine the zoning code's "regulatory purpose"—inviting governments to develop creative, *post hoc* rationalizations for their regulatory schemes, and forcing courts to choose between the disputed accounts of the regulatory purpose. Once a court divines the regulatory purpose, it must then determine whether churches are "similarly situated" with respect to that purpose. That is, does a secular auditorium

contribute more to a "sustainable retail 'main' street" than a church? *Lighthouse*, 510 F.3d at 270. Do private club members patronize nearby shops more frequently than church members? Do libraries contribute more to a retail district than churches? Nothing in the text or history of RLUIPA requires this complex inquiry in place of an easily administrable, bright-line rule.

In short, the Report erred by adopting the Third Circuit's erroneous interpretation of RLUIPA. See Report at 16-17 (applying the Third Circuit's "regulatory purpose" test).[3]

**B.      Under the Seventh and Eleventh Circuits' correct interpretation of RLUIPA, the Church is entitled to summary judgment.**

Under the proper interpretation of RLUIPA's equal terms provision, the church is plainly entitled to summary judgment. Because RLUIPA does not define "assembly" or "institution," those terms must be given their ordinary meaning. *See Midrash*, 366 F.3d at 1230 ("[b]ecause RLUIPA does not define "assembly" or "institution" we construe these terms in accordance with their ordinary or natural meanings."). *Accord United States* v. *Ferguson*, 369 F.3d 847 (5th Cir. 2004) (relying on dictionary definition because "[i]t is well-settled that 'we should give the words of statutes their plain meaning'"). "An '*assembly*' is 'a company of persons collected together in one place and usually for some common purpose (as deliberation and legislation, worship, or social entertainment.)'" *Midrash*, 366 F.3d at 1230 (quoting WEBSTER'S 3D NEW INT'L UNABRIDGED DICTIONARY 131 (1993)) (emphasis added). An "'*institution*' is 'an established society or corporation: an establishment or foundation esp[ecially] of a public character.'" *Id.* (quoting WEBSTER'S 3D NEW INT'L UNABRIDGED DICTIONARY 1171 (1993)) (emphasis added).

---

[3]   The Report incorrectly identifies *Lighthouse* several times as a Seventh Circuit decision. *See* Report at 16. It is a Third Circuit case. The relevant Seventh Circuit case, *Digrugilliers* v. *Consolidated City of Indianapolis*, splits with *Lighthouse* on the Equal Terms standard. *See* 506 F.3d 612 (7th Cir. 2007) (holding that distinctions in liquor licensing laws do not justify unequal treatment).

In light of the ordinary meaning of these terms, Leon Valley's land use regulations treat religious assemblies and institutions less favorably than numerous nonreligious assemblies or institutions. Leon Valley's B-2 Retail district—where the Plaintiff's church is prohibited— permits the following nonreligious assemblies and institutions as of right:

- "School"
- "Theater, Indoor"
- "Recreational Facility, Neighborhood"
- "Library"
- "Art Gallery/Museum"
- "Child Care Facility"
- "Gymnasium/Physical Fitness Facility"

*See* Ex. A-1. In addition, the same district allows the following nonreligious assemblies and institutions if they obtain a SUP (a privilege not offered to churches):

- "Auditorium"
- "Convention Center"
- "Other Similar Meeting Facilities"
- "Club or Lodge (private)"
- "Funeral Homes/ Mortuary"

*Id.*

These are all "assemblies" under the plain meaning of that term: places where people collect together in one place for some common purpose. Several are also "institutions": established societies or corporations, particularly of a public nature.

They are also precisely the type of non-religious uses identified in RLUIPA's legislative history.[4] As RLUIPA's sponsors explained, the Equal Terms provision was included because "[z]oning codes frequently exclude churches in places where they permit ***theaters***, meeting halls,

---

[4] Although resort to legislative history is unnecessary where, as here, the statutory text is clear, *see Midrash,* 366 F.3d at 1266; the legislative history here underscores the fact that the Report misconstrues RLUIPA's text and purpose.

and other places where large groups of people assemble for secular purposes."[5]   Elsewhere, the

legislative history identifies "uses such as banquet halls, *clubs*, community centers, *funeral*

*parlors*, fraternal organizations, *health clubs*, *gyms*, places of amusement, *recreation centers*,

*lodges*, *libraries*, *museums*, municipal buildings, meeting halls, and *theaters*,"[6] and elsewhere

"meeting halls, community centers, *theaters*, *schools*, or arenas."[7]   In short, the secular

assemblies Leon Valley permits in the B-2 Retail zone are not only covered under the plain

language of RLUIPA, they are precisely the secular assemblies that Congress had in mind when

it passed RLUIPA.

Because Leon Valley has treated religious assemblies (such as the Church) less favorably

than these nonreligious assemblies, Leon Valley has violated RLUIPA. *Midrash*, 366 F.3d at

1231; *Digrugilliers*, 506 F.3d at 614-15.

C.   **Even under the Third Circuit's interpretation of RLUIPA, the Church is entitled to summary judgment.**

Even assuming the Third Circuit's "regulatory purpose" standard were a correct

interpretation of RLUIPA, the Report misapplied that standard.   According to the Report, the

---

[5]   Senate Sponsors' Statement at S7775 (emphasis added).

[6]   H.R. REP. NO. 106-219 at 19 (1999) (emphasis added).

[7]   *Protecting Religious Freedom After* Boerne *v.* Flores*: Hearing Before the Subcomm. on the Constitution of the House Comm. on the Judiciary,* 105th Cong. at 71 (1998) (testimony of Steven T. McFarland, Director, Center for Law and Religious Freedom); *See also* Issues Relating to Religious Liberty Protection, and Focusing on the Constitutionality of a Religious Protection Measure: Hearing Before the Comm. on the Judiciary, United States Senate, 106th Cong. (1999) (testimony of Prof. Douglas Laycock, U.T. Law School) (identifying "banquet halls, *clubs*, community centers, funeral parlors, fraternal organizations, *health clubs*, *gyms*, *recreation centers*, *lodges*, *libraries*, *museums*, municipal buildings, *meeting halls*, and *theaters*" as non-religious assembly uses frequently preferred over churches in city zoning codes) (emphasis added); Religious Freedom, Hearing on the Religious Liberty Protection Act of 1998 H.R. 4019 Before the Subcomm. on the Constitution of the House Comm. on the Judiciary, 105th Cong. at 405 (1998) (testimony of John Mauck) (testimony of expert zoning practitioner concluding that in 22 of 29 zoning codes surveyed in suburban Chicago, churches had a less favorable status in various zoning districts than non-religious meeting places, such as *theaters*, *meeting halls*, *lodges*, *clubs*, and restaurants).

purpose of the B-2 Retail district "is to create a retail corridor along Bandera Road."[8]   Report at
17.  Reasoning that religious assemblies generate no retail activity, but that all of the permitted
secular assemblies do, the Report concluded that Leon Valley has not violated RLUIPA.  *Id.*

This analysis is wrong for two reasons.  *First*, the Report misinterprets the Third Circuit's
decision in *Lighthouse*, which is distinguishable from this case.  In *Lighthouse*, the city sought to
create a "'vibrant' and 'vital' downtown community centered on an entertainment and retail
district."  510 F.3d at 270.  Churches were excluded from this district *not* because they were "by
[their] very nature" inconsistent with an entertainment and retail district.  *Id.*  Rather, they were
excluded because a state law prohibited any liquor licenses within 200 feet of a church; thus,
allowing churches to locate in the entertainment and retail district would have prohibited *other*
entertainment and retail uses from locating there—such as restaurants, bars, and clubs.  *Id.* at
270-71.  In other words, *Lighthouse* rested not on a determination that the church *itself* was a
non-retail use—a question the Third Circuit expressly found it "d[id] not need to reach"—but
rather on a determination that allowing churches would restrict the development of *nearby* retail
uses.  *Id.* at 270.

