UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE ELIJAH GROUP, INC. | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. SA08CA0907 |
| | § | |
| THE CITY OF LEON VALLEY, TEXAS | § | |
|     Defendant | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

STATEMENT OF THE CASE ................................................................................ 1

ARGUMENTS ................................................................................................... 1

THE FEDERAL MAGISTRATE PROPERLY EVALUATED THE FACTS AND LAW ... 1

NO IMPROPER FACTUAL FINDINGS ................................................................ 2

THE KEY CASE LAW CONFLICT ....................................................................... 4

*LIGHTHOUSE* INSTITUTE FOR EVANGELISM, INC. .......................................... *4*

THE ECONOMIC MOTIVATION. ....................................................................... 12

NO SUBSTANTIAL BURDEN EXISTS ................................................................ 13

NO SUBSTANTIAL AFFECT ON INTERSTATE COMMERCE. ................................ 17

NO INDIVIDUALIZED ASSESSMENT ................................................................ 19

TX RFRA ....................................................................................................... 22

PRAYER ........................................................................................................ 23

CERTIFICATE OF SERVICE ............................................................................. 24

## TABLE OF AUTHORITIES

*Adkins v. Kaspar,* 393 F.3d 559 (5th Cir. 2004)................................................................ 14, 22

*Barr v City of Sinton,* -- S.W.3d --, No 06-0074, slip op., 52 Tex. Sup. Ct. J. 871, 2009 WL
    1712798 (June 19, 2009)................................................................................. 22, 23

*Braunfeld v. Brown,* 366 U.S. 599, 605, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) ........................... 14

*Braunfeld v. Brown,* 366 U.S. 599, 605, 81 S.Ct. 1144, 6 L.Ed.2d 563, (1961) ......................... 14

*Calvary Temple Assembly of God,* No. 06-C-1148, 2008 WL 2837774 (Wisc., July 21, 2008).. 14

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma,* 615 F.Supp.2d 980, (D.C. Ariz.
    2009) ............................................................................................. 4, 6, 7, 9, 16

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 113 S.Ct. 2217, 124
    L.Ed.2d 472 (1993)................................................................................. 4, 9

*City of Boerne v. Flores,* 521 U.S. 507, 534, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) .. 18, 19, 22

*Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 766 (7th Cir.2003) .... 5, 13,
    14, 19, 21

*Digrugilliers v. Consolidated City of Indianapolis,* 506 F.3d 612 (7th Cir. 2007) ........................ 9

*Employment Division, Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct.
    1595.......................................................................................................... 9

*Greater Bible Way Temple of Jackson v. City of Jackson,* 733 N.W.2d 734  (Mich. 2007) .. 19, 20

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,* 456 F.3d 978 (9th Cir. 2006) .... 16, 21

*Liberty Road Christian School v. Todd County Health Dept.,* 2005 WL 2240482 ...................... 22

*Lighthouse Institute for Evangelism, Inc. v. City of Long Branch,* 510 F.3d 253 (3rd Cir. 2007) 4,
    5, 6, 9, 10, 11

*Living Water Living WaterChurch of God v. Charter Township of Meridian,* 2007 WL 4322157,
    7 (C.A. 6 Mich. 2007)........................................................................... 15

*Midrash Shephardi, Inc. v. Town of Surfside,* 366 F.3d 1214 (11th Cir. 2004) ........... 5, 6, 8, 9, 15

*N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, (1937)........ 17

*Petra Presbyterian Church v. Village of Northbrook,* 489 F.3d 846, 851 (7th Cir.2007).............. 7

*Primera Iglesia Bautista Hispana of Boca Raton v. Broward County,*450 F.3d 1295 (11th Cir.
    2006) ................................................................................................ 10

*San Jose Christian College v. City of Morgan Hill,*360 F.3d 1024 (9th Cir. 2004) ..................... 21

*Sosa v. City of Corpus Christi,* 739 S.W.2d 397, 404 (Tex. App.—Corpus Christi 1987, no writ) ................................................................................................................. 13

*Sts Helen and Constantine v. City of New Berlin,* 396 F.3d 895 (7th Cir. 2005) ............. 16, 18, 21

*Stuart Circle Parish v. Board of Zoning Appeals of Richmond,* 946 F.Supp. 1225, 1237 (E.D.Va.1996) ................................................................................................................. 14

*United States v. Darby,* 312 U.S. 100, 114, 61 S.Ct. 451, 85 L.Ed. 609 (1941) .................. 17, 18

*United States v. Lopez,* 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 1995) ................. 17

*Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston,* 250 F.Supp.2d 961 (N.D.Ill. 2003) ................................................................................................................. 11

*Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston,* 250 F.Supp.2d 961, 987 (N.D.Ill.2003) ................................................................................................................. 14

*Vision Church v. Village of Long Grove,* 468 F.3d 975, 999 (7th Cir.2006) ............................... 14

*Westchester Day School v. Village of Mamaroneck,* 504 F.3d 338 (2nd Cir. 2007) ........ 15, 18, 19

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, DEFENDANT THE CITY OF LEON VALLEY, TEXAS, (hereinafter referred to as "Defendant" or "City") in the above styled cause and files this Response to Plaintiff's Objections to Magistrate's Report and Recommendation and would show the court as follows:

## STATEMENT OF THE CASE

1.     This case began with an attack on the zoning ordinance because the property under option is allegedly "the only property in the City that perfectly meets the spiritual and physical needs of the church." Docket 35, p. 16.  At the TRO hearing the Pastor and his lawyer agreed with the District Court that they could not have services in a building in violation of the Fire Code, (which is exactly what they had been doing for some weeks) and claimed that compliance had been achieved.  Docket 30 pp. 39, 40 & 41.  It had not.  Docket 8.  Now they claim that the attempt to enforce this ordinance "chills" their religious freedom, and that enforcement is an "individualized assessment" which causes a substantial burden on their free exercise of religion.  None of these claims is consistent with the law.  The Magistrate's analysis correctly disposes of the case and should be adopted by this Court.