Here, Leon Valley does not allege that permitting the Church would prohibit other retail
businesses from operating on Bandera Road.  Indeed, the property in question has been used for
a church for more than a decade.  *See* Dkt. 34 at 4.  Leon Valley claims only that the Church is
inconsistent with a retail corridor because it does not itself "generate retail activity."  Report at

---

[8]   The purpose of the church exclusion is a disputed question of fact, which the Report
inexplicably resolved in Leon Valley's favor.  Abundant evidence suggests that Leon Valley
excluded churches to increase property tax revenues, not necessarily to generate additional retail
activity.  *See supra* Section I; *see also* Dkt. 35 at 19-21 (detailing evidence of economic
motivation).  In any event, as explained below, the Church is entitled to summary judgment even
when this factual dispute is resolved in Leon Valley's favor and the purpose of the regulation is
assumed to be creating a retail corridor.

17. This is not an application of *Lighthouse* but a dramatic expansion of it.[9]

*Second*, and more importantly, Leon Valley permits numerous secular assembly uses that generate no more retail activity than the Church. Both "School[s]" and "Librar[ies]" are permitted as of right, and it is undisputed that schools and libraries frequently generate no retail activity. *See* Ex. A-1 at 89-96. "Museums" are also permitted as of right and do not necessarily generate retail activity. Indeed, "Child Care Facilit[ies]" are permitted as of right "*whether or not [operated] for compensation*."[10]

Moreover, under a specific use permit, Leon Valley allows "Auditorium[s]," "Club[s] or Lodge[s]," and "Other Similar Meeting Facilities." *Id.* The Report offers no reason for concluding that a private Moose Lodge, Veterans of Foreign Wars post, or Boy Scout Council headquarters would generate "retail activity" in a way that churches would not.[11] Thus, the Report is simply wrong that "[t]he Church has not identified a nonreligious assembly which is treated more favorably than a religious assembly in creating a retail corridor." Report at 17.

Similarly, assuming the purpose of the B-2 Retail district is to attract for-profit businesses and generate property tax revenue, the district still treats churches on less than equal terms. Schools, libraries, and private clubs can, of course, be non-profit. So can "Catering Facilit[ies]," "Art Galler[ies]/Museum[s]," "Gymnasium/Physical Fitness Facilit[ies]" (like a YMCA),

---

[9]    The Report also ignores an entire section of the *Lighthouse* opinion—the section striking down the city's prior ordinance as a violation of RLUIPA. That ordinance—which permitted assembly halls and theaters, but not churches—violated the Equal Terms provision "because it is not apparent from the allowed uses why a church would cause greater harm to regulatory objectives than an 'assembly hall' that could be used for unspecified meetings." 510 F.3d at 272. Because the city permitted other non-commercial assemblies in the commercial district, its prohibition on churches in that district violated RLUIPA. *See id.* at 272-73. The Report offered no reason for ignoring this portion of *Lighthouse*.

[10]    Ex. A-1 at 89-96; *id.* at 15 (definition of "child care facility").

[11]    Indeed, perhaps out of oversight, the Report simply ignored many of the uses permitted under a specific use permit. *See, e.g.*, Report at 17 (citing "gift shops, hobby shops, hardware stores, music stores, day care facilities and counseling facilities," but ignoring auditoriums, clubs,

"Recreational Facilit[ies], Neighborhood" (like an after-school basketball program), "Child Care Facilit[ies]," and indoor "Theater[s]."

All these uses are permitted without any review process to ensure they contribute to the commercial nature of the area. Even under the Third Circuit's standard, then, these assemblies and the Church are "are similarly situated *as to the regulatory purpose*" of the zoning ordinance. 510 F.3d at 266. Leon Valley's ordinances thus fail both the Third Circuit's and the Eleventh Circuit's tests. And if this court were to accept the Report, it would depart from the holding of every circuit court to apply RLUIPA's Equal Terms provision.

### III. Objection 3: the Report misapplies RLUIPA's jurisdictional requirements for substantial burden claims.

The Report commits another serious error when applying RLUIPA's jurisdictional elements for substantial burden claims. The Report fails to consider one of the elements, despite the fact it was briefed by the parties. It also misinterprets the law governing a second element. Both errors require this Court to reject the Report and consider the Church's motion for summary judgment on its substantial burden claim.

RLUIPA's Substantial Burden provision (unlike its Equal Terms provision) requires plaintiffs to meet a simple jurisdictional test:

(2) SCOPE OF APPLICATION- This subsection applies in any case in which--

(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make,

lodges, and other similar meeting facilities).

individualized assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc(2)(a)(2). RLUIPA's substantial burden provision applies *where any one of these three jurisdictional tests is satisfied. See id.*; *cf. Westchester Day School* v. *Village of Mamaroneck,* 504 F.3d 338, 354 (2d Cir. 2007) (refusing to consider challenge to RLUIPA's individualized assessments prong where the interstate commerce prong was satisfied). Two of these tests, interstate commerce and individualized assessments, are satisfied here.

The Report fails to even mention the first jurisdictional test—the interstate commerce test—despite the fact it was fully briefed by the parties. *See* Dkt. 35 at 13-14 (plaintiff's motion for summary judgment); Dkt. 36 at 17-20 (defendant's response). For this reason alone, its conclusion that RLUIPA does not apply cannot be supported under the law. The Report then errs again by concluding that the rezoning application was not an individualized assessment.

A.   **The land use decision affected interstate commerce.**

Leon Valley's refusal to rezone the Church's property, as well as its interference with the Church's ongoing operations, unquestionably affect interstate commerce within the meaning of RLUIPA § 2(a)(2)(B). The definition of "commerce between the States" is given a broad reading, since it is a term of art drawn from the Supreme Court's interstate commerce jurisprudence, and because RLUIPA itself commands that the term be interpreted broadly, "to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g); *see also* Senate Sponsors' Statement at S7775 (explaining the clause is based upon the Supreme Court's Commerce Clause jurisprudence); *McDermott Intern., Inc.* v. *Wilander,* 498 U.S. 337, 342 (1991) (explaining terms of art: "In the absence of contrary indication, we assume that when a statute uses such a term, Congress intended it to have its established meaning."). Congress' interstate commerce power reaches activities that "arise out

14

of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[] interstate commerce." *United States* v. *Lopez*, 514 U.S. 549, 558-59 (1995).[12] This standard is easy to meet: "the evidence need only demonstrate a minimal effect on commerce to satisfy the jurisdictional element." *Westchester Day School,* 504 F.3d at 354. Under this standard, Leon Valley's activities unquestionably affect interstate commerce.

The purchase agreement for the Church's property is contingent upon a rezoning change. *See* Dkt. 35, Ex. G (purchase agreement); Ex. A-2 (assignment of agreement). That agreement is itself a part of interstate commerce, since it involves the Elijah Group, based in Texas, and GoldStar Trust, based in Arizona. Dkt. 35, Ex. G at 1. Pastor Crain testified—and defendants have not disputed—that if the purchase is completed, the church plans to spend $400,000 to upgrade and beautify the property. Dkt. 35, Ex. I at 19:11-31. These transactions easily "demonstrate [the] minimal effect on commerce" necessary to invoke RLUIPA.[13]

Because the law on this point is so clear, the Court need not even reach the "individualized assessments" test. But if it did, it would find that test satisfied, too.

**B.    RLUIPA applies because Leon Valley made an individualized assessment of the Church's property.**

The undisputed facts make clear that Leon Valley made an individualized assessment of the Church's property. Federal courts consider rezonings to be individualized assessments under both RLUIPA and the Free Exercise Clause. In *Civil Liberties for Urban Believers* v. *City of Chicago,* 343 F.3d 752, 756 (7th Cir. 2003), the Seventh Circuit considered a Free Exercise

---

[12] *See also Gonzales* v. *Raich,* 545 U.S. 1 (2005) (affirming Congress' ability "to regulate purely local activities" if, in the aggregate, such activities affect interstate commerce).