## ARGUMENTS

### The Federal Magistrate Properly Evaluated the Facts and Law

2.     The Magistrate's recommendation is a sound and correct application of the law to the undisputed facts, and the legislative facts. Most of the arguments now regurgitated as Plaintiff's objections were already made in the competing Motions for Summary Judgment and subsequent responses.

1

3.     **No Improper Factual Findings.** The Magistrate has not adjudicated any contested facts. The parties agreed there were no fact issues and that summary judgment was appropriate. Every fact relied upon by the Magistrate is undisputed in this record. These are key points:

a.    The City altered its Master Plan in 2003 and focused the Bandera Road Corridor into a retail corridor, revising the zoning districts to focus on retail activity along that major thoroughfare.

b.    The previous property owner (Church on the Rock) was allowed to operate under an SUP as long as their use continued.

c.    In July 2007 the City reclassified numerous uses, church assembly use being only one of them, out of the B-2 retail zone[1].

d.    The rezoning did not cause the church use to be unlawful, but the right to continue use did once it ceased for 120 days.

e.    After the church use lapsed, the Bank auctioned the property to a church, but made the purchase contract contingent upon the *Bank* obtaining a change in zoning to allow for church use. Docket 34, Ex. A, Crain Depo p. 95, pp. 101-102, pp. 129-131 [Ex. 5 to Depo]. **If the Bank is unable to obtain the zoning change, the Plaintiff is relieved of its obligation to purchase the property.** Docket 34, Ex. A, Crain Depo pp.108-110.

f.    The Plaintiff knew going into this arrangement that zoning was going to be an issue, Docket 34, Ex. A, Crain Depo pp. 101-102, & pp. 129-131, and that church use was prohibited. Docket 34, Ex. A, Crain Depo pp. 101-102, p. 104, lines 18-24, p. 109, lines 1-5, p. 110, lines 8-11 & pp. 129-131.

g.    The Plaintiff knew that its prior location was a lawful location and that other locations were permitted for church use in the City of Leon Valley. Docket 34, Ex. A, Crain Depo pp. 243, 247.

h.    After the Bank's application was denied to change the zoning to B-3, surrounded by B-2 zoning on all sides, the Plaintiff and the Bank entered into a lease of the property for $1000 per month, pending the outcome of this litigation. Docket 34, Ex. A, Crain Depo pp. 135-136.

i.    The Plaintiff moved into the property and began conducting numerous uses (i.e. day care, counseling services, administration services; and church services).

j.    **Even after filing suit, the Plaintiff had possession and the legal right to use its other rented property where it could, and did, conduct church**

---

[1]Churches were not the only use reclassified out of the B-2 zone. Numerous land uses previously allowed under the prior Zoning Codes were reclassified in 2007 out of the B-2 zoning district, such as churches, outdoor theaters, ambulance services, cemeteries, suite hotels, and air conditioner repair. Additionally, uses previously precluded or restricted in the B-2 zone were allowed as a matter of right such as book stores, grocery stores and convenient stores. Docket 34, Ex. C Def Leon Valley Bates No. 102-109; Docket 34, Ex. J.

       **services, but voluntarily relinquished it in February 1, 2009 (almost 4 months after filing suit and after moving into the Bandera Road location)** Docket 34, Ex. A, Crain Depo pp. 181-183[2].

k.    Fully intending to conduct church services at the Bandera Road property despite the fact that the zoning was denied, and the use illegal, Plaintiff applied for a certificate of occupancy for daycare use only. Docket 34, Ex. A, Crain Depo pp. 171-173; Docket 34, Ex. B.

l.    Pastor Crain testified he always intended to use the facility for church services, (as well as day care services), and did use it for those purposes after applying for a daycare use. Docket 34, Ex. A, Crain Depo p. 176, lines 2-4.

m.    The existing B-2 zoning permits various religious uses at the Bandera Road location (which are similar in characteristics to retail uses) including day care use, administrative office use, and counseling. The only use not permitted at that location is the church assembly use.

n.    Numerous other locations exist within the City of Leon Valley which are zoned to allow church use as a matter of right. At least two of them were considered by the Plaintiff for purchase, but were deemed by the Plaintiff to be too expensive. Docket 34, Ex A, Crain Depo, p. 243 & p. 247; The Pastor does not want to build, does not want to lease, and wants to buy an existing church that fits his profile. Docket 34, Ex A, Crain Depo, pp. 243-249.

o.    Exhibit J shows that a number of feasible alternatives for church use are available in areas that have a similar character, they are just not in the retail corridor along Bandera Road.

p.    The City is only made up of two thousand two hundred acres, and two hundred thirty-three acres of the total mass of land inside Leon Valley is currently zoned B-3. Twenty-two plus acres available along Grissom, Poss, Wurzbach near 410 for undeveloped B-3 zones. [Docket 35, Ex. J, p.15, lines 13-20]. There are buildings within the Seaward subdivision, and a building close to the H.E.B near the West Loop. The Scaggs Albertson's subdivision also has two vacant buildings which are B-3 and all allow assembly uses and church uses in that location. [Docket 35, Ex. J, pp. 15-16]. In fact, the Plaintiff's Pastor testified he was aware of at least three locations he could utilize for church services. [Docket 34, Ex A, Crain Depo, p. 243 & p. 247].