[13] *See, e.g., Westchester Day School* v. *Village of Mamaroneck,* 417 F.Supp.2d 477, 541 (S.D.N.Y. 2006) (construction of religious school satisfied RLUIPA § 2(a)(2)(B)); *Cottonwood Christian* v. *Cypress,* 218 F.Supp.2d 1203, 1221–22 (C.D.Cal. 2002) (SUP denial preventing construction of church building affected commerce because it involved "construction workers, construction materials, transportation vehicles and commercial financial transactions.").

15

challenge to a Map Amendment, a procedure described as "effectively rezoning the targeted parcel." The court treated "Special Use, Map Amendment, or Planned Development approval" as individualized exemptions from the zoning code. *Id.* at 763-64. The Seventh Circuit later held that a denial of rezoning constituted a substantial burden under RLUIPA. *Sts. Helen and Constantine* v. *City of New Berlin,* 396 F.3d 895 (7th Cir. 2005). Although *Constantine* is not specific about which jurisdictional test applies, there is no dispute that the church's denied rezoning application is subject to RLUIPA. *See id.* The Ninth Circuit has also decided a substantial burden case based upon a denial of rezoning. *See San Jose Christian College* v. *City of Morgan Hill,* 360 F.3d 1024 (9th Cir. 2004). This understanding of rezonings is appropriate because a targeted rezoning—like the one requested here—requires the City to "take into account the particular details of an applicant's proposed use of land when deciding whether to permit or deny that use." *Guru Nanak Sikh Soc'y* v. *County of Sutter,* 456 F.3d 978, 986 (9th Cir. 2006). The Report, by contrast, relies on the only precedent to the contrary—a state court decision. *See* Report at 10-11 (citing *Greater Bible Way Temple of Jackson* v. *City of Jackson,* 733 N.W.2d 734 (Mich. 2007)).

The Report incorrectly concludes that the rezoning in this case was "not an individualized assessment of the Church's use of the Property." Report at 11. It states that Leon Valley did not take into account the proposed use of land. Report at 9. This misstates the undisputed facts. The Property was developed as a church and operated as a church until 2007. Report at 1-2. Church use did not lapse until late 2007 (the parties dispute the exact date), and the bank applied for rezoning in November 2007. Report at 2 & n.4. As described in detail in the Church's Motion for Summary Judgment, the Leon Valley zoning commission was well aware of the Church's plans for the Property when it considered the rezoning application. Dkt. 35 at 3-5, 19-

16

21. Pastor Crain testified at a public hearing regarding his intent to purchase, remodel, and use the buildings on the Property for their intended uses as a church, school, and community education center. *See* Dkt. 35, Ex. I at 17-21 (transcript of Leon Valley Zoning and Land Use Commission Meeting of Feb. 26, 2008). The same transcript shows that Leon Valley considered the Church's intended use for the property and rejected it out of fear that other churches might try to move into the area. Dkt. 35 at 3 (citing Ex. I at 27-28). The City based its decision upon the planned church use, citing "economic concerns" and the need for "sales taxes" as the reason for its refusal. *See id.* (citing Ex. I at 27-28, 33-34). There can be no question that Leon Valley took into account the specific church use intended for the property, and refused to grant an exemption for religious hardship. *See Employment Division* v. *Smith,* 494 U.S. 872, 884 (1990) ("[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason.") The undisputed facts demonstrate that the denial of rezoning was an individualized assessment.

Moreover, the zoning ordinance itself specifies that amendments to the map or text may only be made for limited purposes, such as "changed or changing conditions or circumstances in a particular locality or area," or a "change in public plans or policies that affect the property." Dkt. 35 Ex. C at 34, Leon Valley Zoning Code § 30.309. The Report paints a rezoning as a broad application of the Master Plan, *see* Report at 12, but the text of the law makes it clear that rezonings in Leon Valley may only occur after a careful review of the particular circumstances of the particular property at issue.

Leon Valley's actions *after* the rezoning denial also constituted individualized assessments. The City made numerous individualized assessments, including (1) the City's Application for Temporary Restraining Order to stop church use, (2) the zoning officer's

17

numerous visits to the Property to perform fire code and safety inspections, and (3) the fire marshal's threats to ticket the Elijah Group if it continued conducting church services. *See* Dkt. 35 at 17 & n.13 (Church's motion discussing these events); Dkt. 35, Ex. Q (internal email between assistant fire marshal and city staffers discussing attempts to remove the church congregation and to turn off the power to prevent church use). The Report puzzlingly dismisses these events as "contrived ... by leasing the Property" and seeking certificates of occupancy. Report at 8. These actions are no more contrived than any event where a religious group leases property and seeks to use it for worship.

The Report's conclusion[14] is particularly troubling because it was Leon Valley's actions which prevented the Church from applying for a variance or SUP. The only reason the Church filed an application to rezone, rather than an SUP, is that Leon Valley amended its Master Plan to prohibit churches from applying for an SUP in B-2 Retail district. Because there was no procedure in the Zoning Ordinance allowing the Church to apply for an SUP, or otherwise locate in B-2, the Church was forced to seek a rezoning. *See supra* Section I. If the Court refuses to treat rezonings as individualized assessments, it will create a perverse incentive for cities to avoid RLUIPA by banning churches. The Court should not permit cities to undermine RLUIPA in this manner.

### IV. Objection 4: the undisputed facts demonstrate that the Church has suffered a substantial burden on its religious exercise.

The Report also errs by concluding that the Church does not suffer a substantial burden under RLUIPA. The Report identifies three reasons for finding no substantial burden: (1) the Church could locate elsewhere in Leon Valley or the greater San Antonio area (Report at 12-13), (2) there is no financial burden on the Church "because the Church's purchase agreement is

---

[14] *See* Report at 9-11 (relying on this reasoning).

18

conditioned on the Property being rezoned" (Report at 14), and (3) "the Church is not prohibited from conducting all religious activity at the Property" (Report at 14-15). Each of these reasons misstates the undisputed facts, binding precedent, or both. The Court should enter summary judgment for the Church on its substantial burden claim.

### A.    The Report's conclusion that the Church could locate elsewhere is both incorrect and irrelevant.

First, it is irrelevant that other sites in San Antonio may exist. *See* Report at 13. In *Merced* v. *Kasson,* upon which the Report relies, Euless could not justify a citywide ban on a particular religious exercise on the basis that the activity could be permitted elsewhere. *See* 577 F.3d 578, 590 (5th Cir. 2009) ("[A]t a minimum, the government's *ban* of conduct sincerely motivated by religious belief substantially burdens an adherent's free exercise of that religion."). In *Barr* v. *City of Sinton,* the Texas Supreme Court explicitly rejected the argument that "the City is so small that excluding the ministry from inside the city limits was inconsequential." --- S.W. 2d ---, 2009 WL 1712798, at *10 (Tex. Jun. 19, 2009).[15]  The court held that "size alone is not determinative." *Id.* Euless, like Leon Valley, is a small city surrounded by much larger cities— Dallas and Fort Worth. Sinton is adjacent to Corpus Christi. The location of these cities near other, more populated areas did not excuse them from compliance with civil rights laws. It is a venerable principle of constitutional law that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Id.* (quoting *Schneider* v. *State,* 308 U.S. 147, 163 (1939)). Leon Valley is not free to burden churches on the excuse that they could move elsewhere to escape the burden.