---

[2] Docket 34, Ex. A, Crain Depo p. 17 & p. 23. Both church and day care services were being conducted on Culebra Road. Docket 34, Ex. A, Crain Depo pp. 21-22. When the Plaintiff relocated to the Bandera Road location, it kept the month-to-month lease on Culebra Road and continued to operate its day care service from that location. Docket 34, Ex. A, Crain Depo p. 186. However, nothing prevented the Plaintiff from also using the Culebra Road building for church services. Ex. A, Crain Depo pp. 186. Plaintiff continued to retain and utilize the Culebra location even after it filed this lawsuit. It was not until February 1, 2009 that the Plaintiff voluntarily relinquished the lease, despite requests from the landlord to enter into a written lease. Docket 34, Ex. A, Crain Depo pp. 181-183 & p. 186. In February 2009 the Plaintiff sold the Culebra Road day care and leased to Pastor Crain's Father-in-Law for $2,250 who continues to operate the day care at that location to date. Docket 34, Ex. A, Crain Depo pp. 187-188.

4.        **The Key Case law Conflict.**  The Magistrate's reliance on *Lighthouse Institute*

*for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3rd Cir. 2007) is correct, because

both the statutory language and the U.S. Supreme Court's prior precedents codified in RLUIPA

take into account "comparable" uses and regulatory purposes.

5.        *Lighthouse Institute for Evangelism, Inc.*

a.        This decision evaluates a land use denial in a development corridor, where

the purpose was to encourage and facilitate retail and business uses for economic

development.  The application was denied.  The Third Circuit agreed with the church that

its initial application had been in violation of the statute and that its claims for damages

were not moot.  The Court agreed with the church that no "substantial burden" need be

shown under the equal terms provision.  The Court cited the same authorities urged by

Plaintiff here.  But the Court did not buy the argument that churches were entitled by

RLUIPA to piggy back on the right of any user, any institution or any assembly, to

approval just because they were a church, no matter what the comparison.  (at 264).  It

did not require an onerous "same combination of uses", but required that the type of use

be comparable in terms of regulatory purpose.

b.        RLUIPA codifies the preexisting free exercise law, and the Senate

sponsor's statement relied upon in Lighthouse makes it clear that the test is whether

behaviors have the same *effects*.  All of the pre-Smith cases dealing with exemptions and

allowances for secular uses fit this model.  This analysis is similar if not identical to that

in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct.

2217, 124 L.Ed.2d 472 (1993). *See also Centro Familiar Cristiano Buenas Nuevas v.*

*City of Yuma*, 615 F.Supp.2d 980, 993 (D.C. Ariz. 2009) ("It is undisputed that, when

drafting the Equal Terms provision, Congress intended to codify the existing jurisprudence interpreting the *Free Exercise Clause.*" (citing 146 Cong. Rec. S7774 (July 27, 2007) (Senate Sponsors' statement)); *Midrash*, 366 F.3d at 1232 ("RLUIPA's equal terms provision codifies the *Smith- Lukumi* line of precedent.")

  c. *Lighthouse* is consistent with the statutory language and Congressional intent, and logically applies consistent principles of determining equal treatment under the law. The other cases cited by Plaintiff are different and remain distinguishable, as explained below.

  6. The City's desire to create a specific retail corridor is a legitimate land use objective, and is neutral to religion. It is a clear part of the legislative history, and is established by an uncontroverted record. Although the Plaintiff points to statements about tax exempt property users, the looming reality remains that over 10% and of the City's land area allows churches as a matter of right, which is more than 400 times as much land as the Plaintiff has under contract. Protecting the character, stability, order, and efficient development of varied areas, preventing overcrowding, and limiting street congestion are all legitimate land use considerations which support this zoning map and plan. *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 766 (7th Cir.2003). The Bandera Road Retail Corridor is the primary retail area for the City.

  7. There is a sound logic to grouping retail and business generating uses together, along the main traffic corridor. That does not disadvantage churches, and churches are not similar to retail business uses for this. Leon Valley's ordinance places together in B-2 the "assembly" and other uses which by their character generate or complement retail business. It groups together those uses that do not foster retail activity together in B-3.

5

8.      Opposition to zoning the church property B-3 raised serious concern about other types of uses such as strip clubs or refineries should this church fail or sell. Docket 34, Ex. A, Crain Depo pp. 127-128. Since this is not a project specific use like all the SUP and PUD cases being cited by Plaintiffs, there was legitimate concern about allowing other uses from B-3 into the area. Docket 34, Ex. M. The Commissioners noted that the City worked long and hard on the zoning districts and it made no sense to change the Bandera Road corridor to a B-3, which it had never been. Docket 34, Ex. M. Vice-Chair Phelps noted that the determination to remove churches from B-2 was also made based on placing all like uses with large gatherings of people into the same district. Docket 34, Ex. M. The Staff noted that all assembly and gathering types of uses were grouped into B-3. Docket 34, Ex. M. These statements from the former staff member who handled these matters are not controverted. The presence of a stated interest in avoiding excessive tax exempt uses does not controvert them, and is not fatal to the plan.