Nor is it sufficient that other sites in Leon Valley may exist. "[E]vidence of *some*

---

[15]  Both cases were decided under the Texas Religious Freedom Restoration Act, TEX. CIV. PRAC. & REM. CODE §110.001 *et seq.* ("TRFRA"). The definition of "substantial burden" in that

19

possible alternative, irrespective of the difficulties presented, does not, standing alone, disprove substantial burden." *Barr,* 2009 WL 1712798 at *10.   Like *Barr,* federal courts applying RLUIPA are clear that "a burden need not be found insuperable to be held substantial." *Westchester Day School,* 504 F.3d at 349 (citing *Constantine,* 396 F.3d at 901).   Instead, burdens are present where cities restrict the amount of land available to a few parcels, *see Barr,* 2009 WL 1712798 at *10, *Guru Nanak,* 456 F.3d at 992; where churches labor under the "delay, uncertainty, and expense" of repeated rezoning applications, *Constantine,* 396 F.3d at 901; where there is a "a close nexus between the coerced or impeded conduct and the institution's religious exercise," *Westchester Day School,* 504 F.3d at 349; or where the city's actions have "to a significantly great extent lessened the prospect of [Church] being able to construct a [house of worship] in the future." *Guru Nanak,* 456 F.3d at 992.

All these facts are present here. The Church is unduly restricted in Leon Valley.  Leon Valley amended its zoning ordinances with the specific intent of restricting the area available for church use, knowingly zoning existing church buildings outside the B-3 zone. *See, e.g.,* Dkt. 35 at 19-20 (discussing the economic motivation for the original zoning change).   The new zoning permits churches in only one on the City's 13 zones, B-3, and does not permit them to locate elsewhere even with an SUP.  *See* Ex. A-1 (zoning chart); *supra* at 3 (describing zoning restrictions).   The Church must therefore choose among a handful of available parcels in Leon Valley, which are inappropriate and unsuitable for this congregation for a number of reasons. *See* Dkt. 35, Ex. E at 242-48 (explaining why other parcels were rejected).

The Church faces delay, uncertainty and expense because it must either submit another application for rezoning, or relocate yet again. *See* Dkt. 35 at 16-17&n.13.  The church's core

---

act, just like the definition in RLUIPA, is interpreted by reference to Free Exercise caselaw. *See Merced,* 577 F.3d at 588.

religious exercise—gathering for corporate worship—is coerced and impeded because the church cannot carry out group worship on its own property. *See* Report at 3. Leon Valley's enforcement actions against the church, including videotaping services and sending armed employees to monitor church activities, unquestionably lessen the prospect of the Church being able to locate in Leon Valley in the future. *See* Dkt. 35 at 17 n.13. The Church has established a substantial burden under prevailing law, and should be granted summary judgment.

**B.      The Report's conclusion that the Church faces no financial burden is both incorrect and irrelevant.**

As the cases cited above make clear, the Church suffers a substantial burden whether or not it suffers an additional, financial burden. The Report states that the Church has no substantial burden because its purchase agreement is conditional, and alleges that the church is in a good financial position. Report at 14. Even if true, this would not be dispositive, since the Church suffers all the burdens listed above. Moreover, the existence of a zoning contingency clause does not negate a finding of substantial burden. RLUIPA itself is clear that its protections extend to plaintiffs with "an ownership, leasehold, easement, servitude, or other property interest in the regulated land *or a contract or option to acquire such an interest.*" 42 U.S.C. § 2000cc -8(5) (emphasis added). Where Congress has specifically contemplated that RLUIPA will apply to option contracts and contracts with other, unspecified conditions, the existence of such contracts should not be used as proof that no burden exists. *See also Petra Presbyterian Church* v. *Village of Northbrook,* 489 F.3d 846, 850 (7th Cir. 2007) (cost of contingency contract is a proper measure of damages under RLUIPA).

**C.      The Report's conclusion that the Church is not prohibited from conducting all religious activity at the Property is irrelevant.**

The Report departs from binding precedent when it concludes that no substantial burden

21

exists because the Church can carry out other, non-assembly activities on its property.    In *Merced,* the Fifth Circuit explained that "[t]he relevant inquiry is not whether governmental regulations substantially burden a person's religious free exercise broadly defined, but whether the regulations substantially burden a specific religious practice."   577 F.3d at 591.   The Fifth Circuit cites with approval the Ninth Circuit's conclusion that the proper inquiry under RLUIPA is whether a particular practice has been burdened, not an entire set of practices: "RLUIPA's plain language and our caselaw interpreting it compel the conclusion that the 'religious exercise' at issue in Greene's lawsuit is group worship, not Christianity."   *Greene* v. *Solano County Jail,* 513 F.3d 982, 988 (9th Cir. 2008).   Leon Valley's actions have effectively banned a specific religious practice: the ability to gather for worship.   The fact that other religious practices may be permitted is irrelevant.

The Report misapplies both the facts and the law.   Under Texas precedent, Fifth Circuit precedent, and the precedent of other circuits, Leon Valley has substantially burdened the Church's religious exercise.

### V. Objection 5: the Report misapplies the Texas Religious Freedom Act.

Following its conclusions under RLUIPA § 2(a), the Report states that there was also no substantial burden under the Texas Religious Freedom Restoration Act, TEX. CIV. PRAC. & REM. CODE §110.001 *et seq.* ("TRFRA").   Report at 26-27.   For all the reasons stated above, this conclusion is also incorrect.   TRFRA, as a state law, is not subject to the same jurisdictional tests as RLUIPA, so the Court should reach this question whether or not it finds RLUIPA applicable. Moreover, under the recently decided cases of *Barr* and *Merced*, this Court must enter summary judgment in the Church's favor.   Like the homeless ministry in *Barr*, the Church's rights under TRFRA were violated when Leon Valley decided its presence was undesirable.

## VI. Objection 6: the Report misapplies precedent under the Free Exercise Clause.

Based upon the same erroneous reasoning, the Report concludes that no Free Exercise violation exists because there was no substantial burden. Report at 24-25. This conclusion is both incorrect and irrelevant. The Free Exercise Clause may be violated in several ways. One of those ways, as the Church argued on summary judgment, is by subjecting religious plaintiffs to laws which are not neutral or generally applicable. *See* Dkt. 35 at 27-29. This type of Free Exercise violation is codified in RLUIPA's Equal Terms provision. *Midrash,* 366 F.3d at 1232 ("RLUIPA's equal terms provision codifies the *Smith-Lukumi* line of precedent. By requiring equal treatment of secular and religious assemblies, RLUIPA allows courts to determine whether a particular system of classifications adopted by a city subtly or covertly departs from requirements of neutrality and general applicability.") Leon Valley's actions violate the Free Exercise Clause for the same reason that they violate RLUIPA § 2(b)(1).[16]

Proof of substantial burden is not necessary to a *Lukumi*-style claim. "[C]ases interpreting the First Amendment's Free Exercise clause do not require a plaintiff, challenging a discriminatory regulation, to show that it imposes a substantial burden on plaintiff's religious exercise." *Lighthouse,* 510 F.3d at 263 (explaining why RLUIPA's Equal Terms provision does not require proof of substantial burden); *see also* Report at 15-16 (correctly noting that substantial burden is not an element of an Equal Terms claim). The Report departs from precedent by requiring proof of a substantial burden for a Free Exercise violation.

## VII. Objection 7: the Report misapplies precedent under the Unreasonable Limitations provision of RLUIPA.

The Report erroneously concludes there was no unreasonable limitation because churches

---

[16] Because the Report found no violation, it did not consider whether Leon Valley's actions withstood strict scrutiny. The Church refers the Court to its summary judgment briefing on this subject. Dkt. 35 at 18-22.

are not prohibited in Leon Valley, merely in the B-3 zone. Report at 18-20. But as discussed in the Church's summary judgment motion, unreasonable limitations are not limited to cases of total exclusion from a jurisdiction. Dkt. 35 at 22-23. They may exist where a city acts arbitrarily or discriminatorily, *see id.*, or where it simply deprives churches "of reasonable opportunities to practice their religion, including the use and construction of structures, within [the jurisdiction]." *See, e.g., Rocky Mountain Christian Church* v. *Board of Commissioners of Boulder County*, 612 F.Supp.2d 1163 (D. Colo. 2009) (upholding jury verdict in favor of church's RLUIPA Unreasonable Limitations claim). The Report sets up a straw man in the definition of the word "jurisdiction" and proceeds to knock it down. *See* Report at 18-20 (focusing on whether "jurisdiction" means a city or a single zoning district). But this was not the basis for the Church's motion. Dkt. 35 at 22-23 (focusing on the discriminatory nature of the city's zoning changes). The Church's motion should be granted for the reasons stated in the summary judgment briefing and in these Objections.