9.      Plaintiff argues that as long as ANY assembly use is permitted within a zoning district, regardless of purpose or characteristics, then church assemblies must also be permitted. According to Pastor Crain, he believes that the retail Taco Cabana restaurant constitutes an assembly use which is comparable. Docket 34, Ex. A, Crain Depo p. 252, lines 3-7. Should Plaintiff's scope and interpretation of RLUIPA prevail, a single small assembly use in any zone would entitle a large church congregation to override all the logic and common sense of land use rules, irrespective of parking, traffic, and public safety access. In *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 615 F.Supp.2d 980, 993, 994 (D.C. Ariz. 2009) the court stated "According to the reading of the provision advanced by the Church in this case, "if a zoning regulation allows *a* secular assembly, *all* religious assemblies must be permitted." *Lighthouse*, 510 F.3d at 268 (criticizing the interpretation given in *Midrash*, 366 F.3d at 1231) (emphasis

added). Such an interpretation has been criticized as leading to the absurd result that "if a town allows a local, ten-member book club to meet in the senior center, it must also permit a large church with a thousand members." The extremity of the above described interpretation is self-evident. A zoning law that excluded all but a single assembly or institution would fail such a test, despite treating religious assemblies and institutions on equal terms with the overwhelming majority of secular assemblies and institutions. Even though the law would provide equal treatment to all assemblies and institutions that share the same land use impacts, and no matter how peculiar or necessary the characteristics of that one permitted secular use, all types of religious assemblies and institutions would have to be permitted as well." *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma,* 615 F.Supp.2d 980, 993, 994 (D.C. Ariz. 2009).

The ban on churches in a particular zone cannot, in itself, constitute a substantial burden on religion, because "then every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA." In *Petra Presbyterian Church v. Village of Northbrook,* 489 F.3d 846, 851 (7th Cir.2007) the court noted that where there is available land on which religious organizations may build churches in a community, the fact that they are not permitted to build anywhere and everywhere does not create a substantial burden. *See International Church of the Four Square Gospel v. City of San Leandro,* 632 F.Supp.2d 925, 942 (N.D. Ca. 2008).

ICFG made this same argument, and the court found it inconsistent with the codified First Amendment provisions in RLUIPA the court in ICFG continued its analysis of comparable uses, "Second, ICFG contends that the City violated the "equal terms" provision by allowing entertainment and recreational assembly uses but not religious assembly use. ICFG claims that the legislative history of RLUIPA specifically identifies "recreation centers" and "places of amusement" as being comparable to religious assemblies for purposes of the statute...ICFG

asserts that the legislative history suggests that "assembly" applies broadly, to any gathering of people, for almost any reason...ICFG cites to nothing in the legislative history indicating the intent of Congress that the legislation abrogate all local zoning regulations that distinguish between private or non-profit assemblies and institutions, and commercial or for-profit gatherings of multiple persons...The court finds the City's position more reasonable. ICFG's position, carried to its logical conclusion, would mean that the City could not zone its land for categories of uses. It is not true that the Zoning Code singles out churches and treats them on less than equal terms as other types of gatherings of persons. Under the Zoning Code, an assembly can be a church, a lodge, a social club, a union hall, a fraternal organization, or a youth center. This is a category of use that is qualitatively distinct from commercial uses or entertainment uses...[12] Because the Zoning Code is neutral toward churches and toward religious activity itself, the City's actions under the Zoning Code are of general application and need not be justified by a compelling governmental interest, regardless of whether they impose any incidental restrictions on religious activities" *ICFG at* 945, 946.

10.   *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214 (11th Cir. 2004) is a similar case in the sense of having a business district from which churches were excluded because they were not compatible with business purposes. The Court does say that (b)(1) does not require a substantially similar comparison. However, *Midrash* does not fit Leon Valley's ordinance or situation. No SUP is required for churches allowed in Leon Valley, and churches are permitted in B-3, but not allowed in B-2. **Neither are private clubs or lodges allowed in B-2, without a special use permit.** The Court further concludes that the Surfside ordinance categorized churches and synagogues based on their conduct motivated by religious belief. (at 1234, 1235) citing *Employment Division, Dept. of Human Resources of Oregon v. Smith,* 494

8

U.S. 872, 110 S.Ct. 1595 and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). That analysis is consistent with in the *Lighthouse* evaluation of prior Supreme Court precedent. In Leon Valley, only assembly uses which are consistent with the retail and business objectives are present, and there is no indication that churches were placed in B-3 because of their religious character or motivation. "The mere fact that the City's zoning code identifies religious organizations as a distinct type of use does not impair its facial neutrality." See *Centro Familiar* at 992. The assembly uses allowed in Leon Valley in B-2, as matter of right, do not support that distinction or conclusion. Without a showing that some secular use has been permitted in B-2, under a special use permit which does not fit the retail character of the district, there is no equal terms violation. What Plaintiff wants to do is use *Midrash* on the equal terms argument, and ignore it on the substantial burden argument, because *Midrash* conclusively shows that there is no substantial burden in the case of Elijah's "only perfect property" and puts that issue to rest. Communities do not have to approve the site of choice or assure its proximity to congregants. *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1228 (11th Cir. 2004); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma,* 615 F.Supp.2d 980 (D.C. Ariz. 2009).

11. *Digrugilliers v. Consolidated City of Indianapolis,* 506 F.3d 612 (7th Cir. 2007), is also urged as a strict liability comparison case. In that case the church was required to get variance to exist in the C-1 district involving many commercial and assembly uses. The fact that "church uses" included residence or rectory was not enough of a distinction to treat it differently. The seventh circuit said the City could not define church use so broadly that it effectively excluded it, when there was no intention of anyone to reside on the church property. Any other reading of *Digrugilliers* on equal treatment would mean that churches were entitled to be present

9

in any zone where any form of gathering was permitted. This is the point that Plaintiff's argument misses, there is no line of demarcation at all under that theory. Each of these cases has dealt with realities of similar uses: which begs the question, "Similar in what sense?" That is the question that *Lighthouse* answers.