## VIII. Objection 8: the Report misapplies the Equal Protection Clause.

Finally, the Report misapplies both facts and precedent under the Equal Protection Clause. The Report relies largely on its earlier discussion of RLUIPA's Equal Terms provision. *See* Report at 22-24. It goes so far as to state that the "City zoning ordinance excludes every assembly that is inconsistent with creating a focused retail corridor from zone B-2." Report at 23. As discussed at length in the Equal Terms section above, this is a gross misstatement of the undisputed facts. Leon Valley permits a wide range of non-retail uses in the B-2 Retail district. *See supra* Section I. As the Church explained in its motion, the zoning code violates the Equal Protection clause both on its face and as-applied. Dkt. 35 at 23-26. The Report errs by failing to consider the array of secular assemblies permitted in the B-2 District.

## CONCLUSION

For the foregoing reasons and those stated in the Church's summary judgment briefing, the Court should reject the Report and enter summary judgment in favor of the Church.

Respectfully submitted,

**STUMPF FARRIMOND, P.C.**
112 E. Pecan Street, Suite 700
San Antonio, Texas 78205
Telephone: (210) 231-0919
Facsimile: (210) 231-0004

/s/ Daniel P. Whitworth
Daniel P. Whitworth, State Bar No. 24008275
Roger G. Bresnahan, State Bar No. 02959460
John G. George, State Bar No. 24051944

Eric Rassbach, State Bar No. 24013375
  (pro hac vice pending)
Lori H. Windham (pro hac vice pending)
**THE BECKET FUND FOR RELIGIOUS LIBERTY**
1350 Connecticut Ave. NW, Suite 605
Washington, DC 20036
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

ATTORNEYS FOR PLAINTIFF AND PETITIONER,
THE ELIJAH GROUP, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October, 2009, the foregoing was served upon

the following by the Court's ECF delivery system:

Denton Navarro Rocha & Bernal, PC
2517 North Main Avenue
San Antonio , TX 78212
(210) 227-3243

Law Offices of William M. McKamie P.C.
941 Proton Road
San Antonio, Texas 78258
 (210) 546-2122

Hon. Nancy Stein Nowak
655 E. Durango Blvd.,
San Antonio, Texas 78206
(210) 472-6363


Dated:  October 22, 2009                    /s/ Daniel P. Whitworth_____
                                            Daniel P. Whitworth

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **THE ELIJAH GROUP, INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:08-cv-907-OLG** |
| | § | |
| **THE CITY OF LEON VALLEY, TEXAS** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## DECLARATION OF DANIEL P. WHITWORTH

1.      My name is Daniel P. Whitworth, and I am capable of making this Declaration. The facts contained herein are within my personal knowledge and are true and correct.

2.      I am one of the attorneys of record for the Plaintiff in the above-referenced action.

3.      Exhibit 1 attached hereto is a true and correct copy of Leon Valley's Permitted Use Table.

4.      Exhibit 2 attached hereto is a true and correct copy of the Assignment of Purchase and Sale Agreement.

5.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed this 22nd day of October, 2009.

/s/ Daniel P. Whitworth
Daniel P. Whitworth

Chapter 30 - ZONING
City of Leon Valley

## 30.623  TABLE OF MINIMUM REQUIREMENTS

In all cases regarding minimum standards set forth in the following table, the table is intended to be used in conjunction with the area requirements set forth in the Zoning District section of this Chapter.

| DISTRICT | USE | MIN. FRONT YARD IN FT. | MIN. SIDE YARD IN FT. | MIN. REAR YARD IN FT. | MIN. AREA IN SF. | MIN. WIDTH IN FT. | MAX. STORY HIGHT |
|---|---|---|---|---|---|---|---|
| R-1 | SINGLE-FAMILY/OTHER | 25 | 5 | 30 | 8,400 | 70 | 2.5 |
| R-2 | TWO-FAMILY/OTHER | 20 | 5 | 30 | * | 85 | 2.5 |
| R-3 | MULTIPLE-FAMILY | 20 | 10 | 25 | * | 85 | 3 |
| R-3A | MULTIPLE-FAMILY RETIREMENT | 25 | 10 | 25 | 5 acres | 85 | 1 cot 3 apt |
| R-4 | TOWNHOUSE | 25 | 10 | 25 | * | 45 | 3 |
| R-5 | MOBILE HOME | 20 | 10 | 25 | 4 acres | 70 | 2.5 |
| R-6 | GARDEN HOUSE | 20 | 5* | 15 | 4,500 | 45 | 2.5 |
| MX-1 | MIXED USE | * | * | * | 5,000 | 85 | * |
| O-1 | OFFICE | 20 | 10 | 25 | 10,000 | 85 | 3 |
| B-1 | SMALL BUSINESS | 25 | 5 | 30 | 8,400 | 70 | 2.5 |
| B-2 | RETAIL | 25 | ** None | ** None | 9,100 | 70 | 3 |
| B-3 | COMMERCIAL | 25 | ** None | ** None | 9,100 | 70 | No Limit |
| I-1 | INDUSTRIAL | 25 | ** None | ** None | 10,500 | 70 | No Limit |

\* Refer to appropriate zoning district of District Height, Yard and Area Requirements.
\*\* In those instances where the retail, commercial or industrial lot adjoins on the side of a residential zoning district, a side yard of twenty (20) feet shall be provided.  Where the retail, commercial or industrial lot adjoins residential zoning to the rear, a rear yard of twenty-five (25) feet or twenty (20) percent of the average depth of the lot (whichever is less) shall be provided. In both cases, if the two (2) districts are separated by an alley, said alley is _not_ to be used for purposes of calculating the required setback and the building setbacks are required as if the lots adjoined the residential zoning district.\*\*Refer to Development Regulations "Height" for allowed exceptions to the minimum height requirement.

DEF LEON VALLEY 00100

EXHIBIT
1

a.    PROCEDURAL REGULATIONS FOR USE CLASSIFICATION.

(1)    Section 30.600 through Section 30.701, shall be utilized in determining use classification, permitted zoning district(s), and restrictions regarding uses.

(2)    When specified in the Permitted Use Table, a use shall be allowable in the zoning district(s) as shown, unless further restrictions make such use(s) in that zone impermissible.

(3)    When not specified in the Permitted Use Table or Section 30.701, the use shall be subject to the rules applicable to Non-Specified Uses, found elsewhere in this Chapter, unless every aspect of the use is consistent with the intent of this Chapter, and such use meets the criteria of the District Categories.

(4)    Whether a use falls under a table or category shall be determined by the Zoning Administrator.

(5)    Where a site has more than one (1) use, the primary use shall override. In cases where each use is equal, the use which has the most restrictive zoning district and regulations shall override.

(6)    Any wholesale use not specifically denoted as such in the Permitted Use Table shall be classified as a wholesale facility.