12.    *Primera Iglesia Bautista Hispana of Boca Raton v. Broward County,* 450 F.3d 1295 (11th Cir. 2006) follows and applies the *Surfside* standard of testing whether the regulation is neutral and generally applicable, rather than imposed with regard to the religious purpose or character of the assembly. It holds that in an "as applied" equal terms case the religious user must show a similarly situated comparator. It supports the conclusion that use, permitted in B-2 under a special use permit doesn't matter unless a secular use has been approved which is "substantially similar."

13.    The correct First Amendment balance was struck in *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3rd Cir. 2007). The City lost the argument about assembly zoning when it had no reason, but the rezoning to achieve a retail corrider was upheld. Defendants agree that when there is no meaningful distinction between the affects of a secular assembly and a church assembly, then both should be permitted. But if the affects of a secular assembly use within a zone further the regulatory purpose and have a different affect than a religious assembly use, then they are not similarly situated.

14.    In this case, the Plaintiff's use of the property for counseling, day care, and administration have no adverse affects on the retail nature of the Corridor and are similar in affects to permitted retail uses. As a result, such uses, even though key and integral to the Plaintiff's religious purpose, should be and are permitted in the Bandera Road Retail Corridor. However, church assembly use for worship services is inconsistent with the Retail Corridor. The

10

size, the parking and traffic character, the dead use during several days of the week, the overwhelming traffic loads during use periods, and the lack of contribution to the retail context, just does not work. This makes it permissible to be removed as a distinctly different type of use from the B-2 zone. It is the type of use that was removed, not the religious or church character that was removed. Other religious and church uses are still permitted. Retail uses, such as day care services, counseling, and administrative offices, are permitted, regardless of the entity (religious or non-religious) performing such services. In *ICFG* a similar claim to a single location did not succeed. The City argued that ICFG failed to show that all the Church's activities must occur at the same location, that burdens resulting from neutral operation of a rational zoning scheme are considered incidental-not substantial-burdens on religious exercise, that the Church is not justified in insisting on a single large property of its own choosing, and that any financial difficulty the Church finds itself in was of its own making. *IGFG* at 940, 941. The court rejected the RLUIPA claim.

15.    In *Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston,* 250 F.Supp.2d 961 (N.D.Ill. 2003) (which also involved application for many sites over the years, and found no substantial burden) the pastor wrote the City's planning committee a letter which included this observation: "(Mr. Hanawalt conceded that it would be) very undesirable for a large church to displace sales tax generating business/commercial property with our required parking and buildings and have a giant 'hole' in a retail area that is relatively empty six days a week." (Id.) That happens to be exactly what the City of Leon Valley is saying, and it was the very reason for a new zoning approach to B-2 uses in the retail corridor."

16.    *Lighthouse* allowed the City to create just such a corridor or zone with a specific regulatory intent which was not directed against churches. 510 F.3d 253, at 264. An analysis of

the permitted uses in a B-2 zone shows a clear distinction for the purpose of the retail corridor. Large uses with higher congestion, larger groups coming and going at exactly the same time, are far different than daylong retail traffic streams. If the effects on a particular zone are non-existent or minimal between a theater use and a church use, then RLUIPA requires equal terms be provided to each. If, however, the effects are such that a distinction is evident given the regulatory purpose of the zone, then they are not "similarly situated comparators."

17.    Plaintiff points to art galleries, museums, indoor theaters, libraries, and child care facilities for the proposition that since these uses are assemblies but not retail in nature, then the City has violated the RLUIPA's Equal Terms requirement. As already noted, child care facilities feed off the retail uses (are secondary) which is one reason the Plaintiff is permitted to conduct such use at the Bandera Road location. The other uses allowed complement and contribute to retail. Uses, such as convention centers and clubs are permitted if approved by SUP. The City must determine if the individual applicant is retail in character (or secondary and will feed the retail corridor) before permitting that use. Church assembly use, which occurs on Sunday or after business hours on the weekends, does not feed the retail corridor by its characteristics. As a result, it is permissible to be zoned into the B-3 zones within the town. This supports the lack of an SUP option for church assemblies in this zone.

18.    **The Economic Motivation.**

a.    Plaintiff has decided to attack the "economic motivation" of the City for tactical reasons, presumably to tar and feather the city for a greedy motivation. It is a spurious attack. Plaintiff is entitled to conduct many tax exempt religious activities at the Bandera Road location, and would still pay no taxes. Their own arguments about unequal treatment focused on other uses (like schools) permitted in the B-2 zone shows that the

12

"economic interest" argument fails.  Many of those permitted users are exempt from property tax.  The effort to bias the court against the City should fail.  No financial gain to the City results from prohibiting the Plaintiff's assembly use in the retail corridor, when it is allowed within the rest of the City.  More than 10 percent of the City's land area is available, not counting grandfathered non-conforming use locations, and they will still be exempt there.

      b.     In addition, conserving "the taxable value of city land" has expressly been held to be a legitimate interest. *C.L.U.B.* at 766.

      c.     The attempts to attribute to the City the stated motivation of individual legislators or citizens is improper anyway.  Commission members' or legislator's statements are improper evidence to determine the legislative intent behind legislation.  This record shows the history of the zoning change, and the importance of a retail corridor is uncontroverted.  It is not impeached by the fact that some citizens or commissioners were concerned about loss of tax base to exempt users.  Opinions and statements of an individual legislators, even a statute's principal author, are not legislative history controlling the construction to be given a law and have no bearing upon the validity of the action taken by the legislative body.  This Court should reject the effort to make single citizen or official the conscience of the community. *See Sosa v. City of Corpus Christi*, 739 S.W.2d 397, 404 (Tex. App.—Corpus Christi 1987, no writ).