DEF LEON VALLEY 00101

Chapter 30 - ZONING
City of Leon Valley



**30.700**                          **PERMITTED USE TABLE**

| √-Allowed by Right            X-Not Allowed | 0-1 | B-1 | B-2 | B-3 | I-1 | SUP-Specific Use Permit Required |
|---------------------------------------------|-----|-----|-----|-----|-----|----------------------------------|
| **Use** | | | | | | **NOTES** |
| Adult Care Facility | SUP | SUP | √ | √ | √ | **SEE Section 30.616, "Adult Care Facilities" |
| Air Conditioning Repair | X | X | X | √ | √ | |
| Air Conditioning Sales-repair and/or service incidental | X | X | √ | √ | √ | |
| Alcoholic Beverage Sales-NO on-premise consumption | X | X | √ | √ | √ | |
| Alteration and Repair of Apparel | X | X | √ | √ | √ | |
| Ambulance Service | X | X | X | √ | √ | |
| Animal Clinic | X | X | √ | √ | √ | |
| Animal Shelter/Pound | X | X | X | √ | √ | |
| Antique Store | X | √ | √ | √ | √ | |
| Appliance, Minor-Repair | X | X | √ | √ | √ | |
| Appliance, Major-Repair | X | X | X | √ | √ | |
| Appliance Store repair and/or service incidental | X | X | √ | √ | √ | |
| Art Gallery/Museum | X | √ | √ | √ | √ | |
| Assembly/Packaging | X | X | X | SUP | √ | |
| Attended Donation Station/Facility | X | X | SUP | SUP | √ | |
| Auditorium, Convention Center, and Other Similar Meeting Facilities | X | X | SUP | SUP | √ | |
| Automobile Accessories -- Retail Sales w/Installation and/or Repair Incidental | X | X | SUP | √ | √ | |
| Automobile Accessories, Parts and Components to include Inspection Retail Sales only w/o Installation and/or Repair Incidental | X | X | √ | √ | √ | |
| Automobile and Boat Storage | X | X | X | SUP | √ | |
| Automobile Auction | X | X | X | X | | **vehicles to be in operating condition w/current sticker and license |
| Automobile Lubrication Service Facility-Lubrication Only | X | X | √ | √ | √ | |
| Automobile Parts and Components Retail Sales with Installation and/or Repair Incidental | X | X | X | √ | √ | |

DEF LEON VALLEY 00102

Chapter 30 - ZONING
City of Leon Valley

| √-Allowed by Right | | X-Not Allowed | | | SUP-Specific Use Permit Required |
| --- | --- | --- | --- | --- | --- |
| **Use** | **O-1** | **B-1** | **B-2** | **B-3** | **I-1** | **NOTES** |
| Automobile Rental with Unenclosed On-Site Storage of not more than twelve (12) Private Passenger Vehicles | X | X | √ | √ | √ | |
| Automobile Rental On Site Storage | X | X | X | √ | √ | |
| Automobile Rental and/or Sales | X | X | X | √ | √ | |
| Automobile Repair and/or Service | X | X | X | √ | √ | |
| Automobile Repair and/or Service- Brake Repair Facility | X | X | X | √ | √ | |
| Automobile Service Station- Gasoline Sales Only | X | X | √ | √ | √ | |
| Automobile Service Station- Repair Incidental | X | X | X | √ | √ | |
| Automobile and Truck Sales- Service Incidental | X | X | X | √ | √ | |
| Automobile/Vehicle Inspection Station | X | X | √ | √ | √ | |
| Automobile/Vehicle Storage | X | X | X | √ | √ | **vehicles to be in operating condition w/current sticker and license |
| Automobile Wrecker Service | X | X | X | X | √ | |
| Bait Store | X | X | X | √ | √ | |
| Bakery | X | X | √ | √ | √ | |
| Bank, Savings & Loan | X | X | √ | √ | √ | |
| Bar | X | X | X | SUP | SUP | |
| Barber or Beauty Equipment and Supplies | X | X | √ | √ | √ | |
| Barber or Beauty Shop | √ | √ | √ | √ | √ | |
| Bicycle Sales and Repair | X | X | √ | √ | √ | |
| Boat Sales and Service Facility | X | X | X | SUP | SUP | |
| Bookstore | √ | √ | √ | √ | √ | |
| Building Specialty Store | X | X | √ | √ | √ | |
| Cabinet or Carpenter Shop | X | X | X | √ | √ | |
| Camera/Photographic Supply | X | X | √ | √ | √ | |

90

DEF LEON VALLEY 00103

Chapter 30 - ZONING
City of Leon Valley

| Use | O-1 | B-1 | B-2 | B-3 | I-1 | NOTES |
|---|---|---|---|---|---|---|
| **√-Allowed by Right** | | | **X-Not Allowed** | | **SUP-Specific Use Permit Required** | |
| Candy, Nut and Confectionery Store | X | X | √ | √ | √ | |
| Carwash (Automatic) | X | X | X | √ | √ | Vacuum cleaners must be set back a minimum of 50-feet from residential areas |
| Carwash (Self-Service) | X | X | SUP | √ | √ | Vacuum cleaners must be set back a minimum of 50-feet from residential areas |
| Catering Facility | X | X | √ | √ | √ | |
| Cemetery | X | X | X | SUP | SUP | |
| Child Care Facility | SUP | SUP | √ | √ | X | **SEE Section 30.615, "Child Care Facilities" |
| Churches | X | X | X | √ | X | |
| Cleaning Products | X | X | √ | √ | √ | |
| Clinic, Dental or Medical | √ | √ | √ | √ | X | |
| Clothing and Accessory Store | X | X | √ | √ | X | |
| Club or Lodge (private) | X | SUP | SUP | SUP | SUP | **NO sale of alcoholic beverages in B-1 |
| Cold Storage Plant | X | X | X | SUP | √ | |
| Communications Distribution HUB | X | X | SUP | SUP | √ | |
| Computer Store/Similar Business Machines Retail Sales with Installation and/or Repair Incidental | X | X | √ | √ | √ | |
| Contractor Facility | X | X | √ | √ | √ | |
| Convenience Store | X | X | √ | √ | √ | **If the use is 24-hours a SUP is required |
| Cosmetics Store | √ | √ | √ | √ | X | |
| Creamery | X | X | X | X | √ | |
| Dairy Product Sales | X | X | √ | √ | √ | |
| Dance Hall | X | X | X | SUP | SUP | ALSO SEE Bar, Club or Lodge (private) |
| Department and/or Variety Store | X | X | √ | √ | √ | |
| Drug Store | X | √ | √ | √ | √ | |
| Dry Cleaning - Pick-up station ONLY | √ | √ | √ | √ | √ | |

91

Chapter 30 - ZONING
City of Leon Valley

| √-Allowed by Right | | X-Not Allowed | | | SUP-Specific Use Permit Required | |
|---|---|---|---|---|---|---|
| **Use** | O-1 | B-1 | B-2 | B-3 | I-1 | **NOTES** |
| Dry Cleaning Plant | X | X | X | SUP | SUP | |
| Electroplating | X | X | X | X | SUP | |
| Entertainment-INDOOR, Billiard Parlor, Bowling Center, Playground, Skating Center, Video/Game Room | X | SUP | SUP | SUP | √ | |
| Entertainment-OUTDOOR Baseball/Softball/Volleyball Park, Equestrian Center, Fairground, Football Field, Go-Karts, Golf-miniature or Other, Sports Complex | X | SUP | SUP | SUP | X | |
| Exterminator | X | X | X | √ | √ | |
| Farm | √ | √ | √ | √ | √ | |
| Farm Equipment Sales and Service | X | X | X | √ | √ | |
| Feed, Seed, and/or Fertilizer Retail Sales ONLY | X | X | √ | √ | √ | |
| Firearms and/or Ammunition | X | X | SUP | SUP | SUP | |
| Fish Market (fully enclosed) | X | X | √ | √ | √ | |
| Fish Market, Wholesale | X | X | X | X | SUP | |
| Flea Market | X | X | X | √ | √ | **SEE additional regulations Section 30.701 |
| Floor Cleaning Service | X | X | SUP | √ | √ | |
| Floor Covering Sales | X | X | √ | √ | √ | |
| Floral Shop | √ | √ | √ | √ | √ | |
| Food Processing Facility | X | X | X | X | SUP | |
| Food Product Sales | X | X | √ | √ | √ | |
| Freight Depot (truck) | X | X | X | X | SUP | |
| Fruit and Produce Market | X | X | √ | √ | √ | |
| Funeral Home/Mortuary | X | X | SUP | √ | √ | |
| Furniture Repair and/or Upholstery Shop | X | X | X | √ | √ | |
| Furniture Sales | X | X | √ | √ | √ | |
| Garden Specialty Store | X | X | √ | √ | √ | |