      19.    **No Substantial Burden Exists** The Magistrate correctly concluded that RLUIPA does not guarantee a church the use of its choice of location and property.  The statute is not an exemption from zoning law, as the legislative history and joint statements of the sponsors demonstrates.  There is no substantial burden on the free exercise of religion under these facts.

a.    *C.L.U.B.* finds no substantial burden, and stands for the proposition that the burden for a Plaintiff is a high one. The 5th Circuit standard in *Adkins v. Kaspar,* 393 F.3d 559 (5th Cir. 2004) requires that the law "truly pressures one to significantly modify religious behavior, and significantly violate his religious beliefs." As addressed in detail in the earlier briefing in his case, increased cost, including the price and process of multiple applications on more than one site does not create a substantial burden without more. In *C.L.U.B.* the various participating churches applied for multiple locations; the court upheld The finding of no substantial burden in the face of repeated and severe procedural opposition to some of the land use applications. (755-758, and 761, 762).

b.    Numerous Free Exercise cases hold that mere expense or inconvenience does not amount to a substantial burden. *Braunfeld v. Brown,* 366 U.S. 599, 605, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *see also Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston,* 250 F.Supp.2d 961, 987 (N.D.Ill.2003) (holding that "monetary and logistical burdens do not rise to the level of a substantial burden"); *Vision Church v. Village of Long Grove,* 468 F.3d 975, 999 (7th Cir.2006); *Calvary Temple Assembly of God,* No. 06-C-1148, 2008 WL 2837774 (Wisc., July 21, 2008) at *9 (holding that cost and inconvenience do not rise to the level of a substantial burden); *Stuart Circle Parish v. Board of Zoning Appeals of Richmond,* 946 F.Supp. 1225, 1237 (E.D.Va.1996) ("It is well established that there is no substantial burden placed on an individual's free exercise of religion where a law or policy merely 'operates so as to make the practice of [the individual's] religious beliefs more expensive.'") (quoting *Braunfeld v. Brown,* 366 U.S. 599, 605, 81 S.Ct. 1144, 6 L.Ed.2d 563, (1961) (plurality opinion)).

14

c.     In *Living Water Living WaterChurch of God v. Charter Township of Meridian*, 2007 WL 4322157, 7 (C.A. 6 Mich. 2007) the court found no substantial burden, analyzing the issue as follows: "If the term "substantial burden" is not to be read out of the statute, RLUIPA cannot stand for the proposition that a construction plan is immune from a town's zoning ordinance simply because the institution undertaking the construction pursues a religious mission. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F.Supp.2d 477, 544 (S.D.N.Y.2006), aff'd, --- F.3d ----, 2007 U.S.App. LEXIS 24267 (2d Cir.2007) ("[C]ourts must ensure that the facts warrant protection under RLUIPA, rather than simply granting blanket immunity from zoning laws."). Although RLUIPA assuredly protects religious institutions in their religious exercise, the statute's language indicates that it is not intended to operate as "an outright exemption from land-use regulations."*C.L.U.B.*, 342 F.3d at 762 ("[N]o such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise.")...And while we understand the church's reason for wanting a gymnasium-and we concede that it would be more convenient to have that facility onsite-we are hard-pressed to conclude that Living Water will be unable to carry out its church missions and ministries without it, nor do we believe that mere inconvenience equates to a substantial burden. *See Midrash Sephardi*, 366 F.3d at 1227 ("[A] 'substantial burden' must place more than an inconvenience on religious exercise."). *Living Water Living Water Church of God v. Charter Township of Meridian,* 2007 WL 4322157, 7 (C.A. 6 Mich. 2007).

d.     Plaintiff argues that costs of delay are enough to equal a substantial burden. However, the cases that find a substantial burden on the basis of cost and delay involve improper or inconsistent behavior by public officials which truly impaired the

ability of religious organizations to obtain approval for same location. *Guru Nanak Sikh Society of Yuba City v. County of Sutter,* 456 F.3d 978 (9th Cir. 2006); *Sts Helen and Constantine v. City of New Berlin,* 396 F.3d 895 (7th Cir. 2005). *Centro Familiar* evaluates *Guru Nanak* and observes a couple of similar facts : "That property would have met the needs of the Church's current congregation, but was not big enough to accommodate future growth to a 400-person congregation. (Trial Tr. at 36, 56-57, 61-62.)" *See Centro Familiar* 986. The court concludes "in *Guru Nanak Sikh Society v. County of Sutter.* The religious organization in that case sought a new location for a Sikh temple and was twice denied a CUP by the county. The court explicitly declined to hold that "failing to provide a religious institution with a land use entitlement for a new facility for worship *necessarily* constitutes a substantial burden pursuant to RLUIPA." *Id.* at 989 (emphasis added). Additionally, the court noted that "the availability of other suitable property weighs against a finding of a substantial burden." *Id.* at 992 n. 20 (citing *San Jose Christian Coll.,* 360 F.3d at 1035). As the Court of Appeals for the Second Circuit put it: "when an institution has a ready alternative-be it an entirely different plan to meet the same needs or the opportunity to try again in line with a zoning board's recommendations-its religious exercise has not been substantially burdened." *See Centro Familiar* at 989

e.    Further, the Plaintiff Had a location to conduct church services as within their designated congregation area and voluntarily relinquished it after this litigation was initiated. Docket 34, Ex. A, Crain Depo pp. 181-188. Plaintiff still had that location during the City's Temporary Restraining Order hearing (December 5, 2008), when the

Plaintiff was conducting unsafe meetings at Bandera Road without abiding by Fire Code requirements.