92

DEF LEON VALLEY 00105

Chapter 30 - ZONING
City of Leon Valley

| √-Allowed by Right | | X-Not Allowed | | | | SUP-Specific Use Permit Required |
|---|---|---|---|---|---|---|
| **Use** | O-1 | B-1 | B-2 | B-3 | I-1 | **NOTES** |
| Gift Shop | √ | √ | √ | √ | X | |
| Glass, Sheet -Sales ONLY | X | X | √ | √ | √ | |
| Grocery Store w/Food and Produce Market Incidental | X | √ | √ | √ | √ | |
| Gymnasium/Physical Fitness Facility | X | X | √ | √ | √ | |
| Hardware Store | X | X | √ | √ | √ | |
| Hobby Supply Store (crafts) | X | √ | √ | √ | √ | |
| Hospital | X | X | SUP | √ | √ | |
| Intradermal Permanent Cosmetics | X | SUP | SUP | √ | √ | |
| Interior Decorating Studio | √ | √ | √ | √ | √ | |
| Jewelry Sales and Repair | √ | √ | √ | √ | √ | |
| Kennel | X | X | X | SUP | SUP | |
| Laboratory, Dental or Medical | X | X | SUP | √ | √ | |
| Laboratory, Research | X | X | X | √ | √ | |
| Laboratory, Testing | X | X | X | X | √ | |
| Laundromat | X | X | √ | √ | √ | |
| Laundry Supply-to include uniform/linen/diaper service | X | X | X | SUP | √ | |
| Leather Goods or Luggage Store | X | √ | √ | √ | √ | |
| Library | X | √ | √ | √ | √ | |
| Locksmith | X | √ | √ | √ | √ | |
| Lodging | Boarding House | X | SUP | X | X | X | **ALSO SEE Section 30.613 "Residential Use Table" |
| | Convalescent Ctr. | X | X | SUP | √ | √ | |
| | Nursing Home | X | SUP | SUP | √ | √ | |
| | Hotel | X | X | X | √ | √ | |
| | Inn | X | SUP | √ | √ | X | |
| | Motel | X | X | X | √ | √ | |
| | Suite Hotel | X | X | X | √ | √ | |

DEF LEON VALLEY 00106

Chapter 30 - ZONING
City of Leon Valley

| √-Allowed by Right | | | X-Not Allowed | | | SUP-Specific Use Permit Required |
|---|---|---|---|---|---|---|
| **Use** | **O-1** | **B-1** | **B-2** | **B-3** | **I-1** | **NOTES** |
| Lumberyard | X | X | X | SUP | √ | |
| Machine, Tools and Construction Equipment to include sales, service and repair | X | X | X | √ | √ | |
| Manufacturing | X | X | X | SUP | √ | |
| Medical Equipment and Supplies | X | X | √ | √ | √ | |
| Motorcycle Sales, Repair, and Service | X | X | X | SUP | √ | |
| Moving and Transfer Company | X | X | X | √ | √ | |
| Music Store | X | X | √ | √ | √ | |
| Non-Emergency Medical Transport Service | X | X | √ | √ | √ | |
| Office Equipment and Supply | X | X | √ | √ | √ | |
| Office, Professional also see Clinic, Dental or Medical | √ | √ | √ | √ | √ | |
| Optical Store | X | √ | √ | √ | √ | |
| Paint and Wallpaper | X | X | √ | √ | √ | |
| Park and Ride | X | X | X | SUP | SUP | |
| Parking Lot or Parking Garage | X | X | √ | √ | √ | |
| Pawn Shop | X | X | X | X | √ | |
| Pet Grooming | X | X | √ | √ | √ | |
| Pet Store | X | X | √ | √ | √ | |
| Photographic Equipment and Supplies | X | X | √ | √ | √ | |
| Picture Framing Shop | X | X | √ | √ | √ | |
| Plant Nursery I | SUP | SUP | √ | √ | √ | There shall be no sales or advertising signs and accessory buildings shall not exceed 600 square feet, nor be closer than fifty (50) feet to any property line. |
| Plant Nursery II | X | X | SUP | SUP | SUP | In a B-2 zone, there shall be no outside storage except live plant material, subject to screening requirements as stated in Chapter 14. |
| Plant Nursery III | X | X | SUP | √ | √ | In a B-2 zone, there shall be no outside storage except live plant material, subject to screening requirements as stated in Chapter 14. |
| Plant Nursery IV | X | X | X | √ | √ | In a B-2 zone, there shall be no outside storage except live plant material, subj. screening requirements as stated in Chap. 14. |

94

DEF LEON VALLEY 00107

| √-Allowed by Right | | X-Not Allowed | | | SUP-Specific Use Permit Required |
|---|---|---|---|---|---|
| **Use** | **O-1** | **B-1** | **B-2** | **B-3** | **I-1** | **NOTES** |
| Plant Nursery Sales, Greenhouse | X | X | √ | √ | √ | |
| Playground Equipment Sales | X | X | X | √ | √ | |
| Playroom/ Birthday Party Room, Children Only | X | SUP | √ | √ | X | |
| Plumbing Fixture Store | X | X | √ | √ | √ | |
| Pool and Spa Sales | X | X | √ | √ | √ | |
| Portable Building Sales-manufactured, modular, mobile, prefabricated | X | X | X | √ | √ | |
| Post Office | X | X | √ | √ | √ | |
| Printing and Reproduction Services | X | X | SUP | √ | √ | |
| Propane Facility | X | X | X | SUP | SUP | |
| Radio or Television Station-without transmitter tower or disc | X | X | √ | √ | √ | A station with a transmitter requires an SUP in all the allowed districts |
| Recreational Facility, Neighborhood | X | √ | √ | √ | √ | |
| Restaurant and/or Food Establishment cafeteria, café, delicatessen, frozen dessert shop and other similar uses (completely enclosed) | X | X | √ | √ | √ | Drive-thru SEE Section 30.800, "Parking Regulations," Part 8D,"Off-Street Parking Requirements" |
| Restaurant and/or Food Establishment (not completely enclosed) | X | X | SUP | √ | √ | Drive-thru SEE Section 30.800, "Parking Regulations," Part 8D, "Off-Street Parking Requirements" |
| Repair Shop | X | X | X | √ | √ | |
| Retail Outlet Store | X | X | √ | √ | √ | |
| Salon Specialty -tanning, reducing, nail, massage | X | √ | √ | √ | √ | |
| School | √ | √ | √ | √ | √ | |
| School, Vocational | X | X | X | √ | √ | |
| Self-Storage Facility | X | X | √ | √ | √ | The following uses are prohibited in facilities: 1) Any waste, debris, food, animal, or agricultural storage, and any inanimate stable materials which are volatile, combustible, noxious, explosive, or dangerous; or 2) The establishment or operation of a transfer and storage business |
| Shoe Sales and/or Repair | X | X | √ | √ | √ | |
| Sign Shop | X | X | SUP | √ | √ | |
| Small Arms Firing Range-INDOOR | X | X | X | SUP | SUP | |
| Sporting Good Store | X | X | √ | √ | √ | |