20.    **No substantial affect on interstate commerce.**

a.    Plaintiff does not plead a cause of action under 2000cc(a)(2)(B) concerning interstate commerce. Perhaps one reason the Magistrate did not address the challenge, is that it was never pleaded until Plaintiff's Motion for Summary Judgment.

b.    Since there is no substantial burden, the issue of a sufficient nexus to interstate commerce is not relevant.   If the Court addresses this issue, *U.S. v. Lopez*, cited by the Plaintiff, does not answer the question in their favor.   *Lopez* disallowed a federal criminal law because of the areas of traditional state sovereignty, much like land use control.  Every land use decision affects the value of property, and involves the prospect of construction expenditures.  Is every land use decision "interstate commerce?" RLUIPA does not deal with the three areas of traditional commerce clause regulation: the channels of interstate commerce, the instrumentalities of interstate commerce, or the things in commerce. *United States v. Lopez*, 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 1995) (citing *United States v. Darby*, 312 U.S. 100, 114, 61 S.Ct. 451, 85 L.Ed. 609 (1941). However, such power is not absolute. In *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, (1937), the U.S. Supreme Court warned that the scope of the interstate commerce power "must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." 301 U.S., at 37, 57 S.Ct. at 624;

see also *United States v. Darby,* 312 U.S. 100,119-20. (Congress may regulate intrastate activity that has a "substantial effect" on interstate commerce).

      c.     Plaintiff's argument concerning the scope of the commerce clause would completely displace the 10th Amendment. Every zoning case would affect commerce under their reasoning. Every contract contingent on zoning would result in a different standard of review for churches than for all other users. Such a broad reading of the statute is clearly improper. This would privilege religion over irreligion in violation of the establishment clause. "But if this provision is interpreted to place religious institutions in *too* favorable a position in relation to other land users, there is a danger that it will run afoul of the clause of the First Amendment that forbids Congress (and, by interpretation of the Fourteenth Amendment, state and local governments as well) to establish a church." *Sts. Constantine and Helen,* at 900. Even if suggested by Congressional intent, (c.f. the reference to a cancelled project at p. 541 in the opinion in *Westchester Day School v. Village of Mamaroneck,* 504 F.3d 338 (2nd Cir. 2007) it is not permissible because it would impose a <u>Congressionally</u> rewritten First Amendment standard on the traditional state regulation of land use. Under Plaintiff's logic, every denial of a permit to build a church, or to remodel an existing building for church, would be covered by RLUIPA, and the practical effect would be the exact same rule struck down in *City of Boerne v. Flores,* 521 U.S. 507, 534, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). It does not appear that the cases cited in *Westchester* considered this defect in the commerce clause argument.

      d.     The Plaintiff's argument also ignores the fact that no impact on interstate commerce occurs if the Plaintiff uses a different property in Leon Valley for their church.

The *Westchester* scenario of a cancelled project would not occur, the project would just move over. Elijah may still have a church in Leon Valley, like many of the churches in cases around the country that did not get their first permit granted. *C.L.U.B.* at 755-758. Plaintiff can also use the current property for permitted religious uses and use another property for worship. The $400,000 – or more- still gets spent, with the same impact on the Texas and Arizona interests. Since *Lopez* requires a substantial impact on interstate commerce, zero net impact does not meet the test.

**21.    No Individualized Assessment**

a.    If the Congress meant that every land use decision triggered the statute it would have said so, and would have more than likely run afoul of the same constitutional line present in *City of Boerne.* Zoning is a function of state and local governments, and Congress has limited powers to preempt that function. The "individualized assessment" must mean something more narrow than zoning. It is a decision on particular property, for a particular use, for a particular user. It is not a zone, with a long list of options and alternatives, that may be used by many owners or tenants over many years. It has to do with size, fences, hours of operation, types of uses, where the driveways go, and what types of landscaping are on the site. It includes lights and which way they point, and whether traffic cops are required to be there on Sunday. Zoning does none of these things. The careful reasoning of the Michigan Supreme Court in *Greater Bible Way Temple of Jackson v. City of Jackson*, 733 N.W.2d 734 (Mich. 2007) demonstrate a rezoning request for one parcel of land is actually not limited in effect to simply that parcel. After a detailed analysis of federal and state cases, the *Greater Bible Way* Court

noted that a rezoning request was not an individualized assessment for RLUIPA purposes. *Id* at 743.

b.     The Court in *Greater Bible Way* correctly traces the history of "individualized assessments" from the unemployment compensation cases. Only where there is a system of exempting particular properties and projects from a generally applicable zoning law for the land use district does the cause of action in 2000cc(a) apply.  The rezoning application of the bank on behalf of the church was not an application for a church, but an application to allow all the uses in B-3 for any user of that property.  If granted it would have completely changed the options on a permanent basis.  All permitted uses would be allowed, and not subject to later approval based on project specifics for that site.  All of the industrial uses that the Plaintiff doesn't want to be associated with would be permanently permitted in the retail zone along the primary business corridor.  There is no way that would be an individualized assessment.

c.     All Plaintiff can say about *Greater Bible Way* is that it is a state court case.  But it is an absolutely true proposition of zoning law, and it is based on the Supreme Court's 1st Amendment precedent of individualized exemptions.  IN the testimony at the zoning commission, it was actually Gold Star Trust on behalf of the Church that tried to make the proceeding site specific by offering deed restrictions, so the other B-3 land uses would never be available.  Docket 35, Ex. I pp. 15-17.

d.     An "individualized assessment" is an assessment based on one's particular circumstances, not one which affects the entire community.  *Id.* at 743.  The court, citing to the Ninth Circuit, noted that "RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to

20

permit or deny that use." *Guru Nanak Sikh Society of Yuba City v. Sutter Co.,* 456 F.3d 978, 986 (C.A.9[th] 2006). *Guru Nanak* was a conditional use permit application, not a rezoning. *St. Constantine and Helen* was a PUD (Planned Unit Development) zoning request with site specific approvals and limitations just like an SUP. C.L.U.B. (cited by Plaintiff to p.763 to 764) did not hold zoning of a property into a use district was an individualized assessment. It actually holds that if the right to seek special use, map amendment, and planned unit development options is open to churches, and are sometimes granted, that the zoning system is a generally applicable system of land use regulation under *Smith*, and not subject to free exercise challenge. *C.L.U.B.* at 765, 766. *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024 (9th Cir. 2004) involved a PUD like *Sts. Constantine and Helen* at 1027, 1027, but the case never discusses the individualized assessments distinction. These cases are cited by the Plaintiff for propositions beyond those that they support.

22.    RLUIPA does not exempt religious organizations from fire codes, building codes, or the necessity for certificates of occupancy, which is exactly what the Plaintiff is attempting to argue. It is preposterous to call the legitimate law enforcement mechanisms—Code inspections and a request for a restraining order to require compliance with the City's Fire Code (an order the Plaintiff tried to circumvent)—"individualized assessments." Congress did not mean to subject the public to death by fire, electrocution, collapse of a structure, in order to insure the right to worship. A citation for a fire code violation or a stop work order to have circuit breakers is not an individualized assessment. Having to go to court or pay a fine because your particular group thinks they are above the law is not a "substantial burden" in the context of any case that has ever considered RLUIPA. In fact no case can be found on Westlaw under

21

[RLUIPA & "fire code"] or [RLUIPA & "building code"] to suggest that either is an individualized assessment. *Liberty Road Christian School v. Todd County Health Dept.*, 2005 WL 2240482 says that these construction and safety codes are not land use regulations as defined by RLUIPA.

23.     It is truly a perverse argument to say that the "substantial burden" principle is limited to "individualized assessments" under 2000cc(a)(2)(c) of the act, but if the City wants to actually enforce the law it applies to all land use regulation. Surely such a back door approach to federalizing all land use regulation would fail, just as surely as the front door approach failed in *City of Boerne*.

24.     **Tx RFRA**

a.     In the recent Texas Supreme Court case of *Barr v City of Sinton*, -- S.W.3d --, No 06-0074, slip op., 52 Tex. Sup. Ct. J. 871, 2009 WL 1712798 (June 19, 2009), the Court noted that the proper test under TxRFRA was to focus on the "degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression." *Id* at *10. The Court, citing to U.S. Fifth Circuit precedent noted that a "government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Id* (citing *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). The Court noted the burden on religious exercise are "practical matters to be determined based on the specific circumstances of a particular case." *Id* at *12.

b.     The Texas Supreme Court's discussion of prior case facts at page 11 of the opinion is fully consistent with Leon Valley's arguments about alternate locations that are

available within the City limits. "Ordinance 1999-02 prohibited **Barr** from operating his halfway house ministry in the two homes he owned adjacent his supporting church, and the city manager testified that it was "a fair statement" that alternate locations were "probably ... minimal" and "possibly" "pretty close to nonexistent.". *Barr v City of Sinton*, -- S.W.3d --, No 06-0074, slip op., 52 Tex. Sup. Ct. J. 871, 2009 WL 1712798 (June 19, 2009).

       c.     TXRFRA adds nothing to the debate in this case. The standard applicable is the same substantial burden standard which applies under RLUIPA. There is no substantial burden when the only impact is economic, and there are other locations available which are reasonable and feasible.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Defendant City of Leon Valley prays that the Court accepts to Magistrate's recommendation, grant the City's Motion for Summary Judgment in its entirety, dismiss all of the Plaintiff's claims with prejudice and for such further relief, in law and in equity, as the Defendant may show itself justly entitled.

SIGNED this _16_ day of November 2009.

Respectfully Submitted

DENTON, NAVARRO, ROCHA & BERNAL
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas  78212
210/227-3243
210/225-4481 (Facsimile)
Lowell.denton@rampage-sa.com
Ryan.henry@rampage-sa.com

By:    _Lowell Denton wlp rjm Hy_
LOWELL F. DENTON
State Bar No. 05764700
RYAN S. HENRY
State Bar No. 24007347
COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individual(s) as indicated, and according to the Federal Rules of Civil Procedure on the ___ day of November, 2009.

Daniel P. Whitworth                    **E-Notification**
John G. George
STUMPF FARRIMOND, P.C.
112 E. Pecan Street, Suite 700
San Antonio, Texas 78205

Law Offices of William M. McKamie, P.C.    **E-Notification**
941 Proton Road
San Antonio, Texas 78258

Honorable Nancy Stein Nowak
655 E. Durango Blvd.
San Antonio, Texas 78206

LOWELL F. DENTON
RYAN S. HENRY

24