DEF LEON VALLEY 00108

Chapter 30 - ZONING
City of Leon Valley

| √-Allowed by Right | | X-Not Allowed | | | SUP-Specific Use Permit Required | |
|---|---|---|---|---|---|---|
| Use | O-1 | B-1 | B-2 | B-3 | I-1 | NOTES |
| Stamp and/or Coin Store | √ | √ | √ | √ | √ | |
| Stationery Sales | X | √ | √ | √ | √ | |
| Studio for Fine Arts | SUP | SUP | √ | √ | √ | |
| Tailor Shop | X | √ | √ | √ | √ | |
| Taxidermist | X | X | X | SUP | SUP | |
| Telecommunication Antennae/Towers | X | X | X | SUP | SUP | **SEE "ADDITIONAL REGULATION," Section 30.701 |
| Telephone Sales-to include mobile | X | X | √ | √ | √ | |
| Temporary Use | X | X | X | SUP | SUP | **SEE "ADDITIONAL REGULATION," Section 30.701 |
| Theater, INDOOR | X | X | √ | √ | √ | |
| Theater, OUTDOOR | X | X | X | SUP | SUP | |
| Tobacco Store | X | X | √ | √ | √ | |
| Tool and Equipment Rental | X | X | √ | √ | √ | |
| Toy Store | X | X | √ | √ | √ | |
| Trophy Sales | X | √ | √ | √ | √ | |
| Truck (Heavy) Repair/Maintenance | X | X | X | X | √ | |
| University | X | X | X | √ | X | |
| Videotape Sales and Rental | X | X | √ | √ | √ | |
| Warehouse Storage Facility | X | X | X | √ | √ | |
| Watch and Clock Repair | √ | √ | √ | √ | √ | |
| Welding Shop | X | X | X | X | √ | |
| Wholesale Facility | X | X | X | √ | √ | |

DEF LEON VALLEY 00109

## ASSIGNMENT OF PURCHASE AND SALE AGREEMENT

This Assignment of Purchase and Sale Agreement is entered into by and between Redemption Tabernacle Ministries, Inc., a Texas non-profit corporation ("Assignor") and The Elijah Group, Inc., a Texas non-profit corporation ("Nominee").

WITNESSETH:

WHEREAS, Assignor entered into that one certain Purchase and Sale Agreement (the "Agreement") between Happy State Bank d/b/a Goldstar Trust Company, solely as trustee for the benefit of the bondholders of Church on the Rock – San Antonio, as Seller, and Assignor, as Purchaser, dated January 4, 2008, (the "Agreement"), relating to the real property located at 6401 Bandera Road, San Antonio, Texas, more fully described on Exhibit "A" attached hereto; and

WHEREAS, Assignor deposited earnest money in the amount of $2,000.00 with Stewart Title Guaranty of North Carolina (the "Title Company") pursuant to the Agreement; and

WHEREAS, in accordance with Section 33 of the Agreement, Assignor now desires to assign to Nominee all of Assignor's right, title and interest in and to the Agreement.

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.  **ASSIGNMENT:** Assignor hereby assigns to Nominee all of Assignor's right, title and interest in and to the Agreement.

2.  **REIMBURSEMENT:** Nominee shall reimburse to Assignor the earnest money deposit together with any other out-of-pocket costs incurred by Assignor in connection with the negotiation or closing of the Agreement.

3.  **REPRESENTATIONS AND WARRANTIES:** Assignor hereby warrants and represents to Nominee that:

    a.    The Agreement remains in full force and effect and has not been amended, altered or modified.

    b.    Assignor has not executed any prior assignment, pledge or hypothecation of its rights under the Agreement and holds full and complete power and authority to transfer, pledge and assign its rights under the Agreement free and clear of any third party whatsoever.

4.  **INDEMNITY:** Nominee hereby indemnifies and holds harmless Assignor from any further obligations under the Agreement.

5.  **ENTIRE AGREEMENT:** This Assignment of Purchase and Sale Agreement constitutes the entire agreement between Assignor and Nominee pertaining to

EXHIBIT

2

FROM :                            FAX NO. :2106955433            Oct. 29 2008 11:39AM  P3

Assignor's assignment of its rights in and to the Agreement to Nominee, and no agreement not contained herein shall be recognized by the parties.

6.    BINDING EFFECT: This Assignment of Purchase and Sale Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

EXECUTED on this the 29th day of October, 2008.

**ASSIGNOR:**                                    **NOMINEE:**

Redemption Tabernacle Ministries, Inc.,          The Elijah Group, Inc.,
a Texas non-profit corporation                   a Texas non-profit corporation

By: _____                      By: _____
    Darryl W. Crain, President                        Darryl W. Crain, President

**Acknowledged and Agreed:**

Happy State Bank d/b/a Goldstar Trust Company,
successor to Colonial Trust Company,
solely in its capacity as trustee for the benefit
of the bondholders of Church on the Rock –
San Antonio

By: _____
Name: _____
Title: _____

## Exhibit "A"

**LOTS 3 AND 4, SENECA ESTATES SUBDIVISION UNIT 7, IN THE CITY OF LEON VALLEY, SITUATED IN BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 9571, PAGE 85, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS**

## ASSIGNMENT OF PURCHASE AND SALE AGREEMENT

This Assignment of Purchase and Sale Agreement is entered into by and between Redemption Tabernacle Ministries, Inc., a Texas non-profit corporation ("Assignor") and The Elijah Group, Inc., a Texas non-profit corporation ("Nominee").

WITNESSETH:

WHEREAS, Assignor entered into that one certain Purchase and Sale Agreement (the "Agreement") between Happy State Bank d/b/a Goldstar Trust Company, solely as trustee for the benefit of the bondholders of Church on the Rock – San Antonio, as Seller, and Assignor, as Purchaser, dated January 4, 2008, (the "Agreement"), relating to the real property located at 6401 Bandera Road, San Antonio, Texas, more fully described on Exhibit "A" attached hereto; and

WHEREAS, Assignor deposited earnest money in the amount of $2,000.00 with Stewart Title Guaranty of North Carolina (the "Title Company") pursuant to the Agreement; and

WHEREAS, in accordance with Section 33 of the Agreement, Assignor now desires to assign to Nominee all of Assignor's right, title and interest in and to the Agreement.

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    ASSIGNMENT: Assignor hereby assigns to Nominee all of Assignor's right, title and interest in and to the Agreement.

2.    REIMBURSEMENT: Nominee shall reimburse to Assignor the earnest money deposit together with any other out-of-pocket costs incurred by Assignor in connection with the negotiation or closing of the Agreement.

3.    REPRESENTATIONS AND WARRANTIES: Assignor hereby warrants and represents to Nominee that:

     a.    The Agreement remains in full force and effect and has not been amended, altered or modified.

     b.    Assignor has not executed any prior assignment, pledge or hypothecation of its rights under the Agreement and holds full and complete power and authority to transfer, pledge and assign its rights under the Agreement free and clear of any third party whatsoever.

4.    INDEMNITY: Nominee hereby indemnifies and holds harmless Assignor from any further obligations under the Agreement.

5.    ENTIRE AGREEMENT: This Assignment of Purchase and Sale Agreement constitutes the entire agreement between Assignor and Nominee pertaining to

Assignor's assignment of its rights in and to the Agreement to Nominee, and no agreement not contained herein shall be recognized by the parties.

6.    <u>BINDING EFFECT</u>: This Assignment of Purchase and Sale Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

EXECUTED on this the 28th day of October, 2008.

**ASSIGNOR:**                                              **NOMINEE:**

Redemption Tabernacle Ministries, Inc.,      The Elijah Group, Inc.,
a Texas non-profit corporation                     a Texas non-profit corporation

By: _____          By: _____
        Darryl W. Crain, President                          Darryl W. Crain, President


**Acknowledged and Agreed:**

Happy State Bank d/b/a Goldstar Trust Company,
successor to Colonial Trust Company,
solely in its capacity as trustee for the benefit
of the bondholders of Church on the Rock –
San Antonio

By: _____
Name: _____
Title: _____

**Exhibit "A"**

LOTS 3 AND 4, SENECA ESTATES SUBDIVISION UNIT 7, IN THE CITY OF LEON VALLEY, SITUATED IN BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 9571, PAGE 85, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS